UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF NEWARK

```
                         )
ALVES, et al.,           )    HON. DENNIS M. CAVANAUGH, U.S.D.J.
                         )
          Plaintiffs,    )
                         )    Civil Action No. 01-CV-0789(DMC)
      v.                 )     (Consolidated)
                         )
FERGUSON, et al.,        )
                         )
          Defendants.    )
                         )    ORDER GOVERNING SETTLEMENT PROCEDURES
                         )
```

This matter having come before the Court on the joint application of counsel for all parties in the above captioned consolidated actions for the entry of an Order Governing Settlement Procedures, and

WHEREAS on February 15, 2001, a Summons and Complaint seeking class certification was issued in Raymond Alves v. Ferguson, et al., bearing Civil Action No. 01-0789(DMC), before the Honorable Dennis M. Cavanaugh, U.S.D.J., and the Honorable Mark Falk, U.S.M.J.. in which Plaintiffs sought class action status and alleged unconstitutional conditions of confinement in the Special Treatment Unit which houses sexually violent predators in Kearny, New Jersey, as well as unconstitutional sex offender treatment; AND

WHEREAS at the same time frame as the filing of the Alves complaint, a Summons and Complaint were filed in Robert McGarrey v. Ferguson, et al., bearing Civil Action No. 01-0790, and alleging the same legal issues as alleged in the Alves matter, specifically,

conditions of confinement and sex offender treatment in the Special Treatment Unit in Kearny, New Jersey; **AND**

**WHEREAS** on March 31, 2003, all complaints filed by Raymond Alves, as well as the complaints filed by Robert McGarrey, were consolidated into the lead case bearing Civil Action No. 01-0789 (DMC); **AND**

**WHEREAS** on June 29, 2004, a Summons and Complaint seeking class action was filed in Richard Bagarozy v. Gwendolyn Harris, et al., bearing Civil Action No. 04-03066 (JAP), before the Honorable Joel A. Pisano,  U.S.D.J. in which Plaintiff sought class action status and alleged unconstitutional conditions of confinement in the Special Treatment Units in both Kearny, New Jersey and Woodbridge, New Jersey, as well as alleged unconstitutional sex offender treatment; **AND**

**WHEREAS** on January 2, 2008, the Bagarozy case was consolidated with the previously consolidated cases of Alves/McGarry under Civil Action No. 01-0789 (DMC); **AND**

**WHEREAS** on April 21, 2005, a complaint was filed in Moore and Hysler v. Brown, et al., bearing Civil Action No. 05-2179 (JLL) In Count Two of the Complaint, plaintiffs allege punitive conditions of confinement in the Kearny facility and portions of Count Three of the complaint challenge the type and quality of treatment provided; **AND**

2

**WHEREAS** counsel for the plaintiffs and the Department of Human Services defendants have agreed upon the manner in which the Joint Neutral Expert will conduct her evaluation and procedures for such evaluation, which is set forth in a document entitled Procedures For Joint Expert Review And Evaluation ("Procedures") which is attached to this Order and incorporated herein as if fully set forth; and it appearing to the Court that pursuant to Federal Rule of Civil Procedure 1 that it would be appropriate to adopt the agreed upon Procedures as the framework for attempting a resolution of this matter between plaintiffs and the Department of Human Services Defendants, and for good cause shown;

**IT IS** on this     3     day of *April*     , 2008;

**ORDERED** that the agreed upon Procedures shall be implemented forthwith in accordance with the time frames set forth therein; **AND**

**IT IS FURTHER ORDERED,** *and the parties having agreed* that any disputes about implementation of the Procedures shall be decided by the Honorable Mark Falk, U.S.M.J. after taking into consideration the provisions of the Procedures, the relevant interests of the parties, and the interests of a fair and efficacious evaluation and settlement process.

Hon. Mark Falk, U.S.M.J.

**\*** *This Order is subject to revision by the Court at any time for case management and other reasons. mf*

<u>Alves v. Ferguson, et al.</u>
<u>Civil Action No.: 01-cv-0789 (DMC)(Consolidated)</u>
<u>Procedures for Joint Expert Review and Evaluation</u>

<u>Areas of Expert Review</u>

In conducting her evaluation, the Joint Expert shall have access to each of the areas enumerated below. The Joint expert shall not be precluded from having access to such related parts of the facilities that, in conducting her evaluation, she deems to be reasonably appropriate and connected to the enumerated areas and necessary to her formation of an opinion:

1. Tour all facilities, including treatment space, vocational and educational resources, housing areas and kitchen and recreation facilities and other parts of the facilities a the Joint Expert deems necessary;

2. Review the treatment program (as evidenced in Written Plan and Resident Handbook, and resident evaluations), training program and materials, syllabus, group and module scheduling, and program of supervision;

3. Review clinical assessments and evaluations and individualized treatment plans for a representative sample of residents as deemed adequate by the Joint Expert.

4. Interview an appropriate number of residents, as deemed adequate by the Joint Expert, which represent a cross section of the population;

5. Interview a reasonable number of clinical staff members as determined by the Joint Expert, from each of the facilities, as well as interview other professional staff, including vocational teachers, GED teachers, recreational therapists and other program directors, outside the presence of their supervisors. The Joint Expert will arrange interviews at mutually agreeable times so as not to interrupt the operation of the facilities.

6. Interview the Clinical Director, Director of Psychology and Director of Psychiatry, Director of Rehabilitation, Director of Social Work, Program Co-ordinator of the Threapeutic Community, Research Scientist, and relevant DOC administrators including the Administrator of the

Adult Diagnostic Treatment Center and the Assistant Superintendent of the Special Treatment Unit.  The Joint Expert will arrange interviews at mutually agreeable times so as not to interrupt the operation of the facilities.

7.  Review prior consultancy reports (Schlank) and Plaintiff's expert reports (Prentky and App), and additional documents submitted by the parties with their prior knowledge and consent, and requested by the Joint Expert before, during or after her visit.

## Areas of Expert Evaluation

The Joint Expert shall opine upon each of the following enumerated areas which are each generally described:

1.  <u>Overall Therapeutic and Rehabilitative Milieu</u>
Assessment of good faith efforts by staff and administration to produce a program and environment that provides residents with a reasonable opportunity to have the condition for which they are committed sufficiently managed in order to be reintegrated into society and, considering the role of DOC,  whether the environment is sufficiently therapeutic, or counter-therapeutic.

2.  <u>Clinical Assessments, Evaluations and Treatment Team Reports</u>
Assessment of whether they are timely performed, individually tailored, contain objectively measurable criteria, to the extent such criteria exist,  and recommendations for advancement, are communicated in comprehensible way to residents and are otherwise in accordance with relevant clinical standards.

3.  <u>Program Phases</u>
Assessment of program phases with regard to current national clinical practices and standards such as those described by resources referenced in the substantive evaluation criteria below.

4.  <u>Process Groups and Modules</u>
Assessment of whether they are made sufficiently available to residents in accordance with prevailing institutional and therapeutic standards and their curriculum and execution is in accordance with relevant clinical standards.

5. <u>Vocational, Recreational and Educational Therapy</u>
Assessment of whether both are made sufficiently
available to all residents.

6. <u>Release Preparation and Programming</u>
Assessment of whether it is in accordance with relevant
clinical standards, including adequacy of pre-release
risk assessment process.

7. <u>Therapist Training and Supervision</u>
Assessment of whether the curriculum is in accordance
with relevant clinical standards and is otherwise
occurring on a regularized and effective basis.

9. <u>Therapeutic Community</u>
Assessment of whether a therapeutic community is
reasonably available to eligible residents, and the
therapeutic community is are operated in accordance with
relevant clinical standards.

10. <u>Confidentiality</u>
Assessment of whether client confidences are adequately
protected during the sessions and as part of re-
commitment hearings, consistent with relevant
professional clinical and legal standards.

11. <u>Gradual De-escalation of Restraints</u>
Measuring compliance with therapeutic standards and
Appellate Division requirements, as well as sufficiency
of integration of de-escalation model throughout
Treatment Manual, Resident Handbook and overall program.

12. <u>Increased Visitation</u>
Consideration of increased development of social
supports, including consideration of participation of the
resident's significant other(s) as part of gradual
de-escalation program.

13. <u>Availability of Psychiatric Counseling</u>
Assessment of sufficiency of quality and availability
psychiatric services for population's needs.

## Substantive Evaluation Criteria

1. The Expert should assess the State's compliance with the
evaluation criteria above, which incorporate the
professional standards the expert believes relevant and
applicable. These would include, but are not necessarily
limited to, standards established in the following
resources: *Civil Commitment of Sexually Violent*

*Offenders*, Association for the Treatment of Sexual Abusers, http://www.atsa.com/ppcivilcommit.html; Dr. Anita Schlank, *Guidelines for the Development of New Programs*, The Sexual Predator: Law, Policy, Evaluation and Treatment (Kingston, NJ: Civil Research Institute 1999); and Dr. Janice K. Marques, *Professional Standards for Civil Commitment Programs*, The Sexual Predator: Law, Policy, Evaluation and Treatment (Kingston, NJ: Civil Research Institute 1999).

2.  In producing the Final Expert Report, the Expert will provide a detailed narrative of his/her conclusion, including specific facts or examples supporting the conclusion, the reasons for the conclusion and the information used or data/documents/persons examined to devise the conclusion.  The expert shall classify her conclusion in one of two ways:

> (i) *Not Minimally Adequate/Unsatisfactory* – describing all changes that must be made in order to bring the evaluated criteria in compliance with clinical standards;
>
> (ii) *Minimally Adequate/Satisfactory* – describing all criteria that are currently satisfactory under relevant treatment criteria and do not need any improvements.

## Timing of Evaluation-Negotiation Process

The parties agree to pursue the Joint Expert Review and Settlement negotiation process according to the following rough timeline:

1.  Winter/Spring 2008 – Independent Expert Visit.  The Joint Expert will visit both facilities (Kearny and the Annex) over a period of time that the Joint Expert believes is sufficient for her to perform her evaluation.  *See* "Scope of Expert Review," above.  The Joint Expert will co-ordinate the timing of her visit with the Administrator of the Special Treatment Unit so as to conduct her evaluation with a minimum of disruption to the operation of the facilities. The parties shall make all good faith efforts to accommodate follow-up visits requested by the Expert.

2.  Forty-five (45) days after Expert Visit.  The Expert will provide the parties with a Draft  First Expert Report, opining on Criteria for Expert Evaluation, *see* above and stating the factual and clinical basis for her opinions.

3.   No later than thirty (30) days after First Expert Report, the parties may  submit written questions/ comments to expert and provide a copy to the other parties.  Either party may request a joint conference call with the Expert following exchange of the written questions/comments to further clarify comments or concerns.

4.   The Expert will use her best efforts to produce a Final Expert Report within forty-five (45) days after the parties submit questions/comments to the Expert.  If the Expert believes that she needs more time, she will advise the parties of her expected completion date.

5.   During the Thirty (30) days following receipt of the Final Expert Report, the parties shall negotiate in good faith towards acceptance/rejection of Expert's Findings and concluding Final Settlement Agreement.   If the parties believe that they are making progress but need longer than 30 days, the may continue their negotiations until either an agreement or impasse  is reached, but in no event, longer than sixty (60) days following receipt of the Final Expert Report.

6.   Within ten (10) days after the negotiation period, the parties shall request a settlement conference before Judge Falk  to address any outstanding, disputed issues, including payment of attorneys' fees. To the extent Judge Folk's schedule permits, the conference shall take place within thirty (30) to forty-five (45) later.

## Dispute Resolution

        The parties agree that, if there is a dispute among the parties about material aspects or interpretations of the Joint Expert Review Procedures developed herein, they shall confer with Magistrate Judge Mark Falk as soon as practicable by telephone or in-person conference to assist in resolving the dispute; and they shall delegate authority to Judge Falk to issue a binding judgment on the disputed issue.