**Barbara Moses**
*Admitted Pro Hac Vice*
**Kimberly Krone**
*Legal Intern, D.N.J. L. Civ. R. 101.1(h)*
**Desiree Sedehi**
*Legal Intern, D.N.J. L. Civ. R. 101.1(h)*
**Thomas Wester**
*Legal Intern, D.N.J. L. Civ. R. 101.1(h)*
**SETON HALL UNIVERSITY SCHOOL OF LAW**
**CENTER FOR SOCIAL JUSTICE**
833 McCarter Highway
Newark, NJ 07102
(973) 642-8700

**Lawrence S. Lustberg**
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAYMOND ALVES, MICHAEL CULBRETH, and DERRICK SESSOMS, individually and on behalf of all persons similarly situated,<br><br>     Plaintiffs,<br><br>       v.<br><br>MERRILL MAIN, Ph.D., in his official capacity as Clinical Director of the Special Treatment Unit, JENNIFER VELEZ, in her official capacity as Commissioner of the New Jersey Department of Human Services, LYNN A. KOVICH, in her official capacity as Assistant Commissioner and Deputy Director of the New Jersey Division of Mental Health and Addiction Services, and JEFFREY S. CHIESA, in his official capacity as Attorney General of the State of New Jersey,<br><br>     Defendants. | No. 01 Civ. 789 (DMC) (MF) (Consolidated)<br><br><br>**SECOND AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiffs Raymond Alves, Michael Culbreth, and Derrick Sessoms, individually and on behalf of all persons similarly situated, by their attorneys, the Seton Hall University School of Law Center for Social Justice and Gibbons P.C., for their complaint against defendants, allege as follows:

**PRELIMINARY STATEMENT**

1.     This action is brought on behalf of all persons who are civilly committed or confined pending commitment to New Jersey's Special Treatment Unit ("STU") pursuant to the New Jersey Sexually Violent Predator Act ("NJSVPA" or the "Act"), N.J.S.A. §§ 30:4-27.24 et seq.  Plaintiffs seek declaratory and injunctive relief against the New Jersey officials who are responsible for the treatment program at the STU.  These defendants have consistently and repeatedly failed to provide the minimally adequate treatment required by both federal and state law to justify the indefinite civil confinement of persons who have completed their prison sentences, and would therefore be free men, but for a judicial determination that they suffer from a "mental abnormality or personality disorder" that requires "care" and "treatment."

2.     Plaintiffs Raymond Alves, Michael Culbreth, and Derrick Sessoms are long-time involuntary residents of the STU.  They bring this action, individually and on behalf of all persons similarly situated:  (a) pursuant to 42 U.S.C. § 1983 for violations of the substantive due process guarantee of the Fourteenth Amendment to the United States Constitution; (b) pursuant to 42 U.S.C. § 1983 for violations of the Fifth Amendment to the United States Constitution; (c) pursuant to 42 U.S.C. § 1983 for violations of the Eighth Amendment to the United States Constitution; (d) pursuant to 42 U.S.C. § 1983 for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132; (e)

pursuant to 42 U.S.C. § 1983 for violations of section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (f) for violations of the right to adequate treatment under the New Jersey Constitution; and (g) for violations of the rights of civilly committed persons under N.J.S.A. §§ 30:4-24, 30:4-24.1 and 30:4-27.34.

3.      Defendants, who are sued in their official capacities, have failed and refused to provide residents of the STU, including plaintiffs, with adequate treatment to address the mental abnormalities and/or personality disorders that caused them to be committed (or confined pending commitment), thus depriving them of a realistic opportunity to reintegrate into society. Among other things:

a.      Defendants have failed and refused to provide residents of the STU with minimally sufficient group therapy, and have further failed and refused to provide any meaningful individual therapy.

b.      Defendants have failed and refused to staff the STU with a sufficient number of qualified therapists and other mental health professionals to treat the residents, whose numbers continue to grow.

c.      Defendants have failed and refused to provide for the continuing education and training of the existing STU clinical staff, such that what therapy the residents receive is often administered by poorly trained and/or incompetent clinicians using outmoded or discredited techniques.

d.      Defendants have failed and refused to explain adequately to residents the standards and criteria used to evaluate their progress through the treatment program and their readiness for conditional discharge.

e.      Defendants have failed and refused to provide residents with timely and accurate feedback concerning their treatment progress, their goals for future treatment, and their prognosis for future advancement through the program.

f.      Defendants have failed and refused to provide residents with any internal complaint system or other mechanism (short of formal legal proceedings) to communicate complaints concerning their mental health treatment.

g.      Defendants have failed and refused to comply with their own internal management policies and procedures, many of which are outdated and some of which they simply ignore without bothering to revise.

h.      Defendants have failed and refused to assist the residents with meaningful discharge planning, notwithstanding their acknowledged legal obligation to do so, thus reducing the chances for residents to obtain conditional release even if they are able to progress successfully through the treatment program.

i.      Defendants have failed and refused to provide minimally adequate job training and educational opportunities within the STU, further reducing the chances that residents will ever be able to reintegrate into society regardless of their mental health.

## JURISDICTION AND VENUE

4.      This action is authorized under 42 U.S.C. § 1983 for declaratory and injunctive relief against the defendants in their official capacities.  The Court has subject-matter jurisdiction over plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343(a)(3) and (a)(4).  The Court may exercise supplemental jurisdiction over

the state law claims pursuant to 28 U.S.C. §1367(a).  Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this District and, on information and belief, defendants reside in this District.

## THE PARTIES

### Plaintiffs

6.      Plaintiff Raymond Alves is sixty-nine years old.  He was involuntarily committed pursuant to the NJSVPA in March 2000, twelve days after he completed a term of thirty years in state prison.  Plaintiff Alves has now been civilly confined for almost twelve years.  He suffers from a number of serious medical conditions, some of them age-related and others caused or exacerbated by the years of harsh treatment he received in prison and in the STU.

7.      When plaintiff Alves was initially committed, he was housed at an STU facility within a prison complex known as the Northern Regional Unit in Kearny, New Jersey.  Defendants maintained a second STU, known as the Special Treatment Unit Annex, in a portion of the East Jersey State Prison in Avenel, New Jersey.  In May 2010, the Kearny facility was closed and its residents, including plaintiff Alves, were all moved to the Avenel facility.  To accommodate the influx, the Avenel facility was hastily expanded into the former Administrative Close Supervision Unit ("ACSU") of the East Jersey State Prison.  Since then, the expanded Avenel facility has served as New Jersey's sole STU, and it houses all of the members of the class on whose behalf this action is brought.

8.     Plaintiff Michael Culbreth is forty-eight years old. He was involuntarily committed pursuant to the NJSVPA in August 2001, immediately after serving a term of nine and a half years in state prison, and has now been civilly confined for ten and a half years.   The State of New Jersey has thus kept him behind bars for more than twice as long as the prison term to which he was sentenced for his crime.

9.     When plaintiff Culbreth was initially committed, he was housed at the facility in Kearny, New Jersey.  In May 2010, he was moved to the Avenel facility.

10.     Plaintiff Derrick Sessoms is forty-one years old. He was involuntarily committed pursuant to the NJSVPA in August 2002, after serving a term of fifteen years in state prison, and has now been civilly confined for nine and a half years.

11.     Plaintiff Sessoms was fifteen years old when he committed the sole sexual offense on which his civil commitment was based.  He was prosecuted as an adult, and was sixteen years old when he began his prison term.  At the end of his prison term, when plaintiff Sessoms was thirty-one years old, he believed that he was being released, and was in fact processed for release by the prison.  Instead, he was immediately transferred for civil commitment under the NJSVPA.  Thus, as a result of a single sexual offense committed at the age of fifteen, plaintiff Sessoms has now been involuntarily confined by the State of New Jersey for a total of almost twenty-five years, which represents approximately 60% of his life thus far.

12.     When plaintiff Sessoms was initially committed under the NJSVPA, he was housed at the facility in Kearny, New Jersey.  In May 2010, he was moved to the Avenel facility.

**Defendants**

13.     Defendant Merrill Main, Ph.D. is the Clinical Director of the STU and is responsible for developing and administering the treatment program at the STU, recruiting, training, and supervising the clinical staff, and providing adequate mental health treatment to each resident in an appropriately therapeutic environment.  He is also responsible for developing and maintaining written policies and procedures for the operation of the treatment program.  N.J.A. C. § 10A:35-1.5.  Defendant Main is sued in his official capacity.

14.     Defendant Jennifer Velez is the Commissioner of the Department of Human Services ("DHS"), which is responsible (together with the Department of Corrections and the Attorney General) for formulating, promulgating and enforcing regulations governing the rights of and rules of conduct for residents of the STU. Pursuant to N.J.S.A. § 30:4-27.34(d), such regulations must "take into consideration the rights of patients as set forth in [N.J.S.A. § 30:4-24.2] but shall specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  Defendant Velez is sued in her official capacity.

15.     Defendant Lynn A. Kovich, M.Ed., is the Assistant Commissioner and Deputy Director of the New Jersey Division of Mental Health and Addiction Services ("DMHAS"), which is required by statute and by regulation to provide or arrange for treatment for all persons committed pursuant to the Act. N.J.S.A. § 30:4-27.34(b); N.J.A.C. § 10A:35-1.1(b).  Such treatment must be "appropriately tailored to address the specific needs of sexually violent predators."  N.J.S.A. § 30:4-27.34(b).  The Assistant Commissioner and Deputy Director of DMHAS is responsible for, among other things,

overseeing the development and administration of the treatment program at the STU, overseeing the recruitment, training, and supervision of the clinical staff, and ensuring that each resident receives adequate mental health treatment in an appropriately therapeutic environment. Defendant Kovich is sued in her official capacity.

16.     Defendant Jeffrey S. Chiesa is the Attorney General of the State of New Jersey and is responsible for commencing civil commitment proceedings under the NJSVPA, for "presenting the case for . . . involuntary commitment" to the court, N.J.S.A. § 30:4-27.29(b), and for the continued enforcement of the Act.  N.J.S.A. § 52:17a-4. Defendant Chiesa is sued in his official capacity.

## CLASS ALLEGATIONS

17.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on their own behalf and on behalf of a class (the "Class") consisting of all persons who are civilly committed or confined pending commitment to the STU pursuant to the NJSVPA.

18.     The Class consists of over 450 individuals now housed at the STU in Avenel, New Jersey, and is therefore so numerous that joinder of all members is impracticable.

19.     Material questions of law and fact are common to the Class, including whether defendants violated plaintiffs' rights under the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, the ADA, the Rehabilitation Act, the New Jersey Constitution, and N.J.S.A. §§ 30:4-24, 30:4-24.1, and 30:4-27.34 by:  (a) failing to provide residents of the STU with minimally sufficient group therapy or any meaningful individual therapy; (b) failing to staff the STU with a sufficient number of

qualified therapists and other mental health professionals to treat the residents; (c) failing to provide for the continuing education and training of the existing STU clinical staff; (d) failing to explain adequately to residents the standards and criteria used to evaluate their progress through the treatment program and their readiness for conditional discharge; (e) failing to provide residents with timely and accurate feedback concerning their treatment progress, their goals for future treatment, and their prognosis for future advancement through the program; (f) failing to provide the residents with any internal complaint system or other mechanism (short of formal legal proceedings) to communicate complaints concerning their mental health treatment; (g) failing to comply with their own internal management policies and procedures; (h) failing to assist the residents with meaningful discharge planning; and (i) failing to provide minimally adequate job training and educational opportunities within the STU.

20.     The claims of the representative plaintiffs are typical of the claims of the entire Class.  The representative plaintiffs, like all Class members, claim that defendants have violated their rights under the United States Constitution, the ADA, the Rehabilitation Act, and New Jersey law.  All Class members reside in the same facility and are subject to the same inadequacies of the treatment program at the STU.

21.     The representative plaintiffs will fairly and adequately protect the interests of the class and have no interests antagonistic to those of the class.

22.     The representative plaintiffs' counsel, Seton Hall University School of Law Center for Social Justice, is experienced in civil rights litigation.  The representative plaintiffs' co-counsel, Gibbons P.C., is experienced in litigating class actions in a wide range of public interest and constitutional matters.   The representative plaintiffs'

attorneys will vigorously prosecute this action or otherwise seek to resolve it in a manner that is in the best interests of the Class.

23.     The prosecution of separate actions by individual Class members as to the issues framed by this Complaint would create the risk of inconsistent judgments that could establish incompatible standards of conduct for defendants.   In addition, the prosecution of separate actions by individual members of the Class as to the issues framed by this Complaint would create a risk of adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

24.     Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate injunctive and declaratory relief with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

25.     In 1999, long after plaintiffs were criminally convicted and sentenced, the New Jersey Legislature enacted the New Jersey Sexually Violent Predator Act, N.J.S.A. §§ 30:4-27.24 et seq.  The Act authorizes the involuntary civil commitment of "sexually violent predators" for an indefinite period of time.  A "sexually violent predator," under the Act, is a person who has been convicted of (or in certain cases charged with but not convicted of) a sexually violent offense and who "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment."  N.J.S.A. § 30:4-27.26.

26. Once committed to the STU, a person who has been adjudicated a sexually violent predator remains there until such time as a state court finds that he "will not be likely to engage in acts of sexual violence." N.J.S.A. § 30:4-27.32(c)(1). In other words, in order to regain his liberty, the involuntarily committed ex-offender must establish that he has been successfully treated for the mental abnormality or personality disorder that was the basis for his confinement to the STU.

27. DHS, through DMHAS, is required to "provide or arrange for treatment for a person committed pursuant to the [Act]." N.J.S.A. § 30:4-27.34(b). Such treatment must be "appropriately tailored to address the specific needs of sexually violent predators." *Id*. DHS is also required to promulgate regulations governing the treatment of residents of the STU. Such regulations must take into consideration the rights of all New Jersey mental health patients and must "specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." N.J.S.A. § 30:4-27.34(d).

28. The treatment requirement written into the NJSVPA serves, among other things, to distinguish civil commitment under the NJSVPA from "punishment," which is forbidden by the Double Jeopardy Clause, contained in the Fifth Amendment to the United States Constitution. Adequate treatment of plaintiffs' mental health conditions is also required by the Due Process Clause, contained in the Fourteenth Amendment to the United States Constitution, which prohibits state entities and officials from depriving a person of his liberty due to a treatable mental health condition without also making reasonable efforts to treat that condition, so as to afford the affected person a meaningful opportunity to regain his liberty. In addition, the Eighth Amendment to the United States

Constitution, which prohibits cruel and unusual punishments, requires that persons who are involuntarily confined due to an asserted mental health disorder be provided with adequate treatment for that disorder.

29.     Plaintiffs also have a right to adequate mental health treatment pursuant to the New Jersey Constitution, the ADA, the Rehabilitation Act, N.J.S.A. §§ 30:4-24 and 30:4-24.1 and, as set forth above, the Act itself.

30.     Notwithstanding their legal obligations to plaintiffs and the Class, defendants have failed and refused to provide even minimally adequate treatment to the residents of the STU for the mental abnormalities and personality disorders with which they were diagnosed as a precondition to commitment.

31.     Although the NJSVPA mandates that treatment be "tailored" to the "specific" needs of the residents of the STU, virtually no individual therapy is offered.

32.     The primary mental health treatment provided to residents of the STU is a form of group therapy administered in "process groups."  Indeed, this is the only therapy provided to residents assigned to certain living quarters, including the former ACSU cells in the South Wing.  At best, residents of the STU are assigned to two 90-minute process group sessions per week, for a total of three hours of therapy per week.  Moreover, many process groups fail to meet when scheduled, start late, and/or end early, thus further reducing the residents' therapy time.

33.     To be effective, process groups must be small in size, must focus on sex offender-specific issues, and must be led by mental health professionals with training in sex offender-specific treatment.  In fact, process groups at the STU are overcrowded – sometimes including 20 residents or more – unfocused, and poorly managed, in part

because they are facilitated by under-qualified and/or poorly-trained psychologists or social workers, some of whom have little or no background in sex offender-specific treatment.  The few licensed psychiatrists employed by the STU are used primarily to diagnose and evaluate residents, such as in connection with the residents' periodic re-commitment hearings.  Other than prescribing drugs, they do not provide any direct patient care.

34.     Some residents of the STU are also enrolled in psycho-education "modules" designed to address specific topics or skills, such as "relapse prevention," "victim empathy," "arousal reconditioning," "relationship skills," "anger management," and "substance abuse."  When offered, such modules typically meet once a week for sixteen weeks, after which the residents are told whether they have "passed" or failed" the module.

35.     Although residents must successfully complete all modules recommended for them in order to progress towards discharge, defendants frequently prevent them from doing so by failing to offer necessary modules at all, or by offering them only to a limited number of residents, ignoring others who have been told to take the same module.  The lack of sufficient modules is due in part to defendants' failure to recruit and train enough qualified mental health professionals to lead them.  Some of the staff members who do lead modules are unqualified to do so.  Moreover, the STU staff often instructs residents to retake modules they have already passed – sometimes two or three times – simply because no other modules are available.  Plaintiff Sessoms, for example, has taken and passed both "victim empathy" and "arousal reconditioning" numerous times.

36.     The residents' ability to take the modules recommended for them, and therefore to progress in treatment, is further hampered by defendants' arbitrary policy of prohibiting certain residents from enrolling in modules based purely on where they are housed.  For example, residents housed in the former ACSU cells on the South Wing, such as plaintiff Alves, are unable to enroll in any modules because no modules meet in the South Wing and because South Wing residents are not permitted to travel to other portions of the STU for treatment.  Similarly, residents housed in the former ACSU cells in the West Wing, such as plaintiff Culbreth, are not permitted to travel to the Annex for treatment.  As a result of being moved to the West Wing, plaintiff Culbreth has been unable to complete two modules that he has been told he is required to pass in order to progress in treatment.

37.     Until very recently, the North, South, East and West Wings did not even contain the physical facilities necessary to hold process groups, modules or other group therapy programs.  In or about December 2011, after numerous delays, four small classrooms (each capable of holding approximately ten to twelve residents in folding chairs) were opened in each Wing.  However, defendants still offer no modules in the South Wing, few modules elsewhere, and restrict the travel of residents assigned to the Wings, as described above, making it difficult or impossible for them to enroll in the modules they are required to pass in order to work towards conditional discharge.

38.     Defendants also improperly withhold therapy, including modules, as punishment for infractions of STU rules.  For example, in November 2011, a number of residents were subjected to urine tests and some tested positive for banned substances. Such residents were placed on "Program MAP" ("MAP" stands for Modified Activities

Programming) and lost various privileges.  They also lost the right to attend any modules, including substance abuse modules, notwithstanding that the STU's written policies and procedures state that while on Program MAP residents "continue to attend all of their assigned treatment groups unless specifically contraindicated."

39.      The treatment program at the STU is divided into five phases, from Phase 1 ("Orientation") to Phase 5 ("Transition").  According to the Residents' Guide to the STU, successful completion of Phase 5 "suggests that a Resident is a viable candidate for monitored release to the community."  The Residents' Guide also states that the staff of the STU, including defendant Main, "anticipate recommending many Residents for discharge."

40.      In fact, defendants have rarely, if ever, recommended a resident for discharge.  Members of the STU clinical staff who advocate internally for such recommendations tend to lose their jobs.  A handful of residents have been discharged by the courts over defendants' objections.  However, on information and belief, more residents have died in the STU since 1999 than have been returned to the community.

41.      Few residents even get to Phase 4 of the program ("Advanced/Honors"), and fewer still advance to Phase 5.  After almost twelve years in the STU, plaintiff Alves remains in Phase 2 of the program, due in part to his inability to enroll in any modules. Plaintiff Culbreth has been in Phase 3 for the past six years, while plaintiff Sessoms – who has not committed a sexual offense since he was fifteen years old – has now spent eight years in Phase 3.

42.      The residents' inability to make meaningful progress towards discharge is due in substantial part to the treatment shortfalls outlined above.  Those inadequacies are

exacerbated by defendants' persistent failure to explain adequately to plaintiffs the standards and criteria used to evaluate their progress and their readiness for conditional discharge. For example, although the Residents' Guide promises residents that they will receive regular reviews and updated treatment reports, these reviews and reports – when they occur – are often perfunctory and fail to provide the residents with timely and accurate feedback concerning their treatment progress, their goals for future treatment, and their prognosis for future advancement through the program.

43.     Another barrier to discharge is defendants' failure to meaningfully assist residents with discharge planning. Under the NJSVPA, a resident may be conditionally discharged only when a court finds that he is "amenable to and highly likely to comply with a plan to facilitate [his] adjustment and reintegration into the community." N.J.R.S.A. § 30:4-27.32(c)(1). Absent a detailed discharge plan, covering matters such as where the person will live, where he will obtain continuing therapy, and how he will pursue employment or job training, a resident cannot hope to satisfy this standard. And absent meaningful assistance from the STU staff, a resident who has been in prison and/or the STU for decades – and who has no access to the internet or to most other forms of modern communication – cannot hope to prepare such a plan. Yet the staff routinely refuses to provide such assistance.

44.     Defendants have also failed and refused to provide the residents with minimally adequate job training and educational opportunities within the STU, further reducing the chances that they will ever be able to reintegrate into society regardless of their mental health. The minimum-wage jobs available within the STU (during limited hours) are largely limited to kitchen and janitorial work. Moreover, there is no internal

complaint system or other mechanism (short of formal legal proceedings) available within the STU for complaints concerning the treatment program.

45.     As a result of defendants' failure to provide adequate mental health treatment, and defendants' related misconduct as described above, plaintiffs and the Class have been deprived of their liberty and denied rights to which they are entitled under the constitutional and statutory laws of the United States and New Jersey.

46.     Plaintiffs and the Class have no adequate remedy at law to redress these wrongs.  They have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, practices, and conduct of defendants unless granted the relief sought herein.

## FIRST CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

Violation of the Fourteenth Amendment to the United States Constitution

47.     Plaintiffs restate and re-allege paragraphs 1 through 46 as if fully set forth herein.

48.     Defendants have deprived plaintiffs and other STU residents of their liberty on the basis of treatable mental health conditions but have failed and refused to make reasonable efforts to treat those conditions.  Defendants have thereby denied the residents any meaningful opportunity to regain their liberty, in violation of the Due Process Clause of the Fourteenth Amendment.

49.     Defendants' conduct also demonstrates a deliberate indifference to the well-being of plaintiffs and the other members of the Class.

50.     As a result of defendants' acts, omissions, practices and conduct, plaintiffs and the other members of the Class have been deprived of their constitutionally protected liberty interest in receiving adequate treatment.

**SECOND CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

Violation of the Fifth Amendment to the United States Constitution

51.     Plaintiffs restate and re-allege paragraphs 1 through 50 as if fully set forth herein.

52.     By involuntarily confining plaintiffs and other STU residents at the conclusion of their criminal sentences, due to asserted mental health disorders, but withholding adequate treatment for those disorders, defendants have demonstrated that the NJSVPA as applied is punitive in nature, and therefore violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

53.     As a result of defendants' acts, omissions, practices and conduct, plaintiffs and the other members of the Class have been deprived of their constitutionally protected right to be free of double punishments for the same crime.

**THIRD CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

Cruel and Unusual Punishment
Violation of the Eighth Amendment to the United States Constitution

54.     Plaintiffs restate and re-allege paragraphs 1 through 53 as if fully set forth herein.

55.     The Eighth Amendment to the United States Constitution, which prohibits cruel and unusual punishments, requires that persons who are involuntarily confined due to an asserted mental health disorder be provided with adequate treatment for that

disorder.  By failing to provide such treatment for plaintiffs and other members of the Class, defendants have violated the Eighth Amendment.

56.     Defendants' conduct also demonstrates a deliberate indifference to the well-being of plaintiffs and the other members of the Class.

57.     As a result of defendants' acts, omissions, practices and conduct, plaintiffs and the other members of the Class have been deprived of their constitutionally protected right to be protected from cruel and unusual punishments.

## FOURTH CAUSE OF ACTION
## AGAINST ALL DEFENDANTS

### Violation of the Americans With Disabilities Act, 42 U.S.C. §12132

58.     Plaintiffs restate and re-allege paragraphs 1 through 57 as if fully set forth herein.

59.     The mental abnormalities and personality disorders that formed the basis for the civil commitment of plaintiffs and the other STU residents constitute disabilities as that term is used in the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12102.

60.     Defendants have discriminated against plaintiffs and the other Class members, in violation of the ADA, because they have failed and refused to reasonably accommodate their handicaps by providing adequate mental health care; they have denied plaintiffs and the Class access to mental health treatment and educational, vocational and physical fitness programs afforded generally to other civilly committed persons; they have excluded plaintiffs and the Class from participation in and denied them the benefits of the services, programs, or activities of a public entity on the basis of disability; and they have failed to administer services, programs and activities in the most

integrated setting appropriate to the needs of qualified individuals with disabilities in violation of 28 C.F.R. § 35.130(d).

**FIFTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

61.     Plaintiffs restate and re-allege paragraphs 1 through 60 as if fully set forth herein.

62.     Defendants have discriminated against plaintiffs and other members of the Class in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended by the Civil Rights Restoration Act of 1987, by failing to reasonably accommodate their handicaps, failing to provide adequate mental health care; excluding them from participation in and denying them the benefits of programs for which they would otherwise be qualified, by reason of their disability; subjecting them to discrimination based on their disabilities; and denying them access to mental health treatment, educational, vocational and physical fitness programs.

**SIXTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

Violation of the Right to Adequate Treatment
Under the New Jersey State Constitution

63.     Plaintiffs restate and re-allege paragraphs 1 through 62 as if fully set forth herein.

64.     Defendants have failed to provide plaintiffs and the other members of the Class with adequate mental health treatment, thereby depriving them of a meaningful opportunity to cure or improve their condition, or regain their liberty, in violation of the New Jersey Constitution.

**SEVENTH CAUSE OF ACTION**
**AGAINST ALL DEFENDANTS**

Violation of Civil Rights of Civilly Committed Persons
N.J.S.A §§ 30:4-24, 30:4-24.1, and 30:4-27.34

65.     Plaintiffs restate and re-allege paragraphs 1 through 64 as if fully set forth herein.

66.     Defendants have violated N.J.S.A. § 30:4-24 by failing to provide for the prompt and effective diagnosis, care, treatment, training and rehabilitation of plaintiffs and the other members of the Class, and by failing to uphold their human dignity and honor their moral and constitutional rights.

67.     Defendants have violated N.J.S.A. § 30:4-24.1 by failing to ensure that the fundamental civil rights of plaintiffs and the other members of the Class are protected, failing to ensure that plaintiffs and the other members of the Class receive mental health care and other professional services in accordance with accepted professional standards, and failing to allow plaintiffs and the other members of the Class to participate meaningfully in planning for their own treatment.

68.     Defendants have violated N.J.S.A. § 30:4-27.34(b) by failing to provide treatment to plaintiffs and the other members of the Class "appropriately tailored" to their specific needs.

**PRAYER FOR RELIEF**

Wherefore, plaintiffs request that this Court:

a.     Adjudge and declare that the acts, omissions, policies and practices of the Defendants violate the Fifth, Eighth, and Fourteenth Amendments to the United States

Constitution; the Americans with Disabilities Act; the Rehabilitation Act; the New Jersey Constitution; and N.J.S.A. §§ 30:4-24, 30:4-24.1, and 30:4-27.34.

b.      Enjoin defendants, together with their agents, officials, employees and all persons acting in concert with them, under color of state law or otherwise, from continuing the unconstitutional and illegal acts, conditions and practices described herein;

c.      Order defendants, together with their agents, officials, employees and all persons acting in concert with them, under color of state law or otherwise, to take all necessary actions to:  (1) provide residents of the STU with sufficient and effective group therapy for their mental abnormalities and personality disorders, together with meaningful individual therapy where clinically indicated; (2) staff the STU with an adequate number of qualified therapists and other mental health professionals to treat the residents; (3) provide for the continuing education and training of the STU clinical staff; (4) explain adequately to residents the standards and criteria used to evaluate their progress through the treatment program and their readiness for conditional discharge; (5) provide residents with timely and accurate feedback concerning their treatment progress, their goals for future treatment, and their prognosis for future advancement through the program; (6) provide residents with an internal complaint system or other mechanism to communicate complaints concerning their mental health treatment; (7) comply with their own internal management policies and procedures; (8) assist the residents with meaningful discharge planning; and (10) provide minimally adequate job training and educational opportunities within the STU;

d.      Award reasonable attorneys' fees and expenses to plaintiffs' counsel pursuant to 42 U.S.C. §1988; and

    e.       Grant such other relief as the Court deems just and proper.

## <u>TRIAL BY JURY DEMANDED</u>

Plaintiffs demand a trial by jury as to all matters so triable.

Dated: February 14, 2012
        Newark, New Jersey

> **SETON HALL UNIVERSITY SCHOOL OF LAW**
> **CENTER FOR SOCIAL JUSTICE**
> 833 McCarter Highway
> Newark, NJ 07102-5210
> (973) 642-8700
> Barbara.Moses@shu.edu
>
> **GIBBONS P.C.**
>
>
> By:   <u>/s/ Lawrence S. Lustberg</u>
>        Lawrence S. Lustberg
>        One Gateway Center
>        Newark, New Jersey 07102-5310
>        (973) 596-4500
>        LLustberg@gibbonslaw.com
>
>        *Attorneys for Plaintiffs Raymond Alves, Michael*
>        *Culbreth and Derrick Sessoms*