skip navigation

Department of State Health Services Home

Search | Contact Us | Internet Policy

The Texas Department of Health became part of the Department of State Health Services on September 1, 2004. For more information, visit www.dshs.state.tx.us.

*[handwritten: Texas Out-Patient Program]*

*[handwritten: See especially Pages 9-12]*

## Council on Sex Offender Treatment

## Civil Commitment of the Sexually Violent Predator

The following material is not suitable for children due to the sexually explicit nature of the subject matter.

Return to the Council on Sex Offender Treatment Home Page

## Table of Contents

- Civil Commitment of the Sexually Violent Predator
- Sexually Violent Predator Laws
- Active Texas Civil Commitment Cases
- US History of Civil Commitment
- Court Decisions on the SVPA
- History of Civil Commitment in Texas
- Reasons for Texas Civil Commitment
- State by State Comparison
- The Texas Civil Commitment Process
- Inpatient vs. Outpatient Civil Commitment
- Cost of Inpatient vs. Outpatient Civil Commitment
- Texas Civil Commitment Process(Flowchart)
- Disposition of SVP Cases (Flowchart)
- Interagency Case Management Team
- Links

## Civil Commitment of the Sexually Violent Predator

Civil Commitment statute is civil law. The State has the burden to prove beyond a reasonable doubt that the person is a sexually violent predator with a behavioral abnormality (Sec. 841.062). This language is used to narrowly confine the class of sexually violent predators being committed. Typically, civil law only requires preponderance of the evidence. Sex offenders are not convicted of being a sexually violent predator. These offenders are committed. Civil commitment is different than a criminal charge in that a criminal sentence has a definitive timeframe. Civil commitment continues until it is determined that the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence. The civil commitment program of the sexually violent predator is not a criminal charge or punitive. The intent of the law is to provide intensive outpatient rehabilitation and treatment to the sexually violent predator.

- Texas Civil Commitment of the Sexually Violent Predator (MSWord, 61 KB) Updated!

# Sexually Violent Predator Laws

Link to the statute on the State of Texas website

- Health and Safety Code Chapter 841. Civil Commitment of Sexually Violent Predators.

## Active Texas Civil Commitment Cases

From February to September in 1980, Richards, the "Freeway Rapist", preyed upon at least six females. He would drive along side these women and convince them to pull over by indicating they were having car problems. He would then use a gun or an ice pick to rob and rape them. He was originally given a fifty-year sentence but it was reversed on a jury charge error. He subsequently received four ten year sentences for Sexual Assault, two ten year sentences for Robbery, and one twenty year sentence for Aggravated Sexual Assault. He was released on Mandatory Supervision in 1987. In 1992, he received nine years for Indecency with a Child.

In 1974 and 1985 Mullens was arrested for DWI. In 1988, he received nine years for Sexual Assault of a Child, Indecency with a Child, and Sexual Assault. In 1991, he received a fifteen-year sentence for five counts of Aggravated Sexual Assault. Over a three-year period, he met boys between the ages of eleven and fourteen years old at the Boy Club. When his firearm was not available, he would have one victim hold the other victim down.

## US History of Civil Commitment

Legislation for civil commitment of sexual offenders has occurred for two generations. Beginning in the late 1930s, many states enacted "sexual psychopath" statutes for the involuntary commitment of sexual offenders described as "psychopathic personalities, sexually dangerous persons, psychopathic offenders, and sexual psychopaths." Aimed at sexual offenders to be at high risk for recidivism, the statutes provided protection for the public and rehabilitation for offenders (Lieb et.al., 1998: Lieb and Matson, 1998: Horwitz, 1995; American Psychiatric Association, 1999: Wilson 1998).

In 1948, Congress adopted commitment laws to reflect the inability of sex offenders to control their behavior and shaped the ability of the law to confine sexual psychopaths. By the 1960s more than half of the states had enacted sexual psychopath statutes and the clinical/rehabilitative model. However ten years later, most states had repealed their focus from treatment and rehabilitation to prosecution and prison. The near complete abandonment of sexual psychopath statutes was followed by the emergence of the justice model. This ideological transfer to retributive management was consistent with the attitude in the nation regarding law and order reform. Despite the severe penalties, it was obvious this model failed to contain offenders who had discharged their strict sentences but still posed a threat to society and were released into the community.

The intent of civil commitment law is to enable the states to contain a small group of very dangerous sex offenders who do not have the requisite mental disease or defect rendering them subject to the existing involuntary civil commitment statute. The law's rationale was based on public safety and community protection. Unlike the previous generation of sexual psychopath laws, civil commitment provided a means to contain the offender who discharged their prison sentence until community safety could be assured.

- US History of Civil Commitment (MSWord, 91 KB) Updated!

# Court Decisions on the Sexually Violent Predator Act (SVPA)

The Kansas Sexually Violent Predator Act (SVPA 1994) has withstood constitutional challenges and has validated identical laws in numerous other states (Kan. Stat. Ann. 59-29a01 et seq, 1994). The Court characterized the confinement at issue as civil and the confinement was not criminal (Id., at 369). The Court also held that the statutory criterion for confinement embodied in the words "mental abnormality or personality disorder" satisfied "substantive" due process requirements (Id., at 356, 360). This decision invited the expansion of civil commitment laws throughout the United States by the Court upholding that a mental disorder was sufficient for civilly committing a Sexually Violent Predator.

Kansas v. Crane was appealed after the Kansas Supreme Court's ruling that due process requires that a person suffer from a total lack of volitional control in order to be subject to involuntary commitment. The United State Supreme Court ruled that a total lack of control is not constitutionally required and there must be proof of serious difficulty in controlling one's behavior. In other words, the Court ruled that there must be proof that the offender has a mental illness causing serious difficulty controlling his behavior. The meaning of "difficult" indicates a lack of control was not absolute (Kansas v. Crane 534 U.S. 407, 122 S.Cir.867 2002).

The U.S. Constitution has always protected freedom from physical restraint under the Fifth and Fourteenth (due process) Amendments; however, that freedom is not absolute and may be abridged when a state possesses an interest in protecting its citizens from dangerous, sexually violent predators.

In Kansas v. Hendricks, the U.S. Supreme Court characterized the confinement as civil rather than criminal and addressed the proof of "dangerousness" and mental illness. Leroy Hendricks claimed he was being punished for past conduct. Punishment is usually a shorter period of time, which imposes no obligation to get better. Kansas argued and the court agreed that the SVP law is a civil law, which while it allows confinement, is not imposing confinement as punishment. Thus if the government is not punishing the individual in the legal sense, then the person is protected by neither ex post facto nor double jeopardy (Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072 138 L.Ed.2d 501 1997).

The Hendricks case also ruled that the rights of the SVPs in the evaluation process should be protected. SVPs should be housed and segregated from the general prison population. The model should be the same as other involuntarily committed clients. The corrections department provides only security and the treatment and operation of the facility is left in the hands of qualified treatment providers.

Additionally Hendricks contested that the SVPA does not require any sex offender treatment; thus it intended to punish him. Justice Clarence Thomas stated that the incapacitation without treatment is permissible based on dangerousness, and there is a statutory right to treatment fashioned in the commitment law. The Court ruled that as long as a State's ancillary purpose is to treat the sex offender and his due process rights were protected, the State may commit him for an indefinite period as far as the Constitution is concerned.

Several issues contributed to the supposition that SVPA was not punishing Hendricks. The SVPA was found not to implicate retribution or deterrence, two primary objectives in criminal punishment (Schlank and Cohen 2001). The SVPA was found not to implicate retribution because it did not affix culpability for prior conduct and his criminal conduct was only presented solely as evidence of dangerousness (Id.). The SVPA did not deter because the sex offenders targeted had a disorder that prevents them from controlling their sexual deviance.

Hendricks provides the most authoritative statement on the role of inability to control (Schlank and

Cohen 2001). By upholding the constitutionality of Kansas' commitment law, the Court alluded repeatedly to the inability to control and the requisite of a mental disorder that narrowed the eligibility for confinement for those unable to control their dangerousness. The Court found no basis on which to consider whether confinement based solely on "emotional" impairment as opposed to "volitional" impairment, would be constitutional.

In Hubbart v. Superior Court of California, the Court required proof of an "inability to control" dangerous sexual behavior to be consistent with Hendricks (Hubbart v. Superior Court of California 696 P.2d 584 Cal 1999). In Pearson v. Minnesota, the Court upheld the constitutionality and reaffirmed the vitality of the "utter lack of power to control" and stated the condition was a "volitional dysfunction, which grossly impairs judgment and sexual behavior."(Minnesota ex rel. Pearson v. Probate Court of Ramsey County, 309 U.S. 270, 274 1940; In re Blodgett, 510 N.W.2d 910, 915 Minn. 1994, cert. denied, 513 U.S. 849 1994)

In the Matter of Hay the equal protection claim failed because the distinct category of all sexually violent predators receives identical treatment. Hay contested the initial trial error in the probable cause finding prior to his civil commitment trial. The Court found that any error of probable cause is not detrimental after the trial and a judgment of beyond a reasonable doubt (In the Matter of Hay 953.P2d at 676 Kansas 1998).

In Beasley v. Molett, the Texas Ninth District Court of Appeals upheld that "distinguishing a class of sexually violent predators from violent criminals for the purpose of involuntary commitment did not violate equal protection rights under the U.S. Constitution." Additionally the Court held that the statutory requirement, that at the biennial review, the judge make a probable cause finding before the person is entitled to a hearing was not a denial of equal protection or due process. Beasley argued that the requirement of "highly likely" is required in order to be consistent with "beyond a reasonable doubt". The Court defined "likely" as probable: "Something that is probable is beyond a mere possibility or potential for harm. The beyond a reasonable doubt burden is not inconsistent with the element that must be proven-that the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Beasley also argued that he should not be deprived of his liberty absent of substantial threat or imminent risk of future harm. The Court noted "by definition, a menace is a threat of imminent danger, and the menace described in the Act is substantial and satisfies any proof requirement of a threat or risk of future harm." (Beasley v. Molett 95 S.W.3d 590; 2002 Tex. App. LEXIS 8967)

Finally Beasley argued that Art. 4, Texas Health & Safety Code, Title 11, Chapters 841.085 and 841.082 violated the separation of powers doctrine and asserted that the provision authorizing a third degree felony offense for a violation of a commitment requirement violated the separation of powers of the Texas Constitution, because a judge may impose any requirement deemed necessary. The majority of the Court concluded that the legislature has not delegated its power to the trial courts to create a third degree felony but rather has authorized the trial courts to determine requirements that are necessary to ensure compliance of the person committed to treatment and supervision and to protect the community. The Court further concluded, "the legislature, not the judge, has determined the statutory requirements, as well as those necessary requirements set by the judge, are third degree felonies". (Beasley v. Molett 95 S.W.3d 590; 2002 Tex. App. LEXIS 8967)

In January 2003 the Texas Ninth District Court of Appeals, in the case of Adolf Martinez (#09-02-00199-CV) reaffirmed that the statute is civil and not a criminal/punitive or quasi-criminal statute. The Court also reaffirmed that his due process rights were adequately protected (See Beasley v. Molett, and Boyd Mullens 2002 Tex. App. LEXIS 8962). Martinez also argued that the Order of Commitment was unconstitutionally vague. The Court again rejected this constitutional challenge and found that the order is

not impermissibly vague (See Mullens, 2002 Tex. App. LEXIS 8962)

In addition, the right to a "speedy" trial applies only to criminal law and not civil law.

## History of Civil Commitment in Texas

In 1983, a need for the creation of the Council on Sex Offender Treatment was identified by the Texas Legislature due to the rising rate of sexual crimes and extremely high recidivism rates for untreated sexual offenders. The key to preventing sexual abuse is to shift paradigms," wrote Robert E. Freeman-Longo and Gerald Blanchard in their 1998 book, Sex Abuse in America. "In addition to viewing sexual abuse as a criminal justice issue, we must also view it as a serious public health problem and preventable social problem." A "cure" for sex offending is no more available than is a "cure" for high blood pressure (English, 1996). But with specialized offense specific treatment by qualified individuals, the majority of sex offenders can learn to manage their behaviors.

The State of Texas has recognized the increased public awareness and concern with the chronic prevalence of sexual aggression and sexual victimization. Over the past two decades, the Council's core function has expanded from a mere regulatory agency due to increased public awareness and the concern for community safety. Today, the Council has four primary functions: 1) public safety: by administering the civil commitment program of sexually violent predators and preventing sexual assault 2) public and behavioral health: by treating sex offenders, 3) regulatory: by maintaining a registry of sex offender treatment providers and establishing the rules and regulations regarding the treatment of sex offenders, and 4) educational: by the dissemination of information to the public regarding the management of sex offenders. This legal mandate is an innovative domain of the law. These functions may appear to be separate and distinct, however in reality, these functions work together and if they were separated it would be deleterious to public safety. The Council's functions are synergistic with maintaining the highest level of public safety and preventing sexual assault through effective treatment and interventions in the management of sex offenders.

In 1995 Representatives Greenburg, Hochberg, and Danburg first introduced legislation regarding sexually violent predators. House Bill 595 was referred to the Criminal Jurisprudence Committee were the legislation died.

In 1997, Texas again considered legislation regarding the civil commitment of sexually violent predators. Senator Shapiro and Senator Whitmire authored Senate Bill 77 and Representative Greenberg authored the companion House Bill (3468). The original vision for civilly committed SVPs was to follow the rest of the nation in housing SVPs in an inpatient secure facility. However, due to lack of appropriations and constitutional concerns both bills died in committee. Texas Legislators had to look for a viable alternative to inpatient treatment.

In October 1998, the Council began to develop a briefing or background information packet for the legislature to consider with regard to their task of establishing a civil commitment program for sexually violent predators in Texas. The Council recommended a mental health model following the guidelines used for outpatient or inpatient civil commitment in the state mental health programs. The Council endorsed establishing a treatment program that is based in the humane philosophy that rehabilitation was definitely possible and that continued intensive treatment was critical for rehabilitation. Against a civil commitment program were those who felt it was using psychiatry and psychology for the purposes of criminal punishment. Also against the program was a strong mental health lobby that stated that sex offender treatment in the mental health system would impinge on the funds available for mental health treatment of others. In addition, there was no body of research at that time that supported the prediction

of the most dangerous persons, those who would re-offend, or those who would respond to treatment. (Meyer, Molett, Richards, Arnold 2003) Inpatient civil commitment would require a tremendous investment of money regarding treatment providers, security staff, administrative staff, and facilities. It was estimated that 6.2 million dollars would be needed to build a special commitment center. The cost of housing each SVP was estimated at $80,000.00 to $100,000.00 dollars per year.

In 1999, Senator Florence Shapiro introduced Senate Bill 29. The bill defined that some convicted sex offenders should be described as sexual predators who suffer from a personality disorder or other mental abnormality. Many of these sex offenders will complete their term of incarceration. Upon their release they represent a significant threat to others because of their likelihood to engage in acts of sexual violence. Civil Commitment implies a human philosophy that rehabilitation of even the most heinous offenders is possible.

On September 1, 1999, the Governor signed Senate Bill 365, which established the first outpatient civil commitment program in the United States and the Council began implementation and administration of the Civil Commitment Program for the Sexually Violent Predators. The Outpatient Program was chosen strictly due to fiscal constraints. Inpatient civil commitment would require a tremendous investment of money regarding treatment providers, security staff, administrative staff, and facilities.

## Reasons for Texas Civil Commitment

Sexually violent predators are committed not convicted. The civil commitment program is not a criminal charge or punitive. The intent of the law is to provide intensive outpatient rehabilitation and treatment to the sexually violent predator. Civil commitment is different than a criminal sentence in that a criminal sentence has a definitive time frame. Civil commitment continues until it is determined that the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence.

The Legislature defined a Sexually Violent Predator (Title 11, Texas Health & Safety Code 841.003) as a person is a sexually violent predator if the person is a repeat sexually violent offender and suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence A person is a repeat sexually violent offender if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of those offenses or if:

The person:
a. is convicted of a sexually violent offense regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the person was subsequently discharged from community supervision
b. enters a plea of guilty or nolo contendere for a sexually violent offense in return for a grant of deferred adjudication
c. is adjudged not guilty by reason of insanity of a sexually violent offense or
d. is adjudicated by a juvenile court as having engaged in delinquent conduct constituting a sexually violent offense and is committed to the Texas Youth Commission under Section 54.04(d)(3) or (m), Family Code
After the date the person is convicted, receives a grant of deferred adjudication, is adjudged not guilty by reason of insanity, or is adjudicated by a juvenile court as having engaged in delinquent conduct, the person commits a sexually violent offense for which the person is:
a. convicted, but only if the sentence for the offense is imposed or
b. is adjudged not guilty by reason of insanity

A Predatory Act (Title 11, Texas Health & Safety Code 841.002) was defined as an act that is committed for the purpose of victimization and that is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exits; or a person with whom a relationship has been established or promoted for the purpose of victimization.

Texas civil commitment statute requires a "behavior abnormality" which means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person (Title 11, Texas Health & Safety Code 841.002).

A sexually violent offense is defined as (Title 11 Texas Health and Safety Code Section 841.002) Indecency with a Child, Sexual Assault, Aggravated Sexual Assault, Aggravated Kidnapping with Intent, Burglary with Intent, any attempt, conspiracy, or solicitation of the latter, or any offense under the law of another state, federal law, or the Uniform Code of Military Justice that contains elements substantially similar).

## State by State Comparison

This chart contains comparisons between states, including a summary of the applicable statues, the number of committed and released offenders, and the projected costs for civil commitment.

- <u>State by State Comparison Chart on Involuntary Commitment of Sexually Violent Predators (MSWord, 84 KB)</u> Updated!

## Texas Civil Commitment Process

A Multidisciplinary Team consisting of members from the Council on Sex Offender Treatment, Texas Department of Criminal Justice, Texas Department of Criminal Justice-Victim Services, Texas Department of Mental Health/Mental Retardation, and Texas Department of Public Safety review and refer sex offenders who meet the eligibility criteria for a behavioral abnormality assessment. If an expert concurs that a behavior abnormality exists, the case is referred to the Special Prosecution Unit who may file a petition. Based on past percentages, 15-16% of the 28,000 sexual offenders in the Texas Department of Criminal Justice-Institutional Division will be eligible for civil commitment screening. If the Special Prosecution Unit decides to proceed with filing a petition both the prosecution and defense retain an expert to conduct another assessment which includes a clinical interview, psychological testing, and reviews risk assessments, institutional records, and all relevant medical and psychological reports.

The civil commitment statute is a civil law wherein a judge or twelve-person jury must use the standard beyond a reasonable doubt. The judge or jury must unanimously agree that the person is a repeat sexually violent predator and that the person suffers from a behavioral abnormality that makes them likely to engage in a predatory act of sexual violence. A person who suffers from a behavioral abnormality as determined under this chapter is not because of an abnormality of unsound mind (Sec. 15-a Article I Texas Constitution; Health & Safety Code Section 841.1461).

The statute mandates that the SVP is entitled to a biennial examination (Texas Health & Safety Code 841.101). The Council contracts an expert to perform the examination. In preparation for a judicial review, the case manager shall provide a report of the biennial examination to the judge. The judge then conducts a biennial review of the status of the committed SVP. The SVP is entitled to be represented by Counsel, but is not entitled to be present at the judge's review. The judge sets a hearing if the judge determines at the review that:

1. A requirement imposed on the SVP should be modified; or
2. Probable cause exists to believe that the SVP's behavioral abnormality has changed to the extent that the SVP is no longer likely to engage in predatory acts of sexual violence.

If the judge sets a hearing, the SVP and the State are entitled to an immediate examination of the SVP by an expert. Hearsay evidence is admissible if it is considered otherwise reliable by the judge. The SVP is entitled to be present and to have the benefit of all constitutional protections provided to the person at the initial civil commitment proceedings. Upon the request of the SVP, or the attorney representing the state, the court shall conduct the hearing before a jury. The burden of proof at the hearing is on the state to prove beyond a reasonable doubt that the SVP's behavioral abnormality has not changed to the extent that the SVP is no longer likely to engage in predatory acts of sexual violence.

On a person's commitment and annually thereafter, the case manager is required to provide the SVP with written notification of the SVP's right to file with the court a petition for release without the case manager's authorization (Texas Health & Safety Code 841.122). The case manager may also file an authorized petition for release to the court and a hearing is conducted (Texas Health & Safety Code 841.121). The State once again must prove beyond a reasonable doubt that the SVP's behavioral abnormality has not changed.

The Civil Commitment order is not effected by certain subsequent convictions such as a new felony conviction if a sentence is not imposed, a conviction for a misdemeanor regardless of whether a sentence is imposed, and a judgment or verdict of not guilty by reason of insanity. The statutory duties imposed by the order are only suspended for the duration of any confinement of a SVP who receives a conviction (Health & Safety Code Chapter 841.150).

Outpatient civil commitment incorporates intensive outpatient sex offender treatment, high technology global positioning satellite tracking monitoring, and comprehensive case management. Upon entering the program, the SVP is assigned to a case manager who is the chair of the Interagency Case Management Team and is responsible for coordinating the treatment, supervision, and global positioning satellite tracking of the SVP. The Case Manager conducts between five to eight face-to-face contacts with the client and approximately eighteen collateral contacts per month. The Case Manager works closely with the treatment providers, the Department of Public Safety, residential staff, parole officers (if applicable), and local prosecuting attorneys.

Only registered sex offender treatment providers who contract with the Council may assess and provide treatment to the SVP. Sex offender treatment groups are offense specific and limited to ten (10) offenders. Self-help, drug intervention, or time-limited treatment is used only as adjuncts to more comprehensive treatment. Typically, sex offenders on community supervision attend group treatment one (1) time per week and have one (1) individual session per month. Sexually Violent Predators subject to Civil Commitment attend group therapy two (2) times per week and have two (2) individual sessions per month. SVPs are mandated to take polygraphs regarding their Instant Offense, Sexual History, Maintenance, and Monitoring. The penile plethysmographs are utilized to assess sexual arousal. Sex offender treatment is multifaceted to include cognitive/behavioral approaches, arousal control, victim empathy, relapse prevention, biomedical approaches/psychopharmacological agents, increasing social competence, co-morbid diagnosis, increasing support systems, and after-care.

Failure to comply with the order of commitment can result in a 3rd degree felony charge, which may result in incarceration in the Texas Department of Criminal Justice- Institutional Division.

Society should understand that SVPs are not "typical" sex offenders. These clients are repeat sexually

www.tdh.state.tx.us/hcqs/plc/csotsvp.htm#inpatient

violent predators at extremely high risk to re-offend and community safety takes precedence over all conflicting constraints. A minor violation of the order may be that the SVP is well into his/her offense cycle and is about to commit a new offense. We must be proactive and not reactive when it comes to SVPs. SVPs must be held to a higher level of accountability due to their level of dangerousness. We should understand that participation in treatment is not just showing up for groups and individual sessions. Active participation includes compliance with a specific course of treatment and conditions of the treatment plan. If an SVP violates conditions with the specific course of treatment they can be unsuccessfully discharged from group because of increased risk to the community.

## Inpatient vs. Outpatient Civil Commitment

Across the nation states are dealing with sexually violent predators in an increasingly conservative manner by committing the SVP to inpatient treatment. The implementation of the outpatient civil commitment program in Texas is the first innovative type of civil commitment in the United States. The outpatient sexually violent predator program may appear to be a precarious endeavor to States who have committed millions of dollars to inpatient programs. The belief being these SVPs could not be contained and reside in communities without committing a new offense. However, to date the Texas outpatient program has shown the most success in the treatment of SVPs while maintaining the highest-level of community safety.

There are a few similarities between Texas and other states civil commitment programs. First, sex offenders are assessed by the state and only the most predatory are referred to trial for civil commitment. Second, a trial is conducted and if the sexually violent predator is placed in the program, they are maintained on civil commitment indefinitely (Ferrara 2000).

There is a significant difference between the Texas program and programs in other states. In other states, the civilly committed sex offender is placed in a locked, secure residential facility and can choose not to participate in sex offender treatment. In Texas, the civilly committed sex offender is allowed to transition back into the community where they are mandated to attend and comply with intensive outpatient sex offender treatment and supervision. Non-participation in the outpatient program can result in a 3rd degree felony.

Sexually violent predators are civilly committed to protect the citizens of Texas and a paradoxical effect is that the outpatient program may do more to ensure public safety. Consider some of the inherent benefits that an outpatient sex offender treatment program has over a residential sex offender treatment program.

The success rate for offenders treated in an inpatient setting is about half of that for offenders treated in an outpatient setting. The success rate for offenders treated in an inpatient setting is about half of that for offenders treated in an outpatient setting. Consider the following percentages of treatment refusers: California's 368 SVPs (80% refuse treatment), Wisconsin's 232 SVPs (75% refuse treatment), and Florida 450 SVPs (70% refuse treatment). David Cuppenheimer, the Director of the Sex Offender Treatment Program at MCI-Norfolk reported that attorney's routinely advise their clients to refuse treatment and avoid disclosure, which inhibits treatment. The prognosis for rehabilitating sexually violent predators in a prison setting is poor, the treatment needs of this population are very long term and the treatment for this population are very different than traditional treatment modalities. Therefore a civil commitment procedure for the long-term care and treatment of the sexually violent predator is found to be necessary by this legislature (Kan.Stat.Ann 59-29a01 1997). Use of an outpatient program, in which treatment is mandated in Texas, can potentially provide for more long-term community safety than inpatient programs.

www.tdh.state.tx.us/hcqs/plc/csotsvp.htm#inpatient

EX B-9

Treatment progress made in an inpatient setting does not readily transfer to the community because the client does not have to develop internal controls (i.e. identifying triggers and deviant behaviors to stop these prior to the act) due to the intensive external controls (i.e. locked facility, security, etc) in place. Inpatient clients do not have to contend with the "normal" stresses of the free world, the availability of alcohol or drugs, and the inadvertent contact with potential victims. Clients that do choose to participate in the inpatient treatment setting still have the obstacle of applying this in the community. Eventually, these sex offenders will be released back to the community and other states must confront the issues that Texas deals with directly throughout the offender's treatment.

Many communities allocate few resources to supervising and treating the sex offender. This intensifies the risk to the community. It could be reasonably expected that some of the sexually violent predators in a civil commitment program are psychopathic. There is a mounting body of research that demonstrates some forms of treatment may increase violent crimes by psychopaths. Research is showing that residential treatment particularly therapeutic communities increase negative outcomes of psychopaths.

The outpatient program also has the advantages of maintaining the highest level of protection available to the community while protecting the civil rights of the client through a restrictive transition and assimilation back into the community.

## Cost of Inpatient vs. Outpatient Civil Commitment

Civilly committing sexually violent predators protects the community by providing rehabilitation to individuals who would have been released to prey upon adults and children in our communities without any constraints of treatment or supervision. The Outpatient Civil Commitment program is significantly less expensive than the cost of a new crime, county jail housing, prosecution, defense, lengthy incarceration, medication, and treatment. Several studies conducted from the 1980's through the 1990's reported a cost range of $138,000 to $200,000 per case to prosecute a single case of child sexual abuse.

The annual Outpatient Civil Commitment Program cost is approximately $30,000 dollars per client per year. Inpatient treatment in 15 other states cost between $70,000 to $125,000 dollars per offender per year (AZ, CA, FL, IA, IL, KS, MA, MN, MO, ND, NJ, SC, VA, WA, and WI). California (Fresno County) is projected to open in 2005 a 1,600-bed facility operated by the Department of Mental Health, at a cost of $350 million dollars to serve SVPs.

The approximate annual fiscal implications for 2004 to States who commit sexually violent predators are astounding.



- California- $46,000,000 for 368 SVPs
- Florida- $22,500,000 for 450 SVPs
- Illinois- $21,600,000 for 216 SVPs
- Minnesota- $24,720,000 for 252 SVPs
  (Approximate cost per year based on current numbers-Council on Sex Offender Treatment 2004)

From 1990 to 1998 Washington State has only released two offenders from inpatient treatment. Of the approximate 2000 SVPs nationally less than 4 % have been released from inpatient treatment. The average rate of civil commitment growth across the nation is twenty-three (23) clients per month. As of April 2002, four women nationally have been civilly committed and there were approximately 1000 detainees awaiting commitment trials.

www.tdh.state.tx.us/hcqs/plc/csotsvp.htm#inpatient

EX B-10

In a statement about inpatient treatment, Larry Fitch of the National Association of State Mental Health Program acknowledged, "States are full of people coming in, and not many going out".

This realistically will result in escalating cost to the taxpayers in these states.

## Texas Civil Commitment Process (Flowchart)

Texas Civil Commitment Process Flowchart (Adobe Acrobat format, 96 KB)

To access documents in Adobe Acrobat format, you must download the Acrobat Reader software. Please see our file viewing page for more information and a link to the Adobe website.

## Disposition of SVP Cases (Flowchart)

Disposition of SVP Cases Flowchart (Adobe Acrobat format, KB) Coming soon!

## Interagency Case Management Team (Flowchart)

Interagency Case Management Team Flowchart (Adobe Acrobat format, 126 KB)

## Links

More links coming soon!

---

Return to the Council on Sex Offender Treatment Home Page

*Last updated January 4, 2005*

www.tdh.state.tx.us/hcqs/plc/csotsvp.htm#inpatient

Page 12 is blank.

EX B-11