STU-Annex Residents
STU-Annex
P.O. Box 905
Avenel, NJ 07001

Ian Marx, Esq.
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

**Certified #: 7009 0820 0002 1648 2443**

June 11, 2009

### RE: Bagarozy v. Harris, 04-cv-3066
### Alves v. Ferguson, 01-cv-789

Dear Mr. Marx:

This letter is for the purposes of STU-Annex replying to the recent June 5, 2009, Seton Hall reply to DHS.

We note that this reply did <u>not</u> originate from your office. We nevertheless have grave concern that it was your office that sent the reply to us without any prior communication to get our consent for its concessionary content. While it is true that we are all prior sex offenders, we have not been diagnosed as incompetent and we are clearly capable of executing our constitutional rights to have a say into these issues which affect our lives, the lives of our families and our most precious of possession, our liberty.

It is a matter of fact that neither your office to us, nor Seton Hall to Mr. Alves, has made any effort to consult resident representatives before making settlement "concessions" which are absolutely unacceptable. It is one thing to submit a comprehensive reply challenging the unsatisfactory position of DHS. It is another matter entirely to make settlement concessions without the consent of plaintiffs.

Please take note that our most significant objection is to the section on page 18, section 11 of the reply (Gradual de-Escalation of Restraints). We absolutely do not agree to surrender our claims to a <u>half-way house</u> or <u>increased furloughs</u>.

We refer you to the many letters we have sent you clearly communicating numerous issues and our position on those issues. Among those is that *"unless the*

1


Ex E-1

*State is willing to transform the STUs substantially into an out-patient program, there can be no settlement and we go to trial." Knowing this, how could you not have objected to the June 5, 2009, Seton Hall reply that was just sent to us?*

Bagarozy called Ray Alves after reading the reply and Mr. Alves reported that not only did he **not** give consent to the content of the reply, but additionally that he has been trying to contact Ms. Goldberg and Mr. Azmy for months and that they have not accepted or returned his calls. This appears to be a violation of the Lawyer's Canon of Ethics on Attorney's requirements for <u>due diligence</u> and <u>communication</u>. We therefore again remind you of the concern we've presented to you repeatedly that it was a conflict of interest for Seton Hall, which had input in the initial formulation of the New Jersey SVPA, to have involvement in our lawsuit. We further submit that their recent reply and the manner in which it was submitted (without the consent of plaintiffs) give the impression of Seton Hall counsel being involved in unethical collusion with the State. Accordingly, we ask that you take immediate, emergency action not only to remedy the damage done by Seton Hall's June 5, 2009, reply, but to finally come center stage with the major constitutional issues which we have been communicating to you for years (and which you have repeatedly verbally promised to address on our behalf "after the matter of the Special Master has been completed"), especially:

1- Due process violations of the <u>initial commitment process</u> including violations of the principal of <u>Unequal Application of the Law for Individuals under the Same Class and Circumstances</u>.

2- DOC <u>Discovery</u> and a motion for <u>Summary Judgment</u>.

3- A Motion seeking an <u>Injunction</u> protecting us against any move to a facility that has not been approved by the Court.

4- Communicating to us the process by which we will be able to veto any <u>un-</u>approved "concessions."

5- What compensation will you seek for residents for the additional years of lost liberty they have had to suffer due to inadequate treatment and un-constitutional, inhumane, counter-productive and counter-therapeutic conditions? What possible remedy can compensate for those lost years?

6- A challenge of the whole manner in which actuarial were mis-used to commit residents.



Ex E-2

    7- A concentrated effort, in view of all the abuses that residents have been subjected to as a whole, to have every resident presently being held in the STUs re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General.

    8- A determined effort to obtain our right to a <u>Trial by Jury</u> when facing commitment. (Please refer to the rest of our prior letters over the years for the other major issues we have communicated with you).

    You've told Mr. Harrell and Mr. Simons that you would visit here this month (<u>June, 2009</u>).  We seek to resolve the above concerns with you during that meeting and receive a <u>written confirmation</u> from you on your commitments regarding them.

    Mr. Marx, throughout history whenever society has created a class that is so unpopular that it has been denied its rights and the protection of law, it has been the province of the Courts and counsel to protect them.

    The Special Master's report is submitted.  Accordingly, we are now at the point at which you have promised for years that you would formally address these issues.  We now humbly and respectfully request that you honor your years of promises and take the proverbial "bull by the horns" in an aggressive and adversarial manner.  Will you do that?  Please reply to this letter in detail in writing and via your timely visit.


**<u>Original signed by:</u>**

                                                                                        Yours truly,

<u>Richard Bagarozy</u>          <u>James Williams</u>          <u>Lamont Brooks</u>

<u>Gilbert Davis</u>             <u>Darrick Bailey</u>           <u>Joe Fournier</u>

<u>Sam Jefferson</u>            <u>Walter Harrell</u>            <u>Thomas Stramiello</u>


c. Kearny Residents
   Ms. Goldberg, Seton Hall


Ex E-3

Richard Bagarozy
STU-Annex
P.O. Box 905
Avenel, NJ 07001
**24-Hour Voice Mail: 1-XXX-XXX-XXXX**

Ian Marx, Esq.                                **Cert. No: 7009 2250 0001 0919 5734**
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677                                November 29, 2010

  **RE: Bagarozy v. Harris, 04-cv-3066 (DMC)**

Dear Mr. Marx:

   I write this to complain at the complete lack of communication your office is having with Resident representatives in the above captioned matter.

   Prior to the Friday just before November 1, 2010, you had neither accepted nor returned any of our telephone calls since the opening of the new building (back in May, 2010) this in spite of our repeated appeals for you to visit the new building to confirm that it is grossly punitive and un-therapeutic. Even the therapists were telling us that. You didn't visit, nor would you speak with us, nor are we aware of any action whatsoever by you on our behalf during this period.

   Then we found out by way of the court clerk (not by way of your office) that there was to be a "settlement conference" on November 1st, 2010. When we left you a message about this conference, your secretary finally called and set up a telephone appointment. During that conference call, we again complained about the Bagarozy case being joined with the Alves case because the Bagarozy case dealt primarily with the STU Annex and the Bagarozy case addressed many constitutional issues and sought significant monetary damages. During that telephone conference, you promised to be our "voice and advocate" at the November 1, 2010, settlement hearing that you would formally "object to any settlement agreement" and you would seek to "schedule a hearing where a select group or residents could testify" (as to what is going on here relative to the commitment process and environment).

Ex F-1

However, after November 1st, we again were left with no communication with your office. Again, neither you nor your secretary would accept nor return any of our calls and again you did not come to tour of the new building. This is true as of the morning of the above date.

Mr. Marx, we submit that you are violating your attorney responsibilities of <u>communication</u> and <u>due diligence</u> and we ask that you take immediate action to reverse this manner of representing us.

We plead with you to accept this complaint constructively and extend yourself on our behalf to:

*Aggressively seek to separate The <u>Bagarozy</u> case from the <u>Alves</u> case.
*Aggressively seek the significant monetary damages that are called for in our initial complaint and are justified by way of Dr. Becker's report.
*Aggressively prosecute our Constitutional issues: (eg. Due Process, Unequal Application of the Law, an unconstitutional commitment process, Trial by jury, and the other issues you signed of on with us at a prior meeting).
*Diligently Accept (or at least return) our calls, greatly improve communication with us, and diligently prosecute our issues.

In advance, we thank you for your diligent attention to this letter and your future diligent efforts on our behalf.

Cordially,

*Richard Bagarozy*

Richard Bagarozy


c. Resident Representatives
   file

Ex F-2

<div style="text-align: center;">
STU-Annex Residents<br>
STU-Annex<br>
P.O. Box 905<br>
Avenel, NJ 07001
</div>

Ian Marx, Esq.
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

August 12, 2009

**<u>Bagarozy v. Harris, 04-cv-3066</u>**
**<u>Alves v. Ferguson, 01-cv-789</u>**     **<u>Re: Dr. Barone, Dir. of Psychology</u>**

Dear Mr. Marx:

    I write this letter on behalf of all STU Residents to address an additional, possibly significant matter which you may be unaware of: Apparently Dr. Barone, the STU "Director of Psychology," was either suspended, fired, or compelled to resign for having an "inappropriate relationship" with a resident for whom she played a significant role in obtaining his release from civil commitment. As a result, Dr. Barone is no longer here and an investigation is being conducted. Additionally, this resident has now been brought back to the STU-Annex.

    We further inform you that Dr. Barone was a major factor towards obtaining the civil commitment of a significant number of residents by testifying against them as an expert on behalf of the State during their initial civil commitment process.

    We submit that the above incident would indicate that Dr. Barone was neither fit nor qualified to provide expert testimony towards the commitment of these residents and accordingly we request that you further investigate this matter and then make a sincere effort to challenge the initial civil commitment of every resident against whom she provided expert testimony in obtaining their commitment **and** that a concerted effort be made to nullify any and all written reports that she authored that are presently in the files of residents.

    Please, please use your position as our assigned counsel to devise the most effective challenge possible.

    We also request your timely action in conscientiously prosecuting all the other issues we have written about to you and which, thus far, it seems you have ignored.

    In advance, please know that we are extremely grateful for your serious attention to the matters presented in this letter.

<div style="text-align: right;">
Yours truly,<br><br>
<i>Richard Bagarozy</i>
</div>

Ex G-1

# Progress in Treatment at the STU, Revised 2-27-12

My greatest focus in treatment over the past couple of years has been the following:

-achieving a greater victim empathy and deeper insight into the harm I have caused innocent youths,
-understanding and reconditioning my deviant arousal,
-experiencing growth regarding healthy, appropriate relationships, and
-developing tools that would help me effectively manage my risk.

It is my perception that my most important growth occasion has been experiencing a more genuine remorse for my offending conduct and a more genuine empathy for my victims. At the time of my first offense, I was completely blinded to the obvious fact that the state of their lives were such that they needed significant genuine help. I am now acutely aware that I took unconscionable advantage against youths who were already significantly troubled.

During my 1993 offense, I suffered from the almost unimaginable distortion that not only was all of this conduct causing no harm; I also believed I was not violating the law because I was following the letter of the law. Again, I clearly recognize that I was dead wrong in these selfish, immoral, unethical assumptions and that my conduct was inexcusable. I additionally recognize that each nude picture of a teenager portrayed in the approximately 100 explicit magazines was a permanent record of child abuse and had the potential to cause the victim involved incalculable harm. But I had been truly blind, and asleep, to all of this.

However, upon my federal arrest in 1993, I felt an overwhelming sense of remorse, albeit flawed remorse, when police conducted themselves in a manner which I perceived "traumatized" the youths involved. I imagined the shame and fear the youths had to have experienced to have their parents see the videotapes. At the time I felt complete helplessness because I was unable to ease their suffering or comfort them. I recall at the time falling to my knees, crying to myself in my cell, and praying to God for their wellbeing. Even then, I took the responsibility in that the youths were suffering because of me. But I now recognize that it was a flawed remorse in that I was looking at myself as defective (much as I did as a teenager) and perceived at the time that their trauma was the result of their associating with me, a "homo," and due to the abuse they received at the hands of the police - not as a result of my unacceptable conduct.

1

Ex H-1

At the point of my 1993 arrest, I placed part of the responsibility for the trauma experienced by the youths on the police for the manner in which they treated them, and I still just didn't get how heinous, selfish, and potentially harmful <u>my actions</u> had the potential to be against youths I believed I cared for.

It was at some point in 2003 in my treatment with Dr. Martinez during my 16 months of freedom that he shared with the group a DVD entitled *"Four Men Speak Out"* by Professor Body. In it, four adults who had been molested as children revealed the impact the molestation had on them. In a matter of approximately one hour, during which the DVD had me spellbound, it shocked me out of my sleep and completely blew me away. I deeply grasped the sobering truth of this incredible production, and I found myself filled with remorse solely due to <u>my</u> actions. I had never wanted to hurt anyone, least of all the youths I believed I cared for, and the kind of harm that may well have resulted overwhelmed me with great sorrow and further deepened resolve that it would never happen again. These insights and my strengthened resolve were additionally reinforced as a result of me again viewing this same DVD at the STU-Annex, as a result of me twice taking the Victim Empathy module, and as a result of work in my process group. Over this time, I have grown to deeply regret <u>my actions</u>. I have since purchased my own copy of *"Four Men Speak Out"* as a continual reminder of the trauma caused by abuse and to share it with others. I wish I could change the past. I can't. But I can do all in my power to reduce my risk of ever reoffending, and I do that diligently.

Another area of significant growth I've discerned within me - subsequent to my final offense - is having developed (unexpectedly) strong emotional feelings for two age-appropriate equals and then developing loving relationships with them that lasted approximately a year each. I found richness in these relationships that never existed in any of the friendships I had had with teenagers and also a happiness and peace that had eluded me all of my life. Prior to this I had suffered from the distortion that I had to meet a youth during their teenage years in order to be able to "fall in love" with them. These age-appropriate relationships enabled me to abruptly overcome that distortion, and this was a crucial turning point in my growth.

Additionally, my years of earnest arousal reconditioning efforts have effectively helped me to reduce the power of my deviant arousal for teenagers and have been a catalyst for me strengthening my arousal for age-appropriate equals. But I am also only too aware that I will always be a risk, that my deviant arousal will always unexpectedly have the capacity to rear its ugly head, and that I must forever maintain vigilance against entertaining fantasies that are deviant. However, I also clearly recognize that I am a significantly different, more emotionally mature, and a more wide awake person today than the person who offended against children over 18 years ago. I am positively



Ex H-2

Case 2:01-cv-00789-SDW-LDW   Document 164-1   Filed 05/09/12   Page 9 of 20 PageID: 1270

determined to have no more victims; and yet, in order to avoid becoming lax, I recognize that I must always maintain awareness that I am a risk.

Finally, as for the tools I have acquired, the following are among the most important:

-The acute awareness I have developed as to the importance of a healthy support group <u>and</u> my need to honestly seek them out and keep them informed about my thoughts and feelings. I've now gained insight into many of the distortions I had, both as a gay teenager and within my offending periods as an adult. However, the question now becomes, how do I recognize present and future distortions if by definition, a distortion is something not recognized? My solution to this problem is to share my thoughts, feelings, and choice options with several of my support members and get their feedback. In doing this, I will see a number of perspectives and existing distortions will come to light prior to me acting on them.

-My greatly increased insights as to the catastrophic damage possible by way of sexual abuse, not only for the victim, but also for family members of both the victim and the offender and for the community. I genuinely do not want to hurt anyone.

-Continue in treatment. Being part of a treatment group will help keep me vigilant about my risk and keep me focused on all I need to do to avoid reoffending.

-Continue using Covert Script and other arousal reconditioning techniques. These have had a significant impact over the 15 years I have diligently used them, but there is always room for further growth.

-After getting my initial priorities in order, continue to build on my growing capacity to find happiness in a healthy, age-appropriate relationship by seeking one in an environment of honor, integrity, and honesty. I perceive such a meaningful relationship to be a significant tool in me finding the kind of happiness that has eluded me most of my life and an effective replacement for my deviancy.

3


Ex H-3

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**DICKINSON R. DEBEVOISE**
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & COURTHOUSE
50 WALNUT ST., ROOM 5083
P.O. BOX 999
NEWARK, NJ 07101-0999

May 14, 2004

Mr. Richard Bagarozy #360
S.T.U. Annex
C.N. 905
Avenel, New Jersey 07001

    Re:    U.S. v. Richard Bagarozy
             Crim. No. 94-338(DRD)

Dear Mr. Bagarozy:

    I have received your letter of May 4, 2004 and must note that the proceedings for your continued confinement are not at all what I had contemplated when I sentenced you some months ago on the charge of violation of two relatively minor conditions of supervised release. I was, of course, familiar with your case on the basis of the many years of pre-trial proceedings, the lengthy trial, extended pre-sentencing and sentencing proceedings and periodic reviews after you had served your prison term and were on supervised release. This culminated in the most recent sentence on account of your technical violations of the conditions of supervised release.

    I sentenced you to three months imprisonment which was significantly below the optional Guideline range. I did not impose a continued term of supervised release. My reason was that it was evident to me that you were fully able to lead a constructive life and that you did not pose any danger to under-age persons. This conclusion was based upon my continuing involvement in your case since its inception in 1994, your gainful employment during your period of release, your successful therapy with Dr. Martinez, your successful passing of a lie detector test and other evidence that you had had no involvement with under-age persons and that your sexual orientation was being directed into appropriate channels.

    The proceedings which the State of New Jersey brought against you are not within my jurisdiction. I assume that an attorney has been assigned to represent you. I have requested that the members of our Probation Department who supervised your case cooperate with him or her and make available any material from their files that would be of assistance in the proceedings against you. Any material made available to your attorney would, of course, be made available to the attorneys for the state.

Very truly yours,

*Dickinson R. Debevoise*

Dickinson R. Debevoise
U.S.S.D.J.

cc:    Thomas S. Larson
        Supervisory U.S. Probation Officer

        Janice L. Fink
        Senior U.S. Probation Officer

Ex I-1

**SPECIAL TREATMENT UNIT**
**AVENEL, NEW JERSEY**
**TREATMENT PLAN STATUS REVIEW**

Resident's Name: Bagarozy, Richard   Resident's Number: 360   Date of Last Treatment Plan/Review: 2-25-11
Today's Date: 9-20-11

| Problems | Progress Made toward the Goal (Address each objective for that goal) | Goal Status (C=Continue; A=Achieved; R= Revised; D=Discontinued) | New Target Date |
|---|---|---|---|
| 1) Dangerousness for future sexual offenses. | **Some Progress**: Mr. Bagarozy is an active participant in his process group. He has consistent attendance and participation. Mr. Bagarozy has taken approximately 3 floors during this review period. At times, Mr. Bagarozy's presentation appears scripted. He is encouraged to continue to work on being more spontaneous by not preparing prior to taking a floor. Mr. Bagarozy wrote in his input form that he does not believe the TC is appropriate for him in order to be discharged. However, he is encouraged to be receptive to eventually entering into the TC. | C: It is recommended that Mr. Bagarozy:<br>• Continue attending process group 2x per week.<br>• Continue to work on being receptive to feedback by waiting to respond and repeating the feedback given prior to responding.<br>• Continue taking floors and providing feedback.<br>• Continue to work on being less scripted and more spontaneous when taking floors.<br>• Continue to present deviant arousal.<br>• Present relapse prevention strategies.<br>• Regularly attend and participate in AR and RP self-help groups. | 6 months |
| 2) Difficulty in developing insight into sex offense related dynamics. | **Some Progress**: Mr. Bagarozy passed the family of origin module during this review period. He presented his genogram in his process group. He has taken approximately 3 floors. Mr. Bagarozy is in a very active process group, which does not allow him to take as many floors as he would like. Mr. Bagarozy continues to struggle with his shame and guilt about his homosexuality. He has not attended RP | C: It is recommended that Mr. Bagarozy:<br>• Continue to work on reducing his defenses by listening to feedback give, waiting and repeating the feedback prior to responding.<br>• Discuss triggers that are a risk for re-offense<br>• Present Relapse Prevention techniques in group including Personal Maintenance Contract.<br>• Continue to explore arousal patterns in process group. | 6 months |

ExJ-1

9/20/11

| | | | |
|---|---|---|---|
| | and AR self help groups. | • Present material learned in RP 3 module.<br>• Resume attending AR and RP self-help groups. | |
| 3) Lack of accountability for sexual offenses. | **Some progress**: Mr. Bagarozy has demonstrated that he takes some responsibility for his offenses. He continues to discuss concepts learned in the Victim Empathy module. | C: It is recommended that Mr. Bagarozy:<br>• Take floors to discuss complete offense history honestly and accurately in Process Group.<br>• Identify interventions.<br>• Present RP 3 module material in process group. | 6 months |
| 4) Lack of victim empathy | **Some progress**: Mr. Bagarozy demonstrates some understanding of concepts learned in the Victim Empathy module. Through his feedback, he often tries to utilize concepts learned in the VE module. He is encouraged to utilize these concepts when discussing his own victims and fully explore the physical, emotional, and cognitive effects his offenses had on his victims. | C: It is recommended that Mr. Bagarozy:<br>• Attend and participate in process group 2x per week.<br>• Continue to demonstrate empathy towards peers in group.<br>• Continue demonstrating an understanding of concepts learned in the Victim Empathy.<br>• Continue to address need for expanded awareness of the impact of sexual abuse on adolescents (per VE module feedback form)<br>• Continue to address the reasons he did not pickup on the social and interpersonal cues and signs of victims, i.e. promiscuity (per VE module feedback form) | 6 months |
| 5) Ability to utilize social support including self-help programs | **Some progress made**: Mr. Bagarozy is involved in recreational activities and rehabilitation programs. He sings in the Choir and attends Spiritual Development. He does not attend RP or AR self help groups. | C: It is recommended that Mr. Bagarozy:<br>• Continue regular participation in recreational programming.<br>• Resume attending Arousal Reconditioning and RP self-help groups. | 6 months. |

Ex J-2

9/20/11

## New/Revised Problems

| Problems | Objectives | Interventions | Responsible Staff (Name/Title) | New Target Date |
|---|---|---|---|---|
| Resistance to entering into the Therapeutic Community | Gain Entrance into the TC. | -Process Group 2x a week<br>-Address reasons for resistance, including distortions and core beliefs about the TC.<br>-Address reasons Mr. Bagarozy believes the TC is not appropriate for discharge.<br>-Examine intellectual superiority in present interpersonal relationships at the STU, how his dynamics continue to play out and how he utilizes this to support his resistance to the TC.<br>-Reflect on how this thinking impedes his ability to make progress in sex offender treatment and ultimately successfully enter the therapeutic community and integrate amongst his peers<br>-Regular attendance in self-help groups. | Dr. Essandoh & Ms. Ames, MSW, LSW<br><br>Self-help facilitators | 6 months |

*Diagnosis cited from TPRC report dated 7-20-11, authored by Dr. Roquet

Axis I: Paraphilia, NOS (hebephilia, sexually attracted to boys from the age of 13 through 18)
Pedophilia, sexually attracted to boys, non-exclusive, not limited to incest, provisional diagnosis

Axis II: Personality Disorder, NOS (with Antisocial and narcissistic traits)

Resident Signature: _____  Date: _____

Treatment Team Signature: _____  Date: _____

Ex J-3

Treatment Work Sheet, November, 2011                               Richard Bagarozy

**Treatment Team Recommendations:**

*Be more receptive to feedback
*Be more spontaneous and less scripted
*Continue to explore deviant arousal patterns
*Discuss triggers that are risk for re-offense
*Discuss RP Techniques, Strategies & Interventions
*Present material learned in RP-3 Module
*Continue Discussing complete offense history
*Continue demonstrating an understanding of concepts learned in Victim Empathy
*Continue to expand awareness of impact of sexual abuse on adolescents.
*Continue to address reasons I did not pick up on the social and interpersonal
     cues and signs of my victims, i.e. promiscuity.
*Examine intellectual superiority in present interpersonal relationships and how
     this thinking impedes ability to make progress in sex offender treatment.
*Explore "resistance" to TC.

**TPRC Recommendations not included in the above:**

*Discuss & reconcile patterns evident offense history:
     -Seeking vulnerable & underprivileged youths
     -Used gifts and attention to get to exploit boys
     -Was a patient groomer

*Be open about strength of previous (and current) arousal to underage males, about "lifestyle" dedicated to pursuit of sexual gratification though contact with teenage males and the deliberate planned behaviors that were part of the offense

*Discuss the elements of "gratification" and "financial gain" aspects relative to the sexually explicit materials I collected

*Refrain from inserting legalistic concerns into treatment and explore how this focus prevents me from treatment progress.

1



Ex K-1

Treatment Plan Update
Resident Input Form

April 6, 2012

Name: Richard Bagarozy                                      STU#: 360

1. What progress do you believe you have made towards the goals and objectives on your treatment plan?

   I have worked on being more receptive to feedback and towards being more spontaneous and less scripted. In process group and in RP-3 self help (where I've taken several floors), I have continued to explore my deviant arousal patterns and discussed triggers that are a risk for re-offense. I have worked on RP techniques, strategies, and interventions in both RP-3 and process group. I have worked on my autobiography and my offense history. I continue to work on empathy and make it the main focus in the feedback I provide to my fellow group-members about their victims. I continually seek to expand my awareness of the devastating impact sexual abuse is capable of having on adolescents. I have developed a sobering and acute awareness that the youths I molested were extremely vulnerable and had significant problems in their lives, including promiscuity. I have explored my resistance to the T.C. and I have overcome that resistance and have become part of the T.C. community. Finally, I have extended myself to keep legal issues completely separate from treatment.

2. What items on your Treatment Plan do you believe you need to work harder on?

   Being prepared for unexpected triggers after release.

3. Are there any changes you would want to make to your treatment plan? Please explain?

Ex L-1

I am feeling my way in the T.C. and I imagine that this will bring changes I am not presently aware of. Presently, I am facing the temptation of compromising my integrity as a contributing member. I especially don't want to get off to a bad start in this area, even if it means getting guys angry at me.

4. Are there goals or objectives that you would add to your treatment Plan, or any other particular modules or programs you are interested in attending.

I find myself intrigued by the concept of the "mediation committee" in the T.C. I would like to develop skills in such an area. As for Modules, I'd like to try sexual orientation or spirituality.

5. Do you believe that the objectives on the treatment plan are realistic and within your ability to accomplish?

Hopefully. I'll know more when I see it.

6. Do you have any needs or issues that are not being addressed in your Treatment Plan?

I would like to apply for a furlough to visit my mother in Mt. Vernon, New York. Can we work towards this?

Ex L-2

SPECIAL TREATMENT UNIT
AVENEL, NEW JERSEY
TREATMENT PLAN STATUS REVIEW

Resident's Name: Bagarozy, Richard  Resident's Number: 360  Date of Last Treatment Plan/Review: 9-20-11
Today's Date: 4-20-12   4/13/12

4/13/12

| Problems | Progress Made toward the Goal (Address each objective for that goal) | Goal Status (C=Continue; A=Achieved; R= Revised; D=Discontinued) | New Target Date |
|---|---|---|---|
| 1) Dangerousness for future sexual offenses. | **Moderate Progress**: Mr. Bagarozy regularly attends and participates in his process group. He took approximately five floors during this review period. He began verbally presenting his autobiography. During this review period, Mr. Bagarozy demonstrated being more receptive to feedback. He was resistant to applying to the Therapeutic Community and believed it was not needed for discharge. To his credit, he applied and was accepted into the TC. | C: It is recommended that Mr. Bagarozy:<br>• Continue attending process group 2x per week.<br>• Continue to work on being receptive to feedback by waiting to respond and repeating the feedback given prior to responding.<br>• Continue taking floors and providing feedback.<br>• Continue to work on being less scripted and more spontaneous when taking floors.<br>• Continue to present deviant arousal.<br>• Present relapse prevention strategies, and apply to current situations.<br>• Present Personal Maintenance Contract and make necessary revisions.<br>• Regularly attend and participate in AR and RP self-help groups. | 6 months |
| 2) Difficulty in developing insight into sex offense related dynamics. | **Some Progress**: Mr. Bagarozy took five floors during this review period. Mr. Bagarozy presented the group with a checklist of recommendations for the group to choose which area Mr. Bagarozy should focus on. To his credit, Mr. Bagarozy processed the feedback received about being scripted. During the past few months, Mr. | C: It is recommended that Mr. Bagarozy:<br>• Continue to work on reducing his defenses by listening to feedback give, waiting and repeating the feedback prior to responding.<br>• Continue to discuss triggers that are a risk for re-offense.<br>• Present Relapse Prevention techniques in group including Personal Maintenance Contract. | 6 months |

Ex M-1

4/3/12

| Issue | Progress | Recommendations | Timeframe |
|---|---|---|---|
| | Bagarozy has worked on being less scripted and focused more on his offense dynamics. He identified distortions that contributed to his offenses. | • Continue to explore arousal patterns in process group, including, but not limited to, the pedophilic lifestyle created.<br>• Present material learned in RP 3 module.<br>• Resume attending AR self-help group.<br>• Continue regularly attending RP 3 self-help group. | |
| 3) Lack of accountability for sexual offenses. | **Moderate progress:** Mr. Bagarozy continues to demonstrate that he takes responsibility for his offenses. To his credit, he has identified distortions that contributed to his offending. He also resumed attending the RP-3 self-help. | C: It is recommended that Mr. Bagarozy:<br>• Take floors to discuss complete offense history honestly and accurately in current Process Group.<br>• Identify interventions.<br>• Present RP 3 module material in process group.<br>• Present Personal Maintenance Contract, making necessary revisions. | 6 months |
| 4) Lack of victim empathy | **Moderate progress:** Mr. Bagarozy demonstrates understanding of concepts learned in the Victim Empathy module. Through his feedback, he often tries to utilize concepts learned in the VE module. However, he struggles, at times, applying these concepts to his own offending. Mr. Bagarozy sporadically cites his struggle with his sexuality as a significant factor that led to his offending. He is encouraged to continue utilizing these concepts when discussing his own victims and continue to explore the physical, emotional, and cognitive effects his offenses had on his victims. | C: It is recommended that Mr. Bagarozy:<br>• Attend and participate in process group 2x per week.<br>• Continue to demonstrate empathy towards peers in group.<br>• Continue demonstrating an understanding of concepts learned in the Victim Empathy.<br>• Continue to address need for expanded awareness of the impact of sexual abuse on adolescents (per VE module feedback form)<br>• Continue to address the reasons he did not pickup on the social and interpersonal cues and signs of victims, i.e. promiscuity (per VE module feedback form)<br>• Re-enroll in Victim Empathy. | 6 months |
| 5) Ability to utilize social support including self-help programs | **Some progress made:** Mr. Bagarozy regularly participates in recreational activities and rehabilitation programs. He sings in the Choir and attends | C: It is recommended that Mr. Bagarozy:<br>• Continue regular participation in recreational programming.<br>• Resume attending Arousal Reconditioning | 6 months. |

Ex M-2

4/13/12

| | | |
|---|---|---|
| 6) Resistance to entering into the Therapeutic Community | Spiritual Development. He attends the RP 3 self –help group.<br><br>**Progress Made:** Mr. Bagarozy was accepted to the TC. He is encouraged to continue working on his defensiveness and being receptive to feedback. | • Continue regular participation in RP self-help groups.<br><br>D: This goal is discontinued. Mr. Bagarozy applied and was accepted into the TC during this review period. |

*Diagnosis cited from TPRC report dated 7-20-11, authored by Dr. Roquet

Axis I:  Paraphilia, NOS (hebephilia, sexually attracted to boys from the age of 13 through 18)
        Pedophilia, sexually attracted to boys, non-exclusive, not limited to incest, provisional diagnosis

Axis II: Personality Disorder, NOS (with Antisocial and narcissistic traits)

Resident Signature: _____ Date: _____

Treatment Team Signature: _____ Date: _____

Ex M-3

Case 2:01-cv-00789-SDW-LDW Document 164-1 Filed 05/09/12 Page 20 of 20 PageID: 1281








UNITED STATES POSTAL SERVICE
PRIORITY MAIL®
Flat Rate Mailing Envelope
For Domestic and International Use
Visit us at usps.com

INTERNATIONAL RESTRICTIONS APPLY:
4-POUND WEIGHT LIMIT ON INTERNATIONAL APPLIES
Customs forms are required. Consult the International Mail Manual (IMM) at pe.usps.gov or ask a retail associate for details.

Any amount of mailable material may be enclosed, as long as the envelope is not modified, and the contents are entirely confined within the envelope with the adhesive provided as the means of closure.

Go to usps.com/postageonline

RECEIVED
MAY 0 9 2012
AT 8:30 _____ M
WILLIAM T. WALSH, CLERK

Richard Bagarozy
Cn 905
Avenel, NJ 07001

CLERK of The Court
U.S. District Court of New Jersey
MARTIN Luther KinG, Jr., Courthouse
50 Walnut Street
Newark, NJ 07102

XRAYED

Country of Destination:/Pays de destination:

USPS packaging products have been awarded Cradle to Cradle Certification℠ for their ecologically-intelligent design. For more information go to mbdc.com/usps
Cradle to Cradle Certified℠ is a certification mark of MBDC.