(Resident) about His past criminal history, that is <u>Not</u> the subject of a conviction. For There are some Residents to whom has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's SVPA appropriately limits it's application to Convicted Sex Offenders? See: <u>In re Commitment of W.Z.</u>, 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: <u>Matter of D.C.</u>, 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: <u>Mental Hygiene Legal Service v. Cuomo</u>, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#23. Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

#24. Some further D.O.C. issues needs to be argued and/or addressed.  For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

#25. Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

#26. The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. **Depriving**

... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27, The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution was not to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was not providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that is missing in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer

was given.

#30. If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 **Million Dollars from each listed defendant in their Personal and Individual Capacities** for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff since the time of this Resident's temporary Civil Commitment / Civil Commitment to present date.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS

MADE BY ME ARE TRUE AND CORRECT.

Date: 4/18/12

_Wilfredo Diaz_
Sign Your Name

_Wilfredo Diaz_
Print Your Name

Resident # 000004

Fr: *Wilfredo Diaz, 4 South*
  Special Treatment Unit /STS.A-N0-369-unit
  8 Production Way, Trl #2
  CN 905
  Avenel, New Jersey 07001

To:   STU Settlement
      c/o Seton Hall University school of Law
      Center for Social Justice
      833 McCarter Highway
      Newark, New Jersey 07102

      Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
           **Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

_____

_____

_____

_____

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: David W. Donnally

Signature: David W. Donnally

Resident Identification Number: 33444B

Date: 4/12/2012

**Comments:**

I'd like to argue the fact that I was unlawfully committed by the same Psichiatrist that work for or under A.D.T.C. + S.T.U./Annex athority. This is punitive and unfair practice. I was Phase IV and still found to be dangerous at the A.D.T.C. Here at the Annex after 7½ yrs. of inmate restraint, I've completed every module 4 or 5 times respectively. I feel cheated that a jury is not the reason I'm here but an administration taught to confine us by false reporting

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _DAVID PRESLO_

Signature: _David Prenter_

Resident Identification Number: _#381_

Date: _April 13, 2012_

Comments:

_I DisAgree with this settlement_

_There needs To be Alot of things Addressed About this Place and solved befo this Place will work Therapeticley So I Disagee At this Point_

_David Prenter #381_

2

This is my Answer to the Law suit can you Please take care of it

Thank you

David Dresner

April 12, 2012

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *Fredeirck Dubose*

Signature: *Fredeirck Dubose*

Resident Identification Number: *200*

Date: *4/14/12*

Comments:

I object to The Settlement.

I object to The Counsel (Gibbons) that was appointed. Ian Marx of Greenberg Traurig is representative of 28 residents (not just 3) + is far more representative. I object to the Plaintiffs declared as class representatives.

They never communicated anything to us.
I completely object to this settlement + ask that
our case (Bagarozy v Harris) be allowed to go
forward.

Dr Becker said this program might look good "on paper"
but in reality, "its the worst she has ever seen"

We need Half Way Homes
        We need Age to be considered far more
    than it is being considered —
We need guarantees of ~~person~~ restraint reduction.
Staff treat us with a lot of disrespect.

Its Hard to reach Phases

This is the worst place for a human being
to live through. It is totally un therapeutic and
~~It~~ goes against what the laws for the SVP
Act was intended for.
It is also hard fore people such as I to
reach the higher phases and get into the
furlough process.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement.  You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement.  The Court will not consider issues that are unrelated to the Settlement.  When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU.  The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing.  *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *Edward Dunlap*

Signature: *Edward Dunlap*

Resident Identification Number: *410*

Date: *4-14-12*

Comments:

```
I completely object to the settlement.  It does not comport
with the report of Dr. Becker (the authority nominated by the
Attorney General) who described this program as the "worst she
had ever seen."  I also completely object to numerous issues
passed over.
```

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the *Settlement*. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Joseph Elchin #503

Signature: Joseph Elet

Resident Identification Number: 503

Date: April 12, 2012

Comments:

I am a member of this proposed class and I streenuously object to this settlement. I also object to the three (3) proposed class representatives, Alves, Culleth and Sessoms. These (3) three individuals do not have the interests of the class as priority.

Never once have they informed or consulted with the class regarding any litigations, or proposals regarding the reaching of this proposed settlement. I also feel that they do not / can not represent the various subgroups of individuals confined in this system. I also would oppose any Seton Hall associate from litigation behind the fact that Seton Hall assisted in the formation of the State statute concerning Civil Commitment of "alledgid" sexual predators. This I would infer to be a disparaging conflict of interest. I also stress that at no time has anyone from Seton Hall communicated with or inquired to anyone in this proposed class besides the three (3) proposed representitives as to the consensus of the class regarding this proposal.

Regarding this proposed settlement, the terms of such, most of which are allready in place here at the STU, and have been for some time, such as Comprehensive Treatment Plans (individually tailored), Six (6) Month Reviews by treatment teams, Annual Review by TPRC (with the exeption of the "estimated" time frame clause, which is a ruse), At least twenty (20) hours of Therapy a week (with the exeption of the third (3rd) weekly process group, we have two process groups currently weekly)

2

It has already been established by the Therapeutic Staff, including Dr. Main that the Overall Course of Treatment (a possible phase (6) six) will not be implemented. Map Groups have been running (until very recently) and there are very limited Educational or Vocational Opportunities already present and there is no space to implement any real Vocational Opportunities in this facility. There are, and have been recreational activities available and are provided to the best of the Recreation Dept. abilities afforded to them under the overtly strict guidelines of the Department of Corrections. Why implement, or attempt to implement a Post-Discharge Preperation when there is no viable or attainable discharge, as evidenced by the discharge rate of this system. Pertaining to a Treatment Ombudsman or Independant Monitor, they would be viable if there was a Comprehensive or Beneficial Settlement in this matter being proposed or implemented.

The "real" issues are not being addressed in this proposal. The only offer is more (1½ hours) treatment offered per week. As per Dr. Beckers report of December 28, 2008 the treatment offered is "inadequate". In reviewing her report I conclude that the quantity of treatment does not equal quality. (Allthough she also

3

had an issue with the quantity.)

I would also suggest to the Court that a viable/ meaningful, unbiased, discharge process should be contained in this proposed settlement. I would stipulate that the class is well aware of the fact that there are individuals housed here who could, at this time be "gradually reimplemented" into society and be successful and productive (as evidenced by the few who already have). Another huge point is the untheraputic environment we at the STU Annex, as well as Main (Ad-Seg Unit) live in. The loudest untheraputic scene inside these complexes are the DOC. We live by prison rules, prison standards and are treated less than prisoners by DOC (ex: ridiculed/ belittled behind offenses, transported in animal like cages incorperated into the transport vehicles, as well as many other adverse, untheraputic atmospheres and aura's carried by Dept. of Corrections), DOC at any times, and numerous times prevents therapy by "telling/ orchastrating" what and how Dept. of Human Services performes thier jobs.

I am sure that in the numerous responses that the Court has recieved and rerviewed regarding this proposed settlement that there are many more

4

issues, and I respectfully state " I agree and support every objection / opposal made to the proposed settlement ". I could include the same but would need many more pages.

In closing I would sincerely request that the Court reject this proposed settlement as completely unfair and unjust, and considering that the class as a majority oppose such, I would also suggest that the attorneys assigned to represent the class make themselves available to hear the many "voices" that need to be heard.

Thank you for your utmost patience and compassionate understanding of our concerns.

Respectfully,

Joseph Elef

5

Fr: Mack L. Ellison #230
    Special Treatment Unit
    8 Production Way, Trl #2
    CN 905
    Avenel, New Jersey 07001


To:    STU Settlement
    c/o Seton Hall University school of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102

    Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
        **Objection to Purposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

   *I was committed even though I scored a two(2) on the Static. 99 actuarial test which puts me in a low-moderate risk and was told that my risk can't be lowered.*

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

Class Member's Objections/Comments Re Proposed Settlement

1) There is no language set forth pertaining to a realistic release program
2) There is no accountability for the damage they have done to me through this ineffective and lengthy program, no mention of monetary awards,
3) Rights & Liberty were denied me, family, and friends since civilly committed
4) What life & Opportunities I would have had, were diminished due to the STU ineffective program, monetary awards would cover part of the life they destroyed
5) Nothing in settlement about the visit and family programs
6) Nothing in settlement about MAP programs being punitive, denying, packages, visits, ect. Nothing in settlement about the MAP process, when a person is placed on MAP there is no separate entity for judgment, only those who maliciously had you put on MAP.
7) They want us to attend self help groups, which save them hundreds of thousand of dollars on additional staff., by having ill minded residents running these groups for them without pay
8) There is no mention about residents who have been in Avenel for years doing the therapy, and were high phase when being civilly committed, they had to start from the beginning here
9) There is no mention about having Program Coordinators running groups, and being the main decision maker in our progress and work status, which they shouldn't have such unaccountable power such as this, and gaining lifetime experience & salary through their incompetent and bullish abuse of us
10) Nothing in settlement that is clear about the disability act,
11) There is no accountability for deviant and malicious report writing or falsifying statements on our records to justify commitment
12) Nothing in the settlement that pertains to housing, lack of space, bed bugs problems for years, bathroom facilities in Annex only build to accommodate half of the populations that is there now, stacking residents on top of one another in dorm setting, forcing residents who do not wish to be around certain inappropriate residents are forced to live in the same cubical. Therapy rooms are too small to run a groups with 12 to 15 inmates, and no indoor gym.

## Comments:

My family and friends had to also endure the pain and stress of the ineffective STU program, through the many long years of me being kept from them, the abuse they endure during their visits with me is uneceptable, there is no quality family gathering and communications time due to DOC regulations, and very strict guidelines established for punitive purposes. Causing family and friends lots of mental and emotional pain, even to the degree of becoming ill. DOC is a punitive established entity, for the soul purpose of punishing people, by having patience, none felons under their control, we face the unaccountable, bully type mentality of DOC through their punitive features, specially due to the label we have to live under. This is a one sided settlement, only benefiting DHS, and no DOC for warehousing and for abusing us, no monetary offering's where suggested for the life I lost due to their inability to provide me with a safe, healthy, therapeutic environment, with a realistic release program for me to work for. Therefore I disapprove of this settlement offer.

Respectfully Submitted

*Mack L Ellison*
Resident:

Date: 4-17-12

4/18

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Wilson Ernest

Signature: Wilson Ernest

Resident Identification Number: 536

Date: _____

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." There is a complete lack of objective criteria to determine de-escalation of restraints and timely release. I also completely object to numerous meritorious issues being passed over.

Fr:        **Carlos Farmer#513**                    4/18/12
           Special treatment Unit
           8 Production Way, Trl #2
           CN 905


To:        STU Settlement
           c/o Seton Hall University, School of Law
           Center for Social Justice
           833 McCarter Highway
           Newark, New Jersey   07102

       Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, ET AL.**
           **Objection to Proposed Settlement**


1. **Class Certification:** I object to Alves, Sessoms, and
   Culbreth, being named representatives of the Class.
   These Residents do not, and cannot, represent the
   population as it stands. They have not experienced what
   separate classes of Residents have experienced,
   therefore, making it impossible for the above named
   Residents to speak on behalf of the population. There
   should be Residents added to the representatives, listed
   above, that reflect the following Classes of persons:
   (a) Juveniles that were civilly committed; (b) Residents
   that were committed from the A.D.T.C. that have numerous
   years of treatment; (c) Residents that have been
   informed that treatment would not diminish their risk to
   reoffend, therefore, rendering this commitment a life-
   sentence; (d) Persons that have been committed from
   society (that were on the streets when they were
   selected for civil commitment); (e) Treatment Refusals
   are not represented; (f) MAP Residents are not
   represented; and (g) South Unit Residents, described by
   Dr. Main as "the Undesirables" are not represented.


2. **Claims Regarding DOC:** By declaring the claims against
   the Department of Corrections ("DOC") to be moot, the
   Court would be ignoring numerous violations of
   substantive due process rights under the Fourteenth
   Amendment to the United States Constitution, violations
   of the Eighth and Fifth Amendments of the U.S.
   Constitution; and violations of rights protected under
   the Americans with Disabilities Act (42 U.S.C §12132) as
   well as rights protected by the Rehabilitation Act, New
   Jersey Constitution and the SVP Act itself. Far from
   rendering the claims moot the move to the current
   facility is irrelevant to some claims and exacerbates
   others. DOC exercises control over medical treatment,
   including the administration of medication prescribed as
   part of sex offender treatment. DOC is in charge of
   transportation to all outside court, medical and

                              1

furlough trips, which it currently conducts in vehicles
intended for the transport of prisoners. "Residents" are
stuffed into a box physically resembling a dog kennel,
in which they are handcuffed and shackled, regardless of
treatment level and/or medical needs. Residents refusing
this indignity and/or potential injury are denied all
access to outside court, medical and furlough trips,
with no DHS input or recourse.

3. **Exercise And Physical Therapy:** Access to, and the
physical construction and composition of, all exercise
facilities is solely controlled by DOC. Residents who
are aged or infirm, diabetic, and/or suffering from
injuries requiring physical therapy must depend upon DOC
for adequate access to those facilities, often this is
scheduled with no regard for a Resident's Sex Offender
Treatment schedule. Additionally, inadequate access to
such facilities contributes to depression and other
mental health issues known to affect the outcome of any
mental health treatment, Sex Offender specific or
otherwise.

4. **Psycho-Educational Modules:** The proposed Settlement
does not address the risk mitigation after the
successful completion of Modules. As the Settlement now
stands, I do not agree with module testing only. There
should be some kind of notice given that the Resident's
risk to reoffend has been mitigated, as well as his
level of dangerousness. This will, sequentially, lower
the Resident's risk assessment. This should be noted
and written verification should be given to the
Resident, as well as this verification being placed in
the Resident's file.

**Carlos Farmer#513**

2

*April 16, 2012*

Fr: *Thomas M Flanagan*
    Special Treatment Unit *Main, South Bldg.*   *Located in the Old Rahway ADSeg Bldg.*
    8 Production Way, Trl #2
    CN 905
    Avenel, New Jersey 07001

To:    STU Settlement
    c/o Seton Hall University school of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102

    Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
        **Objection to Purposed Settlement**

1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

*I do not Agree with Any of the treatment given At the Special Treatment Unit or The Adult Diagnostic And Treatment Center Located in Avenel, New Jersey, 07001. All treatment given is punative, No true Rehabilitation tools. Residents Are WARehoused For the Soul purpose Of Staff Receiving A pay check in this State.*

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

*I'm Also A treatment Refusal Located in the south Bldg. At STU main. I've Also Completed A sex offender program given while in Prison At Powhatan Prison Located in the state of Virginia in 1992 - 1993. I was brought to this state by New Jersey Detectives From prison in 2002 Month 15. I have not comitted Any Crimes or offenses in the past 22 years.* (over please)

6 month's of treatment is enough.
Let us put these things behind us, And
move on with our Live's. We don't
Need to be Reminded of these things
every day of our Lives. Every day
in these group's that's what they do
to these men. Ask them And see
for your self, or come out here. The
majority of these men have been
incarsarated for over 20 years.
There's one man here who have
done 38 years of treatment
And He is still here.
Danny Richards, He Lives
on the South Unit in Room
116. I'm in 117. He Also
became A treatment Refusal
this past year, because they
Refused to ReLease him.
I do Affirm that the Above
statement is true.
            Signed
        Thomas M. Flanagan


P.S.
Save the State A Billion Dollars.
Close the Special Treatment Unit And The Adult Diagnostic
And Treatment Center. You will be doing the citizens of this
state a great Justice. Save the tax payer's. God Bless you.

Fr: _ANthony FREEMAN #545_
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:   STU Settlement
c/o Seton Hall University school of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
**Objection to Purposed Settlement**


1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

    (1) A HALF-WAY BACK PROGRAM ShouLd BE ADDRESSED / TOWARDS RELEASE,

    (2) Independent state Reps, SHould Tour FACility once A Month

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

Ms. Barbara Moses, Esq.                David H. Frey, Sr. #0138
Seton Hall Law School                  P.O. Box #905 STU/MainT2
833 - McCarter Hwy.                    Avenel, N.J. 07001
Newark, N.J. 07102

                                              April 8th., 2012

Dear Ms. Moses;

        I read the abridged settlement proposal regarding
R.Alves vs. M.Main # 01-CV-0789 and want to offer my appreciation
for your effort.

        If at all possible, I would like to suggest another
point to the settlement agreement. Prior to '04 or '05 the method
for filing a grievance was, Residents would present the grievance
to their Treatment provider prior to commencement of Group and
the Therapist would sign as recipient and immediately issue
the Resident his signed copy.

        Since '04 or '05 the procedure is, Residents are to
place their grievance into a designated "BOX" located outside
the housing units. Unfortunately, far to frequently grievances
are simply ignored, and without a signed copy the Resident is
left to flounder. As my understanding of the procedures for
filing a civil action against D.O.C. or D.H.S., the Courts insist
a Resident/Inmate exhaust all institutional remedies, before
proceeding to litigation.

        Thanking you in advance, for your time and any effort
you may graciously provide in this matter. I will remain;

Sincerely Yours,

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name:  David Frey

Signature:  *(signature)*

Resident Identification Number:  0138

Date:  April 25, 2012

Comments:

I object to this settlement, as having read the abridged proposal in R.Alves Vs. M.Main.

The only substantial fact is, on my behalf you have agreed to hire a myriad of DHS apathetic, bureaucrats who's primary objective is their pay check. Given Dr. M. Main has been a consistent irritant to the majority of the Resident population, with minimal success in releasing Residents in his decade in charge, should there not be some consideration in demoting/replacing Dr.Main?

I object to this settlement as it dose not address any IMMEDIATE conditions. The conscious, intentional act of J. Johnson DOC Adm. in creating chaos in housing. Where some 84 Residents are compelled to utilize three(3) occasionally operating Microwave ovens. While refusing to RE-allow Residents to possess immersion heaters. Or purchase microwaves.
The Medical care here is recognized as profit driven.

When more Residents are released via demise, then treatment, its obvious.

This settlement dose not address the FAVORITISM utilized by DHS/DOC staff in work assignments. Where toadies and confidential informants are given plumb positions.

This settlement does not address the fact, Residents are no longer provided an immediate signed copy of grievances when submitted. Prior to '04 or '05 a Resident would have his Therapist sign as recipient and immediately issue the Resident his copy. Today, there is a "BOX" where DHS/DOC merely ignores any grievance with legal merit. Thwarting a Residents ability to seek civil redress, as DHS/DOC simply claims Resident failed to exhaust all institutional remedies.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Allington Gaye_

Signature: _[signature]_

Resident Identification Number: _487_

Date: _04-16-12_

Comments:

_I AM NOT IN AGREEMENT WITH_
_SETTLEMENT_
_I DISAGREE_

_See Over_ →

I completely object to the settlement.  It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen."  There is a complete lack of objective criteria to determine de-escalation of restraints and timely release. I also completely object to numerous meritorious passed over.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _L. GONZALEZ_

Signature: _Leonaliga L_

Resident Identification Number: _77_

Date: _4-15-2012_

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Daniel Goodman

Signature: Daniel Goodman

Resident Identification Number: 558

Date: 4/11/12

Comments:

The Resident handbook should include the institutional rules/restrictions, such as what property we are not permitted to have. Such an article was missing from the original Resident Handbook, and as a result we do not know what we are

not permitted to have. We cannot
like in a secure facility if we don't know
the rules.

The settlement addresses the inadequacy
of the treatment but fails to address
the civil commitment process, which as a
whole is unfair and unconstitutional. They
use static 99 to determine our recidivism
rate; static 99 is neither recognised as a
psychological test nor constitutional, they
use polygraphs to measure our progress in
treatment; not only are polygraphs
inadmissable in court (even though they
use them in this court), but polygraphs
discriminate against people with certain
mental handicaps. The settlement should
address our housing, the STU is supposed to
be a treatment center yet we live in a prison.



RECEIVED
APR 1 2 2012
BY: L. McK

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: BAfiEEK GRAHAM

Signature: *Rafieek Greehas*

Resident Identification Number: 083

Date: 4/11/12

Comments:

I object to this settlement because the DMHAS employees are using treatment/therapy as punishment. For instance, if we (residents/prisoners) don't do the

Assignments the way that DHS wants for their benefit, if we argue or yell at the D.H.S. staff members, etc..., we will lose our jobs (our means for survival) And be placed on Treatment Probation and Treatment Refusal and get kicked out of Process Group and/or Modules. Also, Dr. Merrill Main told everybody that it doesn't matter how much we've progressed in treatment — it doesn't mean we have a chance at freedom in the S.T.U. And if we don't kiss Dr. Merril Main's behind, he will make our stay in this prison-like lockup facility; which means "treatment isn't ~~treatment~~ treatment." But yet

*PUNISHMENT*.

2

## NOTICE OF PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, Ph.D. et al.*

This Notice is sent to you by Order of Judge Dennis M. Cavanaugh of the United States District Court for the District of New Jersey.

PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS.

SI USTED NECESITA TRADUCCIÓN DE ESTOS DOCUMENTOS AL ESPAÑOL, POR FAVOR PONGA UNA SOLICITUD PARA OBTENER AYUDA CON LA TRADUCCIÓN EN UNA DE LAS CAJAS DE 'SOLICITUD DE TRABAJADORA SOCIAL' MONTADAS EN LAS UNIDADES DE ALOJAMIENTO STU.

Judge Dennis M. Cavanaugh of the United States District Court for the District of New Jersey (the "Court") has preliminarily approved a proposed settlement (the "Settlement") in a case entitled *Raymond Alves, et al. v. Merrill Main, Ph.D., et al.*, No. 01-CV-0789 (the "Litigation"). If the Settlement receives final approval from the Court, the New Jersey Division of Mental Health and Addiction Services ("DMHAS"), which is responsible for the mental health treatment program at the Special Treatment Unit (the "STU") will be required to improve both the quantity and the quality of the therapeutic programming provided to residents of the STU. Such programming will be offered to all qualifying residents, regardless of the location of their living quarters. The Settlement also requires increased staffing of the STU, so as to provide a minimum of seven therapists for every fifty residents. In addition, the Settlement requires the STU treatment staff to provide individually tailored treatment that adequately meets the therapeutic needs of each resident; to adopt objectively measurable pre- and post-module testing; to provide test results promptly; and to provide residents, on a regular basis, with an estimate of the time required to complete their treatment goals, modules, and phases. The Settlement provides for the appointment of a Treatment Ombudsperson to investigate and address complaints regarding treatment-related issues. Further, the Court will appoint an independent Monitor who will conduct annual inspections of the treatment program at the STU to determine whether DMHAS is in compliance with the terms of the Settlement.

On August 6, 2012, Judge Cavanaugh will conduct a hearing to determine if the Settlement should be finally approved as fair, adequate, and reasonable (the "Fairness Hearing").

As a resident of the STU, committed or confined pending commitment pursuant to the New Jersey Sexually Violent Predator Act, you are a member of the class that was certified by Judge Cavanaugh on March 29, 2012 (the "Class"). All members of the Class will benefit from the Settlement, and be bound by it, if it is finally approved by the Court. This Notice explains the nature of the Litigation, describes the terms of the proposed Settlement, and informs you of your rights as a member of the Class, including your right to submit objections or comments regarding the Settlement in advance of the Fairness Hearing. *Any such objections or comments must be either postmarked or deposited in a Social Work Request box at the STU by May 14, 2012 in order to be considered by Judge Cavanaugh at the Fairness Hearing.*

## FREQUENTLY ASKED QUESTIONS

**1.    What is the purpose of this Notice?**

The purpose of this Notice is to explain the Litigation and inform you of the terms of the proposed Settlement and your rights as a member of the Class, including your right to submit objections or comments regarding the Settlement in advance of the Fairness Hearing.

**2.    What is the Litigation about?**

The Litigation is a civil rights class action in which three Representative Plaintiffs—Raymond Alves, Michael Culbreth and Derrick Sessoms—assert claims on behalf of the Class against the New Jersey officials who are responsible for the treatment program at the STU.  Plaintiffs allege that these officials have failed to provide the minimally adequate mental health treatment required by federal and state law before the government may subject a person to indefinite civil commitment on the basis of a mental health diagnosis.  Plaintiffs further allege that the mental health treatment program at the STU is so inadequate as to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Double Jeopardy Clause of the Fifth Amendment; the Cruel and Unusual Punishments Clause of the Eighth Amendment; the Americans with Disabilities Act, 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794; the New Jersey Constitution; and N.J.S.A. §§ 30:4-24, 30:4-24.1 and 30:4-27.34.

**3.    What has happened in the Litigation?**

The Litigation began on March 9, 2001, when STU resident Raymond Alves filed a *pro se* complaint against various New Jersey officials responsible for the STU.  On July 17, 2002, at Judge Cavanaugh's request, the Seton Hall University School of Law Center for Social Justice (the "CSJ") agreed to represent Mr. Alves, together with another STU resident, and shortly thereafter the law firm of Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., now known as Gibbons, P.C. ("Gibbons") joined as co-counsel.  An Amended Complaint was filed on October 25, 2002, raising various treatment-related claims against the New Jersey officials responsible for the mental health program at the STU.  The Amended Complaint also raised claims against officials and employees of the New Jersey Department of Corrections ("DOC") regarding the living conditions at the STU facility in Kearny, New Jersey, where Mr. Alves resided, and the conduct of certain DOC officers employed there.  The defendants moved to dismiss the Amended Complaint.  On November 17, 2003, Judge Cavanaugh granted the motion in part and denied it in part.

From 2003 to 2005 the parties engaged in formal discovery.  In addition, the plaintiffs retained an expert, Dr. Robert Prentky, who inspected the Kearny facility in May 2004.  On October 28, 2004, the plaintiffs filed a motion to amend the Amended Complaint to seek class action status, and to certify a class.  On April 12, 2005, in response to a suggestion from the Court, the parties agreed to pursue settlement negotiations, and the plaintiffs withdrew their motion.  Counsel for both sides entered into a period of intensive negotiations, supervised by Magistrate Judge Mark Falk.  On April 3, 2008, the Court approved the appointment of a joint neutral expert to assist in

2

the settlement process and issued an order governing the manner in which she would conduct her evaluation. On December 29, 2008, the expert, Dr. Judith Becker, issued her final written report.

Settlement negotiations were suspended in the spring of 2010, when Mr. Alves and other residents were moved from the Kearny facility to the current STU in Avenel, New Jersey, but resumed later that year. Based in part on the move, the DOC officials named as defendants in the Amended Complaint took the position that the claims against them were moot. Judge Falk urged the parties to work towards a settlement of the treatment-related claims against the officials responsible for the mental health treatment program at the STU. Counsel then renewed their efforts to reach a settlement with respect to those issues.

On January 20, 2012, at a hearing attended by the Representative Plaintiffs (via video-conference), counsel for both sides informed Judge Falk that they were prepared to execute a formal Settlement Agreement (the "Agreement"), which they did on February 3, 2012. On February 14, 2012, pursuant to the Settlement Agreement, the Second Amended Complaint was filed, formally adding Mr. Culbreth and Mr. Sessoms as named plaintiffs, seeking class action status, and updating the plaintiffs' claims concerning the mental health treatment program at the STU. The defendants named in the Second Amended Complaint are Merrill Main, Ph.D., in his official capacity as Clinical Director of the STU; Jennifer Velez, in her official capacity as Commissioner of the New Jersey Department of Human Services ("DHS"); Lynn A. Kovich, in her official capacity as the Assistant Commissioner and Deputy Director of the DMHAS; and Jeffrey S. Chiesa, in his official capacity as Attorney General of New Jersey. The Second Amended Complaint does not include any claims against the DOC or its officials, nor any claims concerning the physical facilities at the STU.

On March 29, 2012, Judge Cavanaugh certified the Class, consisting of all persons who are civilly committed or confined pending commitment to the STU pursuant to the NJSVPA, with Messrs. Alves, Culbreth and Sessoms as Representative Plaintiffs. The Court also appointed CSJ and Gibbons as Class Counsel, directed them to send this Notice to each member of the Class, and scheduled the Fairness Hearing to take place on August 6, 2012.

During the pendency of the Litigation, a number of STU residents filed claims that overlapped or were similar to the claims filed by Mr. Alves. Many of these cases were consolidated, in whole or in part, with the Litigation. Other STU residents filed additional documents with the Court, some of them supporting Mr. Alves' position or asserting similar claims of their own.

## 4.      Who will be included in the Settlement?

If the Settlement receives final approval from the Court, it will be binding on all members of the Class and on all of the defendants named in the Second Amended Complaint and their successors in those offices (the "Settled Defendants"). In other words, the Settlement will resolve the claims set forth in the Second Amended Complaint on behalf of every member of the Class. The Settlement will *not* affect claims by individual residents that are outside of the scope of the Second Amended Complaint, such as tort claims, *habeas corpus* petitions, or challenges to civil commitment under the NJSVPA by an individual resident. Nor will the Settlement prevent residents from filing or pursuing claims against DOC officials or employees.

3

**5.**    **Who is Class Counsel?**

The Court has appointed the CSJ and Gibbons to represent the Class.  If you have any questions, you may contact Class Counsel:

>   **Barbara Moses, Esq.**
>   **Seton Hall University School of Law**
>   **Center for Social Justice**
>   *833 McCarter Highway*
>   Newark, NJ 07102
>   (973) 642-8700
>
>   **Lawrence S. Lustberg, Esq.**
>   **Jonathan Manes, Esq.**
>   **Gibbons P.C.**
>   One Gateway Center
>   Newark, NJ 07102
>   (973) 596-4500

**6.**    **What are the Benefits of the Proposed Settlement?**

The Settlement Agreement is a lengthy and complex document.  You may obtain a copy of the complete Agreement by placing your request in a Social Work Request box at the STU.  This Notice provides a summary of some of the key terms of the Agreement.

**a.**    **Individually Tailored Treatment**

If the Settlement is finally approved by the Court, treatment staff at the STU will be required to adopt and employ clinical assessments and provide individually tailored treatment that adequately meets your therapeutic needs.   Any final report, recommendation, or determination for treatment, treatment status, phase designation, phase progression, and/or disciplinary action must be communicated to you by treatment staff, both orally and in writing, within fifteen (15) days of such action.  Moreover, treatment staff must adopt objectively measurable pre- and post-module testing, provide you with a copy of your test results within fifteen (15) days of the completion of the post-module testing, and discuss your results in process group within thirty (30) days from the completion of the module.

Further, you will be provided with an updated and accurate Residents' Guide which will include, among other things, a description of the treatment program, including process groups, treatment modules, program phases, and the estimated times for completion of each phase. This Guide will also include an explanation of the ways in which you may request individual treatment sessions.

**b.**    **Comprehensive Initial Treatment Plan**

The treatment staff will be required to produce a comprehensive initial treatment plan for you

4

within forty-five (45) days of entry of an order of final commitment. If you have already been committed but have not yet received a comprehensive treatment plan, you will be entitled to such a treatment plan within forty-five (45) days after the Settlement is approved. Your comprehensive initial treatment plan must be tailored to your individual needs as determined by the treatment staff, and will include and incorporate your past treatment progress and evaluations, if available, including prior treatment at the Adult Diagnostic and Treatment Center. Moreover, you will be provided with specific and individualized recommendations regarding your treatment goals, the objective criteria necessary to meet these goals, and *anticipated time frames for completion of both the objective criteria and your ultimate goals.*

c. **Six Month Review by Treatment Team**

Your comprehensive treatment plan will be reviewed by your treatment team every six (6) months and will be followed within fifteen (15) days by a meeting with you. During your meeting, your treatment team will review your progress, discuss new treatment goals for the next six months, including specific curricular recommendations, and provide you with an *estimate of the time for completion of your treatment goals, modules, and phases,* based on an individualized assessment of your participation in treatment, with the assumption that you will fully participate in treatment.

If you were subject to restrictions under modified activities programming ("MAP") at any time during the past six months, your treatment team will review your progress through MAP; the impact, if any, that your time on MAP may have on your phase designation; and the steps that you should take to avoid future MAP restrictions.

Additionally, the treatment team will discuss with you any recommendations made to the Treatment Progress Review Committee ("TPRC") for your progression in phase designation, a description of the recommended phases, and your ability to enroll in modules within the recommended phase while official designation change is pending upon TPRC review.

d. **Annual Review by TPRC**

The Treatment Progress Review Committee ("TPRC") will conduct an annual review of your treatment plan and will produce a written report and recommendation, including a phase designation recommendation. Recommendations for phase 3 or higher will be submitted to a Clinical Assessment Review Panel ("CARP") for approval. Your treatment team will deliver the final TPRC report to you within fifteen (15) days of receipt from the TPRC or CARP. In addition to delivering the written report, the treatment staff will explain it to you, including the following:

(i)   Your current phase designation and any change in designation;

(ii)  The requirements and evaluation criteria for progression in each phase, along with *an estimated time frame in which you can complete your current phase,* based upon an individualized assessment of your participation in treatment with the assumption that you will participate in treatment;

5

(iii)  Specific, individualized recommendations for specific treatment goals and an objective criteria necessary for meeting those goals, including an estimate of the time required for you to complete both the objective criteria and the goals;

(iv)  Specific curricular recommendations and an estimate of when the recommended module(s) will next be offered and available to you; and

(v)  Any recommendations regarding your potential post-discharge placement file or discharge plan.

e.  **Overall Course of Treatment Not to be Extended**

The treatment program at the STU is currently divided into five (5) phases, from Phase 1 ("Orientation") to Phase 5 ("Transition"). If the Settlement is finally approved by the Court, DMHAS will be required to notify Class Counsel of any proposed changes to the phase designations in advance, and will not be permitted to use any such changes to extend the overall course of treatment or to keep residents in the program any longer than they would be under the current phase designations.

f.  **At Least Twenty Hours of Therapeutic Programming per Week**

If the Settlement is finally approved by the Court, every resident not on Treatment Refusal Status or subject to restrictions under MAP will have the opportunity to receive a minimum of twenty (20) hours per week of professionally led (or in the case of self-help groups, professionally monitored) therapeutic programming. This programming will be made available to you regardless of the location of your living quarters and will encompass sex-offender-specific, mental health, recreational, and rehabilitation/vocational programming, and will include, *at a minimum*:

(i)  Three (3) ninety (90) minute process group sessions per week;

(ii)  One (1) to two (2) ninety (90) minute modules per week, if therapeutically appropriate;

(iii)  Professionally monitored self-help groups for at least ninety (90) minutes per week, provided willing and appropriate Residents are available to facilitate self-help groups; and

(iv)  Regularly scheduled community meetings.

Unstructured recreational activity will not count as "therapeutic programming" for purposes of the 20 hour per week minimum. At least eighty-seven percent (87%) of the scheduled process group meetings must actually meet during the calendar year. Such meetings must utilize the full time periods for which they are scheduled and take place in designated meeting rooms providing a reasonable degree of quiet and privacy.

DMHAS will make available a minimum of one (1) to two (2) module(s) in every sixteen (16) week module cycle for residents not on Treatment Refusal Status or MAP, so long as (a) the module is currently recommended in that resident's comprehensive treatment plan, six month review, TPRC review, or has been mandated by court order; and (b) there is sufficient space available in the recommended module (or DMHAS has offered a self-study module).

6

Your post-module testing must be conducted within seven (7) days of completing either a class-based or self-study module.

### g. MAP Groups

If you are subject to Tier or Wing MAP, you will be placed in a MAP Group that meets at least twice per week. *If you are subject to Program MAP, you will continue to attend all of your regularly-assigned process group sessions and modules,* unless specifically contraindicated in light of the underlying behaviors that resulted in the MAP placement. In such cases, you will be informed of the reasons for the treatment restrictions, in writing, as part of your initial MAP Placement Review and at least every thirty (30) days thereafter so long as the restrictions remain in place. Further, you will be placed in a MAP Group that meets at least twice per week until such time as you are permitted to resume attendance at all of your regularly-assigned process group sessions and modules.

### h. Increased Staff Ratios

If the Settlement is finally approved by the Court, DMHAS will be required to hire and retain sufficient additional treatment staff to maintain a ratio of seven (7) therapists for every fifty (50) residents who are actively participating in treatment. Treatment staff must meet all qualifications for their job titles (including licensure or certification, where required) specified in the New Jersey Civil Service standards.

### i. Vocational Training

DMHAS will conduct individualized vocational assessments of each resident within 45 days of final commitment, evaluate his skills and strengths, and develop a plan for building on them through vocational training. All residents who are not on Treatment Refusal *Status or* subject to MAP will be offered an average of ten (10) hours of vocational activities per week, including institutional jobs. Additionally, DMHAS will solicit and arrange for outside vendors to provide onsite vocational offerings (to be paid for by interested residents), provided physical plant space is available.

### j. Educational Opportunities

You will be entitled to pursue an educational curriculum for *at least* ten (10) hours per week, including formal instruction, homework time, and self-help programming. If you are interested in remedial education or GED coursework, you will be provided such education within six (6) months of your initial request. If you wish to pursue post-secondary education within the facility (*e.g.*, college courses), you may do so, as long as DMHAS is not required to pay for the program and it does not interfere with your therapeutic goals.

### k. Recreational Opportunities

DMHAS will conduct annual surveys to assess your desired recreational activities. Staffing will be provided for professionally facilitated recreational activities six (6) days per week.

l.   **Post-Discharge Preparation**

If the Settlement is finally approved, social work staff will be required to use the information contained in your potential post-discharge placement file to develop a discharge plan for you: when recommended by the TPRC, when ordered by a court, or when you reach Phase 4.  In developing the discharge plan, the social work staff must assist you in finding housing and obtaining support.

m.   ***Treatment Ombudsperson***

If the Settlement is finally approved, a Treatment Ombudsperson will be appointed and will establish a resident complaint system for treatment issues.  The Treatment Ombudsperson will establish and implement procedures for eliciting, receiving, processing, responding to, and resolving complaints from you, your family members, and other interested citizens concerning treatment conditions at the STU. DMHAS will create a standardized form for treatment-related complaints and provide this form to any resident upon request. Further, DMHAS will submit resident complaint forms directly to the Treatment Ombudsperson.

The Treatment Ombudsperson will determine whether a complaint is within the scope of the Settlement and send the resident a standard notice of this determination within thirty (30) days of receipt of the complaint form.  The Treatment Ombudsperson will then investigate any complaints within the scope of the Settlement and take action appropriately tailored to the nature of the resident complaint, which may include:

(i)    Communicating with the appropriate administrator or staff at the STU;
(ii)   Gathering information from the appropriate administrator or staff at the STU;
(iii)  Informing the appropriate administrator or staff of the resident's complaint;
(iv)   Communicating with the complaining resident to further investigate the nature of complaint; and/or
(v)    Taking such other measures as the Treatment Ombudsperson deems appropriate to investigate or resolve the resident complaint.

The complaining resident will be timely notified by the Treatment Ombudsperson of any additional information or results obtained. Moreover, the Treatment Ombudsperson will correspond with the Director of the STU regarding issues in the treatment program that are sufficiently systemic from a review of the residents' complaints.

In addition to documenting all oral correspondence, the Treatment Ombudsperson will attend a community meeting at least twice a year in order to explain his or her role, answer questions, and inform you of the status of any systemic treatment problems reported to the Director of the STU.

n.   **Independent Monitor**

If the Settlement is finally approved, ***an independent Monitor will be appointed by the Court*** to monitor the Settled Defendants' compliance with the terms of the Agreement.  No

8

person who has been associated with the underlying Litigation, or who has a business relationship with the Settling Defendants, may be appointed as the Monitor.

The independent Monitor will conduct five (5) annual inspections of the STU (unless the monitoring period is shortened or lengthened in accordance with the Agreement) to determine whether the Settled Defendants are in compliance or not in compliance with the requirements of the Agreement. The first annual inspection will be conducted no later than nine (9) months from the final approval of the Settlement. Each inspection may last up to five (5) business days and will be followed by a written report determining whether DMHAS is in compliance with each material provision of the Agreement, describing the steps taken by DMHAS to achieve compliance, describing any change in circumstances affecting DMHAS's ability to comply, summarizing information learned from the residents, and summarizing information learned from DMHAS staff. During the inspections:

(i)    The Monitor will have *full access* to the facility. The Monitor may not be denied entry to the STU or any portion thereof except for reasons of security, in which case the Monitor must be given full access as soon as soon as the circumstances that caused the security concern have been abated.
(ii)   The Monitor will have *full access* to the residents who are members of the Class, may review their treatment records, and may conduct interviews with residents.
(iii)  The Monitor may interview any DMHAS employee working at the facility, including treatment staff, administrative staff, medical services staff, and vocational instructors. *All DMHAS employees must communicate and cooperate with the Monitor*.

## 7.    What is NOT Included in the Settlement?

The Settlement deals specifically with the treatment program at the STU. The Settlement will not require any changes to the physical facility, nor to the conduct of the DOC personnel responsible for security at the STU. This does not mean that residents will be required to give up any claims they may have against the DOC, its officials, or its employees. Those claims are simply not part of the Settlement and must be pursued through separate litigation.

## 8.    Who Will Pay for the Settlement?

The Settled Defendants will be responsible for the costs of the Settlement, including the cost of the Monitor, subject to appropriation of sufficient funding by the New Jersey Legislature. The Agreement requires the Settled Defendants to seek such funding from the Legislature as one of DHS's top priorities. The Agreement also contains provisions specifying the parties' rights and obligations in the event the Legislature fails to appropriate the necessary funds, including the plaintiffs' right to declare the Agreement void, and resume litigation, with respect to any provision that the Settled Defendants do not comply with as a result of a budget shortfall or otherwise.

9.      **How is Class Counsel being paid?**

If the Settlement is finally approved by the Court, the Settled Defendants will pay CSJ the sum of seventy-eight thousand dollars ($78,000.00) in attorneys' fees.  This represents a small fraction of the actual costs and fees accrued by CSJ over the course of the Litigation.

10.     **When is the Fairness Hearing?**

A Fairness Hearing will be held to determine whether final approval of the Settlement should be granted. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will consider any timely objections made concerning the Settlement.  The hearing will take place before Judge Cavanaugh on August 6, 2012, at 9:30 a.m., or as soon thereafter as practicable, in the United States District Court for the District of New Jersey, U.S. Post Office and Courthouse, 1 Federal Square, Newark, New Jersey, 07101, Court Room PO 4. The time and date of this hearing may be continued or adjourned. **YOU ARE NOT REQUIRED TO ATTEND THIS HEARING.  ANY AND ALL PROPERLY SUBMITTED OBJECTIONS BY CLASS MEMBERS WILL BE PRESENTED TO THE COURT AND CONSIDERED, REGARDLESS OF WHETHER OR NOT THE OBJECTOR PERSONALLY APPEARS.**

11.     **How Can I Object to the Proposed Settlement?**

If you want to object to or comment on the Settlement, you may complete the enclosed form entitled Class Member's Objections/Comments re Proposed Settlement, and mail it to Class Counsel at the following address:

>  *STU Settlement*
>  **c/o Seton Hall University School of Law**
>  **Center for Social Justice**
>  **833 McCarter Highway**
>  **Newark, NJ 07102**

You may also deposit your written objections/comments in a Social Work Request box at the STU, in which case the staff of the STU will mail it for you, free of charge. Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Your objections/comments will not be considered unless they are either postmarked or deposited in a Social Work Request box at the STU by May 14, 2012.*

12.     **What if I Have More Questions?**

If you have questions about this Notice, or want additional information, you may contact Class Counsel.  You may also consult your personal counsel, if any.  If you want to see the complete Settlement Agreement, you may place your request in a Social Work Request box.  *You should not contact the Court, the Settled Defendants, or their counsel.*

10

Fr: *Rafeek Grahan #000083*
  Special Treatment Unit */E.J.S.A - AD-SEg-unit*
  8 Production Way, Trl #2
  CN 905
  Avenel, New Jersey 07001

To:   STU Settlement
      c/o Seton Hall University school of Law
      Center for Social Justice
      833 McCarter Highway
      Newark, New Jersey 07102

      Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
          **Objection to Purposed Settlement**

1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives
    of the Class. These residents do not, and cannot, represent the population as it stands. They
    have not experienced what separate classes of residents have experienced, therefore, making
    it impossible for the above named residents to speak on behalf of the population. There
    should be residents added to the representatives, listed above, that reflect the following
    Classes of persons; a) Juveniles that were civilly committed; b) Residents that were
    committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have
    been informed that treatment would not diminish their risk to re-offend, therefore, rendering
    this commitment a life sentence; d) Persons that have been committed from society (that
    were on the streets) when they were selected for commitment; e) Treatment Refusals are not
    represented; f) MAP residents are not represented; g) and South Unit residents are not
    represented.

    *I object to this settlement, Because
    I have been Encarserated, since I
    was a Juvenile, neser released,
    civelly committed, for 11 years plus* *on back*

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation
    after the successful completion of Modules. As the Settlement stands now I do not agree with
    module testing only. At the completion of all modules, when a resident has successfully
    completed the module, there should be some kind of notice given that the resident's risk to
    re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially,
    lower the resident's risk assessment. This should be noted and written verification should be
    given to the resident, in addition to, this verification being placed in the residents file.

passed 2 Lie detector Test, passed all recommended therapy groups, and still isn't considered to be a "resident," who is ready for release.

I object, because, there's no talk of outpatient programs, furloughs or any talk os Consideration of someone Being released from) the East Jersey State Prison-ad-seg-unit, who greatly to be release. Etc.

Sincerely spoken

Raliek Graham #000083
East Jersey State Prison ad seg unit
S. Juli
C.M. 005
Rahway, New Jersey 07001

Fr. *Dion Graves 592*

Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001

To:   STU Settlement
      c/o Séton Hall University school of Law
      Center for Social Justice
      833 McCarter Highway
      Newark, New Jersey 07102

      Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
          **Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

   _____

   _____

   _____

   _____

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

To Seton Hall/law                                    4/17/12

first off I have to say that this place is
Illegal in all of its nature. I have been locked
up since a teenager. last year I completed
a 30 year sentence, I was in the State prison
not A.D.T.C. for they said I was not a
repetitive offender.   This place is not a
place for those who need treatment. We are
locked in cells, there is a count every few
hours and we are surrounded by the D.O.C.
and Barbed wire, But this is not Double Jeopardy
huh.   Most of the people who run these groups
are not Qualified, and they have personal
relations with the correctional officers that
work here. These types of relationships cause
a conflict of Interest when it comes to
the prisoners/slaves who reside at this
prison. Most of the people that run these groups
are One Dimensional sadits who get off hearing
the same graphic stories every session, they're
Right, we're wrong, Because there's no Compromise
when there's a paycheck Involved.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

STU Settlement
c/o Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

Ian Marx, Esq
Greenberg Traurig
200 Park ave ; PO Box 677
Florham Park, NJ 07677

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: GLENN GREEN

Signature: [signature]

Resident Identification Number: 523

Date: 4/14/12

Comments:

I am against this settlement and I want to go to trial if Half Way Houses are not part of settlement. I also insist that reduction of restraints be systematic as we advance in phase with furloughs beginning at phase 3. Age also must

over

be a major reason to be released using the age of
60 as age of release.
    Finally there must be a guarantee of release
after finishing program.

2

Gilbert T. Greenfield, Jr.
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001

April 7, 2012

**Greenburg Traurig, LLP**
200 Park Ave.
P. O. Box 677
Florham Park, New Jersey 07932

**Seton Hall University**
School of Law
Center for Social Justice
833 McCater Highway
Newark, New Jersey 07102

**Gibbons P.C.**
One Gateway Center
Newark, New Jersey 07102

Re: Alves, et al., v. Main, et al., No. 01-cv-0789 (DMC) (MF)

To whom it may concern;

Please allow me to introduce myself. My name is Gilbert T. Greenfield, Jr., and I am presently confined under New Jersey's Sexual Violent Predator's Act. ("SVPA") I am incarcerated at the Special Treatment Unit ("STU") as those litigants that you represent. On April 2, 2012, Justice Cavanaugh issued an order in my civil action, No. #09-cv-04983 (DMC), ordering that my case be consolidated with the above referenced action. I was informed, by several of your clients, that there is a purposed settlement agreement and if I have any reason as to why I would want to agree or disagree, with the settlement, I should then submit these reasons to you in a timely manner.

After reading the purposed settlement agreement I was flabbergasted and sickened at the callus disregard in the states approach to the operation of the STU and treatment of the residents housed within the facility. Therefore, below, I have outlined several for why I disapproval of the purposed settlement agreement. I apologize in advance for the lengthiness of this letter, however, I believe that it better to give the information so you will have it, then not give you the information and you needing it.

With the above being said, I disagree with the purposed settlement agreement. The reasons for my disagreement are as follows;

Gilbert T. Greenfield, Jr.
Letter of Settlement Disagreement

1.  the Settlement does not clarify or address the Inter-agency Oversight Committee as
    established in N.J.S.A. §30:4-27.34 (c) Appropriate representatives of the Department of
    Corrections and the Department of Human Services shall participate in an interagency
    oversight board to facilitate the coordination of the policies and procedures of the facility;
    (d) Notwithstanding the provisions of section 10 of P.L. 1965, c. 59 (C. 30:4-24.2) or any
    other law to the contrary, the rights and rules of conduct applicable to a person subject to
    involuntary commitment as a sexually violent predator pursuant to P.L. 1998, c. 71 (C.
    30:4-27.24 et seq.) shall be established by regulation promulgated jointly by the
    Commissioner of Human Services and the Commissioner of Corrections, in consultation
    with the Attorney General. The regulations promulgated under this subsection shall take
    into consideration the rights of patients as set forth in section 10 of P.L. 1965, c. 59 (C.
    30:4-24.2), but shall specifically address the differing needs and specific characteristics
    of, and treatment protocols related to, sexually violent predators. In developing these
    regulations, the commissioners shall give due regard to security concerns and safety of
    the residents, treatment staff, custodial personnel and others in and about the facility.
    However, as of date this committee has failed to include an appeal process to challenge
    any decisions made by said committee. Additionally, we have yet been provided with the
    ability to present issues of concern to the committee for review, specifically the decision
    of DOC to deny the resident the ability to own and possess computers. DOC just issued a
    decision with no regard for treatment and the re-integration process associated with the
    expected release of the residents.

2.  The residents here at the STU do not have access to a Human Right Committee as in
    other civil commitment facility within New Jersey. Therefore leaving the residents here
    at the STU with no one to turn to regarding their issues for treatment, lack there of, an
    advocate to assist them with treatment concerns, ect. This is an extremely important issue
    that is not addressed in any manner in the purposed settlement agreement. (Mental Health
    Disability Law 2nd Ed, §3A-3.1d; (Wyatt v. Stickney **325 F. Supp. 781;1971 U.S. Dist.
    LEXIS 14217 Civ. A. No. 3195.** )

3.  The settlement does not provide for the assessment of those residents that were and have
    been in treatment for many years and are now civilly committed and this programs new
    changes do not account for what the legacy (residents that have been committed for
    years) resident has completed. The settlement only speaks to the residents that are getting
    committed.

4.  The settlement have provisions for a treatment ombudsman, however, this person is only
    permitted to address issues within the settlement agreement. Therefore, the settlement
    does not account for a treatment advocacy for the residents incarcerated under the SVPA
    to address their therapeutic needs.

5.  The residents that are selected to represent the class do not fully represent the population
    as a whole. There is no resident in the listed class representatives that can effectively
    represent the class of resident that I belong to, and I am asking that the list of class
    representatives be modified to include residents that are similarly situated to my situation.
    I am one of the residents that were told that treatment would not diminish his risk to re-

Gilbert T. Greenfield, Jr.
Letter of Settlement Disagreement

offend. I am also one of the residents that graduated from the Adult Diagnostic and Treatment Center with thirty-one (31) years of hands on treatment. However, I have never acted out while civilly committed and yet I am segregated and denied treatment in totality. I am not the only resident that is faced with this dilemma, yet this class of persons is not represented.

6. Within the purposed settlement agreement, is a section references funding. I object to this section, in its entirety, because several district courts have already established that budgetary shortcomings due not justify not providing the civilly committed with treatment. This is noted as far back as the Wyatt v. Aderholt, 1974, 5th Cir. And the most recent being Turay v. Seling, 1998, 9th Cir. Therefore, why does the State get a break when it comes to the SVP's of New Jersey.

7. Use of the plethysmograph should not be considered at any cost. There are several *simple* reasons as to why;  a) We are men and we have been incarcerated for more then ten years, and we are susceptible to outside simulation from many different and this fact alone could and will create a false positive to any one who takes the test; b) Many of the resident are out of shape and have medical problems that effect their blood pressure and circulation and this can and will probably cause false positives; c) There is an equal protection aspect to the application to this test to the SVP's only, simply because they do not put all other sex offender through the same diagnostic testing.

8. The application, and adherence, of the HARE, PCLR psychopathy test is in of itself, is nothing more then a needless waist of taxpayer's money. The HARE test, as quoted by Robert hare himself, was not designed for the purposes that it is being used, the test was designed for clinical studies and there was not, and is not any real world application found to be creditable to the test. Therefore, the states desire to use said test is nothing more then a roadblock to keep individual locked up. With this being said, this test should be removed from the purposed settlement agreement.

9. There is nothing in the settlement that controls the behavior of the Department of corrections, leaving the fox to protect the hen house. DOC can and does stop groups for cell searches that are routine, they stop groups for the dogs to come through the facility and all of this amounts to the denial of the therapeutic experience and essentially counter therapeutic.

10. Our right to habilitation is not covered in the purposed settlement agreement. Educational needs such as our ability to purchase and possess our own computers in our cells w/limited internet for legal and educational reasons or in the interim w/o internet access, so we can do our legal and therapeutical work is totally overlooked. In the absence of habilitation there is a denial of treatment, therefore, violating the right to treatment to the extent to be cured of improved to the point were a resident could be released.

11. None of the recommendations made by Dr. Becker were included, or were they agreed to, within the purposed settlement agreement. Since Dr. Becker pointed out several areas were the program was less then minimally adequate don't you think that these areas

Gilbert T. Greenfield, Jr.
Letter of Settlement Disagreement

should be within the purposed agreement. Because they are not, I once again disagree with the Purposed settlement agreement.

The issues above are in specific order of importance and all the issues are of equal value. I am grateful that you allowed me to present some type of input and I hope that what I have presented has some kind of input into our plight.

I thank you for you time patience and understanding in regards to our situation and due to the past behaviors of the facility I am requesting that you please acknowledge receipt of this letter. I anxiously await your response.

Respectfully Submitted;

Gilbert T. Greenfield, Jr.

gtg
c:  File

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Steven Grohs

Signature:

Resident Identification Number: 594

Date: April 18, 2012

Comments:

_____

_____

_____

_____

**SEE ATTACHED THREE PAGES**

Steven Grohs, #594, Special Treatment Unit, Annex

INRE:       Alves/McGarrry/Bagarozy, *et al.* v. Ferguson, *et al.* (consolated)
            U.S. District Court, District of New Jersey, Docket No. 01-0789

**OBJECTIONS TO FINAL REPORT OF JUDITH V. BECKER, Phd.**
**Dated December 29, 2012**

---

ACCESS TO THE COURTS

Dr. Becker briefly noted that: "There is a law library available at both sites. "Residents have access to Lexis/Nexis, however, ... that there are certain law treatises that are required but were not available. (it should be noted that this evaluator does not claim expertise in evaluating what a state-of-the-art library should contain)." **Report, Section 5, Page 17, ¶ 3.**

The current practice at the Annex for a resident to access the courts requires a resident to submit a written request. The Special Treatment Unit ("STU") provides residents with a resident clerk to assist those residents who need such assistance. However, if a resident can demonstrate his knowledge of the law and that he has litigation experience, then the STU will allow the resident access to the Lexis/Nexis system. This writer has made such demonstrations and has such system access.

The Lexis/Nexis system consists on an external harddrive that is connected, via a USB port, to a computer in the education room. There is an inkjet printer provided for paper copies of the computerized material.

As partially noted by Dr. Becker, it is true that residents are neither provided with any practice forms nor any law treatises. The system identifies the existence of this material but it cannot be 'clicked on'.

The current practice of the STU falls extremely short of what is provided to pre-trial detainees or to state inmates, as this writer is familiar with these provisions from when he was a pre-trial detainee at the Camden County Correctional Facility and an inmate at South Woods State Prison. This writer also has been a practicing civil litigator, with trial experience, since the Year 1998.

Moreover, because the 'law library' is contained within the education room, which is a room about 10' x 8', actual access is completely dependent upon the activities and programs of education. In other words, if there is something important occurring in the room for education, such as, but not strictly limited to, testing, elevations, etc. ..., a resident cannot access what is the law library. This is an all to often common occurrence. Further, the provided printer is constantly out of ink with the STU failing to furnish ink for use in the 'law library' in which to make paper copies.

In a nutshell, adequate access to the courts is being consistently impeded or denied to residents, by the absence of necessary litigation material and ink, and the interference from educational activities and programs.

This writer would request that the STU law library be made more accessible to all residents, where it concerns updating the system to include adequate litigation materials, the provision of a working printer, and meaningful placement of the Lexis/Nexis system so as to receive no interference from education or from other departments (It is important to note that the staff in charge of operating the law library, Ms. Simms and Ms. Bravo, have done everything in their power to assist this writer but their efforts are minimized by the current practices of STU officials).

MEANINGFUL PLACEMENT OF RESIDENTS IN MODULES

Dr. Becker's final report does not recommend improvement of the current practice of the STU, where it concerns selection and resident placement in specific modules. **Report, Section 4, Pages 14-17.**

The STU is arbitrarily selecting residents to attend specific modules. The selection fails to consider whether the module will benefit the resident and, more often than not, a selection is made just to fill a seat. In so doing, the STU is depriving other residents from attending the model who may have actually benefit from the module.

For instance, this writer was selected to attend a money management module. The STU

made the selection to fill a seat because this writer has only been incarcerated since February 2007 and, before his arrest, he was employed as an electrical foreman responsible for the construction of million dollar projects and for the supervision of as many as 20 men. Further, in this writer's personal affairs, he properly maintained a savings and a checking account with PNC Bank. If the STU had considered this information, it would have never selected this writer for a money management module.

In theory, the STU is supposed to select modules that best suit the resident assigned to attend it. However, the current practice shifts the burden to the resident to prove that he is not going to benefit from a module the STU has selected him for. Moreover, when the resident attempts to demonstrate that he is not going to benefit from the module, the STU automatically assumes that the resident is in denial.

This writer would request that the STU be made to first ascertain whether the resident will benefit from any proposed module, which would include information supplied by the resident, before the resident is selected to attend any specific module.

4/18

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: DAVID A. Haggerty

Signature: *David Haggerty*

Resident Identification Number: 107

Date: 4/17/12

Comments:

① This resident is Totally against this Settlement and therefore Seeking a New modification to the Settlement in which would Satisfy this Resident and All other residents.

② this So called Settlement FAILED To Say residents about Release Plans and FurTHer discusses FurTHer Treatment.

3.) This Settlement also refused to ACKNOlage FINANCIAL COMPNSATION to all Residents.

4.) It also failed to SEE Residents who were TAKEN OFF THE street FOR So called THERAPUdic reasons and Inmates who have Completed there TREATMENT Centees and did it Successfully and were STILL deemed a "DANGER"

5.) there are no SUITaBle HalFway houses or Programs AVAIBle, to a resident and NO SuCH daily program are not AVAIBle (outside).

6.) Limited Residents are being released each Year, there are Residents that NEED TO be out and NO Longer NEED TO be Confind.

7.) this resident has been Comitted Now going on 13 years and WISHES MonTary Compinsation From each Defendent OF $25 MILLION Each. THis resident did not Comitt NO Crime and was TAKEN OFF THE street FOR PReventing a Victim, I did the right THing by doing So.

8.) I would Like To SEE FINANCIAL Compinsation For All residents we deseRVED For our SuFFering.

9.) FURTHER MORE I FIND THIS Settlement unfair and highly INSULTing and Seeking better ResuLTS THAT would fit us AlL!

10.) Discharge planning, Pre Release and A wide Variety OF Goverment agencies at our disposal for outside planning, HeaLTH Housing, Support NetwoRkS and 24 hours hot Lines in CASE OF!

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *Charles HAINES*

Signature: *Charles Haines*

Resident Identification Number: *184*

Date: *4-11-12*

Comments:

*I disagree with Settlement for STU Annex*

It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over.

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: RONALD HALULKA

Signature: *[signature]*

Resident Identification Number: 479

Date: 04/10/12

Comments:

I'm objecting - THEIR IS NO MENTION of LOSS RESTRICTIONS for Higher PHASES. PHASES 3, 4 & 5 SHOULD HAVE LESS RESTRICTIONS by being Able to go out of THE Facility Supervised UNTIL Resident IS PLACED IN A HALFWAY HOUSE RAN By STU.

IT SEEMS THERE IS A lack of Places
for RESIDENTS TO BE REALEASED TO. i.e,
HALFWAY HOUSES, programs. WHY DOES NOT
THE STATE SET UP THEIR OWN HALFWAY HOUSE?
THE Lack of PLACEMENT DRAGS OUT ANY
DISCHARGE TIME periods.

2

Fr: Walter Harrell #354    *Walter Harrell*
        Special Treatment Unit
        8 Production Way, Trl #2
        CN 905
        Avenel, New Jersey 07001


To:    STU Settlement
        c/o Seton Hall University school of Law
        Center for Social Justice
        833 McCarter Highway
        Newark, New Jersey 07102

        Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
            **Objection to Purposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

   Also, residents housed in D-wing who are physically/medically unable to care for themselves, who are basically deteriorating from their medical conditions are being held without reason. The Director, his staff, TPRC and the State's experts are still maintaining these residents to be High Risk offenders.

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.


                    "SEE ATTACHED SHEET"

3. The proposed settlement does not consider the length of time many residents have been already subjected to continued repeating of completed modules over and over for no obvious or apparent reason, other than to continue to hold them in this commitment process. And therefore, not being considered or recommended promotion in phase or release. The same applies in process groups, residents are constantly repeating themselves over and over, year after year, when/where does it end?

4. This proposed settlement has not considered or entertained the fact that the Director Merrill Main is responsible for the constant hopelessness warehousing and punitive environment of this program. His demeanor,attitude and abusive statements to groups of residents during community meetings "saying no matter how much treatment is done, none of you are leaving here".

5. This proposed settlement has not considered the recommendations from Dr. Beckers report, making this proposed settlement still reflect the unsatisfactory progress of this program in it's entirety.

6. Numerous staff has left voluntarily cause this Director and some members of his administration have refused to allow those former staff members to help residents progress in order to enter society. These former staff members refused to be a part of a program where the intent is to harm mentally by keeping them confined.

7. This Director, his staff and the TPRC has not at anytime recommended or supported any resident for release at anytime.

8. Nothing in this proposed settlement addresses the Constitutional, due process, civil/human rights violations that are still being allowed to exist in this program and proposed settlement.

9. This proposed settlement has not addressed the absolute abuse of an actuarial instrument Static-99R (Static-99 revised), which now has revised age weight included in the risk category. This instrument actually doesn't explain any meaningful risk level. Now with the age becoming a factor, offenders scores will decrease along with their risk level. This Director his administration and TPRC has continued to abuse the use of this instrument to continue to warehouse residents for long periods of time. Residents ages 40 to 59.9 will have one(1) point subtracted from their score. Residents ages 60 and older will have three(3) points subtracted from their score. With these subtractions, many residents will fall under the low and low-moderate risk category which are extremely low numbers. This instrument isn't based on any treatment guidelines and this administration and TPRC has not recommended residents released based on this instrument, though it is used to commit residents based on those risk levels. In the past 45 to 55 days, three residents have died and they all were over 60 years old. The intent and abuse by this administration of the life and liberty of these residents is an obvious abuse of human rights.

10. I oppose this settlement in it's entirety.

*Walter Harrell*

UNITED STATES DISTRICT COURT FOR
NEW JERSEY EASTERN DISTRICT

Michael Hasher
Special Treatment Unit
P.O. Box  905
Avenel, NJ. 07001
PH:732-504-8560

RE:  TO HAVE COURT FILED

| | |
|---|---|
| **MICHAEL HASHER, et.,al.** <br> **Plaintiff's** <br><br> **vs.** <br><br> **JON CORZINE., et al.** <br> **Defendants** | Civil Action No: <u>07-1212 (DMC) (MF)</u> <br> (Consolidated with case below). <br><br> Civil Action No:<u> 789 (DMC) (MF)</u>. |

Dear, Court Clerk:

    I, Michael Hasher am the Plaintiff in the above-entitled case, as you can see above, my case was consolidated with No:789 (DMC),  Please file the submission's below in the main file, in which the Judge is going to decide this consolidated case.

    Also, please send me a court filed copy that the below submission has been filed.

1.  Notice of Motion to Amend the Complaint.

2.  Affidavit in Support of Plaintiff's Motion For Leave to File a Amended Complaint.

## <u>CERTIFICATION:</u>

    I,  Michael Hasher, certify that the afore mentioned statements are true, and that I am aware that willfully giving false information or statements in this matter is subject to punishment.

    I, Certify that I  Michael Hasher, under perjury am mailing by way of U.S. Mail copies of this letter brief, and copies of the Texas Civil Commitment Program to all the parties mentioned below:

GIBBONS  P.C.               ATTORNEY GENERAL OF NJ
Attn: Manes & Lustebburg.      Attn: Jeffrey S. Chisa
One Gateway Cener         R.J. Huges Justice Complex
Newark, NJ. 07102          25 Market Street,  8 Floor.
PH:973-596-4500           Trenton, NJ. 08625
                         PH:609-984-3900

United States District Court of N.J.
Attn:Hon. Dennis M. Cavanaugh, U.S.D.J.
U.S. P.O. & Courthouse, Room 451
    One Federal Square
    Newark, New Jersey,  07101

RESPECTFULLY SUBMITTED:

*Michael Hasher*

Michael Hasher, Pro Se.

Date:<u>4-12-2012.</u>

# UNITED STATES DISTRICT COURT FOR
## NEW JERSEY EASTERN DISTRICT

Michael Hasher
Special Treatment Unit
P.O. Box 905
Avenel, NJ. 07001
PH:732-504-8560

**MICHAEL HASHER, et.,al.**
                              **Plaintiff's**
        **vs.**

**JON CORZINE., et al.**
                              **Defendants**

**AFFIDAVIT IN SUPPORT
OF PLANTIFF'S MOTION
FOR LEAVE TO FILE A
AMENDED COMPLAINT**

Civil Action No: <u>07-1212 (DMC) (MF)</u>
(Consolidated with case below).

Civil Action No: <u>789 (DMC) (MF)</u>.

MICHAEL HASHER., being duly sworn, deposes and says:

I am a resident at the Special Treatment Unit under the Sexual Violent Predators Act.(?SVPA?)

I am the Plaintiff in the above-entitled case. I make this affidavit in support of my motion for leave to file a Amended Complaint.

On March 26, 2012, Lead Plaintiff Michael Hasher had written the Court, Attorney General and the Law firm of Gibbons, P.C. (Jonathon M. Manes) complaining that he had not been informed that a Settlement and a Fairness hearing had been negotiated, on February 2012 between parties of the Set Hall Law School (Ms. Moses), Attorney General (Susan Doughty) and the two Attorney's from the Law Firm of Gibbons P.C., (Mr. Lustburg & Mr. Manes), also noted in Hasher letter was confirmation that the Lawyer's of Gibbon law firm, in their Certification to the Court stated that they had served all consolidated case's, and their lead plaintiff's, a copy of the Settlement & Fariness negotiations, and exhibit's A & B.  <u>**All of which wasn't true.**</u>

On March 28, 2012, Mr. Jonathan Manes, from Gibbons Law Firm, gave a written response letter to Mr. Hasher and the Court stating, that he hadn't been aware, until Mr. Hasher had written the Court and himself, that he was representing himself in his case, and that it was consolidated, however, he will be sending all submission to the court and a copy to Mr. Hasher and the plaintiff's in his case a copy of future filing's.

### THEREFORE:

Therefore:  As Lead Plaintiff in the consolidated case, proves that  knowone in the <u>Hasher</u> <u>v. Corzine</u> case had any input in the settlement, at all.  And strongly disagree with the settlement as is. And this is true with the <u>Bagarozy v. Harris</u> case  No. 04-cv-3066, that also consolidated with Raymond Alves case, we "All" disagree with this proposed settlement.

We Plaintiff's in the Hasher case, also disagree with the proposal of Gibbons Law Firm, to give special: Class Counsel Representative's being appointed to their client's of  Raymond Alves, Michael Culbreth, and Derrick Sessoms. We believe "ALL" plaintiff's in this consolidated case have suffered the same, and under the 5, 14 & 15 Amendment of the Constitution want to be compensated Equally, and that mean's both therapeutically and Compensatory damages. All the same...

## CERTIFICATION:

I,  Michael Hasher, certify that the afore mentioned statements are true, and that I am aware that willfully giving false information or statements in this matter is subject to punishment.

I, Certify that I  Michael Hasher, under perjury am mailing by way of U.S. Mail copies of this letter brief, and copies of the Texas Civil Commitment Program to all the parties mentioned below:

GIBBONS P.C.
Attn: Manes & Lustebburg.
One Gateway Cener
Newark, NJ. 07102
PH:973-596-4500

ATTORNEY GENERAL OF NJ
Attn: Jeffrey S. Chisa
R.J. Huges Justice Complex
25 Market Street,  8 Floor.
Trenton, NJ. 08625
PH:609-984-3900

United States District Court of N.J.
Attn:Hon. Dennis M. Cavanaugh, U.S.D.J.
U.S. P.O. & Courthouse, Room 451
   One Federal Square
   Newark, New Jersey,  07101

RESPECTFULLY SUBMITTED:

Michael Hasher, Pro Se.

Date:4-12-2012.

Michael Hasher
Special Treatment Unit
P.O. Box 905
Avenel, NJ. 07001
PH.:732-574-8560

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

RAYMOND ALVES, et al.,

    Plaintiff's

  v.

MERRILL MAIN, Ph.D., et al,

    Defendants.

CIVIL ACTION No. 789 (DMC) (MF)


Civil Action No. 07-1212 (DMC)
(Consolidated with above case).


MICHAEL HASHER

    Plaintiff's,

  v.

JON CORZINE, et al.,

    Defendants.

# RE: NOTICE OF MOTION TO AMEND THIS COMPLAINT PURSUANT TO Fed. R. P15. et.

Dear Hon. Judge:

  I, lead Plaintiff, Michael Hasher, is in the above mention consolidated case, and is at all times mentioned herein in, the custody of the State of New Jersey, held in Civil confinement, in the custody of the Department of Corrections [DOC] for security, and by the Department of Human Services [DHS] for treatment under the supervision of the Mental Health Division [MHD] pursuant to a petition filed by the Attorney Generals Office, pursuant to N.J.S.A. § 30.4-27, et seq., the Sexual Violent Predator Act ["SVPA"] .

## PROCEDURAL FACTS:

1a. On July 26, 2007 Hasher v. Corzine No. 07-1212 (DMC) was filed, with Plaintiff's:

1b. Michael Hasher

1c. Robert Deavers

1d. Joseph Aruanno

1e. Richard Bagarozy.

1

2a.    On August 8, 2010 or around such date, the Hasher case has consolidated with the Raymond Alves lawsuit No. 01 Civ. 0789 (DMC) (MF).

3a.    On March 26, 2012, Lead Plaintiff Michael Hasher had written the Court, Attorney General and the Law firm of Gibbons, PC. (Jonathon M. Manes) complaining that he had not been informed that a Settlement and a Fairness hearing had been negotiated, on February 2012 between parties of the Set Hall Law School (Ms. Moses), Attorney General (Susan Doughty) and the two Attorney's from the Law Firm of Gibbons P.C., (Mr. Lustburg & Mr. Manes), also noted in Hasher letter was confirmation that the Lawyer's of Gibbon law firm, in their Certification to the Court stated that they had served all consolidated case's, and their lead plaintiff's, a copy of the Settlement & Fariness negotiations, and exhibit's A & B.    All of which wasn't true.

8a.    On March 28, 2012, Mr. Jonathan Manes, from Gibbons Law Firm, gave a written response letter to Mr. Hasher and the Court stating, that he hadn't been aware, until Mr. Hasher had written the Court and himself, that he was representing himself in his case, and that it was consolidated, however, he will be sending all submission to the court and a copy to Mr. Hasher and the plaintiff's in his case a copy of future filing's.

### THEREFORE:

9a.    Therefore: As Lead Plaintiff in the consolidated case, proves that knowone in the Hasher v. Corzine case had any input in the settlement, at all.  And strongly disagree with the settlement as is. And this is true with the Bagarozy v. Harris case No. 04-cv-3066, that also consolidated with Raymond Alves case, we "All" disagree with this proposed settlement.

For the reason's mentioned above, We strongly seek you to grant us to Amend this consolidated case with the following:

10a.    As presented by Plaintiff's in the case of Hasher v. Corzine, No. 07-1212, in 2007, A NEW APPROACH AND REASON FOR CHANGE:  (Quoting Texas Program). See enclosed program as Exhibit [C].

10b.    Page 9,  Comparison of both Outpatient vs Inpatient.

10c.    Page 10,  Cost: Inpatient, (New Jersey) 125k to 160k each SVP., vs  Outpatient Civil Commitment, $ 30k each SVP., which includes GPS., ect.

2

10d. Page 10, According to the Texas outpatient program, states that it has advantages of maintaining the highest level of protection available to the community while protecting the civil rights of the client through a restricted transition and assimilation back into the community.

10e. Page 6, The Governor signed Senate Bill 365, which established the first outpatient civil commitment program in the United States and the Counsel began implementation and administration of the Civil Commitment Program for the Sexually Violent Predators.

On Due Process TV show, our present Governor, Chris Christie, had stated that he want's change regarding the Cost of Department of Corrections and the SVPA as a whole, this Texas Civil Commitment would fit the Bill at this time in New Jersey.

## COMPARISON: SETON HALL SVP Program vs Texas Program.

11a. Seton Hall University Law School 12 year's ago, in part with other New Jersey Department's implemented the current SVP program, which today hasn't proved to work, or keep the community safe, but does keep going up in Cost, as residence's keep getting older and physically sick and bed's are kept full, leaves no room for new potentially dangerous sex offender being treated or civilly committed due to no bed space available nor release really possible.

11b. Comparing the old with the new?  Seton Hall's/ Barbara Moses (Doctrine) Exhibit's [A] & [B], to the current SVP program, it's basically the same, accept the new program just adds   more treatment per week, at tax payer's expense, because the end result is going to be the same as the current program, the real problem is that know one of authority want's to release a sex offender that a Doctor deemed "highly Likely to Recommit" back into the community. That's why there's no mention of transitional places for us to be released in her new proposed program or an Oversight Committee that people are being released and have a place to go?. Her program is a waste of time and safety, and out of date.

11c. Also: more treatment isn't the answer, this fact presents it's self by the very fact that "Everybody" that had filed their Lawsuit's "Eleven" year's ago today, is still here at the Special Treatment Unit, this makes it clear that more treatment isn't the answer, but rather than, that a Drastic change and responsibility need's to change hand's, and in this case, need's to be done by a Federal Judge with no ties to DHS, DOC, and the AG., whom have to take responsibility or whom is being paid to keep their job. Let's keep our job, well keep them locked up!.

3

## MOST IMPORTANTLY:

what is best for everyone: thinking of public safety and cost first.

12a.   First, Public Safety, it would be best to screen "ALL" sex offender, and not just the one's that where at the expiration of their prison sentence's, that was done to 95% of the Sex offender's that are civilly committed here at the Special Treatment Unit, then to house them indefinitely not allowing other sex offender's to seek treatment that have the potential to act out due to not having enough bed space.

12b.   There's only so many bed's to house sex offender's under Civil Commitment in New Jersey at the Special Treatment Unit, wouldn't it be logical to release a sex offender that had completed 5 additional year's in treatment, and to screen and therapeutically treat other sex offender's that are Similarly Situated that are being released into the community?.

12c.   Most sex offender's here at the Special Treatment Unit have been here for at least 10 year's after completing their lengthy terms of incarceration, and are in their 50's, 60's and 70's year's of age, the facility inwhich we live has three tier level's and double bunk bed's, allot of us are having problem's getting in our own bed's or going up the steep metal stair's, and this is in conjunction to be transported to Trenton New Jersey, to Saint Francis Hospital which requires a Van and two police officer's for the complete day for each one of us, "whom is paying for this".

12d.   The Van's that we are being transported to the Hospital in, are now portioned like Air Kennel's for dog's, accepted our's are metal, not plastic, we are much older than inmates from a prison, and this issue is not just going to go away.

12e.   For the reason mentioned above, I hope that you will Amend this complaint, and accept or will consider the Texas program model, and order additional time to have representation from the people running the Texas program out lining their recommendation's for New Jersey's SVP program.  Gov. Chris Christie will love it. 30k vs. 150k ?.

## JURISDICTION AND VENUE

13a.   This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C.  1331(a) and 1343, as plaintiff allege, pursuant to 42 U.S.C.  1983, that defendants, under the color of state law, have deprived, and continue to deprive the plaintiff's of thir rights, privileges, and immunities

4

secured by the First, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

13b.  This Court has jurisdiction over each claim, and to grant such equitable relief as appropriate to correct the wrong[s] done, under Section 2 of Article III of the United States Constitution.

Venue is proper in this district pursuant to 28 U.S.C. Sec. 1391(a) and (b) as most defendants reside in this district, all defendants reside in this state, and a substantial part of the events and omissions giving rise to the claims herein occurred in this district.

## DECLARATORY AND INJUNCTIVE RELIEF

14a.  This Court has authority to grant declaratory relief pursuant to 28 U.S.C. sec. 2201 as an actual controversy exists regarding the rights, privileges, and immunities to which plaintiff/ plaintiffs are entitled while detained to the care and custody of Department Of Corrections and treatment is being provided by Department Of Human Services.
Moreover, pursuant to 28 U.S.C. Sec. 2202, this Court has authority to grant injunctive and other necessary and proper relief.

14b.  This is a Civil action authorized by 42 U.S.C. §. 1983 to redress the deprivation; under Color of State Law of rights secured by the Constitution of the United States.  The Court has jurisdiction under 28 U.S.C. § 1343 (a, (b,.  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.  Plaintiff's claim for injunctive relief are authorized by 28 U.S.C. § 2283 & 2284 and rule 65 of the Federal Rules of Civil Procedure.

The District Court of New Jersey is an appropriate venue under 28 U.S.C. § 1391 (b, (2, because it is where the events given rise to the claim occurred.

## REMEDY:

15a.  We Plaintiff's in the Hasher case belief that the Texas Civil Commitment Program should be replicated in New Jersey. See Copy enclosed as exhibit [C].

15b.  Texas program uses new technology (GPS) and other alternatives, why not New Jersey? , and not just lock-up a few, and give them some more treatment, as Set Hall proposed with the AG.

15c.  Civil Commitment in New Jersey has been around for over 12 years, it's proven not to work

5

as is, it's unfortunate that no one either in the lower Court, Attorney General, DHS and some Public Defender's want to release anybody, it's safer that way. Therefore, we seek an alternative, the Texas program way. Leave it to technology.

15d.  We Plaintiff's in the Hasher case, also disagree with the proposal of Gibbons Law Firm, to give special: Class Counsel Representative's being appointed to their client's of  Raymond Alves, Michael Culbreth, and Derrick Sessoms. We believe "ALL" plaintiff's in this consolidated case have suffered the same, and under the 5, 14 & 15 Amendment of the Constitution want to be compensated Equally, and that mean's both therapeutically and Compensatory damages. All the same...

### CERTIFICATION:

I,  Michael Hasher, certify that the afore mentioned statements are true, and that I am aware that willfully giving false information or statements in this matter is subject to punishment.

I, Certify that I  Michael Hasher, under perjury am mailing by way of U.S. Mail copies of this letter brief, and copies of the Texas Civil Commitment Program to all the parties mentioned below:

| GIBBONS P.C. | SETON HALL U. LAW & JUSTICE. | ATTORNEY GENERAL OF NJ |
|---|---|---|
| Attn: Manes & Lusteburg. | Attn: Barbara Moses | Attn: Jeffrey S. Chisa |
| One Gateway Cener | 833 McCarter Highway | R.J. Huges Justice Complex |
| Newark, NJ. 07102 | Newark, NJ. 07102 | 25 Market Street,  8 Floor. |
| PH:973-596-4500 | | Trenton, NJ. 08625 |
| | | PH:609-984-3900 |

United States District Court of N.J.

Attn:Hon. Dennis M. Cavanaugh, U.S.D.J.

U.S. P.O. & Courthouse, Room 451

One Federal Square

Newark, New Jersey,  07101

RESPECTFULLY SUBMITTED:

Michael Hasher,

Pro Se.

Date:4-12-2012.

6

*Exhibit C*

3/14/05 2:59

☒ skip navigation

☒ Department of State Health Services Home

Search | Contact Us | Internet Polic

The Texas Department of Health became part of the Department of State Health Services on September 1, 2004. For more information, visit www.dshs.state.tx.us.

*Texas Out-Patient Program.*

*See especially pages 9-12*

## Council on Sex Offender Treatment

## Civil Commitment of the Sexually Violent Predator

**The following material is not suitable for children due to the sexually explicit nature of the subject matter.**

### Return to the Council on Sex Offender Treatment Home Page

### Table of Contents

- Civil Commitment of the Sexually Violent Predator
- Sexually Violent Predator Laws
- Active Texas Civil Commitment Cases
- US History of Civil Commitment
- Court Decisions on the SVPA
- History of Civil Commitment in Texas

- Reasons for Texas Civil Commitment
- State by State Comparison
- The Texas Civil Commitment Process
- Inpatient vs. Outpatient Civil Commitment
- Cost of Inpatient vs. Outpatient Civil Commitment
- Texas Civil Commitment Process(Flowchart)
- Disposition of SVP Cases (Flowchart)
- Interagency Case Management Team
- Links

## Civil Commitment of the Sexually Violent Predator

Civil Commitment statute is civil law. The State has the burden to prove beyond a reasonable doubt that the person is a sexually violent predator with a behavioral abnormality (Sec. 841.062). This language is used to narrowly confine the class of sexually violent predators being committed. Typically, civil law only requires preponderance of the evidence. Sex offenders are not convicted of being a sexually violent predator. These offenders are committed. Civil commitment is different than a criminal charge in that a criminal sentence has a definitive timeframe. Civil commitment continues until it is determined that the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence. The civil commitment program of the sexually violent predator is not a criminal charge or punitive. The intent of the law is to provide intensive outpatient rehabilitation and treatment to the sexually violent predator.

- Texas Civil Commitment of the Sexually Violent Predator (MSWord, 61 KB) Updated!

*Ex B-1*

3/14/05 2:55

## Sexually Violent Predator Laws

Link to the statute on the State of Texas website

- Health and Safety Code Chapter 841. Civil Commitment of Sexually Violent Predators.

## Active Texas Civil Commitment Cases

From February to September in 1980, Richards, the "Freeway Rapist", preyed upon at least six females. He would drive along side these women and convince them to pull over by indicating they were having car problems. He would then use a gun or an ice pick to rob and rape them. He was originally given a fifty-year sentence but it was reversed on a jury charge error. He subsequently received four ten year sentences for Sexual Assault, two ten year sentences for Robbery, and one twenty year sentence for Aggravated Sexual Assault. He was released on Mandatory Supervision in 1987. In 1992, he received nine years for Indecency with a Child.

In 1974 and 1985 Mullens was arrested for DWI. In 1988, he received nine years for Sexual Assault of a Child, Indecency with a Child, and Sexual Assault. In 1991, he received a fifteen-year sentence for five counts of Aggravated Sexual Assault. Over a three-year period, he met boys between the ages of eleven and fourteen years old at the Boy Club. When his firearm was not available, he would have one victim hold the other victim down.

## US History of Civil Commitment

Legislation for civil commitment of sexual offenders has occurred for two generations. Beginning in the late 1930s, many states enacted "sexual psychopath" statutes for the involuntary commitment of sexual offenders described as "psychopathic personalities, sexually dangerous persons, psychopathic offenders, and sexual psychopaths." Aimed at sexual offenders to be at high risk for recidivism, the statutes provided protection for the public and rehabilitation for offenders (Lieb et.al., 1998: Lieb and Matson, 1998: Horwitz, 1995; American Psychiatric Association, 1999: Wilson 1998).

In 1948, Congress adopted commitment laws to reflect the inability of sex offenders to control their behavior and shaped the ability of the law to confine sexual psychopaths. By the 1960s more than half of the states had enacted sexual psychopath statutes and the clinical/rehabilitative model. However ten years later, most states had repealed their focus from treatment and rehabilitation to prosecution and prison. The near complete abandonment of sexual psychopath statutes was followed by the emergence of the justice model. This ideological transfer to retributive management was consistent with the attitude in the nation regarding law and order reform. Despite the severe penalties, it was obvious this model failed to contain offenders who had discharged their strict sentences but still posed a threat to society and were released into the community.

The intent of civil commitment law is to enable the states to contain a small group of very dangerous sex offenders who do not have the requisite mental disease or defect rendering them subject to the existing involuntary civil commitment statute. The law's rationale was based on public safety and community protection. Unlike the previous generation of sexual psychopath laws, civil commitment provided a means to contain the offender who discharged their prison sentence until community safety could be assured.

- US History of Civil Commitment (MSWord, 91 KB) Updated!

## Court Decisions on the Sexually Violent Predator Act (SVPA)

The Kansas Sexually Violent Predator Act (SVPA 1994) has withstood constitutional challenges and has validated identical laws in numerous other states (Kan. Stat. Ann. 59-29a01 et seq. 1994). The Court characterized the confinement at issue as civil and the confinement was not criminal (Id., at 369). The Court also held that the statutory criterion for confinement embodied in the words "mental abnormality or personality disorder" satisfied "substantive" due process requirements (Id., at 356, 360). This decision invited the expansion of civil commitment laws throughout the United States by the Court upholding that a mental disorder was sufficient for civilly committing a Sexually Violent Predator.

Kansas v. Crane was appealed after the Kansas Supreme Court's ruling that due process requires that a person suffer from a total lack of volitional control in order to be subject to involuntary commitment. The United State Supreme Court ruled that a total lack of control is not constitutionally required and there must be proof of serious difficulty in controlling one's behavior. In other words, the Court ruled that there must be proof that the offender has a mental illness causing serious difficulty controlling his behavior. The meaning of "difficult" indicates a lack of control was not absolute (Kansas v. Crane 534 U.S. 407, 122 S.Cir.867 2002).

The U.S. Constitution has always protected freedom from physical restraint under the Fifth and Fourteenth (due process) Amendments; however, that freedom is not absolute and may be abridged when a state possesses an interest in protecting its citizens from dangerous, sexually violent predators.

In Kansas v. Hendricks, the U.S. Supreme Court characterized the confinement as civil rather than criminal and addressed the proof of "dangerousness" and mental illness. Leroy Hendricks claimed he was being punished for past conduct. Punishment is usually a shorter period of time, which imposes no obligation to get better. Kansas argued and the court agreed that the SVP law is a civil law, which while it allows confinement, is not imposing confinement as punishment. Thus if the government is not punishing the individual in the legal sense, then the person is protected by neither ex post facto nor double jeopardy (Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072 138 L.Ed.2d 501 1997).

The Hendricks case also ruled that the rights of the SVPs in the evaluation process should be protected. SVPs should be housed and segregated from the general prison population. The model should be the same as other involuntarily committed clients. The corrections department provides only security and the treatment and operation of the facility is left in the hands of qualified treatment providers.

Additionally Hendricks contested that the SVPA does not require any sex offender treatment; thus it intended to punish him. Justice Clarence Thomas stated that the incapacitation without treatment is permissible based on dangerousness, and there is a statutory right to treatment fashioned in the commitment law. The Court ruled that as long as a State's ancillary purpose is to treat the sex offender and his due process rights were protected, the State may commit him for an indefinite period as far as the Constitution is concerned.

Several issues contributed to the supposition that SVPA was not punishing Hendricks. The SVPA was found not to implicate retribution or deterrence, two primary objectives in criminal punishment (Schlank and Cohen 2001). The SVPA was found not to implicate retribution because it did not affix culpability for prior conduct and his criminal conduct was only presented solely as evidence of dangerousness (Id.). The SVPA did not deter because the sex offenders targeted had a disorder that prevents them from controlling their sexual deviance.

Hendricks provides the most authoritative statement on the role of inability to control (Schlank and

EX B-3

Cohen 2001). By upholding the constitutionality of Kansas' commitment law, the Court alluded repeatedly to the inability to control and the requisite of a mental disorder that narrowed the eligibility for confinement for those unable to control their dangerousness. The Court found no basis on which to consider whether confinement based solely on "emotional" impairment as opposed to "volitional" impairment, would be constitutional.

In Hubbart v. Superior Court of California, the Court required proof of an "inability to control" dangerous sexual behavior to be consistent with Hendricks (Hubbart v. Superior Court of California 696 P.2d 584 Cal 1999). In Pearson v. Minnesota, the Court upheld the constitutionality and reaffirmed the vitality of the "utter lack of power to control" and stated the condition was a "volitional dysfunction, which grossly impairs judgment and sexual behavior."(Minnesota ex rel. Pearson v. Probate Court of Ramsey County, 309 U.S. 270, 274 1940; In re Blodgett, 510 N.W.2d 910, 915 Minn. 1994, cert. denied, 513 U.S. 849 1994)

In the Matter of Hay the equal protection claim failed because the distinct category of all sexually violent predators receives identical treatment. Hay contested the initial trial error in the probable cause finding prior to his civil commitment trial. The Court found that any error of probable cause is not detrimental after the trial and a judgment of beyond a reasonable doubt (In the Matter of Hay 953.P2d at 676 Kansas 1998).

In Beasley v. Molett, the Texas Ninth District Court of Appeals upheld that "distinguishing a class of sexually violent predators from violent criminals for the purpose of involuntary commitment did not violate equal protection rights under the U.S. Constitution." Additionally the Court held that the statutory requirement, that at the biennial review, the judge make a probable cause finding before the person is entitled to a hearing was not a denial of equal protection or due process. Beasley argued that the requirement of "highly likely" is required in order to be consistent with "beyond a reasonable doubt". The Court defined "likely" as probable: "Something that is probable is beyond a mere possibility or potential for harm. The beyond a reasonable doubt burden is not inconsistent with the element that must be proven-that the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Beasley also argued that he should not be deprived of his liberty absent of substantial threat or imminent risk of future harm. The Court noted "by definition, a menace is a threat of imminent danger, and the menace described in the Act is substantial and satisfies any proof requirement of a threat or risk of future harm." (Beasley v. Molett 95 S.W.3d 590; 2002 Tex. App. LEXIS 8967)

Finally Beasley argued that Art. 4, Texas Health & Safety Code, Title 11, Chapters 841.085 and 841.082 violated the separation of powers doctrine and asserted that the provision authorizing a third degree felony offense for a violation of a commitment requirement violated the separation of powers of the Texas Constitution, because a judge may impose any requirement deemed necessary. The majority of the Court concluded that the legislature has not delegated its power to the trial courts to create a third degree felony but rather has authorized the trial courts to determine requirements that are necessary to ensure compliance of the person committed to treatment and supervision and to protect the community. The Court further concluded, "the legislature, not the judge, has determined the statutory requirements, as well as those necessary requirements set by the judge, are third degree felonies". (Beasley v. Molett 95 S.W.3d 590; 2002 Tex. App. LEXIS 8967)

In January 2003 the Texas Ninth District Court of Appeals, in the case of Adolf Martinez (#09-02-00199-CV) reaffirmed that the statute is civil and not a criminal/punitive or quasi-criminal statute. The Court also reaffirmed that his due process rights were adequately protected (See Beasley v. Molett, and Boyd Mullens 2002 Tex. App. LEXIS 8962). Martinez also argued that the Order of Commitment was unconstitutionally vague. The Court again rejected this constitutional challenge and found that the order is

Ex B-4

not impermissibly vague (See Mullens, 2002 Tex. App. LEXIS 8962)

In addition, the right to a "speedy" trial applies only to criminal law and not civil law.

## History of Civil Commitment in Texas

In 1983, a need for the creation of the Council on Sex Offender Treatment was identified by the Texas Legislature due to the rising rate of sexual crimes and extremely high recidivism rates for untreated sexual offenders. The key to preventing sexual abuse is to shift paradigms," wrote Robert E. Freeman-Longo and Gerald Blanchard in their 1998 book, Sex Abuse in America. "In addition to viewing sexual abuse as a criminal justice issue, we must also view it as a serious public health problem and preventable social problem." A "cure" for sex offending is no more available than is a "cure" for high blood pressure (English, 1996). But with specialized offense specific treatment by qualified individuals, the majority of sex offenders can learn to manage their behaviors.

The State of Texas has recognized the increased public awareness and concern with the chronic prevalence of sexual aggression and sexual victimization. Over the past two decades, the Council's core function has expanded from a mere regulatory agency due to increased public awareness and the concern for community safety. Today, the Council has four primary functions: 1) public safety: by administering the civil commitment program of sexually violent predators and preventing sexual assault 2) public and behavioral health: by treating sex offenders, 3) regulatory: by maintaining a registry of sex offender treatment providers and establishing the rules and regulations regarding the treatment of sex offenders, and 4) educational: by the dissemination of information to the public regarding the management of sex offenders. This legal mandate is an innovative domain of the law. These functions may appear to be separate and distinct, however in reality, these functions work together and if they were separated it would be deleterious to public safety. The Council's functions are synergistic with maintaining the highest level of public safety and preventing sexual assault through effective treatment and interventions in the management of sex offenders.

In 1995 Representatives Greenburg, Hochberg, and Danburg first introduced legislation regarding sexually violent predators. House Bill 595 was referred to the Criminal Jurisprudence Committee were the legislation died.

In 1997, Texas again considered legislation regarding the civil commitment of sexually violent predators. Senator Shapiro and Senator Whitmire authored Senate Bill 77 and Representative Greenberg authored the companion House Bill (3468). The original vision for civilly committed SVPs was to follow the rest of the nation in housing SVPs in an inpatient secure facility. However, due to lack of appropriations and constitutional concerns both bills died in committee. Texas Legislators had to look for a viable alternative to inpatient treatment.

In October 1998, the Council began to develop a briefing or background information packet for the legislature to consider with regard to their task of establishing a civil commitment program for sexually violent predators in Texas. The Council recommended a mental health model following the guidelines used for outpatient or inpatient civil commitment in the state mental health programs. The Council endorsed establishing a treatment program that is based in the humane philosophy that rehabilitation was definitely possible and that continued intensive treatment was critical for rehabilitation. Against a civil commitment program were those who felt it was using psychiatry and psychology for the purposes of criminal punishment. Also against the program was a strong mental health lobby that stated that sex offender treatment in the mental health system would impinge on the funds available for mental health treatment of others. In addition, there was no body of research at that time that supported the prediction

of the most dangerous persons, those who would re-offend, or those who would respond to treatment. (Meyer, Molett, Richards, Arnold 2003) Inpatient civil commitment would require a tremendous investment of money regarding treatment providers, security staff, administrative staff, and facilities. It was estimated that 6.2 million dollars would be needed to build a special commitment center. The cost of housing each SVP was estimated at $80,000.00 to $100,000.00 dollars per year.

In 1999, Senator Florence Shapiro introduced Senate Bill 29. The bill defined that some convicted sex offenders should be described as sexual predators who suffer from a personality disorder or other mental abnormality. Many of these sex offenders will complete their term of incarceration. Upon their release they represent a significant threat to others because of their likelihood to engage in acts of sexual violence. Civil Commitment implies a human philosophy that rehabilitation of even the most heinous offenders is possible.

On September 1, 1999, the Governor signed Senate Bill 365, which established the first outpatient civil commitment program in the United States and the Council began implementation and administration of the Civil Commitment Program for the Sexually Violent Predators. The Outpatient Program was chosen strictly due to fiscal constraints. Inpatient civil commitment would require a tremendous investment of money regarding treatment providers, security staff, administrative staff, and facilities.

**Reasons for Texas Civil Commitment**

Sexually violent predators are committed not convicted. The civil commitment program is not a criminal charge or punitive. The intent of the law is to provide intensive outpatient rehabilitation and treatment to the sexually violent predator. Civil commitment is different than a criminal sentence in that a criminal sentence has a definitive time frame. Civil commitment continues until it is determined that the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence.

The Legislature defined a Sexually Violent Predator (Title 11, Texas Health & Safety Code 841.003) as a person is a sexually violent predator if the person is a repeat sexually violent offender and suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence A person is a repeat sexually violent offender if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of those offenses or if:

The person:
a. is convicted of a sexually violent offense regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the person was subsequently discharged from community supervision
b. enters a plea of guilty or nolo contendere for a sexually violent offense in return for a grant of deferred adjudication
c. is adjudged not guilty by reason of insanity of a sexually violent offense or
d. is adjudicated by a juvenile court as having engaged in delinquent conduct constituting a sexually violent offense and is committed to the Texas Youth Commission under Section 54.04(d)(3) or (m), Family Code
After the date the person is convicted, receives a grant of deferred adjudication, is adjudged not guilty by reason of insanity, or is adjudicated by a juvenile court as having engaged in delinquent conduct, the person commits a sexually violent offense for which the person is:
a. convicted, but only if the sentence for the offense is imposed or
b. is adjudged not guilty by reason of insanity

EX B-5

A Predatory Act (Title 11, Texas Health & Safety Code 841.002) was defined as an act that is committed for the purpose of victimization and that is directed toward a stranger, a person of casual acquaintance with whom no substantial relationship exits; or a person with whom a relationship has been established or promoted for the purpose of victimization.

Texas civil commitment statute requires a "behavior abnormality" which means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person (Title 11, Texas Health & Safety Code 841.002).

A sexually violent offense is defined as (Title 11 Texas Health and Safety Code Section 841.002) Indecency with a Child, Sexual Assault, Aggravated Sexual Assault, Aggravated Kidnapping with Intent, Burglary with Intent, any attempt, conspiracy, or solicitation of the latter, or any offense under the law of another state, federal law, or the Uniform Code of Military Justice that contains elements substantially similar).

## State by State Comparison

This chart contains comparisons between states, including a summary of the applicable statues, the number of committed and released offenders, and the projected costs for civil commitment.

- State by State Comparison Chart on Involuntary Commitment of Sexually Violent Predators (MSWord, 84 KB) Updated!

## Texas Civil Commitment Process

A Multidisciplinary Team consisting of members from the Council on Sex Offender Treatment, Texas Department of Criminal Justice, Texas Department of Criminal Justice-Victim Services, Texas Department of Mental Health/Mental Retardation, and Texas Department of Public Safety review and refer sex offenders who meet the eligibility criteria for a behavioral abnormality assessment. If an expert concurs that a behavior abnormality exists, the case is referred to the Special Prosecution Unit who may file a petition. Based on past percentages, 15-16% of the 28,000 sexual offenders in the Texas Department of Criminal Justice-Institutional Division will be eligible for civil commitment screening. If the Special Prosecution Unit decides to proceed with filing a petition both the prosecution and defense retain an expert to conduct another assessment which includes a clinical interview, psychological testing, and reviews risk assessments, institutional records, and all relevant medical and psychological reports.

The civil commitment statute is a civil law wherein a judge or twelve-person jury must use the standard beyond a reasonable doubt. The judge or jury must unanimously agree that the person is a repeat sexually violent predator and that the person suffers from a behavioral abnormality that makes them likely to engage in a predatory act of sexual violence. A person who suffers from a behavioral abnormality as determined under this chapter is not because of an abnormality of unsound mind (Sec. 15-a Article I Texas Constitution; Health & Safety Code Section 841.1461).

The statute mandates that the SVP is entitled to a biennial examination (Texas Health & Safety Code 841.101). The Council contracts an expert to perform the examination. In preparation for a judicial review, the case manager shall provide a report of the biennial examination to the judge. The judge then conducts a biennial review of the status of the committed SVP. The SVP is entitled to be represented by Counsel, but is not entitled to be present at the judge's review. The judge sets a hearing if the judge determines at the review that:

EX B-7

3/14/05 2:59

1. A requirement imposed on the SVP should be modified; or
2. Probable cause exists to believe that the SVP's behavioral abnormality has changed to the extent that the SVP is no longer likely to engage in predatory acts of sexual violence.

If the judge sets a hearing, the SVP and the State are entitled to an immediate examination of the SVP by an expert. Hearsay evidence is admissible if it is considered otherwise reliable by the judge. The SVP is entitled to be present and to have the benefit of all constitutional protections provided to the person at the initial civil commitment proceedings. Upon the request of the SVP, or the attorney representing the state, the court shall conduct the hearing before a jury. The burden of proof at the hearing is on the state to prove beyond a reasonable doubt that the SVP's behavioral abnormality has not changed to the extent that the SVP is no longer likely to engage in predatory acts of sexual violence.

On a person's commitment and annually thereafter, the case manager is required to provide the SVP with written notification of the SVP's right to file with the court a petition for release without the case manager's authorization (Texas Health & Safety Code 841.122). The case manager may also file an authorized petition for release to the court and a hearing is conducted (Texas Health & Safety Code 841.121). The State once again must prove beyond a reasonable doubt that the SVP's behavioral abnormality has not changed.

The Civil Commitment order is not effected by certain subsequent convictions such as a new felony conviction if a sentence is not imposed, a conviction for a misdemeanor regardless of whether a sentence is imposed, and a judgment or verdict of not guilty by reason of insanity. The statutory duties imposed by the order are only suspended for the duration of any confinement of a SVP who receives a conviction (Health & Safety Code Chapter 841.150).

Outpatient civil commitment incorporates intensive outpatient sex offender treatment, high technology global positioning satellite tracking monitoring, and comprehensive case management. Upon entering the program, the SVP is assigned to a case manager who is the chair of the Interagency Case Management Team and is responsible for coordinating the treatment, supervision, and global positioning satellite tracking of the SVP. The Case Manager conducts between five to eight face-to-face contacts with the client and approximately eighteen collateral contacts per month. The Case Manager works closely with the treatment providers, the Department of Public Safety, residential staff, parole officers (if applicable), and local prosecuting attorneys.

Only registered sex offender treatment providers who contract with the Council may assess and provide treatment to the SVP. Sex offender treatment groups are offense specific and limited to ten (10) offenders. Self-help, drug intervention, or time-limited treatment is used only as adjuncts to more comprehensive treatment. Typically, sex offenders on community supervision attend group treatment one (1) time per week and have one (1) individual session per month. Sexually Violent Predators subject to Civil Commitment attend group therapy two (2) times per week and have two (2) individual sessions per month. SVPs are mandated to take polygraphs regarding their Instant Offense, Sexual History, Maintenance, and Monitoring. The penile plethysmographs are utilized to assess sexual arousal. Sex offender treatment is multifaceted to include cognitive/behavioral approaches, arousal control, victim empathy, relapse prevention, biomedical approaches/psychopharmacological agents, increasing social competence, co-morbid diagnosis, increasing support systems, and after-care.

Failure to comply with the order of commitment can result in a 3rd degree felony charge, which may result in incarceration in the Texas Department of Criminal Justice-Institutional Division.

Society should understand that SVPs are not "typical" sex offenders. These clients are repeat sexually

EX B-7

violent predators at extremely high risk to re-offend and community safety takes precedence over all conflicting constraints. A minor violation of the order may be that the SVP is well into his/her offense cycle and is about to commit a new offense. We must be proactive and not reactive when it comes to SVPs. SVPs must be held to a higher level of accountability due to their level of dangerousness. We should understand that participation in treatment is not just showing up for groups and individual sessions. Active participation includes compliance with a specific course of treatment and conditions of the treatment plan. If an SVP violates conditions with the specific course of treatment they can be unsuccessfully discharged from group because of increased risk to the community.

## Inpatient vs. Outpatient Civil Commitment

Across the nation states are dealing with sexually violent predators in an increasingly conservative manner by committing the SVP to inpatient treatment. The implementation of the outpatient civil commitment program in Texas is the first innovative type of civil commitment in the United States. The outpatient sexually violent predator program may appear to be a precarious endeavor to States who have committed millions of dollars to inpatient programs. The belief being these SVPs could not be contained and reside in communities without committing a new offense. However, to date the Texas outpatient program has shown the most success in the treatment of SVPs while maintaining the highest level of community safety.

There are a few similarities between Texas and other states civil commitment programs. First, sex offenders are assessed by the state and only the most predatory are referred to trial for civil commitment. Second, a trial is conducted and if the sexually violent predator is placed in the program, they are maintained on civil commitment indefinitely (Ferrara 2000).

There is a significant difference between the Texas program and programs in other states. In other states, the civilly committed sex offender is placed in a locked, secure residential facility and can choose not to participate in sex offender treatment. In Texas, the civilly committed sex offender is allowed to transition back into the community where they are mandated to attend and comply with intensive outpatient sex offender treatment and supervision. Non-participation in the outpatient program can result in a 3rd degree felony.

Sexually violent predators are civilly committed to protect the citizens of Texas and a paradoxical effect is that the outpatient program may do more to ensure public safety. Consider some of the inherent benefits that an outpatient sex offender treatment program has over a residential sex offender treatment program.

The success rate for offenders treated in an inpatient setting is about half of that for offenders treated in an outpatient setting. The success rate for offenders treated in an inpatient setting is about half of that for offenders treated in an outpatient setting. Consider the following percentages of treatment refusers: California's 368 SVPs (80% refuse treatment), Wisconsin's 232 SVPs (75% refuse treatment), and Florida 450 SVPs (70% refuse treatment). David Cuppenheimer, the Director of the Sex Offender Treatment Program at MCI-Norfolk reported that attorney's routinely advise their clients to refuse treatment and avoid disclosure, which inhibits treatment. The prognosis for rehabilitating sexually violent predators in a prison setting is poor, the treatment needs of this population are very long term and the treatment for this population are very different than traditional treatment modalities. Therefore a civil commitment procedure for the long-term care and treatment of the sexually violent predator is found to be necessary by this legislature (Kan.Stat.Ann 59-29a01 1997). Use of an outpatient program, in which treatment is mandated in Texas, can potentially provide for more long-term community safety than inpatient programs.

EX B-9

3/14/05 2:55

Treatment progress made in an inpatient setting does not readily transfer to the community because the client does not have to develop internal controls (i.e. identifying triggers and deviant behaviors to stop these prior to the act) due to the intensive external controls (i.e. locked facility, security, etc) in place. Inpatient clients do not have to contend with the "normal" stresses of the free world, the availability of alcohol or drugs, and the inadvertent contact with potential victims. Clients that do choose to participate in the inpatient treatment setting still have the obstacle of applying this in the community. Eventually, these sex offenders will be released back to the community and other states must confront the issues that Texas deals with directly throughout the offender's treatment.

Many communities allocate few resources to supervising and treating the sex offender. This intensifies the risk to the community. It could be reasonably expected that some of the sexually violent predators in a civil commitment program are psychopathic. There is a mounting body of research that demonstrates some forms of treatment may increase violent crimes by psychopaths. Research is showing that residential treatment particularly therapeutic communities increase negative outcomes of psychopaths.

The outpatient program also has the advantages of maintaining the highest level of protection available to the community while protecting the civil rights of the client through a restrictive transition and assimilation back into the community.

## Cost of Inpatient vs. Outpatient Civil Commitment

Civilly committing sexually violent predators protects the community by providing rehabilitation to individuals who would have been released to prey upon adults and children in our communities without any constraints of treatment or supervision. The Outpatient Civil Commitment program is significantly less expensive than the cost of a new crime, county jail housing, prosecution, defense, lengthy incarceration, medication, and treatment. Several studies conducted from the 1980's through the 1990's reported a cost range of $138,000 to $200,000 per case to prosecute a single case of child sexual abuse.

The annual Outpatient Civil Commitment Program cost is approximately $30,000 dollars per client per year. Inpatient treatment in 15 other states cost between $70,000 to $125,000 dollars per offender per year (AZ, CA, FL, IA, IL, KS, MA, MN, MO, ND, NJ, SC, VA, WA, and WI). California (Fresno County) is projected to open in 2005 a 1,600-bed facility operated by the Department of Mental Health, at a cost of $350 million dollars to serve SVPs.

The approximate annual fiscal implications for 2004 to States who commit sexually violent predators are astounding.



- California- $46,000,000 for 368 SVPs
- Florida- $22,500,000 for 450 SVPs
- Illinois- $21,600,000 for 216 SVPs
- Minnesota- $24,720,000 for 252 SVPs
  (Approximate cost per year based on current numbers-Council on Sex Offender Treatment 2004)

From 1990 to 1998 Washington State has only released two offenders from inpatient treatment. Of the approximate 2000 SVPs nationally less than 4 % have been released from inpatient treatment. The average rate of civil commitment growth across the nation is twenty-three (23) clients per month. As of April 2002, four women nationally have been civilly committed and there were approximately 1000 detainees awaiting commitment trials.

www.tdh.state.tx.us/hcqs/plc/csotsvp.htm#Inpatient

EX B-10

In a statement about inpatient treatment, Larry Fitch of the National Association of State Mental Health Program acknowledged, "States are full of people coming in, and not many going out".

This realistically will result in escalating cost to the taxpayers in these states.

## Texas Civil Commitment Process (Flowchart)

Texas Civil Commitment Process Flowchart (Adobe Acrobat format, 96 KB)

To access documents in Adobe Acrobat format, you must download the Acrobat Reader software. Please see our file viewing page for more information and a link to the Adobe website.

## Disposition of SVP Cases (Flowchart)

Disposition of SVP Cases Flowchart (Adobe Acrobat format, KB) Coming soon!

## Interagency Case Management Team (Flowchart)

Interagency Case Management Team Flowchart (Adobe Acrobat format, 126 KB)

## Links

More links coming soon!

---

Return to the Council on Sex Offender Treatment Home Page

*Last updated January 4, 2005*

EX B-11

Page 12 is blank.

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: CHARLTON W. HESTON

Signature: Choelton ee. Hesten

Resident Identification Number: 000402

Date: 4/15/2012

Comments:

I completely object to the settlement. It does not comport
~~with the report of Dr. Becker (the authority nominated by the~~
Attorney General) who described this program as the "worst she
had ever seen." There is a complete lack of <u>objective</u> criteria
~~to determine de-escalation of restraints and timely release.~~
I also completely object to numerous meritorious issues being
passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Tyrone Hill_

Signature: _Tyrone Hill_

Resident Identification Number: _361_

Date: _4/14/12_

Comments:

I completely reject this settlement as excessively narrow, subjective, vague, and conditional. I want to go to trial unless all of the following conditions are included as per Dr. Becker's Report:

OVER

1) guarentee of reductions of restraints as of advance in treatment including furloughs at phase 3

2) Monetary Damages for the neglegently inadequate treatment for years ( See Dr. Becker's Report) which caused me to loose more of my liberty than if I had proper treatment

(3) Make Age a significant factor for release with 60 the maximum age of release

4) guarentee release after completing program +

2

4/18

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Kaldoun Homsi

Signature: Kaldoun Homsi

Resident Identification Number: 433

Date: 4-17-12

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." There is a complete lack of objective criteria to determine de-escalation of restraints and timely release. I also completely object to numerous meritorious issues being passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it *directly to Class* Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: DENNIS HORINKA

Signature: Dennis Horinka

Resident Identification Number: 128

Date: 4 - 17 - 2012

Comments:

Dear,
        Judge Cavanaugh I object to
the terms of the new settlement. I want
to go to trial if the following issues are not included
in the settlement. I want reductions of restraints

of libertys as I advance in treatment, (Phase). This includes being moved to a half-way house or family, I want age to be considered as a major reason to be release. Using 60 years old as age or release. I want furloughs to begin in phase three or 10 years in treatment. Maintaining family relations, inquiring licenses, I.D. and bank accounts. I want guarantees of release after successfully completing treatment. The condiontions are (terrible) and (prison) food. We all should have cell phones and Computers. We are teated like prisoners, not residents, an been hear much to long. This is a terrible program.

Mr. Dennis Borinka

(Class Member's Objections/Comments Re Proposed Settlement)

**1)** There is no language set forth pertaining to a realistic release program
**2)** There is no accountability for the damage they have done to me through this ineffective and lengthy program, no mention of monetary awards,
**3)** Rights & Liberty were denied me, family, and friends since civilly committed
**4)** What life & Opportunities I would have had, were diminished due to the STU ineffective program, monetary awards would cover part of the life they destroyed
**5)** Nothing in settlement about the visit and family programs
**6)** Nothing in settlement about MAP programs being punitive, denying, packages, visits, ect. Nothing in settlement about the MAP process, when a person is placed on MAP there is no separate entity for judgment, only those who maliciously had you put on MAP.
**7)** They want us to attend self help groups, which save them hundreds of thousand of dollars on additional staff., by having ill minded residents running these groups for them without pay
**8)** There is no mention about residents who have been in Avenel for years doing the therapy, and were high phase when being civilly committed, they had to start from the beginning here
**9)** There is no mention about having Program Coordinators running groups, and being the main decision maker in our progress and work status, which they shouldn't have such unaccountable power such as this, and gaining lifetime experience & salary through their incompetent and bullish abuse of us
**10)** Nothing in settlement that is clear about the disability act,
**11)** There is no accountability for deviant and malicious report writing or falsifying statements on our records to justify commitment
**12)** Nothing in the settlement that pertains to housing, lack of space, bed bugs problems for years, bathroom facilities in Annex only build to accommodate half of the populations that is there now, stacking residents on top of one another in dorm setting, forcing residents who do not wish to be around certain inappropriate residents are forced to live in the same cubical. Therapy rooms are too small to run a groups with 12 to 15 inmates, and no indoor gym.

**Comments:**

My family and friends had to also endure the pain and stress of the ineffective STU program, through the many long years of me being kept from them, the abuse they endure during their visits with me is uneceptable, there is no quality family gathering and communications time due to DOC regulations, and very strict guidelines established for punitive purposes. Causing family and friends lots of mental and emotional pain, even to the degree of becoming ill. DOC is a punitive established entity, for the soul purpose of punishing people, by having patience, none felons under their control, we face the unaccountable, bully type mentality of DOC through their punitive features, specially due to the label we have to live under. This is a one sided settlement, only benefiting DHS, and no DOC for warehousing and for abusing us, no monetary offering's where suggested for the life I lost due to their inability to provide me with a safe, healthy, therapeutic environment, with a realistic release program for me to work for. Therefore I disapprove of this settlement offer.

Respectfully Submitted

_Dennis Horinka_   # 128
Resident:

Date: 4-17-2012

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: ____James Howard____

Signature: ____[signature]____

Resident Identification Number: ____53____

Date: ____4/14/12____

Comments:

I oppose this settlement + want to go to trial unless the settlement is expanded to include all of the following as per the thrust of Dr. Becker's Report:
1) guarantees of reductions of restraints of liberty as I advance in treatment, including furloughs at Phase 3

2 - I want age to be considered to be a major
reason for release with 60 years old being the
age of release.

3 - I want guarantees of release after completing
the STU program.

2

From: _Benjamin Hudson_ #541
     Print our Name   and   Number
     Special Treatment Unit
     8 Production Way, Trl#2
     P.O.Box 905
     Avenel, New Jersey 07001

To: STU Settlement
    c/o Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102

**Class Member's Objections/Comments Re Proposed Settlement**
**Raymond Alves, et al., v. Merrill Main, PH.D., et al.**

I object to the proposal settlement for the following reasons:

**#1.** SETON HALL – LAW, CENTER for Social Justice needs to be Dropped from representation in this Law-Suit. For they helped to create this Sexually Violent Predator Act, and now they want to represent the Residents against it. They should Not be able to have it both ways.

**#2.** The proposal shows the increase in program hours, the increase in therapists, the increase of the potential new therapy groups all in order to keep the Residents here longer **just like a concentration camp.** The proposal Fails to show the increase in of how the therapy will be releasing Residents. For there are Residents that been here 8 to 12 years already, would like to go home, This proposal is not showing that chance of going home.

**#3.** Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed the module, there should be some kind of Notice given that the Resident's risk to re-offend has been mitigated, as well as, His 'level of dangerousness. This will sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, in addition to, this verification being laced in the Residents file.

**#4.** Treatment Ombudsperson needs to be impartial, unbiased, and Not beholden to the STU. Something needs to be implemented to insure that there is No retaliation from Staff (Director, Therapist & Social Workers, etc.) for submitting and talking with the Treatment Ombudsperson about any complaints against D.H.S., and/or its Staff members.

**#5.** Nothing is mention of how the Therapy groups is going to reduce Residents treatment and advance forward to the potential possibility of discharge.

**#6.** Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; **a**-Juveniles that were civilly committed; **b**-Residents that were committed from the A.D.T.C. that have multiple years of treatment; **c**-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentance; **d**-Persons that have been committed from society (that were on the streets) when they were selected for commitment; **e**-Treatment Refusals are not represented; **f**-MAP Residents are not represented; **g**-and South Wing Residents are not represented.

**#7,** Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

**#8.** In the form of Cruel and unusual punishment, **Residents on South Wing are label as being the "Undesirables"** and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

**#9.** Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys. They are suppose to be doing this already, but are Not, in which case they erase the tape in front of the Resident.

**#10.** Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said by the Resident in such therapy groups.

**#11.** Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat.

Dietitians only show up for work, they do not properly prepare the food that is being served to the Residents & Residents on some sort of Diet.

#12. D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

#13. Nothing is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law Sidney S. Zipkin v. Margaret M. Heckler, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: Flemming v. Nestor, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); Schweiker v. Wilson, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); Buccheri-Bianca v. Heckler, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). Section 202, 42 U.S.C. § 402(x), provides in pertinent part: (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time. Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: Washington v.Secretary of Health and Human Services, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f)(1) (42 U.S.C. 423(f)(1)) DISABILITY

-- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS -- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; **The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court.** Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. **The plain terms Statue as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument.** Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes **... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken.** The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. **For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.**

**#14.** In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey **No-longer** has administrative enforcement powers, **No-longer** has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 131, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender **Not** residing in New Jersey).

**#15.** Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals **KILLED** another Resident by instructing kitchen working Residents to unload Food Truck **BEFORE** allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that

Died here at the Special Treatment Unit, release through treatment, and living on the streets.

**#16.** Nothing is being said about how Residents are, **Being punish on the basis of inaccurate information**. See: Hill v. Sciarrotta, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their **inaccurate** Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their **inaccurate** records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

**#17.** I object to it being brought up that there should be 7-Therapist to every 50 Residents. This include certified Social Workers who think that they are License Therapists? Plus, if this is put in place, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should be canceled for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

**#18.** Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

**#19.** In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

**#20.** What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU. For as it stands right now, they are of No help to a Resident, and cannot be trusted.

**#21.** New Treatment & Release Plans needs to be establish for ALL Residents after this settlement becomes final.

**#22.** What is considered as Full Participation and/or Full Cooperation? For under case law of Bender v. New Jersey Department of Corrections, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, **Full Cooperation is based on attendance and the quality of participation, and Not the information that is disclosed during therapy.** Plus, under case law of McKune v. Lile, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits the State from extracting information from a (Resident) about His past criminal history, that is Not the**

subject of a conviction. For There are some Residents to whom has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's SVPA appropriately limits it's application to Convicted Sex Offenders? See: In re Commitment of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#23. Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

#24. Some further D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

#25. Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

#26. The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest;

and that a **Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP).** See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents **should not have been involuntary committed where statutory civil commitment procedures were not followed.** See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. **Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional.** See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

**#27,** The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. **Depriving ... of notice would strip them of significant liberty interest;** and that a **Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP).** See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents **should not have been involuntary committed where statutory civil commitment procedures were not followed.** See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. **Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional.** See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

**#28.** The Question of appropriate treatment plan for committee to psychiatric institution **was not** to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee **was not** providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

**#29.** An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that **is missing** in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

**#30.** If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of **$25 Million Dollars from each listed defendant <u>in their Personal and Individual Capacities</u>** for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff since the time of this Resident's temporary Civil Commitment / Civil Commitment to present date.


I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS

MADE BY ME ARE TRUE AND CORRECT.

Date: _4-17-12_

_Benjamin Hudson_
Sign Your Name

_____
Print Your Name

Resident #_541_

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

**STU Settlement**
**c/o Seton Hall University School of Law**
**Center for Social Justice**
**833 McCarter Highway**
*Newark, NJ 07102*

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: STEPHEN JAFFE

Signature:

Resident Identification Number: 414

Date: 4 - 13 - 17

Comments:

I Am opposed to the settlement.
The majority of what is in the settlement
is being done as is and the state
is really giving very little.
① No halfway houses.

2) No definitive time limit to commitment - open life sentence

3) Use of Polygraph - Inaccurate tool.

4) Use of Static 99 - Even when crimes occured over 25 years ago - Infated scores.

5) Disparity of women staff vs. male - Rapist's. Not being released us. pedophikes-causeal effect

6) Institution run as a prison, No due process with MAP placement, can be placed on MAP solely on accusation of one person, jobs removal used as punishment even if it effects our family - IE - loss of child support. Retaliation if we complain about DOC staff - excessive searches, moved to cubes that are undesirable, over crowding in dorms, More Punitive - over censorship of movies, books, limited visits, visitors harassed + turned away due to petty reasons, ~~[crossed out]~~ No laptops, prison food,

7) No Montary settlement

8) DOC's Negative Impact on treatment - officers ignore DHS in many cases.

9) No Due Process during comm. tment hearing - hearsay use of Non Sex offenses as predicat.

10) DOC needs to be removed!

2

11) Not Enough Doctors for Treatment - In experienced staff.

2- Too much room in Treatment settlement for Abuses and way too much room for selective interpretation by DHS to hamper or limit Phase Advancement.

3- Excessive Amount of Time in therapy - Ie - 8-10 years treatment eventually counter-product

Ms. Moses,                                          5-13-12

I withdraw my objection to the proposed settlement.

Though I request that new & rules be made when et comes to MAP — some form of Due process and the elimination of taking a person job (livelyhood).

Respectfully,

Stephen Jaffe 418

Phones Closed 11:15-12pm
3:15-4pm

P.S. I'm Avail. during day Except
Not Free   Mon'Th'Fri - 945-11 + 1pm 2:30pm
WED.   1pm-2:30pm

Ms. Moses.

Hope you spoke to Ms. Foy and MR. Latimer. Also could you call at your convience concerning some Questions about my CASE, that I need Advise over T.C. and DR. BROWN.

THANK you, Bill STEPHEN JAFFE

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Louis Johnston_

Signature: _Louis Joff_

Resident Identification Number: _525_

Date: _4-11-12_

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Mr. Clifton Joyner_

Signature: _Clifton Joyner_

Resident Identification Number: _#218_

Date: _4/13/2012_

Comments:

_____I've been mistreated, misrepresented and misdiagnos-
ed for not being informed as to how my case was handled,
and not being able to perform the status 99 test. In the
abuse of authority the therapists are extremely judgementa,
and very critical in every way as to put the patients down._

Due to the oppression, suppression and depression – just about everyone is overly medicated, and also there is medication that is forced on the patient. There is nothing that has been presented as factual that represents this program, which seems like that we are taken back to the time of the old 'insane asylums' which laws were outlawed.

There is no freedom no justice; in the misinformation of the facts there are contradictions, prevarication and propaganda used and created by the therapists' to influence and continue indefinite incarceration. As symbol of everlasting destruction we have been condemned to death. No one deserves to be treated in this manner.

Sincerely,

Clifton Joyn

2

Fr: *Thomas Keeler*
     Special Treatment Unit
     8 Production Way, Trl #2
     CN 905
     Avenel, New Jersey 07001


To:    STU Settlement
     c/o Seton Hall University school of Law
     Center for Social Justice
     833 McCarter Highway
     Newark, New Jersey 07102

     Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
          **Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

We would like know our realease date.

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Mark King

Signature: Mark King

Resident Identification Number: 349

Date: 4/14/12

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over. The settlement does not address

anything in regards to the Department of Corrections and the punitive aspects that still exist, the overcrowding and the lack of any de-escalation of restraints. It also does not address the issue of a halfway house or the Department of Human Services being more proactive in releasing individuals. There is also nothing addressed in regards to the medical department and the number of people who have died here, due to mistakes and errors made by the medical staff.

2

Fr: _MR. Kunta Kinte 289_
    Special Treatment Unit
    8 Production Way, Trl #2
    CN 905
    Avenel, New Jersey 07001


To:   STU Settlement
      c/o Seton Hall University school of Law
      Center for Social Justice
      833 McCarter Highway
      Newark, New Jersey 07102

        Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
            **Objection to Purposed Settlement**

1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

    For example, I represent Residents who have been pleace in M.A.P. for a prolong period of time one year. My stay in m.a.p. Voids my opportunity to advance in Treatment move to a Higher Level Therefore, the

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

The Settlement Do Not address This issue.
I do believe, M.a.p. program is bias, punitive, AND
unEqually applied.

2. I have Attended treatment for approximate
9 years, And remain on the Same Level two. The Settlment
is not transparent, And Do not address my accomplishment,
And reduce my Risk Level for eligibility for release.

From: MR. Kunta Kinte    # 289
      Print Your Name    and    Number
      Special Treatment Unit
      8 Production Way, Trl#2
      P.O.Box 905
      Avenel, New Jersey 07001

To: STU Settlement
    c/o Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102


**Class Member's Objections/Comments Re Proposed Settlement**
**Raymond Alves, et al., v. Merrill Main, PH.D., et al.**


I object to the proposal settlement for the following reasons:

**#1.** SETON HALL - LAW, CENTER for Social Justice needs to be Dropped from representation in this Law-Suit. For they helped to create this Sexually Violent Predator Act, and now they want to represent the Residents against it. They should Not be able to have it both ways.

**#2.** The proposal shows the increase in program hours, the increase in therapists, the increase of the potential new therapy groups all in order to keep the Residents here longer **just** like a **concentration camp**. The proposal Fails to show the increase in of how the therapy will be releasing Residents. For there are Residents that been here 8 to 12 years already, would like to go home, This proposal is not showing that chance of going home.

**#3.** Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed the module, there should be some kind of Notice given that the Resident's risk to re-offend has been mitigated, as well as, His level of dangerousness. This will sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, in addition to, this verification being placed in the Residents file.

**#4.** Treatment Ombudsperson needs to be impartial, unbiased, and Not beholden to the STU. Something needs to be implemented to insure that there is No retaliation from Staff (Director, Therapist & Social Workers, etc.) for submitting and talking with the Treatment Ombudsperson about any complaints against D.H.S., and/or its Staff members.

#5. <u>Nothing</u> is mention of how the Therapy groups is going to reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a-Juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C. that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g-and South Wing Residents are not represented.

#7, Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, **Residents on South Wing are label as being the "Undesirables"** and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys. They are suppose to be doing this already, but are Not, in which case they erase the tape in front of the Resident.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said by the Resident in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat.

Dietitians only show up for work, they do not properly prepare the food that is being served to the Residents & Residents on some sort of Diet.

**#12.** D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

**#13.** Nothing is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law Sidney S. Zipkin v. Margaret M. Heckler, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: Flemming v. Nestor, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); Schweiker v. Wilson, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); Buccheri-Bianca v. Heckler, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). **Section 202, 42 U.S.C. § 402(x), provides in pertinent part:** (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, **unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time.** Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: Washington v.Secretary of Health and Human Services, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f(1) (42 U.S.C. 423(f)(1)) DISABILITY

-- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS -- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; **The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court.** Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. **The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument.** Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes **... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken.** The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. **For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.**

**#14.** In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey **No-longer** has administrative enforcement powers, **No-longer** has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: <u>Sanchez v. New Jersey State Parole Board</u>, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender <u>Not</u> residing in New Jersey).

**#15.** Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals **KILLED** another Resident by instructing kitchen working Residents to unload Food Truck **BEFORE** allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that

Died here at the Special Treatment Unit, release through treatment, and living on the streets.

#16. Nothing is being said about how Residents are, **Being punish on the basis of inaccurate information.** See: <u>Hill v. Sciarrotta</u>, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their inaccurate Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their inaccurate records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

#17. I object to it being brought up that there should be 7-Therapist to every 50 Residents. This include certified Social Workers who think that they are License Therapists? Plus, if this is put in place, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should be canceled for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

#18. Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

#19. In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

#20. What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU. For as it stands right now, they are of No help to a Resident, and cannot be trusted.

#21. New Treatment & Release Plans needs to be establish for ALL Residents after this settlement becomes final.

#22. What is considered as Full Participation and/or Full Cooperation? For under case law of <u>Bender v. New Jersey Department of Corrections</u>, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, Full Cooperation is based on attendance and the quality of participation, and <u>Not</u> the information that is disclosed during therapy. Plus, under case law of <u>McKune v. Lile</u>, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits** the State from extracting information from a (Resident) about His past criminal history, that is <u>Not</u> the

**subject of a conviction.** For There are some Residents to whom has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's **SVPA appropriately limits it's application to Convicted Sex Offenders?** See: <u>In re Commitment of W.Z.</u>, 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents **should not have been involuntary committed where statutory civil commitment procedures were not followed.** See: <u>Matter of D.C.</u>, 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. <u>N.J.Super.A.D. 1995.</u> **Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional.** See: <u>Mental Hygiene Legal Service v. Cuomo</u>, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

**#23.** Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

**#24.** Some further D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

**#25.** Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

**#26.** The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. **Depriving ... of notice would strip them of significant liberty interest;**

and that a **Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP)**. See: <u>In re Commitment of M.G.</u>, 751 A.2d 1101, 331 N.J.Super. 365. <u>N.J.Super.A.D. 2000</u>. These Residents **should not have been involuntary committed where statutory civil commitment procedures were not followed**. See: <u>Matter of D.C.</u>, 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. <u>N.J.Super.A.D. 1995</u>. **Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender** needs to be made **Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional**. See: <u>Mental Hygiene Legal Service v. Cuomo</u>, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27, The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. **Depriving ... of notice would strip them of significant liberty interest;** and that a **Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP)**. See: <u>In re Commitment of M.G.</u>, 751 A.2d 1101, 331 N.J.Super. 365. <u>N.J.Super.A.D. 2000</u>. These Residents **should not have been involuntary committed where statutory civil commitment procedures were not followed**. See: <u>Matter of D.C.</u>, 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. <u>N.J.Super.A.D. 1995</u>. **Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender** needs to be made **Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional**. See: <u>Mental Hygiene Legal Service v. Cuomo</u>, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution **was not** to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee **was not** providing him with meaningful opportunity for cure or improvement. <u>Matter of Commitment of J.L.J.</u>, 509 A.2d 184, 210 N.J.Super. 1. <u>N.J.Super.A.D. 1984</u>.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. <u>$60-Million Dollars</u> that **is missing** in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

#30. If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 Million Dollars from each listed defendant **in their Personal and Individual Capacities** for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff since the time of this Resident's temporary Civil Commitment / Civil Commitment to present date.


I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS

MADE BY ME ARE TRUE AND CORRECT.

Date: _4-18-012_

_Emil al nur_
Sign Your Name

_Kunta Kinte_
Print Your Name

Resident # _289_

Fr:   <u>Leroy Knight#382</u>                    4/19/12
      Special treatment Unit
      8 Production Way, Trl #2
      CN 905


To:   STU Settlement
      c/o Seton Hall University, School of Law
      Center for Social Justice
      833 McCarter Highway
      Newark, New Jersey   07102

      **Re: RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, ET AL.
      Objection to Proposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and
   Culbreth, being named representatives of the Class.
   These Residents do not, and cannot, represent the
   population as it stands. They have not experienced what
   separate classes of Residents have experienced,
   therefore, making it impossible for the above named
   Residents to speak on behalf of the population. There
   should be Residents added to the representatives, listed
   above, that reflect the following Classes of persons:
   (a) Juveniles that were civilly committed; (b) Residents
   that were committed from the A.D.T.C. that have numerous
   years of treatment; (c) Residents that have been
   informed that treatment would not diminish their risk to
   reoffend, therefore, rendering this commitment a life-
   sentence; (d) Persons that have been committed from
   society (that were on the streets when they were
   selected for civil commitment); (e) Treatment Refusals
   are not represented; (f) MAP Residents are not
   represented; and (g) South Unit Residents, described by
   Dr. Main as "the Undesirables" are not represented.

2. Psycho-Educational Modules: The proposed Settlement
   does not address the risk mitigation after the
   successful completion of Modules. As the Settlement now
   stands, I do not agree with module testing only. There
   should be some kind of notice given that the Resident's
   risk to reoffend has been mitigated, as well as his
   level of dangerousness. This will, sequentially, lower
   the Resident's risk assessment. This should be noted
   and written verification should be given to the
   Resident, as well as this verification being placed in
   the Resident's file.

3. I have over sixteen(16) years of intense therapy
   treatment from ADTC and all it got me was civilly
   committed, and I am still committed. Something is wrong
   with this practice and it needs to be corrected.

1

4. The civil committment system is deeply flawed when guys from prison with no treatment get to go home or paroled, yet, I am still here. I want to see a release process for residents like me.

*Leroy S. Knight #382*
Leroy Knight#382

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Brian Lindsey

Signature: Brian Lindsey

Resident Identification Number: 455

Date: 4/17/2012

Comments:

1) There is no language set force pertaining to a realistic release program.
2) Rights + liberty were denied me, family, and friends since civilly committed.
3) What life +opportunities I would have had were diminished due to the S.T.U. ineffective program, monetary awards would cover part of the life they destroyed.
4) Nothing in settlement about Map Programs being punitive, denying, Packages, Visits, ect. separate entity to judgment only those who maliciously had you put on map.

5) Nothing in settlement that is clear about the disability act,

2

IN MarCH 2005, I ARRiveD To AVeNeL TReaTMeNT CeNTeR / PrISoN. I was Doing 29 MoNTHS THaT was LeFT oN my SeceNTce, I pleaded with The CoURTS To goTo A.D.T.C. FoR TReaTMeNT oN my 29 MoNTHS, I compleaTeD LeVeL 4 oF TReaTMeNT beFoR I maxeD ouT. I maxouT JuNe 24 WeD 2007, To my kNowledge I was goiNg home.

I was FiNger PriNTeD, PHoToS, and my address was approved 2 weeks beFor my maxouTdaTe. I was SeNT To STu JuNe 20, 2007, I was CommiTTed Feb 14, 2008 By The Judge. By 2009 I became Phase 3, Life iN Here SuCks BUT iT keeps me moTovaiTe beCause I waNT To go Home. TheRaPey Here iSa Joke. There iS QuaLiTy TheraPey oN The STreeTs. TherapiST Here Has kidS iN There FamiLy AND I Feel iT'S a CoNFliCT oF iNTeRSeT wiTH TReaTMeNT JuST as The T.C. CommuNiTy iS a Joke. There a Few RaPiST Here. AND THere iS a Huge CoNFLiCT oF iNTeResT wiTH Dr. MerriLL maiN, Ph.D. who has a FaTher iN AlaSka, who iS a SEXoFFeNdeR!

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: ANTHONY LOWERS

Signature: ANTHONY LOWERS

Resident Identification Number: 117

Date: _____

Comments:

I object to all provisions of The Proposed Settlement As it provides no safeguards to any person retaliating or specificly recomending more Treatment As means to keep a person committed.

I want to Go to Trial.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: BHARAT MALDE

Signature: *Bharat Malde*

Resident Identification Number: 364

Date: 4-18-2012

Comments:

1) I completely object to the Settlement. It does not Comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen."
I Also completely object to numerous issues passed over.

See Next page →

2) Also I been (ANNex) 9 years I Also
Enclosed document OF All mouulbe which I
Completed. And pass All the (poly graph TEst)
Why out of (59) Therapist NONE of them
Make Any Decision of my life and
out 59 Therapist at List (25) Therapist
No longer with DHS. Then who will
Make Desision on my life.
Also with in the (9) years I had (12)
Diffrew pocess goup Chenge Why ?

2

| # | Therapist Name | Continue to work with me & Many are no longer with DHS |
|---|---|---|
| colspan | **BHARAT MALDE # 364** | |

| # | Therapist Name | Continue to work with me & Many are no longer with DHS |
|---|---|---|
| 1 | Dr. Amit | |
| 2 | Dr. Lester | |
| 3 | Dr. Essandoh | |
| 4 | Dr. Requit | |
| 5 | DR. DeCrese | |
| 6 | Dr. Friedman | |
| 7 | DR. Main | |
| 8 | Mr. Calabrese | |
| 9 | Ms. Spagnola | |
| 10 | Ms. Moore | |
| 11 | Ms. McBride | |
| 12 | Ms. H. Smith | |
| 13 | Ms. Smith | |
| 14 | Ms. Talker | |
| 15 | Ms. Brown | |
| 16 | Ms. Olivea | |
| 17 | Mr. Richderson | |
| 18 | Mr. Kearny | Social Worker |
| 19 | Ms.Ford | |
| 20 | Ms. Flatley | |
| 21 | DR. Doural | |
| 22 | Ms. Chung | |
| 23 | DR. Blood good | |
| 24 | Dr. Staniewicz | |
| 25 | Mr. Brown (Rac Staff) | |
| 26 | Ms. Fritzen | |
| 27 | Mr. Meyer | Polygraph Test Therapist |
| 28 | Mr. Brannon | Polygraph Test Therapist |
| 29 | Dr. Stanzion | No Longer My Therapist (TPRC) Member |
| 30 | Dr. Carlson | TPRC Panel Member |
| 31 | Dr. Iser | TPRC Panel Member |
| 32 | Dr. Marcantonis | TPRC Panel Member |
| 33 | Dr. Paolillo | TPRC Panel Member |

**BHARAT MALDE # 364**

Since I have been in S.T.U 2004 this are the therapist treated me and MANY Therapist are No Longer With D.H.S

| 34 | Dr. Vala Stewart | TPRC Panel Member |
|----|------------------|-------------------|
| 35 | Dr. Zavalis | TPRC Panel Member |
| 36 | Dr. Requit | No Longer My Therapist (TPRC) Member |
| 37 | Dr. McCall | TPRC Panel Member |
| 38 | Ms. Peterson | TPRC Panel Member |
| 39 | DR. Dudek | TPRC Panel Member |
| 40 | Ms. Graham | TPRC Panel Member |
| 41 | DR. Leavitt | NO Longer With D.H.S |
| 42 | Dr. Gambon | NO Longer With D.H.S |
| 43 | Dr. William | NO Longer With D.H.S |
| 44 | DR. Levinson | NO Longer With D.H.S |
| 45 | Dr. Barron | NO Longer With D.H.S |
| 46 | Mr. Turek | NO Longer With D.H.S |
| 47 | Ms. Mata | NO Longer With D.H.S |
| 48 | Ms. Dorsainville | NO Longer With D.H.S |
| 49 | Ms. Harper | NO Longer With D.H.S |
| 50 | Ms. Mauer | NO Longer With D.H.S |
| 51 | Ms. Carson | NO Longer With D.H.S |
| 52 | Mr. Bullard | NO Longer With D.H.S |
| 53 | Ms. Fleurimond | NO Longer With D.H.S |
| 54 | Ms. O'Conner | NO Longer With D.H.S |
| 55 | Ms. Aguilar | NO Longer With D.H.S |
| 56 | Mr. Reeves | NO Longer With D.H.S |
| 57 | Mr. Hanricks | NO Longer With D.H.S |
| 58 | Dr. Kirev | NO Longer With D.H.S |
| 59 | Mr. Ratia | NO Longer With D.H.S |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# BHARAT MALDE.........GROUP & MODULE

## Since I have been S.T.U ....Many group Change And Many Different therapist

| Group # 01 , 06, 18 , 16, 11, 13, 17, 10, 05, 22, 14 | | | | | | 12 – Different Group |
|---|---|---|---|---|---|---|
| | MONTH & YEAR ....START ALL MODULE | | | | | How Many Time |
| Anger management # 1 | August-04 | March-10 | | | | 2– Time |
| Relapse Prevention # 1 | January-05 | | | | | |
| Art Therapy | January-05 | | | | | |
| Anger management # 2 | January-05 | | | | | |
| Family of Organ | April-05 | | | | | |
| Arousal Reconditioning | April-05 | May-06 | January-07 | December-10 | October-11 | 5-time |
| Personal Victimization | September-05 | | | | | |
| Relapse Prevention # 2 | September-05 | | | | | |
| Relapse Prevention # 3 | January-06 | May-06 | January-09 | October-09 | | 4– Time |
| Victim Empathy | January-06 | September-06 | | | | 2– Time |
| Poetry Therapy | January-06 | | | | | |
| Self-Representation # 1 | September-05 | | | | | |
| Electronic Technician Tech | September-05 | | | | | |
| Sex Education | August-08 | May-11 | | | | 2 – Time |
| Medical Billing | February-10 | | | | | |
| Resume- Training | August-10 | | | | | |
| Vocational preparedness | August-10 | | | | | |
| Social Skills Intermediate | February-12 | | | | | 1 st Time |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| BHARAT MALDE..........POLYGRAPH TEST |  |  |  |  |  |  |  |
| --- | --- | --- | --- | --- | --- | --- | --- |
| ALL POLYGRAPH TEST PASS |  |  |  |  |  |  |  |
| SEXUAL HISTORY | March-06 | (2) POLYGRAPH SEXUAL HISTORY AND DEVIANT AROUSAL |  |  |  |  |  |
| INDEX POLYGRAPH | November-07 | (7) DIFFERENT QUESTION TIMES -3  TOTAL 21 QUESTION |  |  |  |  |  |
| CURENT AROUSAL POLY | January-08 | (10) DIFFERENT QUESTION TIMES -3 |  |  |  |  |  |
| TOPIC WAS WEATHER<br>I'M HAVING ANY SEX<br>ACCORDING TO<br>Mr. Calabrise | July-09 | Mr. Calabrise Was Wrong and I prove it, and never had any kind sex with ( STU ) Resident and I pass the test. After 4 Week - Mr. calabrise call me and Apologize to me ....and my theripist dose not has to Apologize to me as I told Mr. calabrise. |  |  |  |  |  |

BHARAT MALDE 364

Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001

**To: Lawrence S. Lustberg, Esq. and
Johnathan Manes, esq**.
Gibbons P.C.
One Gateway Plaza
Newark, NJ 07102

Date: 04/19/2012

**To: Ian Marx, Esq**.
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

**Presiding Judge: Hon. Dennis M. Cavanaugh, U.S.D.J**.
U.S. District Court of New Jersey
451 U.S. Post Office Courthouse Bldg.
P.O. Box 999
Federal Square
Newark, NJ 07101-0999

RE: <u>Objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)</u>

I am the STU Resident identified at the top of this page, and I strenuously object to the above captioned settlement on numerous grounds, but especially for three main reasons: <u>First</u>, because I reject counsel designated and the residents designated as representatives, <u>Second</u>, because the settlement as proposed completely ignores and eliminates significant, crucial, meritorious issues that we have been asserting for years and <u>Third</u>, because the settlement doesn't comport in many areas with the report of authority Dr. Judith Becker, who was the chosen expert of the Attorney General.

<u>First</u>, because we completely reject counsel designated and the residents designated as representatives:

Residents have objected to Seton Hall personnel and Gibbons attorneys for years in that Seton Hall representatives were retained to advise how New Jersey's Sexually Violent Predator Act ("SVPA") ought to be constructed. This connection creates a conflict of

1

interest. The fact that they are now involved in generating such a narrow settlement in spite of the numerous significant meritorious issues that have been presented, indicates that our worries about a conflict of interest may be warranted and is cause for grave concern. Additionally, over the years of "settlement negotiations," neither Seton Hall personnel, nor Gibbons counsel, nor the plaintiffs of <u>Alves v. Ferguson</u> have communicated with the rest of the residents about the progress of the settlement, and they have ignored significant pieces of attempted input. Residents have had very little if any input into these negotiations. STU Residents are so troubled by the narrowness of the settlement and by how vague, conditional, and subjective it is, that many are concerned that the plaintiffs of <u>Alves</u> received some "enticement" in order to manipulate their surrender to such a narrow set of agreements. We reach out to counsel for <u>Bagarozy v. Harris</u>, Mr. Ian Marx, Esq. to further develop and prosecute this issue on our behalf.

**<u>Second</u>**, because the settlement as proposed is far too narrow and completely ignores and eliminates significant, crucial, meritorious issues that we have been asserting for years. We were so concerned that our issues were being suppressed that on September 2, 2009, we met with Ian Marx, Esq., Counsel for <u>Bagarozy v. Harris</u>, and in writing he agreed to protect and prosecute our issues (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy). The issues that Mr. Marx committed to preserve and prosecute on our behalf include the following:

*Seton Hall's voluntary surrender on the issue of compelling the State to create half way houses for STU residents. This "surrender" additionally flies in the face of Dr. Becker's call for de-escalation of restraints. Also, again, Seton Hall was retained to advise how to create New Jersey's SVPA, and this is surrender is a conflict of interest.

*In view of Kearny Residents being transferred to a building that was formerly used as a detention center for prisoners (a depressing, highly restrictive, counter-therapeutic facility), we strenuously object to the elimination of the ability to challenge the housing facilities. We are shocked by this elimination and additionally this suppression also flies in the face of Dr. Becker's report. Dr. Becker advocated for a therapeutic environment.

*The literally pervasive presence of the Department of Corrections ("DOC") in a treatment facility has a counter-therapeutic effect and creates a highly restrictive and counter-therapeutic environment which continues to exist at the STUs and has gotten worse since Dr. Becker's visit. Mr. Marx had committed in writing to challenge this condition (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy) and we request that he further develops this issue in his reply.

2

*We seek significant monetary punitive and compensatory damages for the additional years of lost liberty and other emotional and psychological harm residents have suffered due to inadequate treatment, the lack of qualified treatment personnel (Doctors), and un-constitutional, inhumane, counter-productive, counter-therapeutic conditions as outlined in Dr. Becker's report, the "worst she has ever seen."  Monetary damages have been a part of <u>Bagarozy</u> from its inception, Mr. Marx has committed in writing to seek such monetary damages, we seek to go to trial on this and the other issues, and I request that Mr. Marx further develop this issue our behalf.

*Because Dr. Barone, a previous Director of Psychology at the STU, was fired for conduct that was completely inappropriate, we submit that her judgment was fatally flawed and that she was patently unfit to judge who should be civilly committed.  In view of this, we request that every resident that she had a hand in committing be re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General.  Mr. Marx committed in writing that he would seek this (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

*We have also asked Mr. Marx to make constitutional arguments on our behalf, including: **Double Jeopardy**, **Ex Post Facto**, and **Res Judicada** as well as those mentioned below (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

    <u>a)</u> A concentrated challenge of the Due Process violations of the initial commitment process:

    <u>b)</u> A concentrated challenge against the arbitrary, unequal application of the law for individuals under the same class and circumstances:

    <u>c)</u> A concentrated effort, in view of item "<u>**b**</u>" above and all the abuses that residents have been subjected to as a whole, to have the civil commitment of every resident presently being held in the STUs re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General.  Towards this end, we seek timely Discovery from DOC, including the specific records of each sex offender released over the past ten (10) years who the two doctors were not sent to evaluate prior to their release.

3

**d)** We seek a comprehensive investigation and challenge to the improper manner in which actuarial instruments have been and are being used to commit residents.

**e)** A concentrated challenge of the denial of <u>Trial by Jury</u>.  The claim is being made that a jury is not required because this commitment is "civil and not criminal." However, crucial liberty interests are involved to a degree that is above and beyond any criminal case.

**f)** There is evidence that the <u>rule of law</u> has been ignored for STU residents: there is a delay of approximately <u>one (1) year</u> between the filing of Notice of Appeal for a citizen civilly confined under the SVPA and a brief being written by the Public Advocate's Office.  There have been instances where the Public Advocate's office permitted fifteen (15) months to pass without the Attorney general's office filing a reply.  Regarding the statutory **yearly** review that is to be afforded to those civilly committed, that hearing is routinely not scheduled until after an Appellate Decision has been rendered.  Residents have at times gone three, four, and five years without a review hearing even though they are entitled to one by law every year.  We aggressively challenge this.

<u>Third</u>, Because of all of the above reasons and because in numerous areas the proposed settlement does <u>not</u> comport with the report of Dr. Judith Becker, the authority chosen by the Attorney General, we ask the court to dismiss it, or in the alternative, to separate the <u>Bagarozy v. Harris</u> and the <u>Hasher v. Corzine</u> case from the <u>Alves v. Ferguson</u> settlement allow the <u>Bagarozy</u> and <u>Hasher</u> cases to go forward.  We respectfully request that in their reply to this settlement proposal that Greenberg Traurig, counsel for <u>Bagarozy</u>, focus on the areas where the <u>Alves</u> settlement is not in accord with Dr. Becker.  However, some of those areas are presented below:

1) I Completely object to the Settlement. It does Not Comport With the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "Worst She had ever Seen". I Also Completely object to numerous Issues passed over.

2) Also I have Been 9 Years and I Completed All the moudle more then (5) Time Total 40 Moudle f have Taken

4

And within the 9 years I had (59) Therapist Treated me and No one Can make Decision. And 1/2 the therapist No Longer with Otis Then Who make Decision on my life There for I wanted to go Fully Trial. Please See All Dr. Busael Repot and Review.

Respectfully submitted,

STU Resident

5

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *Charles Manasco*

Signature: *Charles Manasco*

Resident Identification Number: *#106*

Date: *4/12/12*

Comments:

_____*over*_____

_____

_____

_____

_____

**Class Member's Objections/Comments Re Proposed Settlement**

From: Charles Manasco
STU, #106 Annex CN-905
Avenel, NJ 07001


Date: April 12, 2012


To: STU Settlement
c/o Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

Dear Cass Counsel:


**Objections to the settlement:**

1) There is no set patron for a realistic release

2) There is no accountability for the damage they have done to me do to not having a proper program,

3) Rights and liberty were denied me for over 11 years

4) My life as a professional business man and artist has been destroyed do to their incompetence and lack of ability to properly release me

5) I lost out on being with family and friends before their death (8 member)

6) Nothing in settlement about MAP programs being punitive, denying, packages, visits, ect.

7) Nothing in settlement about the MAP process, being that when a person is placed on MAP there is no separate entity for judgment, only those who maliciously had you put on MAP.

8) They want us to attend self help groups, which save them hundreds of thousand of dollars by having ill minded residents running these groups.

9) There is no mention about residents who have been in Avenel for years doing the therapy, and where high phase when being civilly committed, I was civilly committed where I had to start from the beginning and today being on phase three for 9 years now. And I have less credibility then a resident who acts out. Their program works on like ability., not therapeutically

10) there no mention about having Program Coordinators running groups, and being the main decision maker in our process and work status.

11) Nothing in settlement that is clear about the disability act, I am legally deaf, and I am denied an interpreter which is required by law and essential in my growth. Lip reading only gets me half way there.

12) There is no accountability for deviant and malicious report writing or falsifying statements

(Class Members Objections/Comments Re Proposed Settlement)

or records to justify commitment.

13) Nothing in the settlement that pertains to the visit program,

**Comments:**

I was with Resident Robert McGarrey when preparing and filing this 1983 Claas actiion, and and helped pay some of the cost. I first have to tell you 2/3 rd of the action was not evident in this settlement, which really surprised me. I too files action against DHS and it took me 10 years which at the end they didn't want to go to trial and settled with me. Part of that settlement was that there would be no retaliation on behalf of the defendants, and that is all they have been doing to me since. The DHS do not honor settlements, they are therapist not lawyers, and therefore they will us therapeutic means to justify breaches in the settlement, I seen them do it, and they will do it again.

As mentioned above, I have been in treatment now for over 24 years, I know these concepts better then they do, and I apply them which they do not. I have passed every module in Avenel several times, and here I have passed them at least two times. I have taken responsibility for my crime over 24 years ago, and have been working on self ever since. I entered Avenel a angry and none educated person who couldn't read nor write. Today I have an Associates in Paralegal, I also obtained a Bachelors in Business Administrations, and established my own business, www.captivearts.net I had people working for me, and I was paying taxes up until last year of 2011. For the Program Coordinators began writing me condemning my work and encouraging me to stop doing my business, which then I stopped giving charities, laid off the workers, and closed my business. So through my growth in treatment, I was able to obtain all I did, and yet through these none professional staff here they have found away to destroy everything I worked on, which was supported by my therapist from Avenel. The STU spent close to 2 million dollars to give me treatment I already know? They do not build here, they destroy and make you out to be weak and sad.

I expressed to you that these STU staff and the SVP Act, has destroyed my life. I came in here at the age of 36, strong health, motivated, and sharp. Today I am sickly, aged more then I should have, memory is bad, and I lost half of my financial & moral support. I lost out on all the opportunities I had before getting civilly committed. I tried to hold on to them, but you can't stop death. And this is why I feel there should be some form of compensation for their actions, some form of monetary damages, to compensate for the money I would had earned if they would had released me when I should have been release. I had two millionaires prepared to back me in my business quest, for I did have a real estate license in New Mexico which I earned through a proctor which I took in Avenel. I had a lot of potential and I can bring forth some of those people to testify to this statement. With regard to the above, the settlement doesn't reflex the actual complaint which it seems to have favored the defendants rather then being mutual in nature. Therefore if my objections and comments are not considered, I then strongly disapprove of this settlement agreement.

Respectfully Submitted

Resident: Charles H. Manasco

                              **Special Treatment Unit**
                              **Social Worker Staff**


To Whom it may concern:

    Pursuant to the notification sent "...by Order
of Judge Dennis M. Cavanaugh of the United Sates
District Court for The District of New Jersey."
Wherein I was instructed "You may also deposit your
written objections/comments in a Social Work
Request box at the STU, in which case the staff of
the STU will mail it for you, free of charge."  I
am entrusting this envelope containing my
objections to your care for mailing as described
above.

    Thank you for your assistance in this matter.

                              Sincerely

Dated 5/11/12
                              **Roy L. Marcum #144**