# Roy L. Marcum

CN 905, 8 Production Way, Avenel NJ, 07001

May 11, 2012

**Professor Barbara Moses**
Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

**Dear Professor Moses:**

Enclosed, please find second copy of my objections to the Settlement Agreement. As I informed you the original was mailed to you on Thursday May 10, 2012, and returned with **one cent** (!?!?!) postage due the next day. Obviously, it would be the rankest paranoia to attribute this to conspiracy on the part of STU officials but, it would be foolish not to be somewhat suspicious, particularly in light of the fact that the original had eighty-four cents postage affixed to it. I placed yet another stamp on it and immediately re-mailed it.

In any event, I hope this reaches you on time. All the instructions given to us specify, "...either postmarked or deposited in the Social Work Request Box by May 14, 2012." As I have done both, I can see no reasonable grounds to have my objections excluded from consideration.

Sincerely

Roy L. Marcum

Fr:      Roy L. Marcum #000144
           Special treatment Unit
           8 Production Way, Trl #2
           CN 905

To:      STU Settlement
           c/o Seton Hall University, School of Law
           Center for Social Justice
           833 McCarter Highway
           Newark, New Jersey   07102

**Re: RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, ET AL.**
**Objection to Proposed Settlement**

1. **Treatment Refusal:** The definition of "Treatment Refusal Status" under section **V., U.,** as one who "fails to improve participation in treatment despite placement on Treatment Probation," is highly objectionable as is the use made of that definition. Many Treatment Refusers do not engage in treatment at all. These include, but are not limited to: Residents who maintain their innocence (a subgroup of whom are actively on appeal of their convictions); Those who object to their commitment from prison, as opposed to the Adult Diagnostic and Treatment Center ("ADTC"), who, having been adjudicated as not in need of treatment, maintain they should not be subject to a relitigation of the issue and coerced into treatment; Residents who object to the treatment on religious grounds; Residents who question the validity of the "Cyclical" model of so called "Sex Offender Treatment," regarding it as a form of brain washing or coercive conditioning rather than a valid system of therapy; and a host of other legal, religious and even political grounds. The definition used in the Settlement also attempts to deprive such Treatment Refusers, by litigating

away their existence, of educational, social and legal services. Further, the provision that this agreement is in the "best interests of all" who "(b)... are pending commitment, or may in the future be committed pursuant to the NJSVPA..." forecloses any future relief on behalf of persons who, by definition, cannot be consulted as to their so-called best interests. This is a degree of unfairness that borders on insanity. Do the Plaintiffs' attorneys seriously claim the ability to speak for potentially civilly committed persons yet unknown? For the above stated reasons, the Settlement Agreement should be rejected.

2. **MAP Placement:** Currently the "Modified Activities Program" ("MAP") is administered without review or due process of any sort. The current settlement agreement frames the discussion entirely in terms of "therapy," and is mistaken in its sole reliance on M.X.L. v. DHS/DOC. With regard to MAP, the New Jersey Appellate Court has stated:

> "It is not self-evident to us that every limitation of rights pursuant to N.J.A.C. 10:36A-2.3 involves a treatment decision. In fact, N.J.A.C. 10:36A-2.3 and -2.4 suggest otherwise because they distinguish between treatment issues, as to which DHS staff are the decision makers, and safety issues, as to which DOC staff are the decision makers. Here the limitation of L.O.'s rights was premised on his involvement in a physical altercation with another resident, under circumstances in which the other resident appears to have been the aggressor." (See Appendix A, L.O., v. DHS, 2010 N.J. Super. Unpub. LEXIS 1499, DOCKET NO. A-0163-09T2)

Clearly at least some portion of the State Judiciary is prepared to acknowledge that not all questions raised are

"Treatment" questions. In addition the DMHAS Staff routinely uses the threat of MAP placement to coerce Residents' confessions (see Appendix B), and acceptance of responsibility for conduct which they have either, not been proven to have engaged in, or which may be blameless. The existing practice of arbitrary and capricious MAP placement at the whim of virtually any staff member (often acting on the unsupported allegations of malicious Residents) is a tool that the Administration can use to suppress dissent, to force acquiescence to inappropriate treatment modalities, and to work out personal grudges of the staff and certain Residents. Further, once placed on record, unsupported allegations made in a MAP context can be used as evidence of continuing "mental abnormality" at subsequent hearings reviewing a Residents commitment thereby disparaging the Resident's liberty interests by the use of hearsay that has taken on the aura of fact while in actuality remaining unproven. For the above stated reasons the Settlement Agreement should be rejected.

3. **Treatment Ombudsperson:** Concerning "<u>EXHIBIT C</u>" the memorandum of understanding between DMHAS and DOC, Section entitled "<u>III GENERAL PROVISION</u>" A, Mutual Covenants § 2. "The **OCO** agrees that:... (c)...Examples of treatment complaints <u>without</u> the scope of this Memorandum of Agreement are complaints regarding the necessity for a specific treatment modality or appropriateness or effectiveness of

the treatment provided by DMHAS staff." Here the "OCO" means the Department of Corrections Ombudsperson. The OCO, a corrections position requiring no treatment expertise or, in fact, any connection to the treatment process, is bargaining away an authority that is nowhere vested in that office or within the scope of its duties. In addition, any surrender of the right to question the "...necessity for a specific treatment modality or appropriateness or effectiveness of the treatment provided by DMHAS..." leaves Residents bereft of meaningful recourse to a review of their course of treatment. Challenging "a specific treatment modality" only at annual review hearings can, does, and will, continue to leave residents stuck in counterproductive treatment situation for the entire year between hearings. In addition the characterization of MAP as a "treatment modality" can leave residents stuck in what amounts to Administrative segregation for extended periods with no right of review or due process to challenge their MAP confinement. For the above stated reasons the Settlement Agreement should be rejected.

_May 11, 2012_
May 9, 2012
11
_The copy 5/11/12_
_Rom_

_Roy S. Marcum_
Roy L. Marcum #144

# APPENDIX A

L.O., Appellant, v. D.H.S., S.T.U., Respondent, Docket No. A-0163-09-T2

**L.O., Appellant, v.**
**DEPARTMENT OF HUMAN SERVICES SPECIAL TREATMENT UNIT, Respondent.**
**SUPERIOR COURT OF NEW JERSEY, APPELLATE DIVISION**
**2010 N.J. Super. Unpub. LEXIS 1499**
**DOCKET NO. A-0163-09T2**
June 3, 2010, Submitted
July 8, 2010, Decided

**Notice:**

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION. PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS.**

**Editorial Information: Prior History**

On appeal from a Final Decision of the Department of Human Services, Special Treatment Unit. State v. Oliver, 133 N.J. 141, 627 A.2d 144, 1993 N.J. LEXIS 722 (1993)

**Counsel:** L.O., appellant, Pro se.
Paula T. Dow, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Lisa Marie Albano, Deputy Attorney General, on the brief).

**Judges:** Before Judges Cuff and Waugh.

Opinion

PER CURIAM

Appellant L.O. appeals from the determination of the Clinical Director of the Special Treatment Unit (STU), which is jointly operated by the Department of Human Services (DHS) and the Department of Corrections (DOC), declining to afford him a due process hearing with respect to his placement in the STU's Modified Activities Program (MAP) following an altercation with another STU resident. We dismiss the appeal as moot.

I.

We glean the following facts from the record. In 1989, L.O. was convicted of crimes involving sexual assault. He was sentenced to an aggregate term of thirty-eight years imprisonment, during twelve years of which he would not be eligible for parole. His conviction was reversed. State v. Oliver, 133 N.J. 141, 627 A.2d 144 (1993). He was retried and convicted on some, but not all, of the same charges. He was sentenced to incarceration for thirty years, with a twelve-year period of parole ineligibility.

Upon parole, the State moved to civilly commit L.O. under New Jersey's Sexually Violent Predator Act (SVPA), N.J.S.A.

L.O., Appellant, v. D.H.S., S.T.U., Respondent, Docket No. A-0163-09-T2

30:4-27.24 to -27.38, which provides for the involuntary commitment of certain persons convicted of sexual offenses who require "continued involuntary commitment." N.J.S.A. 30:4-27.32(a). L.O. was temporarily committed, pending a final commitment hearing.

Persons civilly committed under the Act are housed at the STU, which is primarily operated by DOC. N.J.S.A. 30:4-27.34(a). DHS is responsible for providing treatment to STU residents. N.J.S.A. 30:4-27.34(b). The two departments are required to "participate in an interagency oversight board to facilitate the coordination of the policies and procedures of the facility," N.J.S.A. 30:4-27.34(c), and to promulgate regulations concerning "the rights and rules of conduct applicable to a person subject to involuntary commitment as a sexually violent predator," N.J.S.A. 30:4-27.34(d). See also M.X.L. v. N.J. Dept. of Human Servs., 379 N.J. Super. 37, 876 A.2d 869 (App. Div. 2005).

According to L.O., the following events gave rise to his transfer to MAP. On July 19, 2009, L.O. returned to his cubicle from another section of the STU. Each cubicle holds four STU residents. Another resident, A.B., who shared the same cubicle, told L.O. to stop putting his note pads on top of A.B.'s storage container.[1] L.O. asserts that A.B.'s container was improperly placed in his area. L.O. told A.B. that the container was in his area and should be moved back to A.B.'s area. A.B. refused and left the cubicle.

L.O. then proceeded to move the container to A.B.'s side of the cubicle. A.B. ran back to the cubicle and, according to L.O., attacked him by jumping on his back, which caused L.O. to fall forward and cut his arm on the locker. L.O. asserts that, in self-defense, he pulled A.B. off his back, grabbed him by the back of his neck and pushed his head downward. L.O. held him in that position until STU guards arrived. L.O. was taken to the infirmary for treatment and then to "detention."[2]

As a result of what it described as "a physical argument with another resident," DHS placed L.O. on Tier MAP and in a Tier MAP treatment group so that he could, according to DHS, "therapeutically process the incident." See M.X.L., supra, 379 N.J. Super. at 45-46 (generally describing the MAP levels and restrictions). DHS advised L.O. that his therapeutic intervention would remain in place for thirty days until he had time to address the issue in treatment. See N.J.A.C. 10:36A-2.4(a).

On July 30, 2009, L.O. filed a remedy request form with Dr. Merrill Main, Clinical Director of the STU, requesting that his treatment team's decision to place him on MAP be reversed. On August 13, 2009, Main responded to L.O.'s remedy request. He stated that the MAP placement was handled in a clinically sound manner. The response noted that L.O.'s core complaint was that

2

L.O., Appellant, v. D.H.S., S.T.U., Respondent, Docket No. A-0163-09-T2

he believed he was unfairly placed in MAP by his treatment team
after the incident with the other resident. Main noted that
during the initial MAP review, DHS staff came to understand
that there had been conflict escalating between L.O. and the
other resident for some time and that L.O. could have brought
the matter to his therapists prior to the altercation to
arrange for conflict resolution. Main indicated that addressing
such matters is the goal of the MAP process, and L.O. was
encouraged to avail himself of the treatment being offered to
him in this regard. He did, however, acknowledge that A.B. was
"significantly more culpable for the eventual altercation than
[L.O.]."

     L.O.'s treatment team downgraded his MAP placement to
Program MAP on July 31, 2009, because, according to DHS, he had
begun to address some of the related issues in his MAP process
group. As a result, a number of personal privileges were
reinstated, and he was released back into the general
population; however, his job privilege remained suspended. On
August 25, 2009, L.O.'s job privileges were reinitiated.

     L.O.'s notice of appeal was filed on September 10, 2009,
and his merits brief was filed at the same time. The Attorney
General did not file the statement of items comprising the
**record on appeal** until February 23, 2010. Despite several
extensions, the Attorney General never filed a merits brief. We
chose to treat a letter brief in support of a motion for
summary disposition filed a few weeks before the date on which
the appeal was to be submitted as the State's merits brief.

                              II.

     N.J.A.C. 10:36A-2.3 sets forth the rights of STU residents
that are "subject to denial" in appropriate circumstances. They
include "[t]he right to the least restrictive conditions within
the secure facility necessary to achieve the purposes of sex
offender treatment that is recommended by the treatment team
and necessary to ensure the safety of the residents, staff and
the general public." N.J.A.C. 10:36A-2.3(a)(3).

     The rights listed in N.J.A.C. 10:36A-2.3

          may be curtailed, suspended or denied in accordance
          with internal management procedures and policies, and
          pursuant to N.J.A.C. 10:36A-2.4 (10A:35-2.4) when
          Department of Human Services clinical staff determines
          that such restrictions are consistent with the
          therapeutic goals of the resident, or when Department
          of Corrections staff determines that such restrictions
          are necessary to protect the resident, other residents,
          staff, general public, or property, or to ensure the
          safe, secure and orderly operation of the facility, or
          for other good cause[.]

                                3

L.O., Appellant, v. D.H.S., S.T.U., Respondent, Docket No. A-0163-09-T2

N.J.A.C. 10:36A-2.4 requires that the denial of rights be approved by the Clinical Director or the DOC Administrator, or their designees, and that the reason shall be provided to the resident within seventy-two hours. Although the denial may continue after the initial thirty-day period, N.J.A.C. 10:36A-2.5(a), a "written statement indicating the detailed reason(s) for the continuation of the denial of the right(s)" must be provided to the resident by the Clinical Director or DOC Administrator or their designees, N.J.A.C. 10:36A-2.5(b).

The essence of L.O.'s argument is that he was subject to "discipline" without any sort of due process. See Avant v. Clifford, 67 N.J. 496, 523-46, 341 A.2d 629 (1975) (outlining requirements for significant discipline in prisons); N.J.A.C. 10A:4-9.1 to -9.28 (regulations governing prison discipline).

DHS argues that L.O. was not entitled to any due process procedures because his placement in MAP status was a treatment, rather than a disciplinary, decision. It relies on M.X.L., supra, 379 N.J. Super. at 48-50.[3] That case, however, involved an STU resident who was found in possession of pornography on numerous occasions. Id. at 43-44.

It is not self-evident to us that every limitation of rights pursuant to N.J.A.C. 10:36A-2.3 involves a treatment decision. In fact, N.J.A.C. 10:36A-2.3 and -2.4 suggest otherwise because they distinguish between treatment issues, as to which DHS staff are the decision makers, and safety issues, as to which DOC staff are the decision makers. Here the limitation of L.O.'s rights was premised on his involvement in a physical altercation with another resident, under circumstances in which the other resident appears to have been the aggressor.

It is equally unclear whether all of the procedures required by Avant are applicable when the limitation of rights at issue does not involve discipline "resulting in forfeiture or withholding of good time credits; confinement in a disciplinary cell; administrative segregation; transfer to another institution or to a higher security status for disciplinary reasons; or any other action which would tend to affect the inmate's release or parole date or have a major change in the condition of confinement." Avant, supra, 67 N.J. at 519 n. 21 (citing Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)).

We decline to decide those issues in this appeal because our reading of the record indicates that the case is moot. It appears that L.O.'s rights have been restored and he is no longer subject to MAP restrictions.

Appeal dismissed.

4

L.O., Appellant, v. D.H.S., S.T.U., Respondent, Docket No. A-0163-09-T2

## Footnotes

1)   N.J.A.C. 10:36A-2.3(a)(5) provides that a resident has the "right to have individual space for storage use."

2)   The record contains statements from other STU residents supporting L.O.'s version of the event.

3)   Unlike the resident in M.X.L., supra, 379 N.J. Super. at 49-50, L.O. did not acknowledge his culpability in the matter and properly followed the STU grievance procedure.

# APPENDIX B

## STU Prescription Drug Abuse Agreement

The STU would like to bring to your attention that the abuse of prescription drugs and over the counter medication is noted to be a significant problem in society. Many individuals develop addictions, cause physical damage, and otherwise suffer adverse impact from the abuse of otherwise legal drugs. Individuals who are in recovery for substance abuse are usually brought to the wisdom of avoiding intoxicating prescribed medications at almost all costs. Such individuals know that prescribing physicians may not be aware of the risk of relapse that such medications bring so people who are serious about recovery know that they need to be knowledgeable, vigilant, and proactive. The abuse of prescription drugs and over the counter medication, including "keep on person" (KOP's) by STU residents is prohibited. Medications are not to be abused or misused in any way such as; hoarding, exchanging, altering or trying to get a 'buzz' or get high. Medications are to be taken as prescribed by your physician or as read on the label. However, you must also be proactive, work your recovery, and be an informed consumer of medical treatment. That includes avoiding medications that increase risk of relapse when such avoidance is reasonably possible. We must emphasize that it is your responsibility to know what medications you are taking as well as the potential of abuse or addiction.

There are a number of reasons that we view this as important to your treatment. In particular, residents with a personal history of substance abuse themselves, or with a family history of substance abuse, are at higher risk for abuse. Even if these factors do not apply to you it is important to know that any time you use more than a prescribed dose you are abusing that medication. This agreement is a prescription drug abuse prevention education effort, with the primary goal of preventing the abuse of prescription drugs and over the counter medication.

You're receiving this because you came up positive for drugs but one or more of the medications that you received from Medical could account for those results. We encourage you to be proactive in your recovery and sign this as an agreement. However, please accept this as notice that, subject to review of individual situations, your treatment team will regard your behavior as drug abuse should you again come up positive.

Please read and sign the following statement:

I, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ am committed to my recovery process at the STU and wish to indicate my level of motivation by agreeing to maintain a prescription and over the counter abuse-free lifestyle during my treatment. I am fully invested in treatment and this agreement reflects my understanding about the risks of overdose, misuse, and abuse of prescription drugs. I further agree that this behavior can increase my own risk of re-offending or relapsing.

Resident Name: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Signature: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Date: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

STU Staff Witness Name: J. Rivera

STU Staff Signature: _____



**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Calvin L. McCloud.

Signature: Calvin L. McCloud.

Resident Identification Number: #463.

Date: 4/13/12 - Friday.

Comments:

None of the Items Below are Stated in this Brief. Jobs upon Release, Life Skills, Application Training, No-Paying For Vocational Training, Social Workers, Not Social Worker Therapis, A Review of Double Jeopardy = All Factors, Release Plans and Release of Residents that Came From Prison.

Independed = Outside Panal For Court,
Investigation of the Public Defenders office, and
its Attorneys Asigned To Residents Civil Cases,
Independed Review of the Way this Facility and
Residents Care And Treatment, Investigation of
Dr. M. Main As A Conflict of Interest (his Father).
A Review of the Therapy = Short or Long Term,
Treating all Residents with Respect With Chance
To Prove Themselves within the Community,
Residents are Treated Worst then (Murderers).
No Poison Food, Review of the Way Medical and
D.H.S System is Set-up, Less Women and More
Men, Black Doctors That Can Relate To the Black
Community of Residents, (Removal of Dr. M. Main).
All those Concerns Thats Within the Packet We Signed
For, Fail the Residents and there Familes, This
System is a Renewing Failure. Thats Why I and
Others Beleive that the only Way any Real Help
Can Come To the Residents is By Trial.
So, I Reject the Packet and the Settlement
and Let a Trial Court Hear the Statements of
six Hundred Plus Residents and Hopefully there
Supported Family Too. (Going To Trial).

2

Calvin S. McCloud #463/2-North #218.

Calvin S. McCloud #463.
Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001

**Lawrence S. Lustberg, Esq. and**
**Johnathan Manes, esq**.
Gibbons  P.C.
One Gateway Plaza
Newark, NJ  07102

Date: April 21, 2012 SAT.

**Ian Marx, Esq.**
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

**RE: Class-member objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)**

I am the class-member identified at the top of this page, and I strenuously object
to the above captioned settlement for the following reasons:

I Strongly Reject this Settlement on Behalf of No one Talk
To Me on the Gounds of this Settlement. There is No Jobs,
awaiting us That has Been in This System For a long Time.
No-Life Skills Training, Nor the Chance To Prove What Therapy
or how Therapy has impacted My Life. Also Better food, this
Food is Sickning, Better Medical Department, Also, Asking the
Question - Why are People Dieing Because of A Lack of Medical
Care? I myself have Been Taked To the Hospital for a Lack
of Concern of a Medical Problem that was over Looked and
Could have Killed Me. Food is a Problem, Many Cannot Eat this
Stuff, Because it Get us Sick, But Dott. S. Doesnot Care.

1

D.O.C. Should Be on the Out-Side of this Facility. D.O.C. Don't Know Nothing about Therapy, only Punishment! You are always Guilty, Your Put On Map For More then 30days To 6-Months, Even if You Didn't Do anything. D.H.S. isn't any Better, No Control in this Facility. Punishment is The Key Word For everyday. We Talk about the Same thing every Group, When will Their Be Time To Show That You Can Be a Greater Part of the Community? We Say the Same things over and over until even Talking Starts To Feel like Your Being Punish every Group, Release is Needed For a Great Many of us here, When will MY Chance Come or will I Die up in here like Many have, I'm 58 Years of Age, have no Prison Charges From Riverfront State Prison, Nor Do I have any Charges Since I Been here, Sept 14, 2007. Dr. M. Main, Needs To Go, Dr. Main had Stated, We Were F--K When We Came Through Those Doors. and Therapy Will not Get You out of here, So Why Do Therapy? People Need To Be Release From her To Show themselves that they are a Better People From When They First Came here! This is a Cash Cow For D.O.C. and D.H.S. Nothing Clinical about This Place, this is Prison all over again.

2

So The Question is, Why Do Therapy? The Very Person that is To help You, My Feeling, he is Trying To Keep us all Here, By Acting out and Get in Troble, So he Can Justie Why he Needs Money To Rune this Place. This Nothing But A Cash-Cow For those Whom Work here, D.O.C, D.H.S, Nothing For Residents Towards Release. Most of us are Better Then When We First Came through These Doors, Understanding and Concern For those we have harmed. But through our Lawyers and the A.G office, We As Residents DoesnT Stand a Chance of Being Release. The Attorney Generals office have 2-3 Doctors on Behalf of the State, and We as Residents only have 1-Doctor To Represent us, and he Works For the State. This isnot a Clinical Facility at all, this is a Prisoner Housing Facility, Call it What it is. and I Do Reject any Settlement that DoesnoT Remove D.O.C. and Dr. M. Main, As the Henderents of Residents Being Release From the S.T.U. Annex - and the Main Building. We are Called Residents, Just another Word For Prisoners. If we were Residents, Then We Should Be Paying Taxs! We are being Cheated out of our Wages. 2nd Closing, If this Settlement Doesnot have a Point and Time of Release of Residents From this Facility, Also the Removal of Dr. M. Main as Director I Donot and Willnot Go abong with any of this Set Settlement. Release Plans For Resident and Date, Removal of Dr. Main, Better Medical Department, Better and Soft Food For Residents, Out-Side inDepended Attorneys, Also Doctors (Male). Then and only Then Maybe We or I Will Think about this Settlement!

3                    Thank You Respectfully   Calvin McCloud.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Cleveland McCullers_

Signature: _[signature]_

Resident Identification Number: _259_

Date: _April 14th 2K12_

Comments:

_I, object AND WISH THIS CASE GOES TO TRIAL_

_I CAME TO THE STU IN 2001 AT level-4. (FIRST OFFENCE IN HOME). I WAS IN A T.C._

Community Project. When I QUESTIONED THE
Doctor visiting Avenel, THEY TOLD ME THEY WEREN'T
there for me. THE COURT HERE had Two Doctors
One for Defence & Doctor Carlson FOR THE State.
Both state THERE WAS A 10% chance for me to
recommit w/Factors Rea. iT.   THE State called
for another Doctor Vasconvie which stated the
Same only to be lead by THE State's Pros.; to
SAY otherwise. I SAY these Things which Are
record. To SAY its Also THE courts That needs
oversite. To much State control.

* There's nothing That THERAPY hasn't give me
  AFTER 20 yrs. ITs becoming redundant.

* Group Are NOW made WITH Moduals 1-2-3
  TO  1A, 1B-1C etc, THEN you GO ON TO
  OTHERS.

* There's AN inbAlance of 90% women
  There's Are 1½% Minorities here

* No VocAtional Schools, no hands on Training.

* Food from Prison, LACK of healthy meals.

* Nothing That gives me or others who Are getting old
  Support to GO outside; other Than old Fold Homes
  if At All.

* Conflict of Intrest when Director's Father's A Sex Offender.

Douglas McDonald
#508
Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001
May 2, 2012

**To: Lawrence S. Lustberg, Esq. and**
**Johnathan Manes, esq.**
Gibbons P.C.
One Gateway Center
Newark, NJ 07102-5310

**To: Ian Marx, Esq.**
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

**Presiding Judge: Hon. Dennis M. Cavanaugh, U.S.D.J.**
U.S. District Court of New Jersey
451 U.S. Post Office Courthouse Bldg.
P.O. Box 999
Federal Square
Newark, NJ 07101-0999

RE: Objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)

        Being a resident of the STU, I have some concerns about the proposed
settlement.  My main concern is that there is already a treatment program laid out in
the handbook that explains the 5 phases of treatment and what is required in each
phase.  According to the handbook, each phase should take about one year to complete,
making it a five year program.  Unfortunately, nobody has completed it in five years.  A
few years ago they were saying it is now a ten year program and lately I have been
hearing 15 to 20 year program.  It seems that most people are stuck in either phase 2 or
3 for many years (at least six or seven that I know of) without being advanced, being
told to repeat modules because they can get more out of it or that they haven't really
internalized it.  I understand people sabotage themselves by acting out or not wanting
to accept what they've done, but with such an overwhelming failure rate, I would think
that there might be a better way of getting them to advance, assuming therapy is truly

1

the main objective. So my main question then is: **How is this settlement going to change the way people are advancing through treatment?**

Also, if they have no intentions of ever releasing someone, I would think that there would be a better way of dealing with them other than what amounts to leaving them in prison for the rest of their lives. According to Dr. Main, they don't recommend anyone for release – it's totally up to the courts, so maybe that's something that should be addressed during the commitment or annual hearings.

Another problem with the treatment is that at present, other than getting more money, there is no difference between being phase 1 and phase 5. There is no feeling that we are getting any closer to the door until the judge starts ordering furloughs. That and the fact that some people are told they will never leave, feeds the feelings of hopelessness that's so prevalent in here.

That brings us to the main problem with the settlement; it doesn't address the other issues that, to my understanding, were part of the original lawsuit or were brought up over the years and were told they would be addressed.

My main concern is due process. It seems that the court makes decisions without being given a chance to challenge any of the assertions being made against me, and without any explanation of the decisions. Court dates are routinely being postponed and/ or cancelled without any notice or explanation, totally disregarding the law that requires an annual review. It seems that the court is incapable of keeping up with its own schedule.

The public advocates seem to be working with the Attorney General in committing us rather than representing us. This leads to the question: **How do we know the monitor and ombudsman won't follow suit and be lax in representing us?**

We are also being held in a prison, run by DOC who run it like a prison because that's what they're trained to do. All this also helps feed the feelings of hopelessness, which is counter therapeutic.

The following is excerpted from another resident's reply and better details the problems I have already mentioned as well as details in Dr. Becker's report that are *totally ignored* by the settlement.

The settlement as proposed is far too narrow and completely ignores and eliminates significant, crucial, meritorious issues that we have been asserting for years. We were so concerned that our issues were being suppressed that on September 2, 2009, we met with Ian Marx, Esq., Counsel for <u>Bagarozy v. Harris</u>, and in writing he agreed to protect and prosecute our issues (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy). The issues that Mr. Marx committed to preserve and prosecute on our behalf include the following:

2

*Seton Hall's voluntary surrender on the issue of compelling the State to create half way houses for STU residents. This "surrender" additionally flies in the face of Dr. Becker's call for de-escalation of restraints. Also, again, Seton Hall was retained to advise how to create New Jersey's SVPA, and this is surrender is a conflict of interest.

*In view of Kearny Residents being transferred to a building that was formerly used as a detention center for prisoners (a depressing, highly restrictive, counter-therapeutic facility), we strenuously object to the elimination of the ability to challenge the housing facilities. We are shocked by this elimination and additionally this suppression also flies in the face of Dr. Becker's report. Dr. Becker advocated for a therapeutic environment.

*The literally pervasive presence of the Department of Corrections ("DOC") in a treatment facility has a counter-therapeutic effect and creates a highly restrictive and counter-therapeutic environment which continues to exist at the STUs and has gotten worse since Dr. Becker's visit. Mr. Marx had committed in writing to challenge this condition (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy) and we request that he further develops this issue in his reply.

*We seek significant monetary punitive and compensatory damages for the additional years of lost liberty and other emotional and psychological harm residents have suffered due to inadequate treatment, the lack of qualified treatment personnel (Doctors), and un-constitutional, inhumane, counter-productive, counter-therapeutic conditions as outlined in Dr. Becker's report, the "worst she has ever seen." Monetary damages have been a part of <u>Bagarozy</u> from its inception, Mr. Marx has committed in writing to seek such monetary damages, we seek to go to trial on this and the other issues, and I request that Mr. Marx further develop this issue our behalf.

*Because Dr. Barone, a previous Director of Psychology at the STU, was fired for conduct that was completely inappropriate, we submit that her judgment was fatally flawed and that she was patently unfit to judge who should be civilly committed. In view of this, we request that every resident that she had a hand in committing be re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General. Mr. Marx committed in writing that he would seek this (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

*We have also asked Mr. Marx to make constitutional arguments on our behalf, including: **<u>Double Jeopardy</u>**, **<u>Ex Post Facto</u>**, and **<u>Res Judicada</u>** as well as those mentioned

3

below (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

**a)** A concentrated challenge of the Due Process violations of the initial commitment process:

**b)** A concentrated challenge against the arbitrary, unequal application of the law for individuals under the same class and circumstances:

**c)** A concentrated effort, in view of item "**b**" above and all the abuses that residents have been subjected to as a whole, to have the civil commitment of every resident presently being held in the STUs re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General. Towards this end, we seek timely Discovery from DOC, including the specific records of each sex offender released over the past ten (10) years who the two doctors were not sent to evaluate prior to their release.

**d)** We seek a comprehensive investigation and challenge to the improper manner in which actuarial instruments have been and are being used to commit residents.

**e)** A concentrated challenge of the denial of Trial by Jury. The claim is being made that a jury is not required because this commitment is "civil and not criminal." However, crucial liberty interests are involved to a degree that is above and beyond any criminal case.

**f)** There is evidence that the rule of law has been ignored for STU residents: there is a delay of approximately one (1) year between the filing of Notice of Appeal for a citizen civilly confined under the SVPA and a brief being written by the Public Advocate's Office. There have been instances where the Public Advocate's office permitted fifteen (15) months to pass without the Attorney general's office filing a reply. Regarding the statutory **yearly** review that is to be afforded to those civilly committed, that hearing is routinely not scheduled until after an Appellate Decision has been rendered. Residents have at times gone three, four, and five years without a review hearing even though they are entitled to one by law every year. We aggressively challenge this.

Because of all of the above reasons and because in numerous areas the proposed settlement does not comport with the report of Dr. Judith Becker, the authority chosen by the Attorney General, we ask the court to dismiss it, or in the alternative, to separate

4

the <u>Bagarozy v. Harris</u> and the <u>Hasher v. Corzine</u> case from the <u>Alves v. Ferguson</u> settlement allow the <u>Bagarozy</u> and <u>Hasher</u> cases to go forward.  We respectfully request that in their reply to this settlement proposal that Greenberg Traurig, counsel for <u>Bagarozy</u>, focus on the areas where the <u>Alves</u> settlement is not in accord with Dr. Becker.  However, some of those areas are presented below and the designation "P" refers to the page in Dr. Becker's final Report that addresses the issue:

P-1: Dr. Becker indicates that there is no licensing for both the facility and the program.

P-3: Dr. Becker points out that in one civil commitment program it took from three to seven years to complete the program.  This confirms that even though this program has the appearance of having a working structure on paper, with a microscopic number of residents on level 5 (<u>after 12 years</u>), this is not the case.

P-4: Dr. Becker Describes specifically how much therapy should be afforded.  She also points out the quote of Judge William L Dwyer in <u>Turay v. Weston</u>, 1999, that "Nothing compels a state to adopt a statute of this nature in the first place, and many states have not does so, but a state that chooses to have such a program must make adequate mental health treatment available to those committed."

Also on Page 4, fourth paragraph, Dr. Becker is conveying that the Division has made claims that Dr. Becker has exceeded the scope of her retention in several areas. However, Ian Marx, Esq. had told us that in return for the State being able to remove the designation of "Punitive" as an option for grading in each category of her review, Dr. Becker would then have the discretion to additionally address any area <u>she</u> felt appropriate.  The court should not allow the state to renege on this agreement.  This also goes for the paragraph on page 4 immediately after the topic: **<u>Response to the Plaintiffs' Comment</u>**s.

P-5: Dr. Becker again raises in item b. that she couldn't comment on the facilities run by DOC, however, in view of the information presented above, she ought to be able to do *so*.  Even though Dr. Becker believes it is beyond her "scope" of what she is to evaluate (see item b), she still feels compelled to note at the beginning of page 5 that the <u>facilities</u> appear to be <u>**less**</u> than therapeutically adequate (Page 5, line 6).

P-6: as a whole demonstrates the overwhelming subjectivity and resulting lack of objectivity of the evaluation process.  The proposed settlement does little to remedy this and as such does not comport with Dr. Becker's report.

P-8, top:  "Living conditions worst she has ever seen."

P-9: "Overall therapeutic and rehabilitative milieu is not minimally adequate."

P-10: Lines 3-4: "No specific dynamic risk assessment instrument being utilized."

P-11: Bottom half of page: again Dr. Becker expresses a lack of clear, <u>objective</u> requirements for advancement.  How do the changes in the proposed settlement remedy this?  Bottom of page 11: "Clinical assessment evaluation and treatment team plans are <u>not</u> minimally adequate and are unsatisfactory."  How do the changes in the proposed settlement remedy this?

P-13: This page as a whole again speaks of the lack timely advancement of residents and the lack of an "objective measure" (Paragraph 3, line 2).  How do the changes in the proposed settlement remedy this?

P-14: This page is most telling of all.  In Paragraph 5, Dr. Becker reports that treatment phases as outlined "on paper" are satisfactory but that resident progress through the phases and the means by which progress is evaluated are together 'not minimally adequate and are unsatisfactory.'"  This dichotomy points out one of the significant problem existing in New Jersey's SVPA process and environment. How do the changes in the proposed settlement remedy this?

P-15: Paragraph 2, handicapped residents are not being given the services they require. E.g. resident Dismukes who is almost totally blind.  How do the changes in the proposed settlement remedy this?

P-16: Again the dichotomy appears.  In Paragraph 2, Dr. Becker states that the model of process groups described on paper is satisfactory, but the manner in which they actually exist in not.  I greatly fear that this "proposed settlement" is another example of a document which is a paper tiger but entails no real reform to ameliorate the significant *problems* existing in the New Jersey SVPA process and environment which caused Dr. Becker to call it the "worst she has ever seen."  How do the changes in the proposed settlement remedy this?

P-17: "Vocational, rehabilitative, and educational programming is <u>not</u> minimally adequate and is unsatisfactory.

P-19: "Release preparation and programming are <u>barely</u> adequate.  How do the changes in the proposed settlement remedy this?

P-21: "Therapist training and supervision is not minimally adequate and is unsatisfactory."

P-22: "T.C. Community is not minimally adequate and is unsatisfactory."  How do the changes in the proposed settlement remedy this?

P-23: "Level of confidentiality is <u>not</u> minimally adequate and is unsatisfactory.  Item 11: Gradual de-escalation of restraints does not occur at the rate or quantity one would hope to see in a therapeutic program." How do the changes in the proposed settlement remedy this?

Respectfully submitted,

Douglas McDonald
#508

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Sandy McDonald

Signature: Sandy McDonald

Resident Identification Number: # 304

Date: 4/13/12

Comments:

I reject the settlement, this Is not what we talk about In the beginning and every thing has gotten worst, and I want to go to trial and that Is final, I've been In treatment going

on 17 years and I'm sick of it and
they took my phase then gave it back to
me 7 years later medical is worst a
guy just died last night, they talk
about what I did and how I hurt
someone, and this I understand but
how am I to act after all these
years, My family is hurting, I lost
my Mother, My Stepmother, my cousins
don't you think my family want me
out there to help them also.

Thank You

Mr. Sandy McDonald #304

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Tom McKeen

Signature: Tom McKeen

Resident Identification Number: 9

Date: 4-17-12

Comments:

MY Comment is I want out of the settlement.
Reason. No Talk of Release/Discharge. or Placement example
Boarding house/ Half way house.
Thank You for Your Time, Energy, Concern.
But Take Me out of the settlement.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Yank C. McLeod, Jr

Signature: *Yank McLeod Jr*

Resident Identification Number: 452

Date: 4-11-12

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over.

MR. Robert J. Meyer #097
Special Treatment Unit
8 Production Way
P.O. Box 905
Avenel, N.J. 07001

Re: Raymond Alves, et al v. Merrill Main Ph.d. et al. No: 01 CV 0789

To whom this may concern:

I am presently confined at the Special Treatment Unit as a Sexually Violent Predator as defined in N.J.S.A 30:4-24, and has been since July 2000. I am responding to the above case proposed Settlement and wish to exspress my objections and concerns:

1) I object to the Individually Tailored Treatment Section. My objection or concern is that their is nouthing concrete in the proposed Settlement that will prevent DHS in setting long term goals to keep a person committed that they donot want released. For example myself, therapist have made it very clear because of my exstensive sexual behavior if up to them I will never see the streets again. My concern is whats in this proposed Settlement thats going to stop these therapist from setting goals and saying it will take you ex amount of years to complete then at the end if goal was accomplished setting a new goal. Still it could take an estimate of over 10 yrs to complete all assignments, goals and phases.

2) I object to the Comprehensive Initial Treatment Plan section. Again it provides no safeguarding to prevent self personal veiws and points into play in determinning a residents Comprehensive Treatment Plan. Again in no way does this proposed settlement protect the

-2-

interest or constitutional right to his or her liberty. Nor does it protect or give any right to challenge a persons personal opinion about a residents treatment. Also no safeguards to protect residents who have mental defencicies nor does DHS take into consideration.

3) I object to section c Six month review. I object because again theirs no safeguard in protection for resident from Treatment Team placing their own veiws, feeling onto the resident and using the term requires more treatment as a means to keep a person committed. the Treatment Staff here at S.T.U. are well aware of using the term "More Treatment" because No court would overturn that determination.

4) I object to section d Annual Reveiw by TPRC. Again no set guidelines to prevent one personal veiw, goal, feeling into their decision and recomendations.

5) I strongly object to subsection e Overall Course of Treatment Not to be Extended. Again their is no safeguard in place in the proposed Settlement to prevent DHS in extending treatment modules to prevent a resident to advance in treatment. For example A Resident in my process group was assigned RP (Relapse Prevention) upon completion he failed and was ordered to retake. Not only did he retake this module but he retaken it 8 times and failed 8 times all with this one Social Worker who has no training in Psychology. It was determined that this resident new his RP skills like the back of his hand still this Social Worker insisted he new noughting (her opinion). After this it was determined that the resident must complete and pass RP to move on. He was given RP for the 9th time in front of a different Social worker and the resident completed and passed with flying colors (Recomend to teach RP Self Help Group). Again No protection in proposed Settlement to prevent ones personal veiws, feelings and points. First No Social Worker should be allowed to run Modules without some type of traing and

– 3 –

Schooling in Psychology. Second No Social worker or Psychologist should be allowed to over look a resident post testing to input his or her personal opinion

6) The only objection I have to subsection F At least 20 hrs of Theraputic Treatment Per week is that 87% of all groups must run during Calendar year. The objection I have is that rarely are groups called out on time, they may end on regular scheduled time but rarely called out or begin on time. Groups are called out 5-10 minutes lately some later and begin about 10 minutes after that and end 70 minutes after that. So your only receiving approx 70 minutes per group.

7) I object to subsection G Map Groups  I object because the proposed Settlement provides no Due Process, no means of challenging allegations, no means of facing our accusers, No Desiplinary panel no right to present evidence only DHS excepting any reports, investigations as being 100% truthful and the resident punished by means of property taken from him, pecific specialized treatment denied while on South wing Tcc only map groups where your not required to address specific sexual issues only issues that involve your Map Placment. The only way your going to proceed through map in the shortest time period is the resident must admit guilt even if not guilty, take responsibility of actions and discuss alternative behaviors to pervent reoccurrence of behavior that caused make placement. I also object because I have no legal avenue to challenge the accuracy of incident reports I have no avenue to challeng reports as being falsified. For instance on May 6, 2012 I was placed in map. During an interview with DHS to discuss the reason I was on map I learned that an incident report was written by a female officer that I was stalking her, staring at her and repeatedly masterbated in front of her. The incident did not occur the way it was written up. It was written up falsely to justify placing in Map on Tcc (Temporary Close Custody). Now I have no inside STU mechanism to challenge the validity of the allegations made against me. I am sure DHS will say this is a Doc issue not



DHS and does not fall under the Proposed Settlement. *It should Yes Doc is responsible for placing you in Map. It is DHS who is in charge of the Treatment of each resident.* Because Map intails the treatment of each resident subjected to Map it is DHS decision to extend map, assign, Map Groups, and over treatment of each resident. DHS makes final Decisions and has the authority to remove a resident from map after 72 hrs investigation but rarely does so, as mentioned above all reports are veiwed by DHS as 100% accurate and truthful.

8) I agree to subsection H  Increased Staff Ratio.

9) I object to subsection I  Vocational Training.  I object to this subsection because it reads DHS will provide Vocational on site traing when room, space is available paid for by residents. DHS rarely has room they scramble around now trying to find room and space to run therapy groups and modules. This was placed in the proposed Settlement to look good.

10). I agree to subsection J. Educational Opportunities.

11). I agree to subsection K. Recreational Opportunities.

12) I disagree to subsection L. Post-Discharge Preparations. I disagree with subsection L because it does not mandate Transitional Housing. It has been the ex·sperience of several residents when being considered for discharge have their plans jepordized by DHS staff. Outside housing notified that resident consider for release was a serial rapist or child molester scarring away potential housing opportunities. DHS could and probably save money by creating their own Residential Transition Housing program to include treatment, Sub stance abuse if required and housing and help in finding Jobs. Theirs no set guidelines in the current

— 5 —

proposed settlement to prevent DHS from jeporizing a persons protential Discharge.

13) I object to subsection m. Treatment Obudsman. I object because surely the obudsman will be hired and paid for by the state of New Jersey and surely will make known to obudsman "Do not rule against state officials". The obudsperson needs to be hired by the court unassociated with the state of New Jersey and its officials and can only be removed by the Court.

14) I agree in part to subsection N Independant Monitor. I agree will the Independant Monitor how ever I disagree with the length of time for the Independant Monitor to Monitor AFter 5 years theirs nouthing under the proposed settlement to prevent DHS from sliding back to their old ways to save money, cut budgets and cause another lawsuite to be filed.

15) I disagree with the proposed settlement because it provides no gaurantee that New Jersey hegislature will approve funding for the proposed Settlement. Also it does not gaurantee New Jersey hegislature won't Approve the funding then couple years later order budget cuts.

Overall veiw I object to this proposed seattlement and respectfully request the court to do the same and either implement a new proposed settlement addressing many of the concerns of S.T.U residents or that a date be set for trial.

Respectfully submitted

Robert J Meyer

MR. Robert J. Meyer #097

*Larry Miller 299*

Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001

**Lawrence S. Lustberg, Esq. and**
**Johnathan Manes, esq.**
Gibbons P.C.
One Gateway Plaza
Newark, NJ 07102

Date: 4-11-12

**Ian Marx, Esq.**
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

**Hon. Dennis M. Cavanaugh, U.S.D.J.**
U.S. District Court of New Jersey
451 U.S. Post Office Courthouse Bldg.
P.O. Box 999
Federal Square
Newark, NJ 07101-0999

### RE: Objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)

I am the STU Resident identified at the top of this page, and I strenuously object to the above captioned settlement for three main reasons: First, because I completely reject counsel designated and the residents designated as representatives, Second, because the settlement as proposed completely ignores and eliminates significant, crucial, meritorious issues that we have been asserting for years and Third, because the settlement doesn't comport in many areas with the report of authority Dr. Judith Becker, who was the chosen expert of the Attorney General.

First, because we completely reject counsel designated and the residents designated as representatives:

Residents have objected to Seton Hall personnel and Gibbons attorneys for years in that Seton Hall representatives played a role in advising how New Jersey's Sexually Violent

1

Predator Act ("SVPA") ought to be constructed. This connection created a conflict of interest. The fact that they are now involved in generating such a narrow settlement in spite of the numerous significant meritorious issues that have been presented, indicates that our worries about a conflict of interest may be warranted and is cause for grave concern. Additionally, over the years of "settlement negotiations," neither Seton Hall personnel, nor Gibbons counsel, nor the plaintiffs of <u>Alves v. Ferguson</u> have communicated with the rest of the residents about the progress of the settlement or what was going on. We have had very little if any input into these negotiations. STU Residents are so troubled by the narrowness of the settlement and by how vague, conditional, and subjective it is, that many are concerned that the plaintiffs of <u>Alves</u> received some "enticement" in order to manipulate their surrender to such a narrow set of agreements. We reach out to counsel for <u>Bagarozy v. Harris</u>, Mr. Ian Marx, Esq. to further develop and prosecute this issue on our behalf.

**Second**, because the settlement as proposed completely ignores and eliminates significant, crucial, meritorious issues that we have been asserting for years. We were so concerned that our issues were being suppressed that on September 2, 2009, we met with Counsel for <u>Bagarozy v. Harris</u>, Ian Marx, Esq., and he not only agreed to protect and prosecute our issues, but he agreed to this in writing (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy). The issues that Mr. Marx committed to preserve and prosecute on our behalf include the following:

*We challenge Seton Hall's voluntary surrender on the issue of compelling the State to create half way houses for STU residents. This "surrender" additionally flies in the face of Dr. Becker's insistence on de-escalation of restraints. Also, again, Seton Hall played a role in advising how to create New Jersey's SVPA, and this is a conflict of interest.

*In view of Kearny Residents being transferred to a building that was formerly used as a detention center for prisoners (a depressing, highly restrictive, counter-therapeutic facility), we strenuously object to the elimination of the ability to challenge the housing facilities. We are shocked by this elimination and additionally this suppression also flies in the face of Dr. Becker's report. Dr. Becker advocated for a therapeutic environment.

*The literally pervasive presence of the Department of Corrections ("DOC") in a treatment facility has a counter-therapeutic effect and creates a highly restrictive and counter-therapeutic environment which continues to exist at the STUs and has gotten worse since Dr. Becker's visit. Mr. Marx had committed in writing to challenge this condition (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy) and we request that he further develops this issue in his reply.

*We seek significant monetary punitive and compensatory damages for the additional years of lost liberty and other emotional and psychological harm residents have suffered due to inadequate treatment and un-constitutional, inhumane, counter-productive, counter-therapeutic conditions as outlined in Dr. Becker's report, the "worst she has ever seen."  Mr. Marx has committed in writing to seek such monetary damages and I request that he further develop this issue in his reply on our behalf.

*Because Dr. Barone, a previous director of Psychology at the STU, was fired for having sex with one of her resident clients, we submit that she was patently unfit to judge who should be civilly committed.  In view of this we request that every resident that she had a hand in committing be completely re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General.  Mr.arx committed in writing that he would do this (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

*We have also asked Mr. Marx to make constitutional arguments on our behalf, including: **Double Jeopardy**, **Ex Post Facto**, and **Res Judicada** as well as those mentioned below (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

    **a)** A concentrated challenge of the Due Process violations of the initial commitment process:

    **b)** A concentrated challenge against the arbitrary, unequal application of the law for individuals under the same class and circumstances:

    **c)** A concentrated effort, in view of item "**b**" above and all the abuses that residents have been subjected to as a whole, to have the civil commitment of every resident presently being held in the STUs re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General.  Towards this end, we seek timely Discovery from DOC, including the specific records of each sex offender released over the past ten (10) years who the two doctors were not sent to evaluate prior to their release.

**d)** We seek a comprehensive investigation and challenge to the improper manner in which actuarial instruments have been and are being used to commit residents.

**e)** A concentrated challenge of the denial of <u>Trial by Jury</u>.  The claim is being made that a jury is not required because this commitment is civil and not criminal.  However, crucial liberty interests are involved to a degree that is above and beyond any criminal case.

**f)** There is evidence that the rule of law has been ignored for STU residents: there is a delay of approximately <u>one (1) year</u> between the filing of Notice of Appeal for a citizen civilly confined under the SVPA and a brief being written by the Public Advocate's Office.  There have been instances where the Public Advocate's office permitted fifteen (15) months to pass without the Attorney general's office filing a reply.  Regarding the statutory <u>yearly</u> review that is to be afforded to those civilly committed, that hearing is routinely not scheduled until after an Appellate Decision has been rendered.  Residents have at times gone three, four, and five years without a review hearing even though they are entitled to one by law every year.  We aggressively challenge this.

**Third,** because the settlement doesn't comport in many areas with the report of authority Dr. Judith Becker, who was the chosen expert of the Attorney General.

We object to the Dynamic Risk Factors that are used they are not know to Residents or staff. We object to consultants of T.C. summarily casting Residents out of T.C. without the peer process being utilized.

We object to the legislature's non compliance with Requsts for Funding to provide needed equipment. For Therapuetic Progress and Release.

Information on Transition Program being limited and/or withheld from the General Population.

Too many indirect involvement Personell

4

In Progress Reports And Advancement
of Phases.
     I Concur with This Objection
Completely.

Respectfully submitted,

STU Resident
# 399

5

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Dejan Mladenovic

Signature: _Dejan Mladenovic_

Resident Identification Number: 283

Date: April 14, 2012

Comments:

I object the Entire lawsuit Settlement

_Douglas Minatee_ #20

Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001

Lawrence S. Lustberg, Esq. and
Johnathan Manes, esq.
Gibbons P.C.
One Gateway Plaza
Newark, NJ 07102

Date: April 14, 2012

Ian Marx, Esq.
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

RE: Class-member objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)

I am the class-member identified at the top of this page, and I strenuously object
to the above captioned settlement for the following reasons:

I object to this Settlement and I want to
go to trial unless all of the following conditions
are included in this settlement, in the spirit of Dr.
Becker's Report:

1) I want Half way Houses to be put in place
for any resident needing one. A space must be
available. I've been Phase (5) in 2007 –
2008 – 2010 – 2011 and (5) Phase as of 2012

2) Monetary Damages for the Years of Inadequate
treatment (See Dr Becker's Report). This negligent

1

over →

Resulted in additional years of lost liberty.

(12 Years!)

Douglas Minatee
Douglas Minatee
4-14-12

*Douglas Minatee*
Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001

**Lawrence S. Lustberg, Esq. and**
**Johnathan Manes, esq.**
Gibbons  P.C.
One Gateway Plaza
Newark, NJ  07102

Date: *April 15, 2012*

**Ian Marx, Esq.**
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

<u>**RE: Class-member objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)**</u>

I am the class-member identified at the top of this page, and I strenuously object to the above captioned settlement for the following reasons:

1) Monetary Damages lack of discharge: residental placement in timely manner

2) Over crowded conditions. At STU- Annex

3) loss of liberty (12) years.

CC: Ian Marx, Esq

1

Victor A. Moody
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001

April 7, 2012

**Greenburg Traurig, LLP**
200 Park Ave.
P. O. Box 677
Florham Park, New Jersey 07932

**Seton Hall University**
School of Law
Center for Social Justice
833 McCater Highway
Newark, New Jersey 07102

**Gibbons P.C.**
One Gateway Center
Newark, New Jersey 07102

Re: Alves, et al., v. Main, et al., No. 01-cv-0789 (DMC) (MF)

Mr. Marx;

My name is Victor A. Moody #199, a long-time civilian resident of the Special Treatment Unit (STU) and I'm writing to you in protest of the proposed settlement of the lawsuit against the Department of Human Services (DHS) (who runs the therapeutic aspect) and the Department of Corrections (DOC) (which runs the punitive, confinement, and care aspects of the SVP Act).

I, for one, believe that the proposed settlement will greatly benefit these two entities while, at the same time, serves not to help the civilian residents from not achieving the one goal for which they are confined for treatment: FREEDOM!

Here are the reasons why this settlement is unfair to the residents of the STU:

1.) Not having DOC as part of the Lawsuit impedes any (if at all) therapeutic benefits that the resident may need in order to stay healthy and safe as a productive member of society (DOC's mindset is of a punitive nature and is willing to do anything, including shutting down groups and modules, in the name of security (and has shown this repeatedly in the past)).

2.) Doesn't address the fact that there is NO mention of plans to release any resident in a timely manner (Not talking about "Implied" or "Guesswork" on when a resident can or could be released). Some residents has been at the STU for years (10 or more) and hasn't been any

trouble, yet still don't advance in the program (but it seems that newly-arrived residents (or certain racial types) are promoted to Phase 4 and released without going through the program!).

3.) Doesn't address the issue of why isn't there any mechanism in place to hold administrators, clinical directors, doctors, therapists, or social workers accountable for anything that they may say, do, or write in reports and/or records, whether within a group, module, individual, or community meeting setting. (Say, for example, a clinical director or doctor say to a resident, within earshot of other residents, that the resident is never going home and the resident respond by attacking the doctor for saying that, the resident is held accountable for his actions while the doctor isn't held responsible for instigating the incident.)

4.) That all group, module, individual, and community meeting(s) should be recorded, either by audio or visual devices to ensure the integrity of both the residents and the staff (To be used as a reference when there is a discrepancy between a doctor's report and resident's offense disclosure, plus giving both sides a chance to correct any mistakes).

5.) Last and most important, Not all classes of the STU residents are represented by the lawsuit, such as the residents placed in Modified Activity Program (MAP) or Treatment Refusals (TR) status, the sick and infirm, former prisoners, and those individuals who graduated from the Adult Diagnostic and Treatment Center. Provisions should be made to include these classes, so that their civil rights will be protected and respected by both DHS and DOC, too!

Therefore, I have listed my objections, above, for not accept the settlement and asks for them to be taken into account!

Respectfully Submitted;

Victor A. Moody

gtg
c: File
    Barbara Moses, Seton Hall University
    Lawrence Lustberg, Gibbons, P.C.

Fr: Leonard Moon

Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:    STU Settlement
       c/o Seton Hall University school of Law
       Center for Social Justice
       833 McCarter Highway
       Newark, New Jersey 07102

       Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
           **Objection to Purposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

I object to this purposed settlement, because everything that Dr. Becker spoke about in her report has been ignored. The therpist want you to explain everything that happen in each and every charge that you have ever if its been 5, 10, 15, or 20 years
over →

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

ago, and if you Dont Remember They say That your in Denial And That will Hole you Back from progressing. If we're suppose To Be getting Treatment Then why is Social Workers Running progress Group And whatever They write About you stand. We Are supposed To Be Residents why Do we Have To Be Transported Any where in D.O.C. van's And go To A Hospital That Designed for Prisoner. They say That were not in Prison The why should we Be forced To use Prison Policy. There's many Problems Here But someone from The outside must come Here And investigate And speak with The Resident To get A full view of whats going on.

## FURLONG AND KRASNY
## ATTORNEYS AT LAW

**John S. Furlong**
*Certified by the New Jersey Supreme Court as a*
*Criminal Trial Attorney*
**jfurlong@furlongandkrasny.com**

**Telephone**
*609.882.0288*

**Scott A. Krasny**
*Certified by the New Jersey Supreme Court as a*
*Criminal and Civil Trial Attorney*
**skrasny@furlongandkrasny.com**

**Facsimile**
*609.883.2551*

May 14, 2012

Lawrence S. Lustberg, Esquire
Gibbons, PC
One Gateway Center
Newark, New Jersey 07102-5310

Barbara Moses, Esquire
Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

RE: *Moore, et al. v. Brown, et al.*
Civil Number 05-2179

RE: *Alves, et al. v. Ferguson, et al.*
Civil Number 01-789

Dear Counsel:

    As you are aware, I represent the interests of plaintiffs William Moore and Maryann Hysler on the first listed docket number. Their case was consolidated with the *Alves* litigation by order, dated April 30, 2007, owing to a congruence of discovery needs and some overlapping causes of action. More recently, the court certified these consolidated matters as a class action and ordered all class members to submit any comments or objections to the proposed settlement reached between class representatives and defendants to class counsel in anticipation of the August 6, 2012 fairness hearing.

Mountain View Office Park
820 Bear Tavern Road, Suite 304
West Trenton, New Jersey
08628

Lawrence S. Lustberg, Esquire
Barbara Moses, Esquire

May 14, 2012
Page 2 of 2

    My plaintiffs object to the proposed settlement agreement insofar as they have causes of action distinct from the other class members, namely their claims for deprivation of their rights to marry and to exercise religious liberty.  They have reached no settlement with any defendant as to these independent claims.   In fact, these claims are the subject of a pending motion for partial summary judgment, fully briefed in 2006. Plaintiffs would like the motion decided and would be ready for trial on 30 days' notice.

    Thank you in advance for including my plaintiffs' objections in your submission to the court.

Very truly yours,

/s/ J.S. Furlong

JOHN S. FURLONG

JSF/j

May 2, 2012

Dear Seton Hall Lawyers and Staff,

I've only had access to the 10 pages short proposed settlement Raymond Alves, et al v Merrill Main. William H. Moore and I Maryann Hysler are in this lawsuit, lawyer John S. Furlong.

I find a very big problem with this settlement. There is no timeline, as to when each phrase, or section is to start. As 7 therapists to 50 men. When? How long until it happens? The men are already there. Many for 8-9 years plus.

How long does the state have to get each program into compliance. The Kearny Unit was to be there 1-2 years, and it was there and in use 10-11 years.

Procrastination and bureaucracy are the state and DMHAS-DHS's position. We've been told in court in 2001 that that was "state of the art" therapy. Now we are told this will be "individual tailored treatment plans". Are they just words

pg1

II

words and more words.

pg4 bat#5
Testing once, a year. Who is to check what type of testing material is used? Will it updated in 5 years, /or when? This STU isn't known for a timely schedule. If it's not done on time, who checks on it.

pg4:6.d Will this stop the long gaps of missed cycles and missing it by 1 or 2 times before a program can be completed?

pg5:6d "Annual Review" once a year or 2 years? Timeline spelled out!

pg5:6d "Estimated time frame"... tell the guys the truth. They failed or passed.

pg6:6e Before 2009 or so there were only 1-3 phases Now its 1A, 1B, 2, 3.... how many more steps will they have before leaving or completing. ... to leave.

pg6.6.f
87% of the scheduled process group attendance of meetings, sounds great. Hope it works on both sides.

III

pg 7(e).

Vocational Training - Is it a required course or courses to get out of the STU unit to go home? State pays for them.

pg 8:6 m Ombuds person - Is this an outside entity or from the STU?

bottom
pg 8-9:6 n   How long until the 5 reports from the "Independent Monitor" are due? Timelines are needed days/months stated Not just the first.
Why only 5? Accountability is needed as well as a timely schedule. for years to come!

pg 9:8  Who will pay for the settlement? This seems too open ended.
What happened to the Federal Money's the STU gets?

Mr. Merrill Main PhD. Clinical Director of Human Service (DHS) is one of the longest members here and there are a few others. Are they moving on to some where else They are part of the punishment at these units. Will those few people be left to

IV

cause more delays, proc ratations, laps of timely things happening and being accomplished.

If those are left to run the STU timelimits are needed to be used to enforce results. Maybe monetary constraints. Otherwise it will take another 10-12 years or so to get therapy and release accomplished.

Thank you for your attention

Maryann M. Hysler

Maryann Hysler
PO Box 28
Leeds Pt, NJ 08220

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Kenneth W. Morton

Signature: Kenneth W. Morton

Resident Identification Number: O95

Date: 4/15/12

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over.

4/18

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Joseph Murray # 330

Signature: *Joseph Murray*

Resident Identification Number: 330

Date: 4-17-12

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." There is a complete lack of objective criteria to determine de-escalation of restraints and timely release. I also completely object to numerous meritorious issues being passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Abdus Muslim_

Signature: _Aldus Muslim_

Resident Identification Number: _#49_

Date: _4-14-2012_

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over. Also, I have been told I will never be leaving here. How is this treatment and not punishment?

Fr: _____ <u>**Mr.Ronald Nash#191**</u> _____          4/17/12
                Special treatment Unit
                8 Production Way, Trl #2
                CN 905


To:        STU Settlement
           c/o Seton Hall University, School of Law
           Center for Social Justice
           833 McCarter Highway
           Newark, New Jersey   07102

           Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, ET AL.**
               **Objection to Proposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and
   Culbreth, being named representatives of the Class.
   These Residents do not, and cannot, represent the
   population as it stands. They have not experienced what
   separate classes of Residents have experienced,
   therefore, making it impossible for the above named
   Residents to speak on behalf of the population.  There
   should be Residents added to the representatives, listed
   above, that reflect the following Classes of persons:
   (a) Juveniles that were civilly committed; (b) Residents
   that were committed from the A.D.T.C. that have numerous
   years of treatment; (c) Residents that have been
   informed that treatment would not diminish their risk to
   reoffend, therefore, rendering this commitment a life-
   sentence; (d) Persons that have been committed from
   society (that were on the streets when they were
   selected for civil commitment); (e) Treatment Refusals
   are not represented; (f) MAP Residents are not
   represented; and (g) South Unit Residents, described by
   Dr. Main as "the Undesirables" are not represented.


2. Psycho-Educational Modules:  The proposed Settlement
   does not address the risk mitigation after the
   successful completion of Modules.  As the Settlement now
   stands, I do not agree with module testing only.  There
   should be some kind of notice given that the Resident's
   risk to reoffend has been mitigated, as well as his
   level of dangerousness.  This will, sequentially, lower
   the Resident's risk assessment.  This should be noted
   and written verification should be given to the
   Resident, as well as this verification being placed in
   the Resident's file.


3. False feeding residents who have spent ten(10) years or
   more in treatment without an opportunity for release
   after actually participating in treatment.  In some
   instances, after four(4)years some residents have
   learned all he is capable of learning, but when it

                                1

comes to the TPRC, no matter what answer he gives, it is no longer any good, thereby prolonging his stay in civil committment.

4. We need a supervisory board to watch the TPRC. They often times abuse their authority, misquoting statements that are made; intimidating residents, and constantly trying to force residents to admitt to crimes they either never committed or for ones that were dismissed in a court of law. This is one of the ways they justify denying residents advancement in phases and for release.

5. Furthermore, everything here is one sided, for instance, the courts of New Jersey; the TPRC; the MAP program,(which should not exist); and the Public Defenders(Public Advocate)office gives us the minimum amount of representation, just to make it look legal. This needs to be addressed and corrected.

6. When it comes to process groups, how can you justify holding a resident for twelve(12) years or more under the pretense of treatment? DHS systematically overlook our current level of dangerousness and continuously throw our past offenses in our faces, rather than focussing on our current state of mind. That leaves a person stagnated because we cannot change what we have done in the past. Treatment is about learning how not to sexually offend, and what have we done to lessen our offense risk.

7. The way they pass residents in the modules are biased. They will pass approximately three(3) residents and fail another twenty-two(22). The numbers never add up, especially when everyone is virtually doing the same work. That biased approach to modules needs to be corrected.

8. There needs to be a legitimate transitional release for residents. There should be work release, half way housing, and various courses which will help us secure a social security card, birth certificate, driver's license, etc...

9. Primary therapists needs to be more involved in the court and release process of residents, because they work with us in process group twice a week for years. They have an in depth understanding of our growth and progress and can speak much more accurately about our treatment status than the court, TPRC, CAARP, and the A.G. Therapist are discouraged from testifying in court.

2

10. Dr. Main has stated, during the Community meeting that the purpose for residents being locked up is not for treatment but for the sole purpose of protecting society, and that treatment is a privelege that he provides if he has the resources in his budget. He added that treatment has nothing to do with us being released. In the same statement, he encouraged the black residents to attend the Therapeutic Community(T.C.), he stressed the fact that blacks needed to learn how to function normally in society and that most whites already know.

11. The T.C. has no time limit, yet the treatment is extremely intense, which lends the question as to how long can a resident show progress before burning out. It is well documented that five(5) years of intense therapy is the limit. Most residents attending the T.C. have already completed ten(10) years or more intense therapy before going to the T.C. The program also holds it's residents indefintely under the disguise of treatment. This needs to be stopped.

12. Dr. Main is also biased towards residents who have offenses involving rape, while showing favortism towards child molesters, when it comes to release. This system of favoring child molesters over rapists is biased and needs to change to one of fairness towards all residents within the Special Treatment Unit.

13. This proposal of adding more treatment hours and modules is nothing more than a way to further delay our release. They never take all the treatment and intense therapy we have already completed, and there is no time frame. So, no!...I do not agree nor do I accept any of this new settlement, On top of everything else that's wrong in here, that's ran by D.H.S. and the A.G.

14. Why is it that I was evaluated twice by ADTC back in the beginning of my sentence and I was deemed not in need of Sex Offender Specific Treatment.  Then, after serving my prison sentence, now I am in need of treatment and was civilly committed? This practice needs to be stopped. Also, those residents who were found in no need of treatment when they were first evaluated, needs to be re-evaluated for tier levels and released.

Ronald Nash#191

3

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _George G. Neeh_

Signature: _George G. Neeh_

Resident Identification Number: _253_

Date: _4-21-12_

Comments:

_____

_____

_____

_____

_____

**SEE ATTACHMENT**

George G. Neely, # 253, Special Treatment Unit, Annex

INRE:        Alves/McGarrry/Bagarozy, *et al.* v. Ferguson, *et al.* (consolated)
             U.S. District Court, District of New Jersey, Docket No. 01-0789

### OBJECTIONS TO FINAL REPORT OF JUDITH V. BECKER, Phd.
### Dated December 29, 2012

---

### PROTECTIONS FROM ARBITRARY REMOVAL FROM PHASE PROCESS

This writer objects that the proposed settlement does not include any safeguards for residents who advance into a higher phase process from arbitrary phase process reductions without probable cause.

At current and after the proposed settlement, the Special Treatment Unit ("STU") has and will continue to remove residents from a phase process for reasons it utilizes without legitimate or tangible evidence. The STU constantly finds reasons to remove residents when they are close to release. This practice denies a resident to furlough and release.

Residents who are civilly committed are not only considered pretrial detanees but are also deemed patients of a hospital. Similarly as patients, residents of the STU should be protected under the Bill of Rights, which includes due process and probable cause for sanctions.

The State of New Jersey ("law") permits the STU to sanction residents because it is said that the sanctions are not a punishment and are solely used as a tool for therapeutic purpose. However, in truth, the sanctions unusually imposed by the STU on residents is arbitrary; and thus, a form of punishment because of the depravations the residents suffer, such as when a resident is placed on Modified Activities Program ("MAP"). MAP status denies a resident, *inter alia*, from ordering merchandise from source of sale; especially, when the STU commissary is out-of-stock of hygiene and necessary household items, such as, but not strictly limited to, laundry detergent. Additionally, the rights of residents are usually disregarded.

It would seem that inmates in a prison are given more rights than residents at the STU,

where it concerns rule violations. Inmates at least have an administrative hearing prior to the imposition of sanctions. Unlike inmates, residents are simply notified that sanctions have been imposed on them. Moreover, if the resident is innocent, but cannot prove it, the STU will continue to sanction the resident for multiple 30 day periods until either the resident admits guilt or until the STU believes the period of sanctions were enough.

If residents were to be protected from arbitrary sanctions and sanctioned for proven misconduct, then the sanction of residents for rule violations would rightfully be supported by the law. As it is now, some form of protection must be promulgated and afforded to residents.

This writer would request that due process rights, equal protections, and probable cause standards be included in the final report where reduction of the resident's phase process is considered by the STU.

4/21/12

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Joe M. Nunez Sr_

Signature: _____

Resident Identification Number: _446_

Date: _4-15-2012_

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." There is a complete lack of objective criteria to determine de-escalation of restraints and timely release. I also completely object to numerous meritorious passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: __Lorenzo Oliver__

Signature: __*Lorenzo Oliver*__

Resident Identification Number: __512__

Date: __April 20, 2012__

Comments:

I am against the settlement. I want to go to trial if the following issues are not agreed with by the Defendant, 1. I want reduction of restraints of liberty as I advance in treatment, (Phase). This includes being moved to a half-way house. 2. I want age to be considered as a major reason to release residents. use-ing 60 years old as age of release. 3. I want furloughs to begin in phase 3, for maintaining family relations, licenses, I.D.'s

and bank accounts. 4. I want guaranteed release after successfu
successfully completing S.T.U. treatment Program.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

STU Settlement
c/o Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Benjamin Ortiz

Signature: *Benjamin Ortiz*

Resident Identification Number: 476

Date: 4/12/2012

Comments:

Dear JuDge.
I Reject this settlet1men
I want Half wAy house and Release
I want to go to trial

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Thomas M. PARKER_

Signature: _Thomas M. Parker_

Resident Identification Number: _477/199991A_

Date: _4/24/2012_

Comments:

_PLEASE HELP, US—WE NEED it_
_VERY DESPERATEly._

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *Carlton Patrick*

Signature: *Carlton Patrick*

Resident Identification Number: *516*

Date: *4/17/12*

Comments:

*I does'nt agree with the settlement.*

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name:  ___Mr. Mark A. Pepe___

Signature: *Mr. Male A Pep*

Resident Identification Number: ⟨OOO⟩ #567

Date:  ___04-24-2012___

Comments:

~~I, Mark A. Pepe (Resident S.T.U. Annex) object to the proposed settlement~~ for the following reasons:

#1. Seaton Hall University School of Law - Center for Social Justice needs to be dropped from representation in this lawsuit for they helped create the Sexually Violent Predator Act and now they want to represent the Residents against it. They should not be able to have it both ways.

#2 This proposal/settlement shows the increase of program hours, increase in therapists, the increase of the potential new therapy groups in order to keep the Residents here longer just like a concentration camp. This proposal/settlement

fails to show the increase in of how the therapy will be releasing Residents. For there are Residents that have been here eight to twelve years already who would like to go home. This proposal/settlement is not showing that chance of going home.

#3 Psycho – Educational Modules: This proposed settlement does not address the risk mitigation after the successful completion of modules. As the settlement stands now, I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed a module, there should be some kind of notice given that the individual Residents risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the Residents risk assessment. This should be noted and also written verification should also be given to the Resident, in addition to, this verification should be placed in the individual Residents respected file.

#4 The Treatment Ombudsperson needs to be impartial, unbiased, and have no affiliation to the S.T.U. Something needs to be implamented to insure that there is no retaliation from Staff members ( Director, Therapist, Social Workers etc) for submitting and talking with the Treatment Ombudsperson about any complaints against the Department of Human Services (D.H.S.) or any of it's staff members.

#5 Nothing is being mentioned or even said in this proposed settlement of how the Therapy groups is going to reduce Residents treatment and advance forward to the potential possibility of discharge.

#6 In regards to the section that addresses the issue of "Class Classification" I object to Alves, Sessoms, and Culbreth being named as representatives of this Class Action lawsuit. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the ENTIRE Resident population. There should be Residents added to the representative, listed above, that reflect that following classes of persons: A: Juveniles that were civilly committed. B. Residents that were committed from the Adult Diagnostic Treatment Center or A.D.T.C. that have multiple years of treatment. C. Residents that have been informed that treatmentr would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence. D. Persons that have been committed from society (that were on the streets) when they were selected for commitment. E. Treatment Refusals are not equally represented in this Class Action lawsuit. F. Any Resident who are currently on MAP or Modified Activity Program are also not equally represented. G. South Wing Residents are also not equally represented in this lawsuit.

#7 Re-assessments & Re-evaluations of ALL Residents here at the S.T.U. Annex needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and does NOT have any association or offiliation with the Office of the Attorney General with the State of New Jersey. To insure the fairness of a release plan to ALL Residents.     For there are some Residents

2

that were rail-roaded into this treatment for crimes that were NOT considered to

be sex crimes in their respected State Superior/Criminal Court at the time of

their respected sentences and they were NEVER notified of the potential
possibilityof being Civilly Committed after the completion of thier individual

terms of incarceration.

#8 In the form of the section on this proposed settlement in regards to "Cruel
and Unusual Punishment", Residents on South Wing are labeled as being the
"Undesirables" and are being isolated from the rest of the Resident population
all because most of the Residents on South Wing are either Treatment Refusals or
on some sore of Modified Activites Program (MAP). Those South Wing Residents
recently had their outside vendor Pizza delivered to them by D.H.S. Staff in one
of the other wings trash bin.

#9 Nothing is being said or even mentioned in the proposal/settlement of having
the State Doctors recording the interviews of the Residents and sending that tape
to the individual Resident's Attorneys. They are supposed to be doing this
already, bot are NOT, in which case they erase the tape in front of the Resident
being interviewed at that time.

#10 Nothing is being said or mentioned in this proposal/settlement of stopping
the group facilitators who are running the therapy groups of recording by their
hand what is said and what is not being said by the individual Resident in such
therapy groups.

#11 Nothing is being said or even mentioned in this proposal/settlement of the
needed improvement of the food that is being served to the Resident population
here at the S.T.U Annex even for those Residents that are on some sort of diet.
Most of the time, those Residents who are on some sort of diet are NOT served the
proper food for them to eat. Dietitians only show up for work, they do not
properly prepare the food that is being served to the Residents and also those
Residents on some sort of a modified diet.

#12 Department of Corrections or D.O.C. issues or matters needs to be put back
into place into this Class Action lawsuit. For after staff members from the
Department of Human Services or D.H.S. leaves for the day at 5:00pm, all
Residents have to deal with and also put up with the prejudices, abuse, and mis-
treatment by the D.O.C, Officers, by handcuffing a problem resident and also have
approx. 20 D.O.C. Officers come in and beat up on the handcuffed problem Resident
Plus, D.O.C is supposed to be here for security purposes only. Where is the
security when D.O.C is either asleep on the job when a D.H.S. Staff Member is on
the wing, watching t.v. either in the central control booth or on the wing when
D.H.S. is on the wing or walk off of the wing when a D.H.S. Staff Member is on
the wing.

#13 Nothing is being said or even mentioned in this proposed settlement about the
care for those individual Residents who are Treatment Refusals. How are they
going to support themselves in order to live without any funds? Especially when
NOTHING is being provided for them! (no clothes, no hygiene cosmetics, no sheets
or bedding etc. etc). By this proposed settlement, ALL Treatment Refusal
Residents are being forced to accept that they will have NO work hours, NO funds
to support themselves. Some sort of Personal Needs Allowance needs to be
implamented and/or put into place for those Treatment Refusal Residents whom
choose to be on Treatment Refusal Status (for either for some legal, health, or

for some obvious reason), to have funds to help themselves to live. For instance

allow Residents to collect S.S.I. For under case law <u>Sidney S. Zipkin</u> v. <u>Margaret</u> <u>M.Heckler,</u> 790 F.2d 16, 1986 U.S. App. LEXIS 24743: The holding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. (For Reference see) <u>Flemming v. Nestor,</u> 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); <u>Schweiker v. Wilson,</u> 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); <u>Richardson v. Belcher,</u> 404 U.S. 78, 81, 30, L.Ed.2d 231, 92, S.Ct. 254 (1971); <u>Buccheri - Bianca v. Heckler,</u>768 F.2d 1152, slip op. at 8 (10th Cir. 1985). **Section 202, 42 U.S.C. sec 402 (x), provides in the pertinent part: (x) (1) Notwithstanding any other provision of the title, no monthly benefits shall be paid** under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or any form of a penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, (unless such individual is actively and satisfactory participating in a rehabilitaion program which has been approved for such individual being able to engage in a substantial gainful activity upon release and within a reasonable amount of time). Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. (Please refer to the following citation) <u>Washington v. Secretary of</u> <u>Health and Human Services,</u> 718 F2d 608 (3rd Cir. 1983). And also statute: SSR 83-

28c: Section 223(f)(1) (42 U.S.C. 423(f)(1)) Disability Suspension of Benefits For Inmates of Penal Institutions - (Constitutionality) 20 CFR 404-468; 83-28c; The statute directly provides that imprisoned felons may receive benefits if they disabled and the individual participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court.

Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process consideration. These programs should result in the person being able to engage in substantial gainful activity upon release within a reasonable amount of time. The plain terms Statute as well as it's own individual guidelines for successful rehabilitation programs negate vagueness argument. Simply, the statue includes no punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to ALL felony crimes...even imprisoned felons may obtain disability benefits *if* participation in a rehabilitation program is undertaken. The statute rationally rests upon the reasonable attempt by Congress to provide disability benefits only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter, and medical needs. For some ignorant reason, most of the Residents here at the S.T.U. Annex are NOT being allowed to collect such SSI, and/or SSD benefits.

#14 In regards to Residents Post-Discharge and/or Release, the S.T.U. Annex needs to realize that the State of New Jersey NO-LONGER has administrative enforcement powers, NO-LONGER has any type of authority or hold over (Residents) in preventing them from leaving the State of New Jersey to reside elsewhere. (Please refer to the following citation for more information). <u>Sanchez v. New Jersey</u> <u>State Parole Board,</u> 368 N.J. Super. 181, 845, 687, 2004 N.J. Super. Lexis 129.

(In support of this particular offender NOT residing in the State of New Jersey)

#15 Nothing is being said or even mentioned in this lawsuit about the medical nightmares, other than the pushing of the unnecessary needles and pills on Residents, and the unsanitary / mishandling of such medication. Such Medical Professionals are instructing the Department of Corrections to take dying Residents with unbearable chest pains to a Hospital/Medical Facility in Trenton, which is approxamately forty miles away. This is where they send inmates from Northern State Prison in Newark N.J. to also. Just like what happened to the last Resident to pass away here, to whom died just before leaving the grounds. Since we are Residents and are NO-LONGER STATE INMATES, why aren't we taken to hospitals that are much closer to   this particular facility? By this, the Department of Corrections professionals KILLED another Resident by instructing Residents whom are also kitchen workers to unload a food truck BEFORE allowing an ambulance to come in to pick up a dying resident with unbearable chest pains. Just like what happened to one of the last dying Resident. To whom died just prior to leaving these grounds. Is this what future dying Residents have to look forward to, the purposely made mis-judgements BEFORE being properly considered, and properly taken care of (the right way). There are as of right now a total of 41 Residents that have either died or passed away within (on the grounds of) the Special Treatment Unit - Annex. Administration officals to this facility have on record and on file an approxmately 36 of these Residents that have either died or passed away here at the Special Treatment Unit - Annex, released through treatment, and/or within living on the streets.

#16 There is nothing being said or mentioned in this proposed settlement in regards to how Residents are, **being punished on the basis of inaccurate information.** (For reference please see the following citation). **Hill v. Sciarrotta** , 14 F.3d 210 (2nd Cir. 1998) Residents are being coerced to speak about their **inaccurate**  convicted and/or Non-convicted sex crimes, if they do not, these Residents are being placed on either Treatment Probation or Treatment Refusal Status. Plus, in the attempt of a Resident wanting to speck with an offical from the Treatment Progress Review Board or T.P.R.C. (for short) to correct their inaccurate records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge, to where NOTHING is being done to attempt to correct this problem and/or matter at hand.

#17 I strongly object to it being brought up that there should be seven therapists to ever fifty Residents ratio.  Does this include certified Social Workers who think that they are Licensed Clinical Therapists? Plus, if this is to be either put into place or implamented, licensed clinical therapists are need to run the therapy groups.  Not the self-proclaimed, wanna-be Therapists (Certified Social Workers who think they are qualified Therapists). Furthermore, when  there is no licensed or qualified therapists available to run whatever therapy group, than that particular therapy group should be canceled for that daY in question. In meaning, NO substitutes. (Certified Social Workers whom think they are either qualified or board certified clinical therapists).

#18 With regards to the issue of individually tailored treatment of Pre- or Post - module testing, consisting of  what?  And how  is this going to improve a particular Residents chances for potential release/discharge?

#19 With regards to the Treatment Staff at the S.T.U. Annex will be required to adopt and employ clinical assessments and provide individually tailored treatment that adequately meets a Residents needs. What if that particular Resident does not agree or not in such agreement of such treatment or reccomadation, then what?

#20 What authority will Social Workers have over Residents? They too will need to impartial, unbiased, and not have NO association or affiliation with the S.T.U. Annex. As for it stands as of right now, they are NO help to a Resident and cannot be trusted.

#21 New Treatment and Release Plans needs to be established to ALL Residents after this settlement becomes final.

#22 What is considered to be "Full Participation and/or Full Cooperation"? For under case law Pender x New Jersey Department of Corrections, 356 N.J.Suer 432, 812 A.2d 1154, N.J.Super.Lexis 10, Full Cooperation is based on attendance and the quality of participation, and NOT the information that is disclosed during therapy sessions. Plus, under case law of McKune v. Lile, 536 U.S. 24, 153, L.Ed.2d 47, 122, S.Ct. 2017 (2002), Prohibits the State from extracting information from a (Resident) about his past criminal history, that is NOT the subject of a conviction. For there are some Residents whom has never been convicted of a sex crime offense. So how can you treat a person who has never been convicted of a sex crime offense, when this State's S.V.P.A. appropriately limits it's application to apara
        aparant convicted sex offenders?

(For reference please see the following citation). In re Commitment of W.Z., 339 N.J.Super. 549, 773, A.2d 97 (A.D.2001), certification granted: 169 N.J. 611, 782, A.2d 205. Wouldh't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and recent Overt Act violations? These Residents should NOT have been involuntary committed where statutory civil committment procedures were not even followed. (For reference please see the following citation). Matter of D.C., 656, A.2d 861, 281, N.J.Super 102, reversed 679 A.2d 634, 146 N.J. 31, N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on it's face, and that the determination that they must be a Sec Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. (For future reference please refer to the following citation). Mental Hygiene Legal Services v. Cuomo, 785, F.Sup.2d 205, 2011 U.S.Dist.Lexis 40434 (2011).

#23 Some Department of Corrections (D.O.C.) issues need to be argued and/or addressed. For example the punitive, depressing, Prison like housing: There is the Main building and it's Annex right next to the State of New Jersey's Special Treatment Unit. The Main building used to be the former East Jersey State Prion ( formally known as Rahway State Prison) Administration Segreation Center/Prison to house problematic state inmates/prisoners and now  that building is currently being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be "Theraputic" and not considered to be clearly punitive?

#24 Some further Department of Corrections (D.O.C) needs to be either argued and/or addressed. For example, in regards to the whole issue regarding the punitive, depressing, prison-like environment/housing: Four man cubicles; Residents at the Annex building are being warehoused and are bring forced to like in approximately 10ft x 10ft four-man cubicle areas. Inmates in a prison live better and have more space than the Residents that live at this facility's Annex, in which this Annex building was used to house State inmates on their way out and back into society. How can this also be considered to be "Theraputic" and not also considered to be punitive all at the same time?

#26 The procedure to this S.V.P.A Civil Commitment process for it gas created a Due Process Violation of the commitment process: NOT ALL "Convicted" Sex Offenders are being served notice and/or being informed of the potential possibility of being Cilvilly Comitted after the completion of their term of incarceration. Not being served notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and NOT even served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of an alleged Sexually Violent Predator (SVP). (Fore future reference please refer to the following citation). In re commitment of M.G., 751 A.2d 1101, 331, N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should have not been involuntary committed where statutory civil commitment procedures were not followed. (For future reference please refer to the following citation). Matter of D.C., 656 A,2d, 861, 281, N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... with out a judicial hearing/proceeding to determine dangerousness ... is unconstitutional on it's face, and that the determination that they must be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence Standard in the law is also unconstitutional. (For future reference please refer to the following citation). Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011. U.S.Dist.Lexis 40434 (2011).

#27 The procedure to this S.V.P.A. Civil Commitment process has created an unequal application of the law: "Non-Convicted" Sex Offenders are not being served notice, nor are they being informed of the potential possibility of being Civilly Committed after their respected terms of incarceration. Not being served notice to a Probable Cause Hearing, not having a Probable Cause Hearing, and n ot being served notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to the commitment of an alleged sexually violent predator (SVP). (For future reference please refer to the following citation). See: In re Commitment of M.G. 751 A.2d 1101, 331, N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory commitment procedures were NOT followed. (For future reference please refer to the following citation). See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d. 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on it's face, and that the determination that they may be a Sex Offender needs to be man ed Beyond a Reasonable Doubt, and that the lower Clear and Convincinig Evidence standard in the law is also unconstitutional. (For future reference please refer to the following citation). See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011. U.S.Dist.LEXIS 40434 (2011).

#28 The question of appropriate treatment plan for committee to psychiatric institutions WAS NOT to wait for a possible re-hearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to commitment WAS NOT providing this individual with a meaningful opportunity for cure and also for improvement. (Please refer to the following citation for reference). See: Matter of Commitment of J.L.J., 509 A.2d. 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29 An audit needs to be conducted, for the State of New Jersey Budget Committee has found that there is a total of approxmately $60 Million Dollars that IS MISSING in running this State of New Jersey's Special Treatment Unit - Annex that houses the State of New Jersey's Sexually Violent Predators. In which the Department of Human Services or D.H.S. Officials were asked of what happened to these funds, they denied this issue and did not give an answer to this issue of missing funds.

#30 If this Resident is going to be placed on this Class Action lawsuit as a Plaintiff, he asks to be compensated for the amount of $25 Million Dollars from each listed Defendant in their personal and individual capacities for the deliberate indifference torment that the listed defendants continue to display towards this Resident/Plaintiff for the past two years to the present time.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE AND CORRECT.

Date: 04-25-2012

          Mr. Mark A. Pepe
Resident # 567

     S.T.U - Annex Avenel, N.J.

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *CharlES PETERS*

Signature: *Charles Peters*

Resident Identification Number: *141*

Date: *April 14 2012*

Comments:

*I respectfully object to the terms of this proposed settlement agreement, as the quality, not quanity, of treatment has not been addressed in this matter. The issue of housing or half-way houses upon discharge, which is severe*

insufficient, has not been addressed. Residents cannot be expected to find placement individually without resources available to them while in civil commitment.

The issue as to why a resident remains in the same treatment phase designation for extremely protracted periods of time, and the treatment staff's responsibility, in this regard, has not been addressed.

For the foregoing reasons, I respectfully object to this proposed agreement.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

**STU Settlement**
**c/o Seton Hall University School of Law**
**Center for Social Justice**
**833 McCarter Highway**
**Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Robin Pines_

Signature: _Robin Pines_

Resident Identification Number: _#376_

Date: _4-19-12_

Comments:

_I want to go to trial! "3Why"? Because You have not put any-thing into place that will show some kind of advancement toward a goal for us to make some kind_

of transition or a time line with a goal to transition out of here. There are no halfway-houses, no kind of out reach pro-grams, there's no light at the end of the tunnel for us.

I've been here 8 years now, I've done every-thing they've asked of me, I've completed all the programs and modules and I am still just a phase "2". I've never seen an operation like this one, were there is no hope, the guy's here have given up on life (not all) but alot of them.

Even my own wife, left me because she was tried of waiting for me to lev this place. Last but not least the people that run this place (AdTC), (TPRC), (Doc), do everything in there power to keep us here from our family & friends, so I will do every thing "it takes to get out no matter what! Let's go to trial!

Thank You!

2

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Proudlock, R_

Signature: _Proudlock R_

Resident Identification Number: _362_

Date: _4/14/12_

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Robert M. Quick III

Signature: Robert Quick

Resident Identification Number: 325

Date: 4/17/12

Comments:

I Object the whole lawsuit

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _ARNOID Quiñones_

Signature: _Arnold Quiñones_

Resident Identification Number: _411_

Date: _4/14/12_

Comments:

I completely object to the settlement. It does not comport
with the report of Dr. Becker's (the authority nominated by
the Attorney General) who described this program as the "worst
she had ever seen," and I completely object to numerous issues
passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *Brian L. Racey*

Signature: *Brian L. Racey*

Resident Identification Number: *061*

Date: *4 / 11 / 12*

Comments:

I completely object to the settlement. It does not comport ~~with the report of Dr. Becker (the authority nominated by the~~ Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues ~~passed over.~~

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Mr. Ramoncito Ramos_

Signature: _[signature]_

Resident Identification Number: _521_

Date: _04/13/2012_

Comments:

_Go to trial._

(Class Member's Objections/Comments Re Proposed Settlement)

## Objections to the Settlement & Comments:

**1)** There is no language set forth pertaining to a realistic release program

**2)** There is no accountability for the damage they have done to me through this ineffective and lengthy program, no mention of monetary awards,

**3)** Rights & Liberty were denied me, family, and friends since civilly committed

**4)** What life & Opportunities I would have had, were diminished due to the STU ineffective program, monetary awards would cover part of the life they destroyed

**5)** Nothing in settlement about the visit and family programs

**6)** Nothing in settlement about MAP programs being punitive, denying, packages, visits, ect. Nothing in settlement about the MAP process, when a person is placed on MAP there is no separate entity for judgment, only those who maliciously had you put on MAP.

**7)** They want us to attend self help groups, which save them hundreds of thousand of dollars on additional staff., by having ill minded residents running these groups for them without pay

**8)** There is no mention about residents who have been in Avenel for years doing the therapy, and were high phase when being civilly committed, they had to start from the beginning here

**9)** There is no mention about having Program Coordinators running groups, and being the main decision maker in our progress and work status, which they shouldn't have such unaccountable power such as this, and gaining lifetime experience & salary through their incompetent and bullish abuse of us

**10)** Nothing in settlement that is clear about the disability act,

**11)** There is no accountability for deviant and malicious report writing or falsifying statements on our records to justify commitment

**12)** Nothing in the settlement that pertains to housing, lack of space, bed bugs problems for years, bathroom facilities in Annex only build to accommodate half of the populations that is there now, stacking residents on top of one another in dorm setting, forcing residents who do not wish to be around certain inappropriate residents are forced to live in the same cubical. Therapy rooms are too small to run a groups with 12 to 15 inmates, and no indoor gym.

## Comments:

My family and friends had to also endure the pain and stress of the ineffective STU program, through the many long years of me being kept from them, the abuse they endure during their visits with me is uneceptable, there is no quality family gathering and communications time due to DOC regulations, and very strict guidelines established for punitive purposes. Causing family and friends lots of mental and emotional pain, even to the degree of becoming ill. DOC is a punitive established entity, for the soul purpose of punishing people, by having patience, none felons under their control, we face the unaccountable, bully type mentality of DOC through their punitive features, specially due to the label we have to live under. This is a one sided settlement, only benefiting DHS, and no DOC for warehousing and for abusing us, no monetary offering's where suggested for the life I lost due to their inability to provide me with a safe, healthy, therapeutic environment, with a realistic release program for me to work for. Therefore I disapprove of this settlement offer.


Respectfully Submitted



*Robert Reed*
Resident:

Date: 4-23-2012

Francisco Reyes
Special Treatment Unit
P.O. Box 905
Avenel, NJ 07001

**To: Lawrence S. Lustberg, Esq. and**
**Johnathan Manes, esq.**
Gibbons  P.C.
One Gateway Plaza
Newark, NJ  07102

Date: <u>April 18, 2012</u>

**To: Ian Marx, Esq.**
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

**Presiding Judge: Hon. Dennis M. Cavanaugh,** U.S.D.J.
U.S. District Court of New Jersey
451 U.S. Post Office Courthouse Bldg.
P.O. Box 999
Federal Square
Newark, NJ 07101-0999

<u>**RE: Objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)**</u>

I am the STU Resident identified at the top of this page, and I strenuously object to the
above captioned settlement on numerous grounds, but especially for several main
reasons: <u>First</u>, because I reject counsel designated and the residents designated as
representatives, <u>Second</u>, because the settlement as proposed completely ignores and
eliminates significant, crucial, meritorious issues that we have been asserting for years
and <u>Third</u>, because the settlement doesn't comport in many areas with the report of
authority Dr. Judith Becker, who was the chosen expert of the Attorney General.

<u>**First**</u>, because we completely reject counsel designated and the residents designated as
representatives:

Residents have objected to Seton Hall personnel and Gibbons attorneys for years in that
Seton Hall representatives were retained to advise how New Jersey's Sexually Violent
Predator Act ("SVPA") ought to be constructed.  This connection creates a conflict of

1

interest.  The fact that they are now involved in generating such a narrow settlement in spite of the numerous significant meritorious issues that have been presented, indicates that our worries about a conflict of interest may be warranted and is cause for grave concern.  Additionally, over the years of "settlement negotiations," neither Seton Hall personnel, nor Gibbons counsel, nor the plaintiffs of Alves v. Ferguson have communicated with the rest of the residents about the progress of the settlement, and they have ignored significant pieces of attempted input.  Residents have had very little if any input into these negotiations.  STU Residents are so troubled by the narrowness of the settlement and by how vague, conditional, and subjective it is, that many are concerned that the plaintiffs of Alves received some "enticement" in order to manipulate their surrender to such a narrow set of agreements.  We reach out to counsel for Bagarozy v. Harris, Mr. Ian Marx, Esq. to further develop and prosecute this issue on our behalf.

**Second**, because the settlement as proposed is far too narrow and completely ignores and eliminates significant, crucial, meritorious issues that we have been asserting for years.  We were so concerned that our issues were being suppressed that on September 2, 2009, we met with Ian Marx, Esq., Counsel for Bagarozy v. Harris, and in writing he agreed to protect and prosecute our issues (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).  The issues that Mr. Marx committed to preserve and prosecute on our behalf include the following:

*Seton Hall's voluntary surrender on the issue of compelling the State to create half way houses for STU residents.  This "surrender" additionally flies in the face of Dr. Becker's call for de-escalation of restraints.  Also, again, Seton Hall was retained to advise how to create New Jersey's SVPA, and this is surrender is a conflict of interest.

*In view of Kearny Residents being transferred to a building that was formerly used as a detention center for prisoners (a depressing, highly restrictive, counter-therapeutic facility), we strenuously object to the elimination of the ability to challenge the housing facilities.  We are shocked by this elimination and additionally this suppression also flies in the face of Dr. Becker's report.  Dr. Becker advocated for a therapeutic environment.

*The literally pervasive presence of the Department of Corrections ("DOC") in a treatment facility has a counter-therapeutic effect and creates a highly restrictive and counter-therapeutic environment which continues to exist at the STUs and has gotten worse since Dr. Becker's visit.  Mr. Marx had committed in writing to challenge this condition (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy) and we request that he further develops this issue in his reply.

2

*We seek significant monetary punitive and compensatory damages for the additional years of lost liberty and other emotional and psychological harm residents have suffered due to inadequate treatment, the lack of qualified treatment personnel (Doctors), and un-constitutional, inhumane, counter-productive, counter-therapeutic conditions as outlined in Dr. Becker's report, the "worst she has ever seen."  Monetary damages have been a part of <u>Bagarozy</u> from its inception, Mr. Marx has committed in writing to seek such monetary damages, we seek to go to trial on this and the other issues, and I request that Mr. Marx further develop this issue our behalf.

*Because Dr. Barone, a previous Director of Psychology at the STU, was fired for conduct that was completely inappropriate, we submit that her judgment was fatally flawed and that she was patently unfit to judge who should be civilly committed.  In view of this, we request that every resident that she had a hand in committing be re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General.  Mr. Marx committed in writing that he would seek this (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

*We have also asked Mr. Marx to make constitutional arguments on our behalf, including: <u>**Double Jeopardy**</u>, <u>**Ex Post Facto**</u>, and <u>**Res Judicada**</u> as well as those mentioned below (See the contract agreement signed by Mr. Marx in the objection submitted by Bagarozy).

    <u>**a)**</u> A concentrated challenge of the Due Process violations of the initial commitment process:

    <u>**b)**</u> A concentrated challenge against the arbitrary, unequal application of the law for individuals under the same class and circumstances:

    <u>**c)**</u> A concentrated effort, in view of item "<u>**b**</u>" above and all the abuses that residents have been subjected to as a whole, to have the civil commitment of every resident presently being held in the STUs re-evaluated by professionals recognized by the American Psychiatric and Psychological Associations (and Dr. Becker) as impartial, unbiased and not beholden to the New Jersey Attorney General.  Towards this end, we seek timely Discovery from DOC, including the specific records of each sex offender released over the past ten (10) years who the two doctors were not sent to evaluate prior to their release.

**d)** We seek a comprehensive investigation and challenge to the improper manner in which actuarial instruments have been and are being used to commit residents.

**e)** A concentrated challenge of the denial of <u>Trial by Jury</u>.  The claim is being made that a jury is not required because this commitment is "civil and not criminal." However, crucial liberty interests are involved to a degree that is above and beyond any criminal case.

**f)** There is evidence that the <u>rule of law</u> has been ignored for STU residents: there is a delay of approximately <u>one (1) year</u> between the filing of Notice of Appeal for a citizen civilly confined under the SVPA and a brief being written by the Public Advocate's Office.  There have been instances where the Public Advocate's office permitted fifteen (15) months to pass without the Attorney general's office filing a reply.  Regarding the statutory **yearly** review that is to be afforded to those civilly committed, that hearing is routinely not scheduled until after an Appellate Decision has been rendered.  Residents have at times gone three, four, and five years without a review hearing even though they are entitled to one by law every year.  We aggressively challenge this.

<u>Third</u>, Because of all of the above reasons and because in numerous areas the proposed settlement does <u>not</u> comport with the report of Dr. Judith Becker, the authority chosen by the Attorney General, we ask the court to dismiss it, or in the alternative, to separate the <u>Bagarozy v. Harris</u> and the <u>Hasher v. Corzine</u> case from the <u>Alves v. Ferguson</u> settlement allow the <u>Bagarozy</u> and <u>Hasher</u> cases to go forward.  We respectfully request that in their reply to this settlement proposal that Greenberg Traurig, counsel for <u>Bagarozy</u>, focus on the areas where the <u>Alves</u> settlement is not in accord with Dr. Becker.  However, some of those areas are presented below and the designation "P" refers to the page in Dr. Becker's final Report that addresses the issue:

P-1: Dr. Becker indicates that there is no licensing for both the facility and the program.

P-3: Dr. Becker points out that in one civil commitment program it took from three to seven years to complete the program.  This confirms that even though this program has the appearance of having a working structure on paper, with a microscopic number of residents on level 5 (<u>after 12 years</u>), this is not the case.

P-4: Dr. Becker Describes specifically how much therapy should be afforded.  She also points out the quote of Judge William L Dwyer in <u>Turay v. Weston</u>, 1999, that "Nothing compels a state to adopt a statute of this nature in the first place, and many states have

4

not done so, but a state that chooses to have such a program must make adequate mental health treatment available to those committed."

Also on Page 4, fourth paragraph, Dr. Becker is conveying that the Division has made claims that Dr. Becker has exceeded the scope of her retention in several areas. However, Ian Marx, Esq. had told us that in return for the State being able to remove the designation of "Punitive" as an option for grading in each category of her review, Dr. Becker would then have the discretion to additionally address any area she felt appropriate. The court should not allow the state to renege on this agreement. This also goes for the paragraph on page 4 immediately after the topic: **Response to the Plaintiffs' Comments**.

P-5: Dr. Becker again raises in item b. that she couldn't comment on the facilities run by DOC, however, in view of the information presented above, she ought to be able to do so. Even though Dr. Becker believes it is beyond her "scope" of what she is to evaluate (see item b), she still feels compelled to note at the beginning of page 5 that the facilities appear to be less than therapeutically adequate (Page 5, line 6).

P-6: as a whole demonstrates the overwhelming subjectivity and resulting lack of objectivity of the evaluation process. The proposed settlement does little to remedy this and as such does not comport with Dr. Becker's report.

P-8, top: "Living conditions worst she has ever seen."

P-9: "Overall therapeutic and rehabilitative milieu is not minimally adequate."

P-10: Lines 3-4: "No specific dynamic risk assessment instrument being utilized."

P-11: Bottom half of page: again Dr. Becker expresses a lack of clear, objective requirements for advancement. How do the changes in the proposed settlement remedy this? Bottom of page 11: "Clinical assessment evaluation and treatment team plans are not minimally adequate and are unsatisfactory." How do the changes in the proposed settlement remedy this?

P-13: This page as a whole again speaks of the lack timely advancement of residents and the lack of an "objective measure" (Paragraph 3, line 2). How do the changes in the proposed settlement remedy this?

P-14: This page is most telling of all.  In Paragraph 5, Dr. Becker reports that treatment phases as outlined "on paper" are satisfactory but that resident progress through the phases and the means by which progress is evaluated are together 'not minimally adequate and are unsatisfactory.'"  This dichotomy points out one of the significant problem existing in New Jersey's SVPA process and environment. How do the changes in the proposed settlement remedy this?

P-15: Paragraph 2, handicapped residents are not being given the services they require. E.g. resident Dismukes who is almost totally blind.  How do the changes in the proposed settlement remedy this?

P-16: Again the dichotomy appears.  In Paragraph 2, Dr. Becker states that the model of process groups described on paper is satisfactory, but the manner in which they actually exist is not.  I greatly fear that this "proposed settlement" is another example of a document which is a paper tiger but entails no real reform to ameliorate the significant problems existing in the New Jersey SVPA process and environment which caused Dr. Becker to call it the "worst she has ever seen."  How do the changes in the proposed settlement remedy this?

P-17: "Vocational, rehabilitative, and educational programming is <u>not</u> minimally adequate and is unsatisfactory.

P-19: "Release preparation and programming are <u>barely</u> adequate.  How do the changes in the proposed settlement remedy this?

P-21: "Therapist training and supervision is not minimally adequate and is unsatisfactory."

P-22: "T.C. Community is not minimally adequate and is unsatisfactory."  How do the changes in the proposed settlement remedy this?

P-23: "Level of confidentiality is <u>not</u> minimally adequate and is unsatisfactory.  Item 11: Gradual de-escalation of restraints does not occur at the rate or quantity one would hope to see in a therapeutic program." How do the changes in the proposed settlement remedy this?

     For all the foregoing reasons I petition the court to reject this proposed settlement and allow this matter to go to trial.

Respectfully submitted,

6

*Frances Reyes*

Fr: *Daniel K. Richards, Sr* #155
    Special Treatment Unit
    8 Production Way, Trl #2
    CN 905
    Avenel, New Jersey 07001


To:    STU Settlement
    c/o Seton Hall University school of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102


    Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
        **Objection to Purposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

_____

_____

_____

_____

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

Page 2

1. I do not agree to the settlement because there is nothing in the agreement that addresses the military resident and their specific needs as it applies to treatment.

2. The settlement does not address the quality of treatment/therapy it only addresses the quantity. It is a well-known fact that more treatment does not mean better treatment. Because of this, I do not agree with the settlement.

3. The settlement does not include any of Dr. Becker's' recommendations concerning the STU. She made about fifty suggestions that would improve this program and none of them are in the agreement why? Especially since Dr. Becker was chosen by the state to investigate and supply recommendation to address the need of the residents. Therefore, I disagree with this settlement.

4. The fact that Seton Hall University is the lead attorneys involved in this settlement brings to question whether they are acting in the best interest of the plaintiffs. It was Seton Hall and Dr. Witt that developed this law and now they are in charge of fixing their mistakes speaks volumes as to why the recommendation of Dr. Becker are being addressed and therefore, questions the true intent of Seton Hall University. There appears to be some kind of cleaning up and protecting of what they created. Since this is not clear and there appears to be some shadiness involved with this settlement **I DO NOT AGREE WITH THIS AGREEMENT!**

5. Due to the fact that, DOC is not included in the settlement, and their behavior is directly related to the daily treatment milieu, this settlement should be thrown out. DHS does not have the authority nor do they have the desire to prevent DOC from interfering with the daily-prescribed treatment routine. As long as DOC can stop groups for searches, bring in the dogs, urine test, ect., there will always be a hindrance to the treatment milieu and the settlement should be denied.

6. There is nothing within the settlement that addresses the TPRC and CARP teams. These teams should be totally independent of DHS and DOC. This program should be set up like the Special Classification Review Board ("SCRB") in the ADTC facility. Since this is not the case there is no way that any resident here at the STU will ever be treated fairly and for this reason I disagree with the settlement.

Fr:        Tony Riddles, STU#000013
           Special treatment Unit
           8 Production Way, Trl #2
           CN 905


To:        STU Settlement
           c/o Seton Hall University, School of Law
           Center for Social Justice
           833 McCarter Highway
           Newark, New Jersey   07102

     **Re: RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, ET AL.**
         **Objection to Proposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and
   Culbreth, being named representatives of the Class.
   These Residents do not, and cannot, represent the
   population as it stands.  They have not experienced what
   separate classes of Residents have experienced,
   therefore, making it impossible for the above named
   Residents to speak on behalf of the population.  There
   should be Residents added to the representatives, listed
   above, that reflect the following Classes of persons:
   (a) Juveniles that were civilly committed; (b) Residents
   that were committed from the A.D.T.C. that have numerous
   years of treatment; (c) Residents that have been
   informed that treatment would not diminish their risk to
   reoffend, therefore, rendering this commitment a life-
   sentence; (d) Persons that have been committed from
   society (that were on the streets when they were
   selected for civil commitment); (e) Treatment Refusals
   are not represented; (f) MAP Residents are not
   represented; (g) South Unit Residents, described by Dr.
   Main as "the Undesirables"; and (h) incest offenders
   often described as the sex offenders having the lowest
   risk of recidivism are not represented.

2. Psycho-Educational Modules:  The proposed Settlement
   does not address the risk mitigation after the
   successful completion of Modules.  As the Settlement now
   stands, I do not agree with module testing only.  There
   should be some kind of notice given that the Resident's
   risk to reoffend has been mitigated, as well as his
   level of dangerousness.  This will, sequentially, lower
   the Resident's risk assessment.  This should be noted
   and written verification should be given to the
   Resident, as well as this verification being placed in
   the Resident's file.

3. Prior Treatment: I, along with many other Residents,
   have participated in Treatment for many years, thirteen
   in my case. The current settlement agreement does not

offer any assurance that treatment goals long ago met
and since maintained will be taken into account,
treatment levels should be adjusted to account for this.
Some type of reevaluation should be done, by the court
appointed monitors, to assure us that the treatment we
have done will be taken into account.

*Tony Riddles #013*

Tony Riddles #000013

Fr: R I D L E Y
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:   STU Settlement
c/o Seton Hall University school of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
**Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

Im NOT doing NO MORE TREATMENT BECAUSE I DID
MY TIME RESIDENTS who goT COMMITTED DID THEY
TIME Also You PEOPLE PLAYING US LIKE FOOL WE
DONT NEED NO MORE TREATMENT its NOT FAR

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

TO US THAT THIS WENT TO COURT
ON THREE RESIDENTS THAT WANT TO DO MORE
TREATMENT NOT US EVERY BODY IN STU HAVE
TO GET TOGETHER NOT JUST THREE GUYS THE
HOLD BUILDING HAVE TO GET TOGETHER THERE FORE
YOU CALL THIS TREATMENT IN HERE THIS IS NOT
TREATMENT TO ME THIS IS JUST TO KEEP US LOCKED
UP AND DO MORE AND MORE SO IT COULD MAKE
YOUR POPIE LOOK GOOD NOT US WE DONT NO
WHEN WE ARE GETING OUT OF HERE
WE COULD BE HERE THE REST OF OUR LIFES
YOU NO WHY I DONT TRUST THE TREATMENT
TEAM IN HERE ALL OF THEM IS NOTHING BUT LIER
THEY DONT WANT TO HELP US THEY
WANT TO KEEP LIE AND LIE TO US I CAN
HAVE THEM PLAY ME AS A FOOL NO MORE
THEY SAY ONE THING AND LIE ON ANOTHER
WE SUPPOSE TO BE RESIDENTS NOT INMATS
I BEEN DOING TREATMENT FORE THE LAST
SEVENTEEN YEARS WHERE ITS GETING
ME NO WHERE ITS NOT GETING ME
OUT THE DOOR FRIST ITS JUST HOLD ME
HERE AND THE REST OF THE GUYS
WE WANT TO SEE OUR FAMILY AGAIN
NOT TO PLAY HEAD GAMES WITH
US AND THATS WHAT YOU PEOPIE DOING

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: MICHAEL

Signature: *Michael Ridley*

Resident Identification Number: 134

Date: 4-18-2017

Comments:

DR JUDITH BECKER, ISSUED HER FINAL WRITTEN SETTLEMENT one NEED To gET ALL STAFF MEMBER LIKE WOMAN THAT WORKS AT STU OUT OF THE BUID BECAUSE DHS IS NOT HERE TO HELP ANY ONE

ALL THEY WANT is TO KEEP US LOCKED UP THEY HIRE AII WOMAN STAFF MEMBER THEY LISTEN TO DOC OFFICE THEY HAVE THE MONEY iN HERE IF THEY DIDNT WHERE THESE WOMAN COMING FROM THEY SOUID BE iN THIS BUID THEY SOUID BE IN A WOMAN PRISON NOT HERE WE SUPPOSE TO BE SEXUALLY VIOLENT PREDATOR NO WE NOT iN THAT CASE WHY THE WOMAN HERE THEM THEY NOT HERE TO HEIP US ANY ONE HALF THESE WOMAN HAVE BABY BY THESE OFFICE IN HERE THAT WHY THEY DONT WANT TO HELP US THEY WANT US TO GET HURT iN HERE EVERY THING YOU DO IN TREATMENT HERE THEY RUN THEY MOUTN TO OFFIC iN HERE ABOUT US YOU HAVE AII WOMAN AGAIN ALL OF US BECAUSE SOMETHING HAPPEN iN THEY LiFE AND THEY TAKE it OUT ON ALL OF US it SOUID NOT BE NO LOCKED UP IN HERE WE NOT PRISON

2

From:

    Gliden Rivera #370
    Special Treatment Unit Annex
    8 Production Way
    PO Box 905
    Avenel, NJ 07001

To:

    STU Settlement
    C/O Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, NJ 07102

## Class Member's Objections/Comments Re Proposed Settlement
## Raymond Alves, et al., v. Merrill Main, PH.D., et al.

I object to the proposal settlement for the following reasons:

1. Seton Hall - Law Center for Social Justice needs to be removed from representation in this Lawsuit. For they helped to create this Sexually Violent Predator Act, and now that they want to represent the Residents against it. They should not be able to have it both ways.

2. Dr. Becker's Overall Assessment states, "In my professional career, I have had the opportunity to visit a number of secure mental health and correctional facilities around the United States. The living conditions that I have witnessed at both the Annex and Kearny facilities are among the worst that I have ever seen. Such conditions of confinement have served to lead many of the Residents to believe that they are simply being warehoused and punished within deplorable conditions". As noted by Dr. Marques, in Professional Standards for Civil Commitment Programs, "the program [should be] housed in a treatment oriented (not punitive) environment, adequate space is provided for living, treatment, other activities, and for separation among resident groups" (p2-11 - 2-12). This is clearly not the case at the STU. (See pg. 7-8 of Dr. Becker's Report).

3. The proposal shows the increase in program hours, the increase in therapists, the increase of the potential new program groups all in order to keep the Residents here longer just like a concentration camp. The proposal fails to show the increase in of how the program will be releasing Residents. For there are Residents that have been here 8 to 12 years already, and would like to go home, this proposal is not showing that chance of going home.

4. Psycho-Educational Modules: The proposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed the module, there should be some kind of Notice given that the Resident's risk to reoffend has been mitigated, as well as His level of dangerousness. This will sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, in addition to, this verification being laced in the Residents file.

5. Treatment Ombudsperson needs to be impartial, unbiased, and not beholden to the STU. Something needs to be implemented to insure that there is no retaliation from Staff (Director, Therapist & Social Worker, etc.) for submitting and talking with the Treatment Ombudsperson about any complaints against D.H.S., and/or it's Staff Members.

6. Nothing is mentioned of how the Therapy groups are going to reduce Residents risk of offending and advance forward to the potential possibility of discharge.

7. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced; therefore, making it impossible for the above named Residents to speak on behalf of the population.  There should be Residents added to the representative, listed above, that reflect the following classes of persons; a-juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g- and South Wing Residents are not represented.

8. Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to who are impartial, unbiased, and not beholden to The State of New Jersey Attorney General.   To insure the fairness of a Release Plan to all Residents.  For there are some Residents that were rail-roaded into this treatment, for crimes that were not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and they were never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

9.  In the form of Cruel and Unusual Punishment, Residents on South Wing are labeled as being the "Undesirables" and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Program (MAP).  Those South Wing Residents recently had their outside vender pizza delivered to them by D.H.S. Staff in one of the other wings trash bin.

10.  Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys.

11.  Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said in such therapy groups.

12.  Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet.  Most of the time, the diets are not served the proper food for them to eat.  Dietitians only show up for work, they do not properly prepare the food that is being served to the Residents and Diets.

13.  D.O.C. issues and matters needs to be put back in place into this Law Suit.  For after D.H.S. leaves for the day, all Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. Officers come in and beat up on the handcuffed problem Resident.  In addition, D.O.C. is supposed to be here for security purposes.  Where is the security when either D.O.C. sleep on the job when D.H.S. is on the wing, watch TV either in the control booth or on the Wing, or they simply just leave the dorm for hours on end.

14.  Nothing is being said in this proposal about the care for Treatment Refusals.  How are they going to support themselves in order to live without any funds?  (No cloths, No hygiene cosmetics, No sheets, etc., etc,. etc...); By this proposed settlement, All treatment refusal Residents are being forced to accept that they will have no work

hours, nor funds to support themselves.  Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who chose to be Treatment Refusal (for either some Legal or
Health or another reason), to have funds to support themselves to live.  For instance, allow Residents to receive SSI.  For under case Law **Sidney s. Zipkin v. Margaret M. Heckler**, **790 F.2d 16, 1986 U.S. App. Lexis 24723**: The withholding of a no contractual benefit such as the Social Security Retirement benefit is unconstitutionally only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification.  See: **Flemming v. Nestor**, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); **Schweiker v. Wilson**, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1047 (1981); **Richardson v. Belcher**, 404 U.S. 78, 81, 30 L.Ed.2d 1152, S.Ct.254 (1971); **Buccheri-Bianca v. Heckler**, 768 F.2d 1152, slip op. at 8 (10th Cir. (1985).  **Section 202, 42 U.S.C.   402(x), provides in pertinent part:   (x)(1)** Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility *pursuant* to his conviction of an offense which constituted a felony under applicable law, **unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time.** <u>Note</u>: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits.  See: **Washington v. Secretary of Health and Human Service**, **718 F.2d. 608 (3rd Cir. 1983)**. **And Statute: SSR 83-28c: SECTION 223 (f)(1) (42 U.S.C. 423 (f)(1)) DISABILITY -- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTION -- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; The Statue directly provides that imprisoned felons may receive benefits if they are disabled and participate in a satisfactory rehabilitation program while confined.  The rehabilitation program must be approved by a competent court.  Thus**, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations.  These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period.  **The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negates vagueness argument.**  Simply, the Statute includes no punitive elements.  The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes ... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken.  The Statue rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs.  **For some unknown ignorant reason, most of the Residents are not being allowed to collect such SSI, and/or SSD.**

15.  In regards to Residents Post-Discharge and/or Release, this facility needs to realize that the State of New Jersey **No-Longer** has administrative enforcement powers, **No Longer** has any type of authority or hold over (Residents) in preventing them from leaving the State of New Jersey to reside elsewhere.  See: **Sanchez v. New Jersey State Parole Board**, **368 N.J. Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (In support of the offender not residing in New Jersey).**

16.  Individually tailored Treatment of Pre- & Post-Module testing, consists of what?  Moreover, how is this going to improve a Residents chances in being discharged?

17.  In regards to the Treatment Staff all the STU will be required to adopt an employ clinical assessment and provide individual tailored treatment that adequately meets a Residents needs.  What if the Resident's are not in such agreement of such treatment, then what?

18.  What authority will Social Workers have over Residents?  They too will need to be impartial, unbiased, and not beholden to the STU.

19. New treatment plans needs to be established for all Residents after this settlement becomes final.

20. What is considered as Full Participation and/or Full Cooperation?  For under case law of **Bender v. New Jersey Department of Corrections, 356 N.J.Super. 432, 812 A2d. 1154, N.J.Super.Lexis 10, Full Cooperation is based on attendance and the quality of participation, and Not the information that is disclosed during therapy.  Plus, under case law of McKune v. Lile, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002) Prohibits the State from extracting information from a (Resident) about his past criminal history, that is Not the subject of a conviction.**  For there are some Residents to whom has never been convicted of a sex crime offense, so how can you treat a person who has never been convicted of a Sex Crime, when this State's SVPA appropriately limits it's application to Convicted Sex Offenders?  See: **In re Commitment of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), Certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205.**  Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and recent overt Act violations?  **These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed.**  See: **Matter of D.C., 656 A.2d 861, 281 N.J. Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J. Super. A.D. 1995.  Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that they may be a Sexual Offender needs to be made Beyond a Reasonable Doubt, and that the lower clear and Convincing Evidence standard in the law is also unconstitutional.  See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S. Dist.LEXIS 40434 (2011).**

21. Some D.O.C. issues needs to be argued and/or addressed.  For example the Punitive, Depressing, Prison like Housing: There is the main Building and it's Annex to the State Of New Jersey's Special Treatment Unit.  The Main Building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, now it is being used to house the State of New Jersey's Special Treatment Unit Residents.  How can this be considered as "Therapeutic" and Not Punitive?

22. Some further D.O.C. issues needs to be argued and/or addressed.  For example the punitive, depressing, prison like housing:  Four-men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space.  Inmates in prison live better and have more space then the Residents that live at this facility's Annex, in which this Annex building was used to house State Inmates on their way out and back into society.  How can this be considered as "Therapeutic" and not Punitive?

23. Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations.  How can being taken to a prison hospital be considered as "Therapeutic" and not Punitive?

24. The procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process:  Not all "Convicted" sex offenders are being served Notice and/or are being informed of the potential possibility in being civilly committed after the completion of their term of incarceration.  Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing.  **Depriving ... of Notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP).**  See: **In re Commitment of M.G. 751 A.2d 1101, 331 N.J. Super. 365. N.J. Super. A.D. 2000.**  These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed.  See: **Matter of D.C., 656 A.2d 861, 281 N.J. Super. 102, revised 679 A.2d 634, 146 N.J. 31. N.J. Super. A.D. 1995.**  Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that they may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional.  See: **Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S. Dist.LEXIS 40434 (2011).**

I CERTIFY UNDER PENALTY OF PURJURY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE AND CORRECT.

Date: 4-30-12

Gliden Rivera
Resident #370

# Residents of New Jersey's "Special Treatment Unit" who have passed away as of August 7, 2011

Henry Albany ---2002̸

Anthony Altiere (AKA: Brian Thorn)---2010

Bilal As Samad---2006

Robert Bergenstock----2009

Carmello Cintron---2006

Jamaal Davis---2003

Stephen Friedlieb---2007

A.C. Flinn---2008

William Healey---2004

J. Henzey---2002

Shawn Hopkins---2004

R. Jacobs---2007

Robert Kittredge---2006

William (Lefty) Layton---2010

Jeffrey Lieb---2007

Paul Longeway---?

G. Lopez---2007

Richard Ludwick---2009

Joseph Madonia---2007

Edward Mallard---2011

John Malone---2010

J. McCray---2006

Glen L. McNeil---2008

Leroy Meyers---2008

John R. Miley---2011

Charles Mortland---?

Edward Porter---2000

Joseph Potts---2010

Christopher Probst---?

David Riggs---2010

Peter J. River---2008

Barry Robillard---2004

Robert Simpson---2009

Vaughn Sweeny---2004

W. Tortoriello---2008

John Townsend---2009

W. Weiss---2007

James Williams---2011

DAN MERCADO 2011

RAYMOND MALDON 2012

JERRY DELLASTRITTA 2012

ROBERT GUNN 2012

SANTOS RIVERA 110

**Special Treatment Unit**
**P.O. Box 905**
**Avenel, NJ 07001**

TO:

**Lawrence S. Lustberg, Esq. and**
**Johnathan Manes, esq.**
Gibbons  P.C.
One Gateway Plaza
Newark, NJ  07102

Date: APRIL  15, 2012

CC:/c  **Ian Marx, Esq.**
Greenberg Traurig, LLP
200 Park Ave.; P.O. Box 677
Florham Park, NJ 07932-0677

**RE: Class-member objections to settlement in Alves v. Ferguson 01-cv-789 (DMC) (MF)**

I am the class-member identified at the top of this page, and I strenuously object
to the above captioned settlement for the following reasons:

There is Nothing said about half way houses
Furloughs To Start at phase 3 along with discharge.
There are still No community reality Jobs or Work
release programs. The settlement above is a
"Smoke Scream" To cover up all of DHS. unlawful
doings. I object To the entire Settlement in
full, because Nothing is being address. I would
rather have this matter go to Full Trial at once!
Thank you!

Please Note: the State of INdIaNa's program
is only 18 MoNTHS!!!

1

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: SANTOS RIVERA

Signature: Santos Rivera

Resident Identification Number: 110

Date: April 11, 2012 at 4:36:25 Pm

Comments:

I Have The Following concerns, Regurding Page 6 Pargraph, e: what about when Residents are in Phase 3 Doing work and helping Residents in Phases 4 & 5 with There Treatment Resident in 4 & 5 goes Home. Person who is in Phase 3

Remains phase 3?? What about the Faile T.C. Community that shut down twice and is found not necceray for release by the STU Judge!

There are residents here who struggle to complete required work and get no help of any kind and are left in phase 2 and/or phase 3. Other states such as Indiana has same program which is only 18 month long!

What about the misread scores of the STacc 99?

This is my concerns / objection

Santos-Rivera 110

Fr: **RODNEY ROBERTS #366**
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001

To:   STU Settlement
c/o Seton Hall University school of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
**Objection to Purposed Settlement**

1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

**THE THREE SOLE INDIVIDUALS SELECTED TO REPRESENT THE CLASS IN THE SETTLEMENT DO NOT REFLECT THE DIVERSE DIMAGRAFICS OF THE STU POPULATION. THE PLAINTIFF CLASS SHOULD BE EXPANDED TO INCLUDE ALL MEMBERS OF THE POPULATION WHO ARE NOT SIMARLY SITUATED.**

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

3. THE SETTLE-MENT DOES NOT INDICATE ANY FORM OF DE-ESCULATION IN RISK TO REOFFEND OR DANGEROUSNESS VIA THE COMPLETION OF MODULES. A RESIDENT CAN COMPLETE ALL THE ASSIGNED TREATMENT MODULE BUT STILL NOT BE ADVANCED FURTHER IN PHASE IN A DE-ESCULATION PROCESS. THE PURPOSE AND GOAL OF TREATMENT IS TO HELP PROVIDE TECHNIQUES THAT WILL MITIGATE THE CHANCES TO REOFFEND AND TO HELP DEVELOP SELF-RESTRAINT. THESE ACHIEVEMENTS IN ESSENCE ARE DESIGNED TO NOT MAKE CIVIL COMMITMENT A LIFE SENTENCE.

4. THE SETTLEMENT TERMS DO NOT INCLUDE ANY PROGRAMS THAT ARE DESIGNED TO HELP RECONNECT OR MAINTAIN FAMILY RELATIONSHIPS OR BONDS. THE DHS IS TOTALLY EXCLUDED FROM THE VISITATION PROGRAM AND PROVIDE NO SERVES TO RESIDENT'S FAMILIES WHOM ARE INVOLVED IN THE CIVIL COMMITMENT PROCESS OR DISCHARGE PROCESS. THE SETTLEMENT SHOULD INCLUDE FAMILY ORIENTATED PROGRAMS THAT WILL HELP EDUCATED FAMILY MEMBERS ABOUT THE TRUTH OF DANGEROUSNESS AND NOT JUST SOCIAL MEDIA HYPE.

THANK YOU,

4-16-2012                              Rodney Roberts

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Christopher Rodriguez

Signature: Christopher Rodriguez

Resident Identification Number: #458

Date: April 11, 2012

Comments:

```
I completely object to the settlement.  It does not comport
with the report of Dr. Becker (the authority nominated by the
Attorney General) who described this program as the "worst she
had ever seen."  I also completely object to numerous issues
passed over.
```

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: GLENN ROGERS

Signature: Glenn Rogers

Resident Identification Number: 496

Date: 4/11/12

Comments:

I, GLENN ROGERS of solemon mind, was NOT COHERST, Threaten or Manipulate into making The following REJECTION. This settlement does NOT Address The following of Residents As myself, who was found NOT To have The following AXIS of ANY PARAPhilia or SEXUAl DEViANCES. I've been Civildy

Committed off of polysubstance Abuse. I was never found/or been found to be composive or repetitive. I was also not found eligible under the SVP (sexual violent predator act) or sexual offender act. All the group or modules that I was put or completed has been dealing with my drug abuse. Nothing sexual. I've been civially committed temperory for the past 3 yrs 6 months. The courts deemed me not to need any sexual treatment. This process has striped me of my life and rights to be a productive citizen. This is double jeapardy to the fullest extent. I should not even be in groups with others that are sexual violent predators. Instead of the proper treatment I could recieve from an adequate drug treatmen facility I am subject to an inadequate drug treatment facility. That not only is a front to keep me here, but injustice to me period. So I am rejecting this settlement. Until the courts find ways to release residents as myself to be released, from a facility that can not/or will not help residents as myself. Or send us to the proper drug treatment facility that our/my axis calls for.

Thank you
Sincerely yours
Glenn Rogers

2

Glenn Rogers

ATT: Prof. Barbara Moses, ESQ                    5-2-12

     I, Glenn Rogers of solemn mind was not once coerced, threaten, or manipulated to make the following agreement to the settlement thats being presented to the courts and DHS.

     I feel as though if reached it will be a benefit to residents like myself that either have no Axis or just have an Axis of Polysubstance abuse. So far I have done/pass all of the substance abuse modules, with relapse prevention, anger management, social skills and family origin. I also presented my mantainance contract, autobiography and sexual history questionare. I also talked abous my crimes on many occassions. There not much I could do now, DHS will not put me in any sex modules, because I have no kind of sexual deivantces or paraphilia, or padophilia. I been in the STU (special treatment unit) going on 4 years and is at phase 3 now.

     Hopefully if pasted I will start my release process back into society. Where I have a strong support group in my family and children

     Thank you for you time and efforts

May God bless you.            Truly
                    Glenn Rogers 496
                    Glenn Rogers

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: EDWARD SALERNO

Signature: *Edward Salerno*

Resident Identification Number: 188

Date: April 11-2012

Comments:

I am a member of proposed class regarding this proposed settlement. I vehemently oppose all facets of this proposal. I also think I am not being represented by the class representatives. They do not have my best interests in mind.

All items in this proposed settlement are, and have been for years in place within this system. Except for the post-discharge preperation, allthough there is a yearly update performed by a social worker regarding my present contact info, and I am asked where I would reside ".if" discharged. I am appalled that in the second amended complaint that the conditions that we are confined in are omitted. Also omitted is the untheraputic atmosphere created by the Dept. of Corrections. Dept of corrections is entirely adverse to therapy. They belittle and degrade residents as well as uninplement rules that are by far more restrictive than if I was housed in a penal institution. I stand firm with all other members of this objecting class in all other issues raised by the other members.

Respectfully Submitted,

Edward Salerno

PS - See also Attached 4 2-Sided Pages

C. Ian Marx, Esq.

2

From: <u>Edward Salerno</u> #188
      Special Treatment Unit
      8 Production Way, Trl#2
      P.O.Box 905
      Avenel, New Jersey 07001

To: STU Settlement
    c/o Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102

**Class Member's Objections/Comments Re Proposed Settlement**
**<u>Raymond Alves, et al., v. Merrill Main, PH.D., et al.</u>**

I object to the proposal settlement for the following reasons:

**#1.** SETON HALL - LAW, CENTER for Social Justice needs to be Dropped from representation in this Law-Suit. For they helped to create this Sexually Violent Predator Act, and now they want to represent the Residents against it. They should Not be able to have it both ways.

**#2.** The proposal shows the increase in program hours, the increase in therapists, the increase of the potential new program groups all in order to keep the Residents here longer just like a concentration camp. The proposal <u>Fails to show</u> the increase in of how the program will be releasing Residents. For there are Residents that been here 8 to 12 years already, and would like to go home, This proposal is not showing that chance of going home.

**#3.** Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed the module, there should be some kind of Notice given that the Resident's risk to re-offend has been mitigated, as well as, His level of dangerousness. This will sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, in addition to, this verification being laced in the Residents file.

**#4.** Treatment Ombudsperson needs to be impartial, unbiased, and Not beholden to the STU. Something needs to be implemented to insure that there is No retaliation from Staff (Director, Therapist & Social Workers, etc.) for submitting and talking with the Treatment Ombudsperson about any complaints against D.H.S., and/or its Staff members.

**#5.** <u>Nothing</u> is mention of how the Therapy groups is going to

reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a-Juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C. that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g-and South Wing Residents are not represented.

#7. Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are a some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, **Residents on South Wing are label as being the "Undesirables"** and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat. Dietitians only show up for work, they do not properly prepare

the food that is being served to the Residents & Diets.

**#12.** D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

**#13.** <u>Nothing</u> is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law <u>Sidney S. Ziokin v. Margaret M. Heckler</u>, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: <u>Flemming v. Nestor</u>, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); <u>Schweiker v. Wilson</u>, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); <u>Richardson v. Belcher</u>, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); <u>Buccheri-Bianca v. Heckler</u>, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). **Section 202, 42 U.S.C. § 402(x), provides in pertinent part:** (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, **unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time.** Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: <u>Washington v.Secretary of Health and Human Services</u>, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f(1) (42 U.S.C. 423(f)(1)) DISABILITY -- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS -- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; **The Statue**

directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court. Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument. Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes ... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken. The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.

#14. In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey No-longer has administrative enforcement powers, No-longer has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender Not residing in New Jersey).

#15. Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals KILLED another Resident by instructing kitchen working Residents to unload Food Truck BEFORE allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that Died here at the Special Treatment Unit, release through treatment, and living on the streets.

**#16.** Nothing is being said about how Residents are, **Being punish on the basis of Inaccurate Information.** See: Hill v. Sciarrotta, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their **inaccurate** Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their **inaccurate** records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

**#17.** It is said that there will be 7-Therapist to every 50 Residents. Does this include certified Social Workers who think that they are License Therapists? Plus, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should Not run for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

**#18.** Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

**#19.** In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

**#20.** What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU.

**#21.** New Treatment Plans needs to be establish for ALL Residents after this settlement becomes final.

**#22.** What is considered as Full Participation and/or Full Cooperation? For under case law of Bender v. New Jersey Department of Corrections, 356 N.J.Super. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, **Full Cooperation is based on attendance and the quality of participation, and Not the information that is disclosed during therapy.** Plus, under case law of McKune v. Lile, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits the State from extracting information from a** (Resident) **about His past criminal history, that is Not the subject of a conviction.** For there are some Residents to whom has Never been Convicted of a Sex Crime Offense, So now can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's **SVPA appropriately limits it's application to Convicted Sex Offenders?** See: In re Commitment

of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents **should not have been involuntary committed where statutory civil commitment procedures were not followed.** See: Matter of D.C., 656 A.2d 961, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a **judicial proceeding to determine dangerousness** ... **is unconstitutional on its face,** and that the determination that They may be a Sex Offender needs to be made **Beyond a Reasonable Doubt,** and that the **lower Clear** and **Convincing Evidence** standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

**#23.** Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

**#24.** Some further D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

**#25.** Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

**#26.** The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. **Depriving** ... **of notice would strip them of significant liberty interest;** and that a **Probable Cause Hearing** ... **MUST BE HELD prior to commitment of alleged sexually violent predator (SVP).** See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents **should not have been involuntary committed where statutory civil commitment**

procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27. The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution was not to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was not providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that is missing in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what become to these funds, No answer was given.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE AND CORRECT.

Date: 4-16-12                    *Edward Salerno*

Edward Salerno
Resident #133

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: FRANK SANCHEZ

Signature: *Frank Sanchez*

Resident Identification Number: 387

Date: April 14, 2012

Comments:

_____

_____

_____

_____

_____

From: <u>Frank Sanchez</u>  #_____
      Special Treatment Unit
      8 Production Way, Trl#2
      P.O.Box 905
      Avenel, New Jersey 07001

To: STU Settlement
    c/o Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102

**Class Member's Objections/Comments Re Proposed Settlement**
**<u>Raymond Alves, et al., v. Merrill Main, PH.D., et al.</u>**

    I object to the proposal settlement for the following reasons:

#1. SETON HALL - LAW, CENTER for Social Justice needs to be Dropped from representation in this Law-Suit. For they helped to create this Sexually Violent Predator Act, and now they want to represent the Residents against it. They should Not be able to have it both ways.

#2. The proposal shows the increase in program hours, the increase in therapists, the increase of the potential new program groups all in order to keep the Residents here longer just like a concentration camp. The proposal <u>Fails to show</u> the increase in of how the program will be releasing Residents. For there are Residents that been here 8 to 12 years already, and would like to go home, This proposal is not showing that chance of going home.

#3. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed the module, there should be some kind of Notice given that the Resident's risk to re-offend has been mitigated, as well as, His level of dangerousness. This will sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, in addition to, this verification being laced in the Residents file.

#4. Treatment Ombudsperson needs to be impartial, unbiased, and Not beholden to the STU. Something needs to be implemented to insure that there is No retaliation from Staff (Director, Therapist & Social Workers, etc.) for submitting and talking with the Treatment Ombudsperson about any complaints against D.H.S., and/or its Staff members.

#5. Nothing is mention of how the Therapy groups is going to reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a-Juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C. that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g-and South Wing Residents are not represented.

#7, Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are a some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, Residents on South Wing are label as being the "Undesirables" and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat.

Dietitians only show up for work, they do not properly prepare the food that is being served to the Residents & Diets.

#12. D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

#13. Nothing is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law Sidney S. Zipkin v. Margaret M. Heckler, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: Flemming v. Nestor, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); Schweiker v. Wilson, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); Buccheri-Bianca v. Heckler, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). Section 202, 42 U.S.C. § 402(x), provides in pertinent part: (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time. Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: Washington v.Secretary of Health and Human Services, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f)(1) (42 U.S.C. 423(f)(1)) DISABILITY -- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS

-- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court. Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument. Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes ... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken. The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.

#14. In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey No-longer has administrative enforcement powers, No-longer has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender Not residing in New Jersey).

#15. Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals KILLED another Resident by instructing kitchen working Residents to unload Food Truck BEFORE allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that Died here at the Special Treatment Unit, release through

treatment, and living on the streets.

**#16.** Nothing is being said about how Residents are, Being punish on the basis of inaccurate information. See: <u>Hill v. Sciarrotta</u>, 14 F.3d 210 (2nd Cir. 1998). In which case, Social Workers along with Therapist cannot be trusted Here at the Special Treatment Unit. Social Workers act as if they are License Therapist in their attempt to coerce & entrap a Resident to give self-incriminating statements. They are just as much apart of the problem as in screwing over the Resident in this Treatment Facility, and are truly not out to help the Resident as to what everyone may think.

**#17.** It is said that there will be 7-Therapist to every 50 Residents. Does this include certified Social Workers who think that they are License Therapists? Plus, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should Not run for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

**#18.** Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

**#19.** In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

**#20.** What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU.

**#21.** New Treatment Plans needs to be establish for ALL Residents after this settlement becomes final.

**#22.** What is considered as Full Participation and/or Full Cooperation? For under case law of <u>Bender v. New Jersey Department of Corrections</u>, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, Full Cooperation is based on attendance and the quality of participation, and <u>Not</u> the information that is disclosed during therapy. Plus, under case law of <u>McKune v. Lile</u>, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), Prohibits the State from extracting information from a (Resident) about His past criminal history, that is <u>Not</u> the subject of a conviction. For There are some Residents to whom has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's SVPA appropriately limits it's

application to Convicted Sex Offenders? See: <u>In re Commitment</u>
<u>of W.Z.</u>, 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001),
certification granted, 169 N.J. 611, 782 A.2d 428, affirmed
as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double
Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act
violations? These Residents should not have been involuntary
committed where statutory civil commitment procedures were not
followed. See: <u>Matter of D.C.</u>, 656 A.2d 861, 281 N.J.Super.
102, reversed 679 A.2d 634, 146 N.J. 31. <u>N.J.Super.A.D. 1995.</u>
Automatic detention ... without a judicial proceeding to
determine dangerousness ... is unconstitutional on its face,
and that the determination that They may be a Sex Offender needs
to be made Beyond a Reasonable Doubt, and that the lower Clear
and Convincing Evidence standard in the law is also
unconstitutional. See: <u>Mental Hygiene Legal Service v. Cuomo</u>,
785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#23. Some D.O.C. issues needs to be argued and/or addressed.
For example the Punitive, Depressing, Prison like Housing: There
is the Main building and its Annex to the State of New Jersey's
Special Treatment Unit. The Main building was the Rahway State
Prison Administration Segregation Detention Center/Prison to
house problem State Prisoners, Now it is being used to house
the State of New Jersey's Special Treatment Unit Residents.
How can this be considered as "Therapeutic" and Not Punitive?

#24. Some further D.O.C. issues needs to be argued and/or
addressed. For example the Punitive, Depressing, Prison like
Housing: Four-Men cubicles; Residents at the Annex building
are being warehoused and are being forced to live in approx.
10ft x 10ft Four-Men cubicle space. Inmates in a Prison live
better and has more space than the Residents that live at this
facility's Annex, in which this Annex building was use to house
State inmates on their way out and back into society. How can
this be considered as "Therapeutic" and Not Punitive?

#25. Residents are being taken to Prison Hospital for Medical
special needs special check-ups, and/or special operations.
How can being taken to Prison Hospital be considered as
"Therapeutic" and Not Punitive?

#26. The Procedure to this SVPA Civil Commitment process for
it has created a Due Process Violation of the commitment
process: Not all "Convicted" Sex Offenders are being served
Notice and/or are being informed of the potential possibility
in being Civilly Committed after the completion of their term
of incarceration. Not being served Notice to a Probable Cause
Hearing, Not having a Probable Cause Hearing, and Not being
served Notice to a Temporary Civil Commitment Hearing. Depriving
... of notice would strip them of significant liberty interest;
and that a Probable Cause Hearing ... MUST BE HELD prior to
commitment of alleged sexually violent predator (SVP). See:
<u>In re Commitment of M.G.</u>, 751 A.2d 1101, 331 N.J.Super. 365.
<u>N.J.Super.A.D. 2000.</u> These Residents should not have been

involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27, The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution was not to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was not providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that is missing in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

#30. If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 Million Dollars from each listed defendant **in their Personal and Individual Capacities** for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff for the past 8-years to present.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE AND CORRECT.

Date: _April 14, 12_

_Frank Sanchez_
Frank Sanchez
Resident # 387

Fr: Jhon Sanchez #587
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:     STU Settlement
        c/o Seton Hall University school of Law
        Center for Social Justice
        833 McCarter Highway
        Newark, New Jersey 07102

        Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
             **Objection to Purposed Settlement**


1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

    Both letter ~~##~~ A and D apply to my Case

    _____

    _____

    _____


2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

A) On december 27, 2010 I was released from the new jersey training school for boys in Jamesburg when I was seventeen years old. two days later on december 29, 2010 was my eighteenth birthday on that same day a parole officer and other members of the parole office came to my home and told me the attorney general send an order to have me detained at the Special treatment unit until further notice. B) on august, 2011 I had my initial civil commitment hearing a week later from this exact date I was sent a letter telling me I was civilly committed under the Sexually violent Predator act.

From: Vincent Sanford        # 132
      Print Your Name    and    Number
      Special Treatment Unit
      8 Production Way, Trl#2
      P.O.Box 905
      Avenel, New Jersey 07001

To: STU Settlement
    c/o Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102


**Class  Member's  Objections/Comments  Re  Proposed  Settlement**
**Raymond Alves, et al., v. Merrill Main, PH.D., et al.**


I object to the proposal settlement for the following reasons:

**#1.** SETON HALL - LAW, CENTER for Social Justice needs to be
Dropped from representation in this Law-Suit. For they helped
to create this Sexually Violent Predator Act, and now they want
to represent the Residents against it. They should Not be able
to have it both ways.

**#2.** The  proposal  shows  the  increase  in  program  hours,  the
increase in therapists, the increase of the potential new therapy
groups all in order to keep the Residents here longer just
like a concentration camp. The proposal <u>Fails to show</u> the
increase in of how the therapy will be releasing Residents.
For there are Residents that been here 8 to 12 years already,
would like to go home, This proposal is not showing that chance
of going home.

**#3.** Psycho-Educational Modules: The purposed Settlement does
not address the risk mitigation after the successful completion
of Modules. As the Settlement stands now I do not agree with
module testing  only.  At the completion of all modules, when
a Resident has successfully completed the module, there should
be some kind of Notice given that the Resident's risk to re-
offend  has  been  mitigated,  as  well  as,  His  level  of
dangerousness. This will sequentially, lower the Resident's
risk assessment. This should be noted and written verification
should  be  given  to  the  Resident,  in  addition  to,  this
verification  being placed in the Residents file.

**#4.** Treatment Ombudsperson needs to be impartial, unbiased,
and Not beholden to the STU. Something needs to be implemented
to insure that there is No retaliation from Staff (Director,
Therapist & Social Workers, etc.) for submitting and talking
with the Treatment Ombudsperson about any complaints against
D.H.S., and/or its Staff members.

#5. <u>Nothing</u> is mention of how the Therapy groups is going to reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a-Juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C. that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g-and South Wing Residents are not represented.

#7, Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, **Residents on South Wing** are label as being the "Undesirables" and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys. They are suppose to be doing this already, but are Not, in which case they erase the tape in front of the Resident.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said by the Resident in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat.

Dietitians only show up for work, they do not properly prepare the food that is being served to the Residents & Residents on some sort of Diet.

**#12.** D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

**#13.** <u>Nothing</u> is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law <u>Sidney S. Zipkin v. Margaret M. Heckler</u>, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: <u>Flemming v. Nestor</u>, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); <u>Schweiker v. Wilson</u>, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); <u>Richardson v. Belcher</u>, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); <u>Buccheri-Bianca v. Heckler</u>, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). **Section 202, 42 U.S.C. § 402(x),** provides in pertinent part: (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, **unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity** upon release and within a reasonable time. <u>Note</u>: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: <u>Washington v. Secretary of Health and Human Services</u>, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f)(1) (42 U.S.C. 423(f)(1)) DISABILITY

-- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS -- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court. Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument. Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes ... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken. The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.

#14. In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey No-longer has administrative enforcement powers, No-longer has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender Not residing in New Jersey).

#15. Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals KILLED another Resident by instructing kitchen working Residents to unload Food Truck BEFORE allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what, Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that

Died here at the Special Treatment Unit, release through treatment, and living on the streets.

#16. Nothing is being said about how Residents are, **Being punish on the basis of inaccurate information.** See: Hill v. Sciarrotta, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their **inaccurate** Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their **inaccurate** records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

#17. I object to it being brought up that there should be 7-Therapist to every 50 Residents. This include certified Social Workers who think that they are License Therapists? Plus, if this is put in place, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should be canceled for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

#18. Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

#19. In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

#20. What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU. For as it stands right now, they are of No help to a Resident, and cannot be trusted.

#21. New Treatment & Release Plans needs to be establish for ALL Residents after this settlement becomes final.

#22. What is considered as Full Participation and/or Full Cooperation? For under case law of Bender v. New Jersey Department of Corrections, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, Full Cooperation is based on attendance and the quality of participation, and Not the information that is disclosed during therapy. Plus, under case law of McKune v. Lile, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits** the State from extracting information from a (Resident) about His past criminal history, that is Not the

subject of a conviction. For There are some Residents to whom has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's SVPA appropriately limits it's application to Convicted Sex Offenders? See: In re Commitment of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#23. Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

#24. Some further D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

#25. Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

#26. The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest;

and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See also Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27, The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution was not to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was not providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that is missing in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

**#30.** If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 Million Dollars from each listed defendant <u>in their Personal and Individual Capacities</u> for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff since the time of this Resident's temporary Civil Commitment / Civil Commitment to present date.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE AND CORRECT.

Date: _April 16, 2012_

_____
Sign Your Name

_Vincent Sanford_
Print Your Name

Resident # _132_

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Charles H. Saunders

Signature: *Charles H. Saunders*

Resident Identification Number: 145

Date: 4-16-2012

**Comments**:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." There is a complete lack of objective criteria to determine de-escalation of restraints and timely release.

I also completely object to numerous meritorious issues being passed over.

Fr: Robert Schemelia
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:   STU Settlement
c/o Seton Hall University school of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
**Objection to Purposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

I object to the Purposed settlement because this dose nothing for us. But give Dr. Main an easy way out of his games he has ben playing for years.

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

The key elements where taken out
of the Law Suit and this would bound
Dr. Main by nothing.
Releas - risk factore risk asesments
should be a part of this Law Suit.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Derrick Pessoa_

Signature: _Derrick Pessoa_

Resident Identification Number: _261_

Date: _5-10-2012_

Comments:

_I don't agree with the settlement_
_I believe that we should go_
_to trail._

2

4/18

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Abdul-Khaliq Shabazz

Signature: _____

Resident Identification Number: 534

Date: 4/17/12

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." There is a complete lack of objective criteria to determine de-escalation of restraints and timely release. I also completely object to numerous meritorious issues being passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Karl Siegle_

Signature: _[signature]_

Resident Identification Number: _338_

Date: _04/14/2012_

Comments:

_Being civilly committed and placed in a prison setting complete with overcrowding ( men over the age of 55 are forced to climb into "TOP" bunks because of the overcrowding and lack of bottom bunk space for an ageing population.), prison rules and regulations that will change to more restrictive whenever_

there is an incident in any other D.O.C. facility, repitious meals; veal sausage, can ravioli, bean burritos three and more times a week. Certainly not, even, the diet on the menu written by the D.O.C. Dictician.

Residents with 8, 9, 10 years and more still without even the minimum of escourted furloughs despite having acheived phase 3 and 4 of Treatment.

No half-way house established to assist with transitioning long term population (more than 10, 15, 20 years incarceration) back into society.

Residents having Treatment in groups where there is no Treatment Provider with a doctorate. Some residents have a primary therapist (the one that writes all reports on them) that do not have a doctorate.

Use of Actuarial instruments that are unreliable; One person doing the numbers will interpret what is presented one way, another will interpret it another way. The one that gives the highest score is the one that will be used againt the individual.
An Actuarial instrument that took treatment accomplishments into account is no longer used.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: GARY STEPHEN SIGMAN

Signature: *Gary Stephen Sigman*

Resident Identification Number: 324

Date: 4/17/2012

Comments:

I OBJECT TO ANY SETTLEMENT OF ANY KIND. A TRIAL MUST BE HELD TO EXPOSE ALL THE DECEPTIONS. TO HOLD ALL THOSE RESPONSIBLE FOR UNPRODUCTIVE WASTE OF TAX PAYER DOLLARS FOR A PORK BELLY PROJECT THAT DOESN'T WORK

THE OBJECTIVES IN THIS SETTLEMENT ARE A SHAM AND ONLY BENIFITS DHS TO HIRE MORE STAFF. THESE PROMISES WERE MADE YEARS AGO. THE SOCIAL WORKERS HAVE ALWAY BEEN RESPONSIBLE FOR PREPARTIONS OF RELEASE. AND THE HANDFULL OVER THE DECADE HAVE BEEN MINIMAL. THEY PROCRASTINATE FOR YEARS PREPARING A RELEASE AS I SPEAK, MEN ARE BEING RELEASED WITHOUT SCREENING YET WE REMAIN HERE, THE SAME MEN. WHO IS MORE OF A RISK, AN UNTREATED OR UNSCREENED SEX OFFENDER OR ONE WHO HAS HAD 10 OR MORE YEARS OF REPETITIVE SEX OFFENDER TREATMENT.

THE SCREENING PROCESS IS FAULTLY AND NEED TO BE TRANSPARENT TO AVOID "DOCTOR SHOPPING" (AS IN MY CASE) AND TO INSURE IT IS FAIR AND BALANCED. (SEE CV-1383 ON THIS)

FOR THESE REASONS AND DOZENS OF OTHERS, I PLEAD TO THE COURT FOR AN OPEN TRANSPARENT HEARING TO SHOW THAT THIS IS AMERICA AND NOT A THIRD WORLD COUNTRY THAT HIDES THE COURTS INSIDE THE FACILITY FROM THE PEOPLE           SINCERLY Gary Digman

2

Fr:      <u>Gerry Smith#22</u>                                4/19/12
         Special treatment Unit
         8 Production Way, Trl #2
         CN 905


To:      STU Settlement
         c/o Seton Hall University, School of Law
         Center for Social Justice
         833 McCarter Highway
         Newark, New Jersey   07102

         Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, ET AL.**
             **Objection to Proposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and Culbreth, being named representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representatives, listed above, that reflect the following Classes of persons: (a) Juveniles that were civilly committed; (b) Residents that were committed from the A.D.T.C. that have numerous years of treatment; (c) Residents that have been informed that treatment would not diminish their risk to reoffend, therefore, rendering this commitment a life-sentence; (d) Persons that have been committed from society (that were on the streets when they were selected for civil commitment); (e) Treatment Refusals are not represented; (f) MAP Residents are not represented; and (g) South Unit Residents, described by Dr. Main as "the Undesirables" are not represented.

2. Psycho-Educational Modules: The proposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement now stands, I do not agree with module testing only. There should be some kind of notice given that the Resident's risk to reoffend has been mitigated, as well as his level of dangerousness. This will, sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, as well as this verification being placed in the Resident's file.

3. I am a resident with a learning disability here at the special treatment unit. I am unable to take advantage of most of the psycho-educational programs, as well as the therapy work. I cannot read or write, and they do not

have the resources to treat me, and if they have them,
I am not receiving any. All of my treatment providers are
well aware of my problems, and no one is doing anything about
my situation.

4. In order to express my concerns, I had to consult
   a resident paralegal and he interviewed me about my
   complaints. I need to be placed in a more treatment
   friendly environment which caters to diabetics and
   non-aggressive mentally challenged residents, to suit
   my special needs.

*Gentry Smith*
Gentry Smith#22

## CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Bayford Smith

Signature: Rayford Smith

Resident Identification Number: 307

Date: 04-12-2012

Comments:

I strenuously object to this settlement !!! First of all Due to Seton Hall played a role in putting this SVPA into existence. Now they want to help us. Major conflict there. Secondly it does not address many important

issues such as: residents being housed in a condemned facility — we are being punished / punitive Damages — medical treatment — loss of liberty — no time frame to exist — treatment — DOC still involved which is counter therapeutic. — Double Jeopardy, Ex Post Facto, Res Judicada — The Due process issues violations of the initial commitment process — Plus a whole lot more.

Again, I object to this settlement

Ray Ford Smith

2

From: _DAVID SNOW_      #_76_
      Print Your Name     and   Number
      Special Treatment Unit
      8 Production Way, Trl#2
      P.O.Box 905
      Avenel, New Jersey 07001

To: STU Settlement
    c/o Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102


**Class Member's Objections/Comments Re Proposted Settlement
Raymond Alves, et al., v. Merrill Main, PH.D., et al.**


I object to the proposal settlement for the following reasons:

**#1.** SETON HALL - LAW, CENTER for Social Justice needs to be
Dropped from representation in this Law-Suit. For they helped
to create this Sexually Violent Predator Act, and now they want
to represent the Residents against it. They should Not be able
to have it both ways.

**#2.** The proposal shows the increase in program hours, the
increase in therapists, the increase of the potential new therapy
groups all in order to keep the Residents here longer **just
like a concentration camp.** The proposal Fails to show the
increase in of how the therapy will be releasing Residents.
For there are Residents that been here 8 to 12 years already,
would like to go home, This proposal is not showing that chance
of going home.

**#3.** Psycho-Educational Modules: The purposed Settlement does
not address the risk mitigation after the successful completion
of Modules. As the Settlement stands now I do not agree with
**module testing only.** At the completion of all modules, when
a Resident has successfully completed the module, **there should**
be some kind of Notice given that the Resident's risk to re-
offend has been mitigated, as well as, His level of
dangerousness. This will sequentially, lower the Resident's
risk assessment. This should be noted and written verification
should be given to the Resident, in addition to, this
verification being laced in the Residents file.

**#4.** Treatment Ombudsperson needs to be impartial, unbiased,
and Not beholden to the STU. Something needs to be implemented
to insure that there is No retaliation from Staff (Director,
Therapist & Social Workers, etc.) for submitting and talking
with the Treatment Ombudsperson about any complaints against
D.H.S., and/or its Staff members.

#5. Nothing is mention of how the Therapy groups is going to reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a-Juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C. that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g-and South Wing Residents are not represented.

#7. Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, Residents on South Wing are label as being the "Undesirables" and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys. They are suppose to be doing this already, but are Not, in which case they erase the tape in front of the Resident.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said by the Resident in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat.

Dietitians only show up for work, they do not properly prepare the food that is being served to the Residents & Residents on some sort of Diet.

**#12.** D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

**#13.** Nothing is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheats, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law Sidney S. Zipkin v. Margaret M. Heckler, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: Flemming v. Nestor, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); Schweiker v. Wilson, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); Bucchari-Bianca v. Heckler, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). **Section 202, 42 U.S.C. § 402(x), provides in pertinent part: (x)(1)** Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, **unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time.** Note: Courts have consistently uphald the amendment as it applies to the suspension of disability benefits. See: Washington v. Secretary of Health and Human Services, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f)(1) (42 U.S.C. 423(f)(1)) DISABILITY

-- SUSPENSION OF BENEFITS  FOR INMATES OF PENAL INSTITUTIONS -- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-29c; **The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court.** Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. **The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument.** Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes **... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken.** The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. **For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.**

**#14.** In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey **No-longer** has administrative enforcement powers, **No-longer** has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender Not residing in New Jersey).

**#15.** Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals **KILLED** another Resident by instructing kitchen working Residents to unload Food Truck **BEFORE** allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that

Died here at the Special Treatment Unit, release through treatment, and living on the streets.

**#16.** Nothing is being said about how Residents are, **Being punish on the basis of inaccurate information.** See: <u>Hill v. Sciarrotta</u>, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their **inaccurate** Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their **inaccurate** records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

**#17.** I object to it being brought up that **there should be** 7-Therapist to every 50 Residents. This include certified Social Workers who think that they are License Therapists? Plus, if this is put in place, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should be canceled for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

**#18.** Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

**#19.** In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

**#20.** What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU. For as it stands right now, they are of No help to a Resident, and cannot be trusted.

**#21.** New Treatment & Release Plans needs to be establish for ALL Residents after this settlement becomes final.

**#22.** What is considered as Full Participation and/or Full Cooperation? For under case law of <u>Bender v. New Jersey Department of Corrections</u>, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, **Full Cooperation is based on attendance and the quality of participation, and <u>Not</u> the information that is disclosed during therapy.** Plus, under case law of <u>McKune v. Lile</u>, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits** the State from **extracting** information from a (Resident) about His past criminal history, that is <u>Not</u> the

subject of a conviction. For There are some Residents to whom has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's **SVPA appropriately limits it's application to Convicted Sex Offenders?** See: <u>In re Commitment of W.Z.</u>, 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents **should not have been Involuntary committed where statutory civil commitment procedures were not followed.** See: <u>Matter of D.C.</u>, 656 A.2d 861, 291 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. <u>N.J.Super.A.D. 1995.</u> Automatic detention ... without a **judicial proceeding to determine dangerousness ... is unconstitutional on its face,** and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower **Clear and Convincing Evidence standard in the law is also unconstitutional.** See: <u>Mental Hygiene Legal Service v. Cuomo,</u> 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

**#23.** Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

**#24.** Some further D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

**#25.** Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

**#26.** The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. **Depriving ... of notice would strip them of significant liberty interest;**

and that a **Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See:** <u>In re Commitment of M.G.</u>, 751 A.2d 1101, 331 N.J.Super. 365. <u>N.J.Super.A.D. 2000.</u> These Residents **should not have been involuntary committed where statutory civil commitment procedures** were not followed. See: <u>Matter of D.C.</u>, 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. <u>N.J.Super.A.D. 1995.</u> Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: <u>Mental Hygiene Legal Service v. Cuomo</u>, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

**#27,** The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. **Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP).** See: <u>In re Commitment of M.G.</u>, 751 A.2d 1101, 331 N.J.Super. 365. <u>N.J.Super.A.D. 2000.</u> These Residents **should not have been involuntary committed where statutory civil commitment procedures were not followed.** See: <u>Matter of D.C.</u>, 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. <u>N.J.Super.A.D. 1995.</u> Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: <u>Mental Hygiene Legal Service v. Cuomo</u>, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

**#28.** The Question of appropriate treatment plan for committee to psychiatric institution was **not** to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was **not** providing him with meaningful opportunity for cure or improvement. <u>Matter of Commitment of J.L.J.</u>, 509 A.2d 184, 210 N.J.Super. 1. <u>N.J.Super.A.D. 1984.</u>

**#29.** An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. <u>$60-Million Dollars</u> that **is missing** in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

#30. If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 Million Dollars from each listed defendant **in their Personal and Individual Capacities** for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff since the time of this Resident's temporary Civil Commitment / Civil Commitment to present date.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE AND CORRECT.

Date: 4/17/12

_David Snow_
Sign Your Name

_DAVID SNOW_
Print Your Name

Resident # _76_

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Donald Solowey_

Signature: _DONALD SOLOWEY_

Resident Identification Number: _292_

Date: _4/11/12_

Comments:

_I object To This Settlement agreement and will not Sign off on it._

## NOTICE OF PROPOSED SETTLEMENT
### *RAYMOND ALVES, et al. v. MERRILL MAIN, Ph.D. et al.*

> **This Notice is sent to you by Order of Judge Dennis M. Cavanaugh of the United States District Court for the District of New Jersey.**
>
> **PLEASE READ THIS NOTICE CAREFULLY. IT CONTAINS IMPORTANT INFORMATION ABOUT YOUR RIGHTS.**
>
> **SI USTED NECESITA TRADUCCIÓN DE ESTOS DOCUMENTOS AL ESPAÑOL, POR FAVOR PONGA UNA SOLICITUD PARA OBTENER AYUDA CON LA TRADUCCIÓN EN UNA DE LAS CAJAS DE SOLICITUD DE TRABAJADORA SOCIAL' MONTADAS EN LAS UNIDADES DE ALOJAMIENTO STU.**

Judge Dennis M. Cavanaugh of the United States District Court for the District of New Jersey (the "Court") has preliminarily approved a proposed settlement (the "Settlement") in a case entitled *Raymond Alves, et al. v. Merrill Main, Ph.D., et al.*, No. 01-CV-0789 (the "Litigation"). If the Settlement receives final approval from the Court, the New Jersey Division of Mental Health and Addiction Services ("DMHAS"), which is responsible for the mental health treatment program at the Special Treatment Unit (the "STU") will be required to improve both the quantity and the quality of the therapeutic programming provided to residents of the STU. Such programming will be offered to all qualifying residents, regardless of the location of their living quarters. The Settlement also requires increased staffing of the STU, so as to provide a minimum of seven therapists for every fifty residents. In addition, the Settlement requires the STU treatment staff to provide individually tailored treatment that adequately meets the therapeutic needs of each resident; to adopt objectively measurable pre- and post-module testing; to provide test results promptly; and to provide residents, on a regular basis, with an estimate of the time required to complete their treatment goals, modules, and phases. The Settlement provides for the appointment of a Treatment Ombudsperson to investigate and address complaints regarding treatment-related issues. Further, the Court will appoint an independent Monitor who will conduct annual inspections of the treatment program at the STU to determine whether DMHAS is in compliance with the terms of the Settlement.

On August 6, 2012, Judge Cavanaugh will conduct a hearing to determine if the Settlement should be finally approved as fair, adequate, and reasonable (the "Fairness Hearing").

As a resident of the STU, committed or confined pending commitment pursuant to the New Jersey Sexually Violent Predator Act, you are a member of the class that was certified by Judge Cavanaugh on March 29, 2012 (the "Class"). All members of the Class will benefit from the Settlement, and be bound by it, if it is finally approved by the Court. This Notice explains the nature of the Litigation, describes the terms of the proposed Settlement, and informs you of your rights as a member of the Class, including your right to submit objections or comments regarding the Settlement in advance of the Fairness Hearing. *Any such objections or comments must be either postmarked or deposited in a Social Work Request box at the STU by May 14, 2012 in order to be considered by Judge Cavanaugh at the Fairness Hearing.*

## FREQUENTLY ASKED QUESTIONS

**1.     What is the purpose of this Notice?**

The purpose of this Notice is to explain the Litigation and inform you of the terms of the proposed Settlement and your rights as a member of the Class, including your right to submit objections or comments regarding the Settlement in advance of the Fairness Hearing.

**2.     What is the Litigation about?**

The Litigation is a civil rights class action in which three Representative Plaintiffs—Raymond Alves, Michael Culbreth and Derrick Sessoms—assert claims on behalf of the Class against the New Jersey officials who are responsible for the treatment program at the STU. Plaintiffs allege that these officials have failed to provide the minimally adequate mental health treatment required by federal and state law before the government may subject a person to indefinite civil commitment on the basis of a mental health diagnosis. Plaintiffs further allege that the mental health treatment program at the STU is so inadequate as to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution; the Double Jeopardy Clause of the Fifth Amendment; the Cruel and Unusual Punishments Clause of the Eighth Amendment; the Americans with Disabilities Act, 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794; the New Jersey Constitution; and N.J.S.A. §§ 30:4-24, 30:4-24.1 and 30:4-27.34.

**3.     What has happened in the Litigation?**

The Litigation began on March 9, 2001, when STU resident Raymond Alves filed a *pro se* complaint against various New Jersey officials responsible for the STU. On July 17, 2002, at Judge Cavanaugh's request, the Seton Hall University School of Law Center for Social Justice (the "CSJ") agreed to represent Mr. Alves, together with another STU resident, and shortly thereafter the law firm of Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., now known as Gibbons, P.C. ("Gibbons") joined as co-counsel. An Amended Complaint was filed on October 25, 2002, raising various treatment-related claims against the New Jersey officials responsible for the mental health program at the STU. The Amended Complaint also raised claims against officials and employees of the New Jersey Department of Corrections ("DOC") regarding the living conditions at the STU facility in Kearny, New Jersey, where Mr. Alves resided, and the conduct of certain DOC officers employed there. The defendants moved to dismiss the Amended Complaint. On November 17, 2003, Judge Cavanaugh granted the motion in part and denied it in part.

From 2003 to 2005 the parties engaged in formal discovery. In addition, the plaintiffs retained an expert, Dr. Robert Prentky, who inspected the Kearny facility in May 2004. On October 28, 2004, the plaintiffs filed a motion to amend the Amended Complaint to seek class action status, and to certify a class. On April 12, 2005, in response to a suggestion from the Court, the parties agreed to pursue settlement negotiations, and the plaintiffs withdrew their motion. Counsel for both sides entered into a period of intensive negotiations, supervised by Magistrate Judge Mark Falk. On April 3, 2008, the Court approved the appointment of a joint neutral expert to assist in

2

the settlement process and issued an order governing the manner in which she would conduct her evaluation. On December 29, 2008, the expert, Dr. Judith Becker, issued her final written report.

Settlement negotiations were suspended in the spring of 2010, when Mr. Alves and other residents were moved from the Kearny facility to the current STU in Avenel, New Jersey, but resumed later that year. Based in part on the move, the DOC officials named as defendants in the Amended Complaint took the position that the claims against them were moot. Judge Falk urged the parties to work towards a settlement of the treatment-related claims against the officials responsible for the mental health treatment program at the STU. Counsel then renewed their efforts to reach a settlement with respect to those issues.

On January 20, 2012, at a hearing attended by the Representative Plaintiffs (via video-conference), counsel for both sides informed Judge Falk that they were prepared to execute a formal Settlement Agreement (the "Agreement"), which they did on February 3, 2012. On February 14, 2012, pursuant to the Settlement Agreement, the Second Amended Complaint was filed, formally adding Mr. Culbreth and Mr. Sessoms as named plaintiffs, seeking class action status, and updating the plaintiffs' claims concerning the mental health treatment program at the STU. The defendants named in the Second Amended Complaint are Merrill Main, Ph.D., in his official capacity as Clinical Director of the STU; Jennifer Velez, in her official capacity as Commissioner of the New Jersey Department of Human Services ("DHS"); Lynn A. Kovich, in her official capacity as the Assistant Commissioner and Deputy Director of the DMHAS; and Jeffrey S. Chiesa, in his official capacity as Attorney General of New Jersey. The Second Amended Complaint does not include any claims against the DOC or its officials, nor any claims concerning the physical facilities at the STU.

On March 29, 2012, Judge Cavanaugh certified the Class, consisting of all persons who are civilly committed or confined pending commitment to the STU pursuant to the NJSVPA, with Messrs. Alves, Culbreth and Sessoms as Representative Plaintiffs. The Court also appointed CSJ and Gibbons as Class Counsel, directed them to send this Notice to each member of the Class, and scheduled the Fairness Hearing to take place on August 6, 2012.

During the pendency of the Litigation, a number of STU residents filed claims that overlapped or were similar to the claims filed by Mr. Alves. Many of these cases were consolidated, in whole or in part, with the Litigation. Other STU residents filed additional documents with the Court, some of them supporting Mr. Alves' position or asserting similar claims of their own.

4.      **Who will be included in the Settlement?**

If the Settlement receives final approval from the Court, it will be binding on all members of the Class and on all of the defendants named in the Second Amended Complaint and their successors in those offices (the "Settled Defendants"). In other words, the Settlement will resolve the claims set forth in the Second Amended Complaint on behalf of every member of the Class. The Settlement will *not* affect claims by individual residents that are outside of the scope of the Second Amended Complaint, such as tort claims, *habeas corpus* petitions, or challenges to civil commitment under the NJSVPA by an individual resident. Nor will the Settlement prevent residents from filing or pursuing claims against DOC officials or employees.

3

**5.      Who is Class Counsel?**

The Court has appointed the CSJ and Gibbons to represent the Class.  If you have any questions, you may contact Class Counsel:

>       **Barbara Moses, Esq.**
>       **Seton Hall University School of Law**
>       **Center for Social Justice**
>       833 McCarter Highway
>       Newark, NJ 07102
>       (973) 642-8700
>
>       **Lawrence S. Lustberg, Esq.**
>       **Jonathan Manes, Esq.**
>       **Gibbons P.C.**
>       One Gateway Center
>       Newark, NJ 07102
>       (973) 596-4500

**6.      What are the Benefits of the Proposed Settlement?**

The Settlement Agreement is a lengthy and complex document.  You may obtain a copy of the complete Agreement by placing your request in a Social Work Request box at the STU.  This Notice provides a summary of some of the key terms of the Agreement.

**a.   Individually Tailored Treatment**

If the Settlement is finally approved by the Court, treatment staff at the STU will be required to adopt and employ clinical assessments and provide individually tailored treatment that adequately meets your therapeutic needs.   Any final report, recommendation, or determination for treatment, treatment status, phase designation, phase progression, and/or disciplinary action must be communicated to you by treatment staff, both orally and in writing, within fifteen (15) days of such action.   Moreover, treatment staff must adopt objectively measurable pre- and post-module testing, provide you with a copy of your test results within fifteen (15) days of the completion of the post-module testing, and discuss your results in process group within thirty (30) days from the completion of the module.

Further, you will be provided with an updated and accurate Residents' Guide which will include, among other things, a description of the treatment program, including process groups, treatment modules, program phases, and the estimated times for completion of each phase.  This Guide will also include an explanation of the ways in which you may request individual treatment sessions.

**b.   Comprehensive Initial Treatment Plan**

The treatment staff will be required to produce a comprehensive initial treatment plan for you

4

within forty-five (45) days of entry of an order of final commitment. If you have already been committed but have not yet received a comprehensive treatment plan, you will be entitled to such a treatment plan within forty-five (45) days after the Settlement is approved. Your comprehensive initial treatment plan must be tailored to your individual needs as determined by the treatment staff, and will include and incorporate your past treatment progress and evaluations, if available, including prior treatment at the Adult Diagnostic and Treatment Center. Moreover, you will be provided with specific and individualized recommendations regarding your treatment goals, the objective criteria necessary to meet these goals, and *anticipated time frames for completion of both the objective criteria and your ultimate goals*.

### c. Six Month Review by Treatment Team

Your comprehensive treatment plan will be reviewed by your treatment team every six (6) months and will be followed within fifteen (15) days by a meeting with you. During your meeting, your treatment team will review your progress, discuss new treatment goals for the next six months, including specific curricular recommendations, and provide you with an *estimate of the time for completion of your treatment goals, modules, and phases*, based on an individualized assessment of your participation in treatment, with the assumption that you will fully participate in treatment.

If you were subject to restrictions under modified activities programming ("MAP") at any time during the past six months, your treatment team will review your progress through MAP; the impact, if any, that your time on MAP may have on your phase designation; and the steps that you should take to avoid future MAP restrictions.

Additionally, the treatment team will discuss with you any recommendations made to the Treatment Progress Review Committee ("TPRC") for your progression in phase designation, a description of the recommended phases, and your ability to enroll in modules within the recommended phase while official designation change is pending upon TPRC review.

### d. Annual Review by TPRC

The Treatment Progress Review Committee ("TPRC") will conduct an annual review of your treatment plan and will produce a written report and recommendation, including a phase designation recommendation. Recommendations for phase 3 or higher will be submitted to a Clinical Assessment Review Panel ("CARP") for approval. Your treatment team will deliver the final TPRC report to you within fifteen (15) days of receipt from the TPRC or CARP. In addition to delivering the written report, the treatment staff will explain it to you, including the following:

(i)    Your current phase designation and any change in designation;
(ii)   The requirements and evaluation criteria for progression in each phase, along with *an estimated time frame in which you can complete your current phase*, based upon an individualized assessment of your participation in treatment with the assumption that you will participate in treatment;

5