(iii)     Specific, individualized recommendations for specific treatment goals and an objective criteria necessary for meeting those goals, including an estimate of the time required for you to complete both the objective criteria and the goals;

(iv)     Specific curricular recommendations and an estimate of when the recommended module(s) will next be offered and available to you; and

(v)     Any recommendations regarding your potential post-discharge placement file or discharge plan.

**e.   Overall Course of Treatment Not to be Extended**

The treatment program at the STU is currently divided into five (5) phases, from Phase 1 ("Orientation") to Phase 5 ("Transition"). If the Settlement is finally approved by the Court, DMHAS will be required to notify Class Counsel of any proposed changes to the phase designations in advance, and will not be permitted to use any such changes to extend the overall course of treatment or to keep residents in the program any longer than they would be under the current phase designations.

**f.   At Least Twenty Hours of Therapeutic Programming per Week**

If the Settlement is finally approved by the Court, every resident not on Treatment Refusal Status or subject to restrictions under MAP will have the opportunity to receive a minimum of twenty (20) hours per week of professionally led (or in the case of self-help groups, professionally monitored) therapeutic programming. This programming will be made available to you regardless of the location of your living quarters and will encompass sex-offender-specific, mental health, recreational, and rehabilitation/vocational programming, and will include, *at a minimum*:

(i)     Three (3) ninety (90) minute process group sessions per week;

(ii)     One (1) to two (2) ninety (90) minute modules per week, if therapeutically appropriate;

(iii)     Professionally monitored self-help groups for at least ninety (90) minutes per week, provided willing and appropriate Residents are available to facilitate self-help groups; and

(iv)     Regularly scheduled community meetings.

Unstructured recreational activity will not count as "therapeutic programming" for purposes of the 20 hour per week minimum. At least eighty-seven percent (87%) of the scheduled process group meetings must actually meet during the calendar year. Such meetings must utilize the full time periods for which they are scheduled and take place in designated meeting rooms providing a reasonable degree of quiet and privacy.

DMHAS will make available a minimum of one (1) to two (2) module(s) in every sixteen (16) week module cycle for residents not on Treatment Refusal Status or MAP, so long as (a) the module is currently recommended in that resident's comprehensive treatment plan, six month review, TPRC review, or has been mandated by court order; and (b) there is sufficient space available in the recommended module (or DMHAS has offered a self-study module).

Your post-module testing must be conducted within seven (7) days of completing either a class-based or self-study module.

**g. MAP Groups**

If you are subject to Tier or Wing MAP, you will be placed in a MAP Group that meets at least twice per week. *If you are subject to Program MAP, you will continue to attend all of your regularly-assigned process group sessions and modules*, unless specifically contraindicated in light of the underlying behaviors that resulted in the MAP placement. In such cases, you will be informed of the reasons for the treatment restrictions, in writing, as part of your initial MAP Placement Review and at least every thirty (30) days thereafter so long as the restrictions remain in place. Further, you will be placed in a MAP Group that meets at least twice per week until such time as you are permitted to resume attendance at all of your regularly-assigned process group sessions and modules.

**h. Increased Staff Ratios**

If the Settlement is finally approved by the Court, DMHAS will be required to hire and retain sufficient additional treatment staff to maintain a ratio of seven (7) therapists for every fifty (50) residents who are actively participating in treatment. Treatment staff must meet all qualifications for their job titles (including licensure or certification, where required) specified in the New Jersey Civil Service standards.

**i. Vocational Training**

DMHAS will conduct individualized vocational assessments of each resident within 45 days of final commitment, evaluate his skills and strengths, and develop a plan for building on them through vocational training. All residents who are not on Treatment Refusal Status or subject to MAP will be offered an average of ten (10) hours of vocational activities per week, including institutional jobs. Additionally, DMHAS will solicit and arrange for outside vendors to provide onsite vocational offerings (to be paid for by interested residents), provided physical plant space is available.

**j. Educational Opportunities**

You will be entitled to pursue an educational curriculum for *at least* ten (10) hours per week, including formal instruction, homework time, and self-help programming. If you are interested in remedial education or GED coursework, you will be provided such education within six (6) months of your initial request. If you wish to pursue post-secondary education within the facility (*e.g.*, college courses), you may do so, as long as DMHAS is not required to pay for the program and it does not interfere with your therapeutic goals.

**k. Recreational Opportunities**

DMHAS will conduct annual surveys to assess your desired recreational activities. Staffing will be provided for professionally facilitated recreational activities six (6) days per week.

7

l.  **Post-Discharge Preparation**

If the Settlement is finally approved, social work staff will be required to use the information contained in your potential post-discharge placement file to develop a discharge plan for you when recommended by the TPRC, when ordered by a court, or when you reach Phase 4. In developing the discharge plan, the social work staff must assist you in finding housing and obtaining support.

m.  **Treatment Ombudsperson**

If the Settlement is finally approved, a Treatment Ombudsperson will be appointed and will establish a resident complaint system for treatment issues. The Treatment Ombudsperson will establish and implement procedures for eliciting, receiving, processing, responding to, and resolving complaints from you, your family members, and other interested citizens concerning treatment conditions at the STU. DMHAS will create a standardized form for treatment-related complaints and provide this form to any resident upon request. Further, DMHAS will submit resident complaint forms directly to the Treatment Ombudsperson.

The Treatment Ombudsperson will determine whether a complaint is within the scope of the Settlement and send the resident a standard notice of this determination within thirty (30) days of receipt of the complaint form. The Treatment Ombudsperson will then investigate any complaints within the scope of the Settlement and take action appropriately tailored to the nature of the resident complaint, which may include:

(i)    Communicating with the appropriate administrator or staff at the STU;
(ii)   Gathering information from the appropriate administrator or staff at the STU;
(iii)  Informing the appropriate administrator or staff of the resident's complaint;
(iv)   Communicating with the complaining resident to further investigate the nature of complaint; and/or
(v)    Taking such other measures as the Treatment Ombudsperson deems appropriate to investigate or resolve the resident complaint.

The complaining resident will be timely notified by the Treatment Ombudsperson of any additional information or results obtained. Moreover, the Treatment Ombudsperson will correspond with the Director of the STU regarding issues in the treatment program that are sufficiently systemic from a review of the residents' complaints.

In addition to documenting all oral correspondence, the Treatment Ombudsperson will attend a community meeting at least twice a year in order to explain his or her role, answer questions, and inform you of the status of any systemic treatment problems reported to the Director of the STU.

n.  **Independent Monitor**

If the Settlement is finally approved, *an independent Monitor will be appointed by the Court* to monitor the Settled Defendants' compliance with the terms of the Agreement. No

8

person who has been associated with the underlying Litigation, or who has a business relationship with the Settling Defendants, may be appointed as the Monitor.

The independent Monitor will conduct five (5) annual inspections of the STU (unless the monitoring period is shortened or lengthened in accordance with the Agreement) to determine whether the Settled Defendants are in compliance or not in compliance with the requirements of the Agreement. The first annual inspection will be conducted no later than nine (9) months from the final approval of the Settlement. Each inspection may last up to five (5) business days and will be followed by a written report determining whether DMHAS is in compliance with each material provision of the Agreement, describing the steps taken by DMHAS to achieve compliance, describing any change in circumstances affecting DMHAS's ability to comply, summarizing information learned from the residents, and summarizing information learned from DMHAS staff. During the inspections:

(i)     The Monitor will have *full access* to the facility. The Monitor may not be denied entry to the STU or any portion thereof except for reasons of security, in which case the Monitor must be given full access as soon as soon as the circumstances that caused the security concern have been abated.

(ii)    The Monitor will have *full access* to the residents who are members of the Class, may review their treatment records, and may conduct interviews with residents.

(iii)   The Monitor may interview any DMHAS employee working at the facility, including treatment staff, administrative staff, medical services staff, and vocational instructors. *All DMHAS employees must communicate and cooperate with the Monitor.*

## 7.    What is NOT Included in the Settlement?

The Settlement deals specifically with the treatment program at the STU. The Settlement will not require any changes to the physical facility, nor to the conduct of the DOC personnel responsible for security at the STU. This does not mean that residents will be required to give up any claims they may have against the DOC, its officials, or its employees. Those claims are simply not part of the Settlement and must be pursued through separate litigation.

## 8.    Who Will Pay for the Settlement?

The Settled Defendants will be responsible for the costs of the Settlement, including the cost of the Monitor, subject to appropriation of sufficient funding by the New Jersey Legislature. The Agreement requires the Settled Defendants to seek such funding from the Legislature as one of DHS's top priorities. The Agreement also contains provisions specifying the parties' rights and obligations in the event the Legislature fails to appropriate the necessary funds, including the plaintiffs' right to declare the Agreement void, and resume litigation, with respect to any provision that the Settled Defendants do not comply with as a result of a budget shortfall or otherwise.

**9.     How is Class Counsel being paid?**

If the Settlement is finally approved by the Court, the Settled Defendants will pay CSJ the sum of seventy-eight thousand dollars ($78,000.00) in attorneys' fees.   This represents a small fraction of the actual costs and fees accrued by CSJ over the course of the Litigation.

**10.     When is the Fairness Hearing?**

A Fairness Hearing will be held to determine whether final approval of the Settlement should be granted. At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will consider any timely objections made concerning the Settlement.   The hearing will take place before Judge Cavanaugh on August 6, 2012, at 9:30 a.m., or as soon thereafter as practicable, in the United States District Court for the District of New Jersey, U.S. Post Office and Courthouse, 1 Federal Square, Newark, New Jersey, 07101, Court Room PO 4. The time and date of this hearing may be continued or adjourned. **YOU ARE NOT REQUIRED TO ATTEND THIS HEARING.   ANY AND ALL PROPERLY SUBMITTED OBJECTIONS BY CLASS MEMBERS WILL BE PRESENTED TO THE COURT AND CONSIDERED, REGARDLESS OF WHETHER OR NOT THE OBJECTOR PERSONALLY APPEARS.**

**11.     How Can I Object to the Proposed Settlement?**

If you want to object to or comment on the Settlement, you may complete the enclosed form entitled Class Member's Objections/Comments re Proposed Settlement, and mail it to Class Counsel at the following address:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

You may also deposit your written objections/comments in a Social Work Request box at the STU, in which case the staff of the STU will mail it for you, free of charge. Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Your objections/comments will not be considered unless they are either postmarked or deposited in a Social Work Request box at the STU by May 14, 2012.*

**12.     What if I Have More Questions?**

If you have questions about this Notice, or want additional information, you may contact Class Counsel.  You may also consult your personal counsel, if any.  If you want to see the complete Settlement Agreement, you may place your request in a Social Work Request box.   *You should not contact the Court, the Settled Defendants, or their counsel.*

Fr: LARRY    STRONG
     Special Treatment Unit
     8 Production Way, Trl #2
     CN 905
     Avenel, New Jersey 07001

To:    STU Settlement
     c/o Seton Hall University school of Law
     Center for Social Justice
     833 McCarter Highway
     Newark, New Jersey 07102

     Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
       **Objection to Purposed Settlement**

1. **Class Certification:** I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

2. **Psycho-Educational Modules:** The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: LARRY STRONG

Signature: *Loury Strong*

Resident Identification Number: 421

Date: 4-16-12

Comments:

THIS IS A gAmE THEY HAVE BEEN PLAYING FOR OVER 10 YEARS THEY ARE NOT TRYING TO WORK WITH US JUDGE-BAREnSAnEK IN 1989 DIDnT SENTENCE ME TO SPEnD THE REST OF MY LIFE INCARCERATED FOR MY CRIMES I'M SUPPOSE TO BE HERE FOR TREATMEnT SO HOPEFULLY I CAN MAKE IT OUT

BUT THAT'S NOT WHAT THIS PRISON IS   NO ADVANCING IN
TREATMENT   JUST DOING THE SAME MODULES OVER AND OVER
AGAIN   THEY DON'T CARE AS LONG AS THEY GET THEIR PAY CHECKS
WE ARE THEIR PRISONERS

2

From: <u>Dan Struba</u> # <u>397</u>
Special Treatment Unit
8 Production Way, Trl#2
P.O.Box 905
Avenel, New Jersey 07001

To: STU Settlement
c/o Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

**Class Member's Objections/Comments Re Proposed Settlement**
**<u>Raymond Alves, et al., v. Merrill Main, PH.D., et al.</u>**

I object to the proposal settlement for the following reasons:

**#1.** SETON HALL - LAW, CENTER for Social Justice needs to be Dropped from representation in this Law-Suit. For they helped to create this Sexually Violent Predator Act, and now they want to represent the Residents against it. They should Not be able to have it both ways.

**#2.** The proposal shows the increase in program hours, the increase in therapists, the increase of the potential new therapy groups all in order to keep the Residents here longer **just like a concentration camp**. The proposal <u>Fails to show</u> the increase in of how the therapy will be releasing Residents. For there are Residents that been here 8 to 12 years already, would like to go home, This proposal is not showing that chance of going home.

**#3.** Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed the module, there should be some kind of Notice given that the Resident's risk to re-offend has been mitigated, as well as, His level of dangerousness. This will sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, in addition to, this verification being laced in the Residents file.

**#4.** Treatment Ombudsperson needs to be impartial, unbiased, and Not beholden to the STU. Something needs to be implemented to insure that there is No retaliation from Staff (Director, Therapist & Social Workers, etc.) for submitting and talking with the Treatment Ombudsperson about any complaints against D.H.S., and/or its Staff members.

**#5.** <u>Nothing</u> is mention of how the Therapy groups is going to

reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a-Juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C. that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g-and South Wing Residents are not represented.

#7, Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, Residents on South Wing are label as being the "Undesirables" and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys. They are suppose to be doing this already, but are Not, in which case they erase the tape in front of the Resident.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said by the Resident in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat. Dietitians only show up for work, they do not properly prepare

the food that is being served to the Residents & Residents on some sort of Diet.

#12. D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

#13. Nothing is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law Sidney S. Zipkin v. Margaret M. Heckler, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: Flemming v. Nestor, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); Schweiker v. Wilson, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); Buccheri-Bianca v. Heckler, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). Section 202, 42 U.S.C. § 402(x), provides in pertinent part: (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time. Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: Washington v.Secretary of Health and Human Services, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f(1) (42 U.S.C. 423(f)(1)) DISABILITY -- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS

-- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; **The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court.** Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. **The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument.** Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes ... even **imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken.** The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. **For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.**

**#14.** In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey **No-longer** has administrative enforcement powers, **No-longer** has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender Not residing in New Jersey).

**#15.** Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals KILLED another Resident by instructing kitchen working Residents to unload Food Truck BEFORE allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that Died here at the Special Treatment Unit, release through

treatment, and living on the streets.

**#16.** Nothing is being  said about how Residents are, **Being punish on the basis of inaccurate information.** See: <u>Hill v. Sciarrotta</u>, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their **inaccurate** Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their **inaccurate** records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

**#17.** I object to it being brought up that there should be 7-**Therapist** to every 50 Residents. This include certified Social Workers who think that they are License Therapists? Plus, if this is put in place, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should be canceled for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

**#18.** Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

**#19.** In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

**#20.** What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU. For as it stands right now, they are of No help to a Resident, and cannot be trusted.

**#21.** New Treatment & Release Plans needs to be establish for ALL Residents after this settlement becomes final.

**#22.** What is considered as Full Participation and/or Full Cooperation? For under case law of <u>Bender v. New Jersey Department of Corrections</u>, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, **Full** Cooperation **is** based on **attendance** and **the quality of** participation, and **Not** the **information that is disclosed during** therapy. Plus, under case law of <u>McKune v. Lile</u>, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits** the State from **extracting information** from a (Resident) about His past criminal history, that **is Not** the **subject** of a **conviction.** For There are some Residents to whom

has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's SVPA appropriately limits it's application to Convicted Sex Offenders? See: In re Commitment of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents should not have been involuntarily committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#23. Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

#24. Some further D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

#25. Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

#26. The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to

commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27. The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution was not to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was not providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that is missing in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

#30. If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 **Million Dollars from each listed defendant <u>in their Personal and Individual Capacities</u>** for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff for the past 8-years to present.


I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS

MADE BY ME ARE TRUE AND CORRECT.

Date: 4/16/12

Daniel Strub

Dan Strube
Resident # 397

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Leonard Swanson

Signature: Leonard Swanson

Resident Identification Number: #258.

Date: 4/13/2012 - Friday.

Comments:

I'am Sure That MY Best INTerest in this Settlement isnot Being Heared, And For The Full KnowLedGe and UnderStanding of What is HaPPening Should Be BroughT-ouT in a TRial CourT. There are ConcerninG

Matters That D.O.C and D.H.S. Fail To Truly Understand about Repeating The Same Thing Over and over For Years, it Comes To The Point Were You Don'T Look at Treatment as Help But as Punishment. First The Removal of D.O.C Within the Building, and The Removal of one Dr. M. Main. Job Skills, Life Skills, Some of these Men have Been Lock-up For over 10 Years Plus. Release or Review of all Residents That Came From Prison within The Last 8 Years. A Medical Staff that Could handle any Problem within this or any Facility we are Housed. A Three Person Panal To Determen if a Person is Ready For there Community. No-More-D.O.C Food, More People Get Sick Behind this Food. Independed or Outside Attorneys To handle Residents Civil Case's with Concerns of Release. Attorneys Give inPut aT TPRC inTerviews. A Panal To Review Constitutional Matters Towards Double Jeopardy = all Factors. APPLication Training No Paying For Vocational Training. Real Social Workers Not Social Therapis. A Count Line BeFore They Take Your Job, To Show Who's Right or Wrong. and Last Again, The Removal of Dr. M. Main, and D.O.C.

2

246

Fr: _Edward Talbert_

   Special Treatment Unit
   8 Production Way, Trl #2
   CN 905
   Avenel, New Jersey 07001


To:    STU Settlement
       c/o Seton Hall University school of Law
       Center for Social Justice
       833 McCarter Highway
       Newark, New Jersey 07102

       Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
           **Objection to Purposed Settlement**


1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

   _I have a Learning disability and dont under stand_
   _Why I have to be here. My Freind had to help me_
   _fill this out because I didnt go very far in_
   _School do to dislestia._

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: CARL R. Taylor

Signature: *Carl R. Taylor*

Resident Identification Number: 378

Date: 4-13-12

Comments:

I, CARL TAYLOR of soleman mind, was not cohearced, threaten or manipulated into making the following Rejection of this proposed settlement. I been in the Special Treatment Unit for the past 8 years and counting. I complete mostly all the modules

AT THE STU (SPECIAL TREATMENT UNIT) THERE IS NO MORE I CAN do. I even TOOK THE modules OVERS WITH THE SAME RESULT "CompleTioN AND PASS". THIS seTTleMENT IS MOSTly CUED TO THE THERAPIST likeNG. AS A MATTER of FACT. MOST of IT. They ARE AlReAdy implemenTINg WHAT I would like To SEE IS RELEASES of RESIDENTS Who hAS PROVING TO THEIRSELVES AS WELL AS DHS AND THEIR SUPPORT GROUPS. THAT They hAS MADE SUFFISHANT ChAngeS IN THEIR OWN lIVES. TO be A PRODUCTIVE CITIZEN IN SOCIATY. AlSO THERES NO TAlk of halfWAy houses. ThERES ARE The REAl ISSUES. CAUSE how much longer CAN THE STATE WAREhouse offeNder who ARE NOT deemed To be SEXUAlly DEVIANT OR hAVE A AXIS of PARAPhiliA. WHEN will THE MAdNESS END.

Thank you
God BlESS

2

Fr: Marvin R. Taylor Jr. #626
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001

To:   STU Settlement
c/o Seton Hall University school of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
**Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

_I'm a Resident THat was CommiTTed To A.D.T.C._
_AND I Feels AS THough A.D.T.C. is NOT BEing_
_RePReSeNTed_

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Frederick Tenner

Signature: Fredouel Tenner

Resident Identification Number: 409

Date: 4-11-12

Comments:

I object to this, there no talk of leting people out or talk of a halfway house — See Dr Becker's Report. This does not comply!

Fr: *Thaddeus Thomas - #114-South Unit.*
Special Treatment Unit */C.J.S.A-Ad-Seg-Unit*
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:   STU Settlement
      c/o Seton Hall University school of Law
      Center for Social Justice
      833 McCarter Highway
      Newark, New Jersey 07102

      Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
          **Objection to Purposed Settlement**


1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives
    of the Class. These residents do not, and cannot, represent the population as it stands. They
    have not experienced what separate classes of residents have experienced, therefore, making
    it impossible for the above named residents to speak on behalf of the population. There
    should be residents added to the representatives, listed above, that reflect the following
    Classes of persons; a) Juveniles that were civilly committed; b) Residents that were
    committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have
    been informed that treatment would not diminish their risk to re-offend, therefore, rendering
    this commitment a life sentence; d) Persons that have been committed from society (that
    were on the streets) when they were selected for commitment; e) Treatment Refusals are not
    represented; f) MAP residents are not represented; g) and South Unit residents are not
    represented.

    *h.) the settlement has not spoke upon work release,*
    *out patient program, outpatient drug or Alcohol*
    *programs, trade courses vocational learning,*
    *(on hand) I.) within the settlement, it was*
    *(see back)*

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation
    after the successful completion of Modules. As the Settlement stands now I do not agree with
    module testing only. At the completion of all modules, when a resident has successfully
    completed the module, there should be some kind of notice given that the resident's risk to
    re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially,
    lower the resident's risk assessment. This should be noted and written verification should be
    given to the resident, in addition to, this verification being placed in the residents file.

was spoke upon Mr. Singer (D.A.G.) presiding in the courtroom being the judge, prosecuter and jury, And over-riding the residing judges decisions and recommendations for release.

3, I object; due to the south unit, being confined and on an extreme keep seperate policy from breakfrust and general population." that wasn't spoken upon." Etc.

Respectfully Submitted

Thaddeus Thomas #00114
East Jersey State Prison Adseg-unit
S.T.U.
8 Producktion Way
CN-905
Avenel, New Jersey.
07001

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

STU Settlement
c/o Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Thaddeus Thomas_

Signature: _Thaddeus Thomas_

Resident Identification Number: _000114-SBT 930361A_

Date: _4/11/12_

Comments:

① I object to this settlement, due to the ~~unlicened~~ unlicensed treatment staff, due to the inadequate treatment, inadequate staff.
② I object to this settlement because theres no vocational training, no proper schooling or colledge courses.
③ the M.A.P. Secision, consist of no treatment. Being denied treatment, Being punished by D.H.S. using treatment as a cover up.
④ I object to this settlement, due to nothing being done towards merril main

(CON BACK)

And Attorney General (Lawyer) making decisions of my life.

(5) There's nothing discussed towards, outpatient programs, furloughs, work release Etc.

(6) No vocational training, to prepare me For the near future or having something to Fall back on upon possible Release.

(7) I seriously object, Because there is no settlement Agreement, talking About Compensating Damages. For the 2 years of being denied Treatment. (Due to being on the south unit)

(8) No Agreement towards not Allowing D.O.C. to Dictate or Facilitate or tell the General Population, how long groups can be held.

(9) It wasn't discussed within the settlement. On why Do we/I need 3 to 4 signatures to be Released if the Judge Permits it.
Signatures:
① the Judge
② Merrill Main
③ Steve Johnson
④ Attorney General (Mr. Singer)

(10) And last, But not least.
I object to 3 other Residents Acquiring my case. Because, they Haven't Been through the turmoil And mental pain Physical Suffering that S.O.C. & D.H.S. sending me through. For speaking my mind. And having our Law packages and mail to another Facility Before it get to me.

Very Truly Yours

Thaddeus Thomas #000114
East Jersey State Prison-RD-SEG unit
C.T.U.
8 Production Way
CN-905
Avenel, N.J. 07001

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Russell Tinsley

Signature: Russell L. Ny

Resident Identification Number: 563

Date: April 13, 2012

Comments:

I object to the proposed Settlement and demand that this Class Action goes to trial by jury. These proposed Settlement are also in conflict of interest to my own civil Action No. 11-6566 (CCC) Please See Attached.

My civil action involve how the state of New Jersey Attorney General, the civil commitment court and Dr. Merrill Main, Clinical Director, at the Special Treatment Unit, are holding me as a prisoner in Avenel, New Jersey. Eventhough, I am currently confined within the District of New Jersey, venue is proper in Philadelphia County, because of my ongoing criminal case in Pennsylvania, that New Jersey authorties are trying to force their civil commitment and treatment on me.

As to date, I've been at the Special Treatment Unit since March 12, 2010, and not yet had my initial order of final commitment. However, Dr. Merrill Main, has continue and will continue to force treatment or modules on me, and will not accept the fact I having not been committed pursuant to the SVPA. Dr. Merrill Main, even went as far as to punished me by refusing to allow me to work in the Special Treatment Unit. This is a very punitive environment for me and I am being held illegally.

2

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

RUSSELL TINSLEY,                    :

               Petitioner,      :    Civil Action No. 11-6566 (CCC)

                     :

        v.                 :        **O R D E R**

                     :

THE STATE OF NEW JERSEY,           :
SPECIAL TREATMENT UNIT, et al.,    :

                     :

          Respondents.     :

     Petitioner filed the instant Petition, pursuant to 42 U.S.C. § 1983, and requested to proceed in forma pauperis.

     Based on Petitioner's affidavit of indigence,

     IT IS on this ____3____ day of ____January____, 2012,

     ORDERED that Petitioner's application to proceed in forma pauperis is hereby granted.

 

                                      _____
                                     CLAIRE C. CECCHI
                                     United States District Judge

**Application for Appointment of Counsel**
Russell Tinsley
P.O. Box 905
Avenel, New Jersey 07001

Attorneys for Russell Tinsley, in pro se

UNITED STATES DISTRICT COURT
District of New Jersey

```
RUSSELL TINSLEY                        )
_____[name of plaintiff],   )
         on behalf of _____ )
         [himself or herself] and      )
     all others similarly situated,    )
                           Plaintiffs  )
                               vs.     )
         THE STATE OF NEW JERSEY,      )
     SPECIAL TREATMENT UNIT, et al.    )
                          Respondents  )
                                       )
```

No. Civil Action No. 11-6566
APPLICATION FOR
APPOINTMENT OF COUNSEL

*Relief Sought*

On 01/03/12, Court is Order, granted plaintiff's request to proceed in forma paperus and moves this Court for an order that this proceeding be maintained as a Court appointed attorney's case for counsel to represent this case pursuant to this Court's Rules.

*Grounds for Relief*

Court Appointed Counsel is best able to represent the interests of the case because:

1. Russell Tinsley has already done considerable work identifying and investigating potential claims in the action. In particular, he would need Court appointed counsel in this civil action, against the key respondents who has deceived, cheated or robbed him of his freedom and/or liberty, in regards to his illegal detention at the Special Treatment Unit, in Avenel under New Jersey's SVPA, that have been fraudulently imposed upon him..

2. An Court Appointed Counsel has extensive experience handling civil commitment civil actions, including the type of civil action involved in this case. In particular, the fact that Mr. Tinsley, has no sex offenses in the state of New Jersey, and the on going criminal prosecuting sexual offence case is in the state of Pennsylvania, and where he was suppose to be serving out a sentence to 8 years supervised probation and with out patience treatment..

3. An Court Appointed Counsels experience handling these types of claims has made it necessary for this Court to appoint counsel with the applicable law.

4. An Court Appointed Counsel has the ability to commit substantial resources to the litigation of this action.

Dated: 01/20/12

Russell Tinsley
By: Russell Tinsley
Attorneys for Russell Tinsley, in pro se

Respectfully submitted

Russell Tinsley



**State of New Jersey**
# Department of Corrections
## Commissioner Gary M. Lanigan



back

| | |
|---|---|
| **Russell A Tinsley** | |
| SBI Number: | 000298276C |
| Sentenced as: | Tinsley, Russell A |
| Race: | Black |
| Ethnicity: | Black |
| Sex: | Male |
| Hair Color: | Brown |
| Eye Color: | Brown |
| Height: | 5'11" |
| Weight: | 197 lbs. |
| Birth Date: | March 9, 1955 |
| Admission Date: | June 20, 2008 |
| Current Facility: | Released from ~~ADTC~~ *SWSP* |
| Current Max Release Date: | N/A |
| Current Parole Eligibility Date: | N/A |



## CURRENT PRISON SENTENCE

| Offense | Offense Date | Sentence Date | County of Commitment | Commitment Order | Mandatory Minimum Term | Maximum Term |
|---|---|---|---|---|---|---|
| 1 count of : 2C.20-2B3 Theft/Less Than $200 /D | *1997* ~~UNKNOWN~~ | June 20, 2008 | Atlantic | ATL970902253I | None | 4 Years |

### INCARCERATION HISTORY

| Date In Custody | Date Out of Custody |
|---|---|
| June 20, 2008 | May 13, 2010 |

### ALIASES

No aliases available

**Criteria Chosen:**
Aliases = selected; Sex = M; **First Name** = RUSSELL; **Last Name** = TINSLEY;
The New Jersey Department of Corrections Database was last updated on October 29, 2011 .
*Disclaimer:*

Fr: *Russell Tinsley*
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:  STU Settlement
c/o Seton Hall University school of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

**Re: RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
**Objection to Purposed Settlement**


1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

*Pursuant to my own civil action No. 11-6566 (ccc) in the United States District Court of New Jersey, this Purposed Settlement will be a conflict of Interest and therefore, I object.*

2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

*= OVER =>*

In my case, the Special Treatment Unit, Dr. Merrill Main, Clinical Director are forcing their treatment. Primarily because I have not had my initial hearing. It's my belief that Dr. Merrill Main, thinks that he is above law, and to do whatever he wants to do. No matter what the law or courts' rule, the Special Treatment Unit is a punitive environment for prisoners who were being additionally punished for being a sex offender. Courts' rules, laws and promises — Settlement had been made by Dept. of Corrections ("DOC" or "DHS") Personnel to the Settlement Counsels that the South Main "STU" prison administrative segregation sex offender unit would be renovated to transform it from a punitive environment to a suitably therapeutic one prior to this Proposed Settlement. However, these rules, laws, promises or settlements were broken. Upon my arrival at the Special Treatment Unit, I've found noting but An American slave plantation to punish.

Russell Tinsley
P.O. Box 905
8 Production Way
Avenel, NJ 07001

April 12, 2012

Honorable John Padova,
United States District Court
District of Pennsylvania
Philadelphia, PA 19106

**Re: Letter of Status Report and to**
**Contact me in regards to this matter, on    behalf of a pro se**
**Litigant Mr. Russell A. Tinsley**

**Re: Russell Tinsley, Petitioner vs.  The Court of Common Pleas**
**No.** _11-6174_

Dear Honorable John Padova, J,

Pursuant to my Petition for writ of habeas corpus, and for Your Honor's ORDER, granted my request to file an objection. I am requesting Your Honor, to consider, based on the facts; the Philadelphia Court of Common Pleas authorities' conspired with the state of New Jersey to civilly commit me, and after I was already sentenced to probation supervision, with outpatient treatment in Pennsylvania. They even went as far has lost or refused to send the lower court's records and opinion to the Superior Court for my appeal.

In addition, due to the fact I am being retaliation against, for filing a lawsuit, in the Federal Court. This was  also done way before I was sentenced, in Philadelphia, and thereafter, before my being  transferred from the state of Pennsylvania to New Jersey's illegal civil commitment. This Federal Court must consider my claims and accept this habeas action, and to intervene, on behalf of all the injustice of conspiracy I had received in my illegal incarceration, both in Philadelphia, and now in the state of New Jersey.

In support of this request, I shall rely on the facts and law cited on my petition, request for Your Honor's consideration and with facts that the Philadelphia Court of Common Pleas and New Jersey both together had conspired to illegally civil commitment me, in New Jersey.  Also in connection to my arguments in the habeas' Action, that I am now seeking relief in Your Honor's Court must be reconsider, as a matter of my Civil and Constitutional Right.

Respectfully, Submitted,

Russell Tinsley,

Enclosures

**PLAYZA CLUB RECORDS**


**MEMORANDUM**

To:   President Barack Obama
From: Russell Tinsley, CEO Playza Club Records Company
Re:   Russell Tinsley's with www.pimpinentertainment.net
      Subject: **We need the President Obama's Authorization for our Musical CDs Tribute**
Date: April 12, 2012

---

Dear Mr. President:

     As the owner and founder of the Playza Club Records Company, and with the **www. pimpinentertainment.net** web site. We are proudly to announce our Musical CDs' Tribute to Our Living Legend **"Mr. President Barack Obama's 2012 reelection presidential campaign efforts"**. Even though, the campaign is not soliciting new vendors at this time, and Obama for America 2012 ability to accept donations of goods, and services is tightly restricted due to federal election law. We will still need the President's authorization to use our CDs, as a Musical Tribute, and effort towards the President's reelection 2012 campaign. Please review Russell Tinsley, CEO Playza Club Records Company's web site www.pimpinentertainment.net and for a free download of our Musical Tribute. **Please Email: promo @ pimpinentertainment.net.**

     In addition, this Musical CD was recorded with songs and information about the injustice from the United States of America's jurisdictional system that violates the citizens of America Civil and Constitutional Rights, for a fabricated civil commitment of sex offenders in this country's state and federal courts. Moreover, especially in the state of New Jersey's injustice and inequity corruption, that has Russell Tinsley, illegally confined. We included this information to inform the President and the public of the important concerns of getting out to vote for the President's reelection, and to participate in reforming the harsh sex offender's law in this country. You can also visit www.njvoices.org **Email: infor @ njvoices.org. Also, visit ReformSexOffenderLaws.org. ("RSOL")**

     Thank you,

                                               Sincerely,

                                             Russell Tinsley

Encl:

**PLAYZA CLUB RECORDS**
**MEMORANDUM**

To:    WHOM IT MAY CONCERN:
From: Russell Tinsley, CEO Playza Club Records Company
Re:    Russell Tinsley with www.pimpinentertainment.net
Subject:    **We need your support to Protest for the President Obama's 2012**
              **Presidential Reelection to the White House and to Purchase our New**
              **Musical CDs Tribute Album**
Date:  April 12, 2012

─────────────────────────────────────────────

Dear Sir and/or Madam:

      As the owner and founder of the Playza Club Records Company, and with the **www. pimpinentertainment.net** web site. We are proudly to announce our New Musical CDs' Tribute Album, to Our Living Legend **"Mr. President Barack Obama's 2012 reelection presidential campaign efforts"**. Even though, the campaign is not soliciting new vendors at this time, and Obama for America 2012 ability to accept donations of goods, and services is tightly restricted due to federal election law.  We will still need your support to purchase, in our protest to reform this country's sex offender's laws, and to use our CDs, as a promotional effort towards the President's reelection 2012 campaign.  Please review Russell Tinsley, CEO Playza Club Records Company's web site **www.pimpinentertainment.net** and for a free download of our Musical Tribute. **Please Email: promo @ pimpinentertainment.net.**

      Nonetheless, we will very much appreciate your direct deposits Donations into our web site's PayPal Account, and through our volunteer membership signup online. Please join us as a Public Service towards making a change in "United We Serve." President Obama and our First Lady Madame Michelle both have said: "A Public Volunteer Service" or "Doing Community Service for example. People find a way to right the wrong, and that's the beauty of it". Change must come from within the World Community.

      In addition, this Musical CD was recorded with my Radio Broadcast Interview, educational songs and information about the injustice from the United States of America's jurisdictional system that violates the citizens of America Civil and Constitutional Rights, for a fabricated civil commitment of sex offenders in this country's state and federal courts. Moreover, especially in the state of New Jersey's injustice and inequity corruption, that has Russell Tinsley, illegally confined. We included this information to inform the President and the public of the important concerns of getting out to vote for the President's reelection, and to participate in reforming the harsh sex offender's law in this country.  You can also visit www.njvoices.org **Email: infor@ njvoices.org. Also, visit ReformSexOffenderLaw.org. ("RSOL")**

                                                        Thank you,
                                                        Sincerely,

                                                        _Russell Tinsley_
                                                        Russell Tinsley

Encl:

**PLAYZA CLUB RECORDS**
**MEMORANDUM**

To:    WHOM IT MAY CONCERN:
From: Russell Tinsley, CEO Playza Club Records Company
Re:    Russell Tinsley with **www.pimpinentertainment.net**
Subject:    **We need your support to Protest for the President Obama's 2012**
**Presidential Reelection to the White House and to Purchase our New**
**Musical CDs Tribute Album**
Date:  April 12, 2012

Dear Sir and/or Madam:

As stated above, my name is Russell, and I am contacting you from Obama for America 2012.  Endorsed and Supported by my own company; **"PLAYZA CLUB RECORDS CO."** I am contacting strong President Obama's supporters like yourself, and I need your support for the Presidential 2012 Reelection, and to support or protest my efforts for Freedom, Justice and Equality in America's Jurisdictional system, as well as to unite in our efforts to reform this country's harsh sex offenders' laws for civil commitment.

Would you be interested in doing any volunteer work and becoming a member?

Because I am doing a Special President Obama Tribute on my website, and as an **"empowered team leader"** I am recruiting more volunteers, who are to become empowered team leaders themselves, and get involved with the Presidential Campaign 2012 Re election. In addition, to support or protest my efforts for Freedom, Justice and Equality in America's Jurisdictional system, as well as to unite in our efforts to reform this country's harsh sex offenders' laws for civil commitment.

Please go to my website **http:// www.pimpinentertainment.net** and/or call me about more information on how you can help at number 732-574-8321 or 8390 and 8239. Ask to speak to Russell; or leave your message and I will call you at my earliest convenient. I would like you to go online, and to sign up to become a member on my web site. You can also review and freely download our musical tribute.

As a moral urgency, I do request donations through PayPay, on my websites, from concerned citizens who wish to support my effort. I do appreciate your support and/or purchase of at least one of my New Musical CDs. However, the Special President Obama's New Musical CDs Tribute Album Online, is free to play it for all to hear as a Public Service and towards getting more people out to support and vote for President Barack Obama.

Please, do not forget to inform your friends on Face book, My Space and families that they can now download the presently available New Educational / Musical Recording Tribute and with the information about my efforts for Freedom, Justice and

Equality in America's Jurisdictional system from **http://www.pimpinentertainment.net**.
**Please Email me at promo@pimpinentertainment.net.**

      **Thank you for contacting Obama for America.**   The President greatly appreciate the outpouring of messages he has received from across the country and from Americans around the world, and on behalf of Obama for America, and the Playza Club Records, we value hearing from you.

      We also thank you for your interest in President Obama's reelection, and appreciate your quest to help.

Respectfully Submitted

**Russell Tinsley**

**File:**

**RT/**

**Cc: President Obama**

Russell Tinsley, In Pro Per
8 Production Way
Avenel, NJ 07001
Attorney For R.T., SVP 573-10
Lewis P. Sengstackie, Esq.
Assistance Deputy Public Defender

March 26, 2012

Honorable Judge Phillip M. Freedman, JSC/Recall
TO WHOM IT MAY CONCERN:

RE:   SVP-573-10

Dear Sir/Madam:

This is to advise that Mr. Russell Tinsley has filed the attached Order to release him of being temporarily civilly committed to the Special Treatment Unit (STU), in Avenel, New Jersey.

In addition, per copy of this Order on June 8, 2012, after Mr. Russell Tinsley's release he must report to his Philadelphia Probation Officer Mr. Chris McFillian, and where he also has to return to San Francisco, California for resolving his pending- ongoing criminal-charges, as is required by the San Francisco, California Probation violation report, in their state.

A copy of this Order will be sent to the Clerk of Courts of Philadelphia County and the San Francisco Superior Court in due course.

Very truly yours,

Russell Tinsley,
In Pro Per

Encl.
Cc:
    Philadelphia Adult Probation and Parole
    San Francisco Probation Department

Russell Tinsley, In Pro Per
8 Production Way
Avenel, NJ 07001
Attorney For R.T., SVP 573-10
Lewis P. Sengstackie, Esq.
Assistance Deputy Public Defender

## SUPERIOR COURT OF THE STATE OF NEW JERSEY

### FOR THE COUNTY OF ESSEX

| | | |
|---|---|---|
| IN THE MATTER OF THE | : | CIVIL ACTION |
| COMMITMENT OF | : | |
| RUSSELL TINSLEY, SVP 573-10 | : | |

_____/

## ORDER TO RELEASE RUSSELL TINSLEY, ON/OR ABOUT JUNE 8, 2012 TO THE STATE OF PENNSYLVANIA AND/OR THE STATE OF CALIFORNIA

GOOD CAUSE APPEARING, IT IS SO ORDERED:

That the Special Treatment Unit and the New Jersey Department of Corrections release resident

Russell Tinsley, #563 June 8, 2012, at STU/South Main of the Special Treatment Unit, 8

Production Way in Avenel, NJ.

Dated: _____

_____,
Honorable Philip M. Freedman, J.S.C./Recall

## Declaration

I, Russell Tinsley declare:

On or about 3/12/10 I was temporarily committed to the Special Treatment Unit, by the New Jersey Department of Corrections and the state Attorney General's Office pending a final hearing in the matter. I am being release on June 8, 2012, at 9:30 a.m. because the statute of limitations sets the date when a initial hearing must be held, without a signed waiver will be forever barred. My civil commitment hearing may be subject to one or more statutes of limitation. The failure of the state of New Jersey's Attorney General Office to initialize a final hearing within the period of 20 days pursuant to **S.V.P.A Stat. Ann. 30:4-27.24** or without my signed waiver could bar any civil commitment. In addition, the court is so inclined, with the condition I return to Philadelphia, Pennsylvania, where venue is proper out of state because my criminal case is still ongoing, and as a result from bench warrants  been issued. I will also have to return to San Francisco, California to resolve my pending charges. Please see the attached.

I declare under penalty of perjury.

March 26,2012

Russell Tinsley

**Proof of Service**

I, Russell Tinsley on this 23rd day of March 2012, and over the age of 18 years old had placed in the United States Postal Mail, at the Special Treatment Unit (STU), in Avenal, New Jersey a true original and copies of the attached Order to release me (Russell Tinsley) from the STU. In addition, to be mailed out to the names below:

Paula Dow, New Jersey Attorney General P.O. 112 Trenton, NJ

Honorable Philip M. Freedman, J.S.C./Recall

Lewis P. Sengstackie, Esq.
Assistance Deputy Public Defender

Clerk of Courts of Philadelphia County

San Francisco Superior Court

Philadelphia Adult Probation and Parole

San Francisco Probation Department

Dated: March 26, 2012

Russell Tinsley, In Pro Per

Russell Tinsley #563
Special Treatment Unit
8 Production Way
CN 905
Avenel, New Jersey 07001

January 11, 2011

Mr. Robert S. Mueller, III
Director
Federal Bureau of Investigation          ATTENTION: Paula T. Dow,
J. Edgar Hoover Bldg.                                Attorney General
935 Pennsylvania Ave N.W.,
Washington, D.C. 20535-001

**RE: FBI's New Jersey Corruption at the Special Treatment Unit
Investigation**

Dear Mr. Mueller,

Per Feds Investigation, in the New Jersey Corruption and at
the whole STU Special Treatment Unit, facility in Avenel, I am
providing you with a copy of the N.J. psychologist report having
sexual relation with sex offenders inside the Department of
Human Service and at the New Jersey Department of Corrections'
civil commitment prison. In a more, recent report, the New
Jersey Office of the Attorney General brought charges and
convicted a correctional officer Ramos, and now prosecution
taking place against his conspirators housed at the Department
of Human Services and Department of Corrections run prison
"Special Treatment Unit" in Avenel. At the present time, there
is no doubt that illegal sex, drugs delivered by more then 10
corrupt DHS, STU and NJDOC employees are still being smuggling
in and sexual encounters between employees and sex offenders
inmates are at a high rate, at the Special Treatment Unit
Facility is complete punitive, and no different then the Feds:
'Master' manipulator had drugs delivered, pornography made from
McNeil Island Center.

However, this time here at the Special Treatment Unit, it's
done by the corrupt employees, and I am taking it upon myself as
a citizen, reporting to the Bureau, and as a inside agent For
Special Services "Informant" to discuss U.S. government demand
for a We the People, Full Feds' investigation, into the

circumstance   surrounding   the   whole   Special   Treatment   Unit
facility.

Nonetheless, I am able to provide you with a more direct
input, and indeed that will be Biofeld Fed urgency for the
proper investigation, and prosecution, surrounding the corrupt
and unjust process taking place at the New Jersey Special
Treatment Unit and under the Essex County Commitment Court.
Please read all the attached reporting information.


Sincerely yours,


Russell Tinsley

Honorable Faith S. Hochberg
Honorable Patty Shwartz
Mr. Robert S. Mueller, III
Paula T. Dow, Attorney General of NJ
Philadelphia Court of Common Pleas
U.S. Attorney General
U.S. Department of Justice

January 25, 2011

Russell Tinsley
8 Production Way, PO Box 905
Avenel, New Jersey 07001-1660

President Barack Obama
The White House,
1600 Pennsylvania Ave.
Washington, D.C. 20502

Dear Mr. President:

Enclosed please find State of New Jersey Office of the Governor Chris Chritie's letter to me, and a copy of my letters sent to the U.S. Congressman Andre Carson and Honorable Gregory E. Smith, judge of the Philadelphia Common Pleas Courts.

As you are aware, and the Executive Office of the United State Government has acknowledged the receipt of my previous certified letters, concerning the situation surrounding my case, in both the state of New Jersey and Philadelphia, Pennsylvania. I am keeping up with my pledge to your Presidency, and of my continuance support to your call to serve as a public service, and to provide transparency or technical assistance where appropriate regarding of U.S. Government investigatory findings. I would however, appreciate your Excellency taking the time to allow me the opportunity to provide this new additional information for your consideration to investigate.

Nevertheless,   considering the seriousness of this mater I would further appreciate your Office to forward to your U.S. Attorney General Mr. Eric Holder Jr's, and/or Mr. Robert S. Mueller II, Director of the Federal Bureau of Investigation's Washington Office for their review. Please be advised, nonetheless, that my letters does reveal specific information about federal criminal violations, and as it relates to me regarding my being transferred from the state of Pennsylvania to New Jersey's corrupt and unjust process taking place at the Law Division, under the New Jersey SVP Act, and the Department of Law and Public Safety Attorney General Paula Dow's petition for my civil commitment. Accordingly, it is a fact that federal law enforcement will be of assistance to me in this particular matter. If your Executive Office wish for me to supplement the materials that was already sent to Your Office, I will forward them to you at your order.  You can contact me directly, and through your Secret Service or call 732-574-8039.

Thank you again, Mr. President

Very truly yours,

Russell Tinsley

RT/
Enclosure
Cc: Chris Christie
    Andre Carson
    Gregory E. Smith
    Paula T. Dow

4/17/12

Fr/ Mr. Terry Terraylore #224
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001

To:   STU Settlement
c/o Seton Hall University school of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102

**Re: RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
**Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

_I am a Treatment Refusal because after being evaluated at A.D.T.C. and not being in need of treatment And then being sent to prison (Rahway). After 7.8 years with no acting out at all. Now they say I need this_ (over)

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

treatment because. Two Doctor's paid by the State said so! and this gas on to say that no probale cause hearing for me. A Violation of Due Process of the law. Why are people being released from A.D.T.C. that need to be here going home? Unequal Application of the Law. I also would like to see the staff of D.O.C. removed from here and put a new staff for DHS just like they did in Florida, Washington and a few other States After servicing 10 years in this S.T.U. without acting out How can someone say that your still dangerous OH! yes they can if the State pays them to say that. if I'm going to be locked-up for the rest of my life then send me back to prison. I object to Seton Hall having anything to do with this suit because they are the one's who helped created) this program in the first place. And they got paid to do so. And one last thing how can the State lock someone up and then make that person fend for himself and this is the case in the S.T.U. Ask the Resident's that are TK's or on MAP. This Settlement dose not speak for me.

Thank You for your time and Attn. in this matter

Jerry Heylin #224

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: *Charles Turner*

Signature: *Charles Turner*

Resident Identification Number: # 182   S.B.I #

Date: 4/14/12

Comments:

I strongly oppose the entire Fairness hearing due to it's lack of ballance & Fairness.

I'm not incarcerated For a sex crime although I have (3) Three priors 29 years ago. I'm civily committed since 2001 = 's 11 yrs. I've had module

after module and many several times and this is AFTER THE JUDGE at my initial hearing re-leased me conditionally to a long term drug program. "None" would accept me due to the stigma this place has in societies view so here I sit. Simply put, there is no exit plan or time span, or places for us who are currently well enough to live in less re-stricted conditions. Also, This bldg. & the food is unacceptable for persons to be treated sufficiently. Resentments - Bitterness & Anger wedge between being inmates without crimes and civily committed civilian Residents-

The entire proposal is in my opinion that of which we would be sold out just to get this matter over & out of the way of the courts. T.P.R.C. is late more than not - recommendations are redundant, and the level of frustration continues to build in the average resident/inmate. Motto in T.C. Fake it till you make it! ??? NO! This is not fair!!! nor reasonable. The states money is being wasted on this entire D.O.C. being here - ect... ect...

Refused & Denied.
Charles Turner                    2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Frederick Vanino

Signature: *[signature]*

Resident Identification Number: 136

Date: 4/14/12

Comments:

I completely reject this settlement because it does not comport with Dr. Becker's Report + Dr. ~~Becker~~ Becker was the Attorney Generals recommendation as an Authority.

① Special needs programs are not available for Handycapped Residents

2 - Living conditions which are Highly punative are not are not included. We can't believe this omission.

3 - Grievances are often ignored + are not replied to.

4 - The Presence of Doc is highly punitive. They have no business in a treatment facility

5 - Even if the program looks good on paper, Dr Becker reported that in reality it wasn't valid. With only 1% of residents on level 5 after 10 years, this is a sham

6 - It is not clear as to specifically what must be done to move forward.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Federico Vazquez

Signature: Federico Vaz

Resident Identification Number: 579

Date: 4/10/12

Comments:

I completely object to the settlement. It does not comport with the report of Dr. Becker (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen." I also completely object to numerous issues passed over.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

STU Settlement
c/o Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Emauuel Veaa

Signature: Emauuel Veaa

Resident Identification Number: 007380

Date: 4/13/12

Comments:

I Do not agree with the Results of the paper work I want to go to trial

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Eric Verga

Signature: Eric Verga

Resident Identification Number: 499

Date: April 16, 2012

Comments:

I object to your so-called "settlement", and I reject any settlement (or decision by a judge) that forces therapy upon me. When one is forced to attend group(s) — including modules and support groups — or be threatened with a loss of property, sd is NOT theraputic. Doctor

Main is a tool of the state and not an effectual Clinical Director; he must be removed from his post; likewise, any person(s) who only look at the negatives in us.

The polygraph program is unjust and must be abolished, as must the all-or-nothing mentality that is held regarding therapy — we need breaks now and then to "recharge our batteries"!

Once more, I say NO to any settlement... sue them — sue them hard.

4/6/2012

2

From: Ralph Waldon #_343_
      Special Treatment Unit
      8 Production Way, Trl#2
      P.O.Box 905
      Avenel, New Jersey 07001

To: STU Settlement
      c/o Seton Hall University School of Law
      Center for Social Justice
      833 McCarter Highway
      Newark, New Jersey 07102


**Class  Member's  Objections/Comments  Re  Proposed  Settlement**
**Raymond Alves, et al., v. Merrill Main, PH.D., et al.**


I object to the proposal settlement for the following reasons:

#1. SETON  HALL  -  LAW, CENTER for Social Justice needs to be
Dropped from representation in this Law-Suit. For they helped
to create this Sexually Violent Predator Act, and now they want
to represent the Residents against it. They should Not be able
to have it both  ways.

#2.  The  proposal  shows  the  increase  in  program  hours,  the
increase in therapists, the increase of the potential new therapy
groups  all  in  order  to  keep  the  Residents  here  longer  just
like  a  concentration  camp.  The  proposal  Fails  to  show  the
increase  in  of  how  the  therapy  will  be  releasing  Residents.
For  there  are  Residents  that  been  here  8 to 12 years already,
would like to go home, This proposal is not showing that chance
of going home.

#3.  Psycho-Educational  Modules:  The  purposed  Settlement  does
not address the risk mitigation after the successful completion
of Modules. As the Settlement stands now I do not agree with
module  testing  only. At  the  completion  of  all  modules,  when
a  Resident  has  successfully  completed  the  module,  there  should
be  some  kind  of  Notice  given  that  the  Resident's  risk  to  re-
offend  has  been  mitigated,  as  well  as,  His  level  of
dangerousness.  This  will  sequentially,  lower  the  Resident's
risk  assessment.  This  should  be  noted  and  written  verification
should  be  given  to  the  Resident,  in  addition  to,  this
verification  being  laced  in  the  Residents  file.

#4.  Treatment  Ombudsperson  needs  to  be  impartial,  unbiased,
and  Not  benolden  to  the  STU.  Something  needs  to  be  implemented
to  insure  that  there  is  No  retaliation  from  Staff  (Director,
Therapist & Social Workers, etc.) for submitting and talking
with  the  Treatment  Ombudsperson  about  any  complaints  against
D.H.S., and/or its Staff members.

#5.  Nothing  is  mention  of  how  the  Therapy  groups  is  going  to

reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above *named* Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a-Juveniles that were civilly committed; b-Residents that were committed from the A.D.T.C. that have multiple years of treatment; c-Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d-Persons that have been committed from society (that were on the streets) when they were selected for commitment; e-Treatment Refusals are not represented; f-MAP Residents are not represented; g-and South Wing Residents are not represented.

#7, Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, Residents on South Wing are label as being the "Undesirables" and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys. They are suppose to be doing this already, but are Not, in which case they erase the tape in front of the Resident.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said by the Resident in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat. Dietitians only show up for work, they do not properly prepare

the food that is being served to the Residents & Residents on some sort of Diet.

#12. D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

#13. Nothing is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law Sidney S. Zipkin v. Margaret M. Heckler, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: Flemming v. Nestor, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); Schweiker v. Wilson, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); Buccheri-Bianca v. Heckler, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). Section 202, 42 U.S.C. § 402(x), provides in pertinent part: (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time. Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: Washington v.Secretary of Health and Human Services, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f)(1) (42 U.S.C. 423(f)(1)) DISABILITY -- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS

-- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court. Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument. Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes ... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken. The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.

#14. In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey No-longer has administrative enforcement powers, No-longer has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender Not residing in New Jersey).

#15. Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals KILLED another Resident by instructing kitchen working Residents to unload Food Truck BEFORE allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that Died here at the Special Treatment Unit, release through

treatment, and living on the streets.

#16. Nothing is being said about how Residents are, **Being punish on the basis of inaccurate information.** See: <u>Hill v. Sciarrotta</u>, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their **inaccurate** Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their **inaccurate** records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

#17. I object to it being brought up that there should be 7-Therapist to every 50 Residents. This include certified Social Workers who think that they are License Therapists. Plus, if this is put in place, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should be canceled for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

#18. Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

#19. In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

#20. What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU. For as it stands right now, they are of No help to a Resident, and cannot be trusted.

#21. New Treatment & Release Plans needs to be establish for ALL Residents after this settlement becomes final.

#22. What is considered as Full Participation and/or Full Cooperation? For under case law of <u>Pender v. New Jersey Department of Corrections</u>, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, Full Cooperation **is** based on attendance and the quality of participation, and <u>Not</u> the information that is disclosed during therapy. Plus, under case law of <u>McKune v. Lile</u>, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits** the State from extracting information from a (Resident) about His past criminal history, that is <u>Not</u> the subject of a conviction. For There are some Residents to whom

has Never been Convicted of a Sex Crime Offense, So how can You treat a person who has Never been Convicted of a Sex Crime Offense, when this State's SVPA appropriately limits it's application to Convicted Sex Offenders? See: In re Commitment of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001), certification granted, 169 N.J. 611, 782 A.2d 428, affirmed as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act violations? These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#23. Some D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: There is the Main building and its Annex to the State of New Jersey's Special Treatment Unit. The Main building was the Rahway State Prison Administration Segregation Detention Center/Prison to house problem State Prisoners, Now it is being used to house the State of New Jersey's Special Treatment Unit Residents. How can this be considered as "Therapeutic" and Not Punitive?

#24. Some further D.O.C. issues needs to be argued and/or addressed. For example the Punitive, Depressing, Prison like Housing: Four-Men cubicles; Residents at the Annex building are being warehoused and are being forced to live in approx. 10ft x 10ft Four-Men cubicle space. Inmates in a Prison live better and has more space than the Residents that live at this facility's Annex, in which this Annex building was use to house State inmates on their way out and back into society. How can this be considered as "Therapeutic" and Not Punitive?

#25. Residents are being taken to Prison Hospital for Medical special needs special check-ups, and/or special operations. How can being taken to Prison Hospital be considered as "Therapeutic" and Not Punitive?

#26. The Procedure to this SVPA Civil Commitment process for it has created a Due Process Violation of the commitment process: Not all "Convicted" Sex Offenders are being served Notice and/or are being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to

commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27, The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution was not to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was not providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that is missing in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

#30. If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 Million Dollars from each listed defendant <u>in their Personal and Individual Capacities</u> for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff for the past 8-years to present.


I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS

MADE BY ME ARE TRUE AND CORRECT.

Date: 4/15/12

Ralph Walden
Resident # 342

Fr: *Clint Walker #185*
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:    STU Settlement
       c/o Seton Hall University school of Law
       Center for Social Justice
       833 McCarter Highway
       Newark, New Jersey 07102

       **Re: RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
       **Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

I object to this parposal, DHs is only Sugar Coating the problem.

By: Clint Walk #185

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

Things that needs to be addressed in the Settlement,

Once a person is placed on treatment refusal Status that person loses his Job, Get his personal eletronics and property taken away by the order of DHS, Then to get into an Oreintion group take a very long time because it has to be Okayed by your treatment team. To get a Job a person must attend Oriention group for a month and once DHS approves a Job to a treatment refusal that person is only allowed to work 2 hours a week, Thats Only $58.00 a month. And with prices always going up $58.00 a month doesn't make ends meet. Once DHS places a person on treatment refusal Status and ask for help to get Soap, Shampoo, Laundry detergent etc, all DHS Can Say "We'll See what we Can do - This is a rule of punishment by DHS.

‾ DHS needs to be removed from having the power and Controling the Jobs at the STU.

* Have a Job Service Office With a Special Staff and not a Staff from DHS or DOC.

By: Clint Walk #185

Fr: Mr. Joseph C. Walls #412

Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:     STU Settlement
        c/o Seton Hall University school of Law
        Center for Social Justice
        833 McCarter Highway
        Newark, New Jersey 07102

        **Re: RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
        **Objection to Purposed Settlement**


1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: _Royal Walters_

Signature: _Ray Walters_

Resident Identification Number: _221_

Date: _4-17-12_

Comments:

_____

_____

_____

_____

_____

From: <u>Royal Walters</u>   #_____
    Print Your Name  and  Number
    Special Treatment Unit
    8 Production Way, Trl#2
    P.O.Box 905
    Avenel, New Jersey 07001

To: STU Settlement
    c/o Seton Hall University School of Law
    Center for Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102


**Class Member's Objections/Comments Re Proposted Settlement**
**<u>Raymond Alves, et al., v. Merrill Main, PH.D., et al.</u>**


I object to the proposal settlement for the following reasons:

**#1.** SETON HALL - LAW, CENTER for Social Justice needs to be Dropped from representation in this Law-Suit. For they helped to create this Sexually Violent Predator Act, and now they want to represent the Residents against it. They should Not be able to have it both ways.

**#2.** The proposal shows the increase in program hours, the increase in therapists, the increase of the potential new therapy groups all in order to keep the Residents here longer **just like a concentration camp**. The proposal <u>Fails to show</u> the increase in of how the therapy will be releasing Residents. For there are Residents that been here 8 to 12 years already, would like to go home, This proposal is not showing that chance of going home.

**#3.** Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a Resident has successfully completed the module, there should be some kind of Notice given that the Resident's risk to re-offend has been mitigated, as well as, His level of dangerousness. This will sequentially, lower the Resident's risk assessment. This should be noted and written verification should be given to the Resident, in addition to, this verification being laced in the Residents file.

**#4.** Treatment Ombudsperson needs to be impartial, unbiased, and Not beholden to the STU. Something needs to be implemented to insure that there is No retaliation from Staff (Director, Therapist & Social Workers, etc.) for submitting and talking with the Treatment Ombudsperson about any complaints against D.H.S., and/or its Staff members.

#5. <u>Nothing</u> is mention of how the Therapy groups is going to reduce Residents treatment and advance forward to the potential possibility of discharge.

#6. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These Residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of Residents have experienced, therefore, making it impossible for the above named Residents to speak on behalf of the population. There should be Residents added to the representative, listed above, that reflect the following Classes of persons; a–Juveniles that were civilly committed; b–Residents that were committed from the A.D.T.C. that have multiple years of treatment; c–Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d–Persons that have been committed from society (that were on the streets) when they were selected for commitment; e–Treatment Refusals are not represented; f–MAP Residents are not represented; g–and South Wing Residents are not represented.

#7, Re-assessments & Re-evaluations of ALL Residents needs to be conducted by the American Psychiatric and Psychological Association to whom are impartial, unbiased, and Not beholden to the State of New Jersey Attorney General. To insure the fairness of a Release Plan to all Residents. For there are some Residents that were rail-roaded into this Treatment, for crimes that were Not considered to be Sex Crimes in their respected Criminal Court at the time of their sentencing, and They were Never notified of the potential possibility of being Civilly Committed after the completion of their term of incarceration.

#8. In the form of Cruel and unusual punishment, **Residents on South Wing are label as being the "Undesirables"** and are being isolated from the rest of population, all because most of the Residents on South Wing are either Treatment Refusals, or on some sort of Modified Activities Programming (MAP). Those South Wing Residents recently had their outside vender Pizza delivered to them by D.H.S. Staff in one of the other wings Trash Bin.

#9. Nothing is said in the proposal of having the State Doctors recording the interviews, and sending that tape to the Residents Attorneys. They are suppose to be doing this already, but are Not, in which case they erase the tape in front of the Resident.

#10. Nothing is said in the proposal, of stopping the Facilitators who are running the therapy groups of recording by their hand what is and is not said by the Resident in such therapy groups.

#11. Nothing is said in the proposal, of the needed improvement of the food that is being served to the Residents, even for those Residents that are on some sort of diet. Most of the time, the diets are Not served the proper food for them to eat.

Dietitians only show up for work, they do not properly prepare the food that is being served to the Residents & Residents on some sort of Diet.

#12. D.O.C. issues and matters needs to be put back in place into this Law Suit. For after D.H.S. leaves for the day, All Residents have to deal with, and put up with the prejudice abuse and mis-treatment by the D.O.C. Officers, by handcuffing a problem Resident and have approx. 20 D.O.C. officers come in and beat up on the handcuffed problem Resident. Plus, D.O.C. is suppose to be here for security purposes. Where is the security when D.O.C. either sleep on the job when D.H.S. is on the Wing, watch tv either in the control booth or on the Wing, when D.H.S. is on the Wing, walk off the Wing, when D.H.S. is on the Wing.

#13. Nothing is being said in this proposal about the care for Treatment Refusals. How are they going to support themselves in order to live without any funds? Especially when Nothing is being provided for them!!! (No clothes, No hygiene cosmetics, No Sheets, etc., etc., etc...); By this proposed settlement, All Treatment Refusal Residents are being forced to accept that They will have No work hours, Nor funds to support themselves. Some sort of Personal Needs Allowance needs to be implemented and/or put in place for those Treatment Refusal Residents who choose to be Treatment Refusals (for either some Legal or Health or another reason), to have funds to support themselves to Live. For instance, allow Residents to collect SSI. For under case Law Sidney S. Zipkin v. Margaret M. Heckler, 790 F.2d 16, 1986 U.S. App. LEXIS 24723: The withholding of a noncontractual benefit such as the Social Security Retirement benefit is unconstitutional only where the Statute manifests a patiently arbitrary classification, utterly lacking in rational justification. See: Flemming v. Nestor, 363 U.S. 603, 611, 4 L.Ed.2d 1435, 80 S.Ct. 1367 (1960); Schweiker v. Wilson, 450 U.S. 221, 230, 67 L.Ed.2d 186, 101 S.Ct. 1074 (1981); Richardson v. Belcher, 404 U.S. 78, 81, 30 L.Ed.2d 231, 92 S.Ct. 254 (1971); Buccheri-Bianca v. Heckler, 768 F.2d 1152, slip op. at 8 (10th Cir. 1985). Section 202, 42 U.S.C. § 402(x), provides in pertinent part: (x)(1) Notwithstanding any other provision of the title, No monthly benefits shall be paid under this section or under section 223 to any individual for any month during which such individual is confined in a jail, prison, or other penal institution or correctional facility pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been approved for such individual being able to engage in substantial gainful activity upon release and within a reasonable time. Note: Courts have consistently upheld the amendment as it applies to the suspension of disability benefits. See: Washington v.Secretary of Health and Human Services, 718 F.2d 608 (3rd Cir. 1983). And Statute: SSR 83-28c: SECTION 223(f)(1) (42 U.S.C. 423(f)(1)) DISABILITY

-- SUSPENSION OF BENEFITS FOR INMATES OF PENAL INSTITUTIONS -- CONSTITUTIONALITY 20 CFR 404-468; SSR 83-28c; The Statue directly provides that imprisoned felons may receive benefits if they are disable and participates in a satisfactory rehabilitation program while confined. The rehabilitation program must be approved by a competent court. Thus, a person in this situation is endowed with the opportunity completely conforms and suffices for due process considerations. These programs should result in the person being able to engage in substantial gainful activity upon release with a reasonable period of time. The plain terms Statute as well as its guidelines for satisfactory rehabilitation programs negate vagueness argument. Simply, the Statute includes No Punitive elements. The suspension of benefits is not conditioned to any particular form of conduct but applies to all felony crimes ... even imprisoned felons may obtain disability benefits if participation in a rehabilitation program is undertaken. The Statute rationally rests upon the reasonable attempt by Congress to provide disability benefit only to those persons who are deprived of a continuing source of income to satisfy basic food, clothing, shelter and medical needs. For some unknown ignorant reason, most of the Residents are Not being allowed to collect such SSI, and/or SSD.

#14. In regards to Residents Post-Discharge and/or Release, this Facility needs to realize that the State of New Jersey No-longer has administrative enforcement powers, No-longer has any type of authority or hold over (Residents) in preventing Them from leaving the State of New Jersey to reside elsewhere. See: Sanchez v. New Jersey State Parole Board, 368 N.J.Super. 181, 845 A.2d 687, 2004 N.J.Super.Lexis 129. (in support of the offender Not residing in New Jersey).

#15. Nothing is being said about the Medical Nightmares, other than the pushing of unnecessary needles & pills on Residents, and the unsanitary / mishandling of such medication, Medical Professionals are instructing the Department of Corrections to take Dying Residents with chest pains to a Hospital up in Somerset, which is approx. 40 miles away. This is where they send inmates from Northern State Prison to. Just like what just happen with the last dying Resident. To Whom Died before leaving these grounds. Since We Residents are No-Longer inmates, Why are We Not taken to Hospitals that are much closer? By this, the Department of Corrections professionals KILLED another Resident by instructing kitchen working Residents to unload Food Truck BEFORE allowing Ambulance to come in to pick up a Dying Resident with chest pains, Just like what just happen with one of the last dying Resident. To Whom Died before leaving these grounds. Is this what Future dying Residents have to look forward to, the purposely made mis-Judgments BEFORE being properly considered, and taken care of. There are Now a total of 41 Residents that had Died within (on the grounds of) this facility of the Special Treatment Unit. Administration Officials to this facility has had approx. 36 of these Residents that

Died here at the Special Treatment Unit, release through treatment, and living on the streets.

#16. Nothing is being said about how Residents are, **Being punish on the basis of inaccurate information.** See: <u>Hill v. Sciarrotta</u>, 14 F.3d 210 (2nd Cir. 1998). Residents are being coerced to speak about their **inaccurate** Convicted and Non-Convicted Sex Crimes, if they do not, these Residents are being punish by being put on Treatment Refusal Status. Plus, In the attempt of a Resident speaking with the officials of T.P.R.C. to correct their **inaccurate** records, T.P.R.C. officials refuses to do anything about it and expresses to tell it to the Civil Commitment Court Judge. To where NOTHING is done to correct the matter.

#17. I object to it being brought up that there should be 7-Therapist to every 50 Residents. This include certified Social Workers who think that they are License Therapists? Plus, if this is put in place, License Therapists needs to run the therapy groups, Not the self-proclaimed, wanna-be Therapists (certified Social Workers who think that they are License Therapists). Furthermore, when there is No License Therapists available to run whatever therapy group, then that particular therapy group should be canceled for that day. In meaning No substitutes (certified Social Workers who think that they are License Therapists).

#18. Individually Tailored Treatment of Pre- & Post-Module Testing, consists of what? And how is this going to improve a Residents chances in being discharged?

#19. In regards to the Treatment Staff at the STU will be required to adopt an employ clinical assessments an provide individually tailored treatment that adequately meets a Residents needs. What if the Resident is not in such agreement of such treatment, then what?

#20. What authority will Social Workers have over Residents? They too will need to be impartial, unbiase, and Not beholden to the STU. For as it stands right now, they are of No help to a Resident, and cannot be trusted.

#21. New Treatment & Release Plans needs to be establish for ALL Residents after this settlement becomes final.

#22. What is considered as Full Participation and/or Full Cooperation? For under case law of <u>Bender v. New Jersey Department of Corrections</u>, 356 N.J.Suer. 432, 812 A.2d 1154, N.J.Super.LEXIS 10, **Full Cooperation is** based on attendance and the quality of participation, and <u>Not</u> the information that is disclosed during therapy. Plus, under case law of <u>McKune v. Lile</u>, 536 U.S. 24, 153 L.Ed.2d 47, 122 S.Ct. 2017 (2002), **Prohibits** the State from extracting information from a (Resident) about His past criminal history, that is <u>Not</u> the

subject of a conviction. For There are some Residents to whom
has Never been Convicted of a Sex Crime Offense, So how can
You treat a person who has Never been Convicted of a Sex Crime
Offense, when this State's SVPA appropriately limits it's
application to Convicted Sex Offenders? See: In re Commitment
of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (A.D.2001),
certification granted, 169 N.J. 611, 782 A.2d 428, affirmed
as modified 173 N.J. 109, 801 A.2d 205. Wouldn't this be a Double
Jeopardy, Ex Post Facto, Res Judicada, and Recent Overt Act
violations? These Residents should not have been involuntary
committed where statutory civil commitment procedures were not
followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super.
102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995.
Automatic detention ... without a judicial proceeding to
determine dangerousness ... is unconstitutional on its face,
and that the determination that They may be a Sex Offender needs
to be made Beyond a Reasonable Doubt, and that the lower Clear
and Convincing Evidence standard in the law is also
unconstitutional. See: Mental Hygiene Legal Service v. Cuomo,
785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#23. Some D.O.C. issues needs to be argued and/or addressed.
For example the Punitive, Depressing, Prison like Housing: There
is the Main building and its Annex to the State of New Jersey's
Special Treatment Unit. The Main building was the Rahway State
Prison Administration Segregation Detention Center/Prison to
house problem State Prisoners, Now it is being used to house
the State of New Jersey's Special Treatment Unit Residents.
How can this be considered as "Therapeutic" and Not Punitive?

#24. Some further D.O.C. issues needs to be argued and/or
addressed. For example the Punitive, Depressing, Prison like
Housing: Four-Men cubicles; Residents at the Annex building
are being warehoused and are being forced to live in approx.
10ft x 10ft Four-Men cubicle space. Inmates in a Prison live
better and has more space than the Residents that live at this
facility's Annex, in which this Annex building was use to house
State inmates on their way out and back into society. How can
this be considered as "Therapeutic" and Not Punitive?

#25. Residents are being taken to Prison Hospital for Medical
special needs special check-ups, and/or special operations.
How can being taken to Prison Hospital be considered as
"Therapeutic" and Not Punitive?

#26. The Procedure to this SVPA Civil Commitment process for
it has created a Due Process Violation of the commitment
process: Not all "Convicted" Sex Offenders are being served
Notice and/or are being informed of the potential possibility
in being Civilly Committed after the completion of their term
of incarceration. Not being served Notice to a Probable Cause
Hearing, Not having a Probable Cause Hearing, and Not being
served Notice to a Temporary Civil Commitment Hearing. Depriving
... of notice would strip them of significant liberty interest;

and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re: Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#27. The Procedure to this SVPA Civil Commitment process has created a Unequal application of the Law: "Non-Convicted" Sex Offenders are Not being served Notice, Nor are they being informed of the potential possibility in being Civilly Committed after the completion of their term of incarceration. Not being served Notice to a Probable Cause Hearing, Not having a Probable Cause Hearing, and Not being served Notice to a Temporary Civil Commitment Hearing. Depriving ... of notice would strip them of significant liberty interest; and that a Probable Cause Hearing ... MUST BE HELD prior to commitment of alleged sexually violent predator (SVP). See: In re Commitment of M.G., 751 A.2d 1101, 331 N.J.Super. 365. N.J.Super.A.D. 2000. These Residents should not have been involuntary committed where statutory civil commitment procedures were not followed. See: Matter of D.C., 656 A.2d 861, 281 N.J.Super. 102, reversed 679 A.2d 634, 146 N.J. 31. N.J.Super.A.D. 1995. Automatic detention ... without a judicial proceeding to determine dangerousness ... is unconstitutional on its face, and that the determination that They may be a Sex Offender needs to be made Beyond a Reasonable Doubt, and that the lower Clear and Convincing Evidence standard in the law is also unconstitutional. See: Mental Hygiene Legal Service v. Cuomo, 785 F.Sup.2d 205, 2011 U.S.Dist.LEXIS 40434 (2011).

#28. The Question of appropriate treatment plan for committee to psychiatric institution was not to await possible rehearing, but required prompt and certain resolution, where evidence suggested that treatment afforded to committee was not providing him with meaningful opportunity for cure or improvement. Matter of Commitment of J.L.J., 509 A.2d 184, 210 N.J.Super. 1. N.J.Super.A.D. 1984.

#29. An Audit needs to be conducted, for the State of New Jersey Budget Committee had found that there is a Total of approx. $60-Million Dollars that is missing in running this State of New Jersey's Special Treatment Unit that houses the State of New Jersey's Sexually Violent Predators. In which, when D.H.S. Officials were asked of what happen to these funds, No answer was given.

#30. If this Resident is going to be placed on this Suit as a Plaintiff, He asks to be compensated in the amount of $25 Million Dollars from each listed defendant **in their Personal and Individual Capacities** for the deliberate indifference torment that the listed defendants continues to display towards this Resident/Plaintiff since the time of this Resident's temporary Civil Commitment / Civil Commitment to present date.

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS MADE BY ME ARE TRUE AND CORRECT.

Date: _4-17-12_

_Royal Walters_
Sign Your Name

Royal Walters
Print Your Name

Resident # _221_

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: TERRANCE WAITE

Signature: *Terrance Waite*

Resident Identification Number: #395

Date: 4/14/12

*Comments:*

I completely object to the settlement. It does not comport with the report of Dr. Becker's (the authority nominated by the Attorney General) who described this program as the "worst she had ever seen," and I completely object to numerous issues passed over.

Fr:_____**Kevin Williams#549**
         Special treatment Unit
         8 Production Way, Trl #2
         CN 905

To:      STU Settlement
         c/o Seton Hall University, School of Law
         Center for Social Justice
         833 McCarter Highway
         Newark, New Jersey  07102

Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, ET AL.**
    **Objection to Proposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and
Culbreth, being named representatives of the Class.
These Residents do not, and cannot, represent the
population as it stands. They have not experienced what
separate "classes of Residents have" experienced,
therefore, making it impossible for the above named
Residents to speak on behalf of the population. There
should be Residents added to the representatives listed
above, that reflect the following Classes of persons:
(a) Juveniles that were civilly committed; (b) Residents
that were committed from the A.D.T.C. that have numerous
years of treatment; (c) Residents that have been
informed that treatment would not diminish their risk to
reoffend, therefore, rendering this commitment a life-
sentence; (d) Persons that have been committed from
society (that were on the streets when they were
selected for civil commitment); (e) Treatment Refusals
are not represented; (f) MAP Residents are not
represented; and (g) South Unit Residents, described by
Dr. Main as "the Undesirables" are not represented.

2. Psycho-Educational Modules: The proposed Settlement
does not address the risk mitigation after the
successful completion of Modules. As the Settlement now
stands, I do not agree with module testing only. There
should be some kind of notice given that the Resident's
risk to reoffend has been mitigated, as well as his
level of dangerousness. This will, sequentially, lower
the Resident's risk assessment. This should be noted,
and written verification should be given to the
Resident, as well as this verification being placed in
the Resident's file.

3. I am a resident with a learning disability here at the
special treatment unit. I am unable to take advantage of
most of the psycho-educational programs, as well as the
therapy work. I cannot read or write, and they do not

have the resources to treat me, and if they have them,
I am not receiving any. All of my treatment providers are
well aware of my problems, and no one is doing anything about
my situation. I need individualized counseling.

4. I have a problem with recreation staff and social
workers sitting in on my confidential treatment sessions. I
share very personal and private information with my process
group and often times visitors are invited by DHS to sit in
and listen to very sensitive information that they should not
be privy to. This practice needs to be stopped.

5. The method by which we are transported to court and to
the hospital has to be changed. I am claustrophobic,
and DHS and DOC has a policy of cramming civilly
committed residents in the dog kennel section of the
transportation vehicles, while seating the state
prisoners in cushy and spacious seats. We are treated
like animals and it has to stop.

6. As mental patients being detained for treatment, we
officially fall under the mental health laws, as it relates
to visitation rights. However, we are limited to only having
visits three(3) times per week, the same as state prisoners.
We are supposed to have access to visitation of family and
friends six(6) to seven(7) times per week under our civil
commitment laws. This needs to be part of the new plea
agreement.


_M. Kevin L Williams_
Kevin Williams#549

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Samuel Wilson

Signature: Samuel Wilson

Resident Identification Number: 210

Date: _____

Comments:

My objections is everything, please take it to Court and fight for my freedom.
I did everything two times, and there is no reason to keep holding me here.
I've been in treatment going on 13 years now, I

want to go home.

Thank you for your time.

Samuel Wilson #210
S.T.U.
P.O. Box 905
Avenel, N.J. 07001

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> STU Settlement
> c/o Seton Hall University School of Law
> Center for Social Justice
> 833 McCarter Highway
> Newark, NJ 07102

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: Paul Winthrop

Signature: paul winthrop

Resident Identification Number: 427

Date: 4/14/12

Comments:

I object to this settlement + want to go to trial unless the following conditions are included:

① Living Conditions are unacceptable. They are Horrendous + Punitive. The fact that they are not included is completely unacceptable

② Quality of food need to be dramatically up graded + proper diets for those needing them (as per Dr Beder)

③ We should have separate services (Business, Commissary, etc from The prison.

④ The Presence of DOC is highly punitive. We get punished when bad things happen at different prisons

⑤ We need a clear description of what we need to accomplish to move out. Not Vague Subjective descriptions.

2

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

**Print Name:** _____

**Signature:** _____

**Resident Identification Number:** _____

**Date:** _____

**Comments:**

_____

_____

_____

_____

_____

I, _____ ; Reject These AGREEMENTS THAT ARE NOT BASED ON Condition 1st Argued About, and in which we continue to suffer.

Nothing concerning The elderly, Nothing concerning The Food from Prisons. Nothing concerning Education or Voc, Nothing concerning Release Programs.

All the issues seem to point to more Therapy even for those burnt out with Years of Therapy and learning. More Therapists and less food (Heathy foods)

No programs for Fitness or Diabetics, etc.

Lin R. Woodson #28

2

Fr: *J. George Crombley  SS#4005°C – South unit*
547
Special Treatment Unit *E.J.S.A–MD S6g–unit*
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:    STU Settlement
       c/o Seton Hall University school of Law
       Center for Social Justice
       833 McCarter Highway
       Newark, New Jersey 07102

       Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
           **Objection to Purposed Settlement**

1. Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.

2. Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

Fr: *Norris Young #037*
Special Treatment Unit
8 Production Way, Trl #2
CN 905
Avenel, New Jersey 07001


To:     STU Settlement
        c/o Seton Hall University school of Law
        Center for Social Justice
        833 McCarter Highway
        Newark, New Jersey 07102

        Re: **RAYMOND ALVES, et al, v. MERRILL MAIN, PH.D, et al,.**
            **Objection to Purposed Settlement**


1.  Class Certification: I object to Alves, Sessoms, and Culbreth being named as representatives of the Class. These residents do not, and cannot, represent the population as it stands. They have not experienced what separate classes of residents have experienced, therefore, making it impossible for the above named residents to speak on behalf of the population. There should be residents added to the representatives, listed above, that reflect the following Classes of persons; a) Juveniles that were civilly committed; b) Residents that were committed from the A.D.T.C. that have multiple years of treatment; c) Residents that have been informed that treatment would not diminish their risk to re-offend, therefore, rendering this commitment a life sentence; d) Persons that have been committed from society (that were on the streets) when they were selected for commitment; e) Treatment Refusals are not represented; f) MAP residents are not represented; g) and South Unit residents are not represented.


_____

_____

_____

_____


2.  Psycho-Educational Modules: The purposed Settlement does not address the risk mitigation after the successful completion of Modules. As the Settlement stands now I do not agree with module testing only. At the completion of all modules, when a resident has successfully completed the module, there should be some kind of notice given that the resident's risk to re-offend has been mitigated, as well as, his level of dangerousness. This will sequentially, lower the resident's risk assessment. This should be noted and written verification should be given to the resident, in addition to, this verification being placed in the residents file.

Fr: Norris Young
    Special Treatment Unit
    8 Production Way  Tri#2
    CN 905
    Avenel, New Jersey 07001

                                    APRIL 20, 2012

To: STU Settlement
    c/o Seton Hall University School of Law
    Center For Social Justice
    833 McCarter Highway
    Newark, New Jersey 07102

    Re: Raymond Alves,et al, v. MERRILL MAIN, PH,D,et al,
        Objection to Purposed Settlement


1.   The settlement states that in no way does the named parties
     in this settlement concede or admit to violations as a
     result of this settltment.

objct.If the named parties of the settltment are unwilling to
      take responsibility or no one Person has any Liability
      in the violations of the Rights of the Class and this
      is a settlement where as the State act as a responsible
      partie over its subordanents than this would violate the
      conduct and code of moral turpitude, see ABA Code of
      Professional Responsibility DR1-102 (A) (3) Fn.13.

2.      In the matter of atleast 20-Hours of Therapeutic
        Programming per Week.

objct.The Ultimate goal of any program is to obtain the skills
      that the program offers to prepare that person in the
      event those skills or lessons become nessecary to utilize
      in their everyday life, the secondary goal is that the
      teaching will end and life and the use of these lessons
      will began, The program at the STU overfoucusess on the
      teaching of the lesson and less on the life beyond the
      lesson therefore a realistic timeframe for which a person
      can be released after he has learned the lesson should
      be focused on alot more as a selling point for any
      settlement.

3.      Pre and Post Testing as a measure of pass or fail.

objct.The measure of pre-testing an indivual to determine their
      level of understanding as it may relate to a particular
      group or module is a useful measure, so as a person will
      not be placed in a group or module that is advanced beyond
      their understanding or on the other hand stagnate their
      growth, post testing as a measure of passing or failing
      a group or module is improper, to tell a person that they

may need to take a course again and the reasons why, as opposed to telling them they have failed is at worst telling them they have failed in their understanding of their own self, if one mans understanding is different from another and his expression of his understanding is different and because it doesnt go exactly to the letter of the book doesnt make him wrong, understanding a problem can take some years to master a problem can take a "lifetime."

4.    The exclusion of the Department of Corrections role in this Therapeutic process should not be so lightly discarded.

objct.For any treatment program to produce healthy and positive clients the environment to which this treatment is taking place must be healthy and conducive as well, to meet the goal that each agency is claiming to be striving for, The attitude act and actions of the Department of Correction staff is in contradiction of this claim, the Department of Corrections is in charge of Medical, Dental, Hygiene and nutritional health and not just limited to security, Approx 35 people have died in the past 12 years 2 in the last 120 days, Medical is negilible at worst indifferent combative non confidential Dental scheduling is sometimes difficult the actual experience is almost purposefully painful, the doors are wide open an area that is suppose to be sterile and sanitized can and does at times seem like a spectator sport, Hygiene in the last eight to ten months there have been a serious outbreak of bed-bugs that has still to this day have not been completely contained, Bad air quality poor air circulation, Individual self reports of more respiratory and asthmatic symptons,
Nutritional Health, as it is understood in any Department of Correction facility the responsibility is to feed inmates items that may or may not fall within one of the four food groups, and as an inmate will understand that the forfeiture of the right and privilege of freedom will come with some other consrtaints aswell, But as quote" unquote civilian residents in civil commitment some basic and not too unreasonable standard of nutritional value should be implied, and for Therapeutic implications with all due respect a poorly fed, bad tooth, bed bug infested, asthmatic would probably not have alot of interest in doing Treatment, it is the suttleties of the Department of Correction involvement which seem small but the reality is that it is much bigger and just as if not more important the role that they have in this process, and too casually relieve this Department of their obligation responsibility without so much as a word would fly in the face of the very thing that this settlement was filed to accomplish.

NORRIS  YOUNG   #037

**CLASS MEMBER'S OBJECTIONS/COMMENTS RE PROPOSED SETTLEMENT**
*RAYMOND ALVES, et al. v. MERRILL MAIN, PH.D., et al.*

You may use this form to set out any objections or make any comments concerning the proposed Settlement. You may attach additional sheets, if necessary, but please limit your objections and comments to the Settlement. The Court will not consider issues that are unrelated to the Settlement. When you have completed this form, you may either mail it directly to Class Counsel or deposit it in a Social Work Request box at the STU. The mailing address is:

> **STU Settlement**
> **c/o Seton Hall University School of Law**
> **Center for Social Justice**
> **833 McCarter Highway**
> **Newark, NJ 07102**

Class Counsel will submit all timely objections and comments to the Court in advance of the Fairness Hearing. *Because your objections and comments will be submitted to the Court and disclosed to opposing counsel, they will not be considered privileged attorney-client communications.*

*Your objections and comments will not be considered unless they are either postmarked or deposited in a Social Work Request box by May 14, 2012.*

Print Name: George Zimmer

Signature: George Zimmer

Resident Identification Number: 624

Date: 4/14/2012

Comments:

When I arrived At STU, Nothing was explained to me about why I am here. I did NOT recieve Any Toilet paper - Soap - Towel For showering - underware, sox, Blanket. to this Day I have a mattress with urin stains And rust marks. we have one washer for nearly 80 residents

I don't know how NJ can run a place like this.
I have no space for my belonging. The bathrooms are
an accedent waiting to happen - If an out brake of
any kind of sickness braks out, I am vulnerable
to whatever happends. I am waiting to have my
Bisniss remits ok by staff so I can get T-shirts
and sox. The system here if you have no framily - sucks.
We have no windows suitable to look at the outside
world. cause I have no support - No family or friends -
I'm 50 years old, the economy alone would be a stresser
and add to my build up. I talked to my atterny about
Volunteering commit, Why? I can make money here
and learn about myself. I would love to have
my freedom. Do I want to escape from
here, NO WAY! The doors could bust open
and others would run like hell. Me, why would I run.
I would run to white castle to get me some bergers
run back to stu sit on a bench and eat my
food! I would like someone to come here and tell
me, I'll have my meds, food, shelter, security, and earn
a paycheck. Show me how to live on the out side
without pressure and many of us Including me would
Never reoffend on come back to a death trap like this
Ever aggin!

2