1

1     IN THE UNITED STATES DISTRICT COURT

2         FOR THE DISTRICT OF NEW JERSEY

3

4     RAYMOND ALVES, et al.,          :     Civil No.
                                             01-cv-789-DMC-MF
5                 Plaintiffs,    :

6              v.                 :
                                       TRANSCRIPT OF
7     GAIL FERGUSON, et al.,     :     FAIRNESS HEARING

8              Defendants.   :
      -------------------------------x

9

10                                     Newark, New Jersey
                                       November 13, 2012

11

12

13

14    BEFORE:

15        THE HON. DENNIS M. CAVANAUGH, U.S.D.J.
          THE HON. MARK FALK, U.S.M.J.

16

17                                     Reported by:
18                                     CHARLES P. McGUIRE, C.C.R.
                                       Official Court Reporter

19

20

21        Pursuant to Section 753, Title 28, United States
          Code, the following transcript is certified to be
22        an accurate record as taken stenographically in
          the above entitled proceedings.

23

24                           s/CHARLES P. McGUIRE, C.C.R.

25

CHARLES P. McGUIRE, C.C.R.

1       APPEARANCES:

2           GREENBERG TRAURIG, LLP
            200 Park Avenue
3           Florham Park, New Jersey 07932-0677
            BY: IAN S. MARX, ESQ., and
4               JASON H. KISLIN, ESQ.
            Attorneys for Plaintiffs
5
            SETON HALL UNIVERSITY SCHOOL OF LAW
6           CENTER FOR SOCIAL JUSTICE
            833 McCarter Highway
7           Newark, New Jersey 07102
            BY: BARBARA MOSES, ESQ.
8           And
            GIBBONS, P.C.
9           One Gateway Center
            Newark, New Jersey 07102
10          BY: JONATHAN M. MANES, ESQ.
            Attorneys for Plaintiffs
11
            FURLONG & KRASNY
12          820 Bear Tavern Road
            Suite 304
13          West Trenton, New Jersey 08628
            BY: JOHN S. FURLONG, ESQ.
14          Attorney for Plaintiffs William H. Moore and
            Mary Ann Hysler
15
            DAVID L. DaCOSTA, Deputy Attorney General
16          Hughes Justice Complex
            25 Market Street
17          Trenton, New Jersey 08625-0112
            Attorney for Defendants
18

19

20

21

22

23

24

25


                    CHARLES P. McGUIRE, C.C.R.

1          JUDGE CAVANAUGH:  All right.  Are we ready on the

2     Alves case?

3          Good morning.

4          All right.  This is the matter of Alves v.

5     Ferguson, Civil Action Number 01- -- must be the oldest case

6     I have -- 789, and we're here today to conduct a fairness

7     hearing on the proposed settlement.

8          Counsel, can we get your appearances, please?

9          MR. MARX:  Good morning, Your Honor.

10          Ian Marx from Greenberg Traurig.  We represent a

11     number of the Plaintiffs in this case who were referred to

12     in the pleadings as the Bagarozy Plaintiffs, and with me is

13     my colleague and friend, Jason Kislin, who's been working

14     for the past several months in connection with the fairness

15     hearing aspect of the case, and Mr. Kislin will be

16     presenting the primary argument on our behalf.

17          JUDGE CAVANAUGH:  Fine.

18          MS. MOSES:  Good morning, Your Honor.

19          Barbara Moses, Seton Hall Law School Center For

20     Social Justice, on behalf of the Plaintiffs and the class.

21          With me this morning are three third-year students

22     from Seton Hall Law School who with the Court's permission

23     will present portions of the argument pursuant to Local Rule

24     101.(1)(h).  To my right is Lisa Savadjian, Rose Harper, and

25     Kyle Bruno.

1          JUDGE CAVANAUGH:  Okay.

2          MR. MANES:  Your Honor, I'm Jonathan Manes from

3   Gibbons PC, co-counsel.

4          MR. DaCOSTA:  David L. DeCosta, Deputy Attorney

5   General, representing the Defendants in this matter.

6          JUDGE CAVANAUGH:  Okay.  Be seated.

7          MR. DaCOSTA:  Thank you.

8          JUDGE CAVANAUGH:  As you can see, I've asked my

9   colleague, Judge Falk, to be with me today, for a very good

10  reason:  He has spent an inordinate amount of his judicial

11  career on this case.  As I mentioned before, this is an '01

12  case, it's been around a long, long time, and I've had the

13  benefit of working with Judge Falk for these many years on

14  this and many other cases, and he has really taken the

15  laboring oar from the judicial side in resolving disputes

16  over the years, doing what he could to try to bring this to

17  a resolution with the assistance and the help of the

18  attorneys involved in the case, and I just thought it was

19  absolutely appropriate that he be here to assist in any way

20  necessary.  He has a firsthand knowledge of many of the

21  things that occurred, some of which occurred before him,

22  were reported to me, but I was not there personally.  He and

23  I, as is our custom, stayed in constant contact and we

24  discussed this matter on numerous occasions over the years.

25  So I am very, very satisfied that he is here and I have the

1    benefit of his view, and as well you should be.  So that's

2    why I have Judge Falk with me.

3            This is a consolidated class action brought by

4    involuntarily committed sex offenders challenging the

5    adequacy of mental health treatment offered at New Jersey

6    Special Treatment Unit located in Avenel, New Jersey.

7            This fairness hearing is to consider the approval

8    of the class-wide settlement reached between the Plaintiffs

9    through pro bono counsel Seton Hall Law School Center For

10   Social Justice and the Gibbons firm and the Defendants.

11           Just so that the record is clear, the Plaintiffs

12   are convicted sex offenders who have completed prison

13   sentences but remain involuntarily confined pursuant to the

14   New Jersey Sexually Violent Predator Act, 30:4-27.24,

15   et seq.  This Act authorizes the indefinite civil commitment

16   of any individual determined to be a "sexually violent

17   predator."  A sexually violent predator is defined as a

18   person who has been convicted of or in some cases charged

19   with but not convicted of at least one sexually violent

20   offense and who suffers from "a mental abnormality or

21   personality disorder that makes the person likely to engage

22   in acts of sexual violence if not confined to a secure

23   facility for control, care, and treatment."  That's the

24   facility in Avenel, New Jersey.

25           Once committed to the facility, the STU facility,

1    the sexually violent predator remains there until such time

2    as a State Court finds that he "will not be likely to engage

3    in acts of sexual violence," in which case he may be

4    "conditionally discharged."  In order to be "conditionally

5    discharged," the individual must establish that he's been

6    successfully treated for the mental abnormality or

7    personality disorder that was the basis for his confinement

8    to the STU.  In order for residents to have a meaningful

9    opportunity to work toward a potential release, the Act

10    provides that class members receive mental health treatment.

11    At the STU, the mental health treatment offered is primarily

12    in the form of group therapy and individual

13    resident-specific psycho-educational "modules" devoted to

14    topics such as victim empathy, relapse prevention, and

15    arousal reconditioning.  The New Jersey Department of Human

16    Services is responsible for providing mental health

17    treatment to the residents of the STU.

18         In this consolidated action, the Plaintiffs seek

19    declaratory and injunctive relief against various officials

20    of the STU responsible for providing them with treatment and

21    against the New Jersey Attorney General, who is responsible

22    for enforcing the Act.  Plaintiffs claim that the various

23    Defendants have failed to provide the minimally adequate

24    mental health treatment required by Federal and state law.

25         On February 15th, 2001, the original complaint in

1    the Alves case was submitted pro se by Plaintiff Raymond

2    Alves.  On March 9th, 2001, this Court granted Alves in

3    forma pauperis status, directing that his Complaint be

4    filed, and appointed pro bono counsel.  On July 30th, 2002,

5    after much difficulty in finding the appropriate pro bono

6    counsel, this Court was fortunate to have the Seton Hall

7    University School of Law Center For Social Justice enter on

8    behalf of Mr. Alves as pro bono counsel.

9         Since then, the Center has been joined by the

10    Gibbons firm as pro se counsel for the Plaintiffs.

11         Following lengthy pre-answer dispositive motion

12    practice, the parties engaged in discovery, including

13    written discovery and depositions.  During this time frame,

14    approximately 30 additional cases filed by pro se residents

15    were consolidated into this case.  These consolidations

16    included the case captioned Bagarozy v. Harris, which was

17    brought by a group of STU residents led by

18    Richard Bargarozy, Plaintiff.  Prior to consolidation,

19    Judge Hochberg entered an order granting that group of

20    Plaintiffs' request for pro bono counsel, and eventually the

21    law firm of Greenberg Traurig entered an appearance on their

22    behalf.

23         In or about 2005, the parties made efforts to

24    concentrate on settlement negotiations with the goal of

25    resolving all the cases on behalf of the residents of STU on

1    a class-wide basis.  This is where Judge Falk became

2    involved in these intensive negotiations and sometimes

3    contentious negotiations, and many, many settlement

4    conferences were had with his assistance.

5            In 2008, after the parties reached an apparent

6    impasse, Judge Falk and I approved the appointment of a

7    joint neutral expert, Judge Judith Becker, Ph.D., who was

8    selected by Plaintiffs and Defendants, the thought being

9    that a neutral expert would review the existing STU

10   treatment program, offer her opinion on the program, and

11   produce a report, which would be considered for purposes of

12   settlement only.  Dr. Becker issued her report on December

13   29, 2008.  And this was a helpful report, I believe, to the

14   Plaintiffs.

15           In September 2011, again with the assistance of

16   Judge Falk and hard work on behalf of counsel, the parties

17   agreed to a tentative settlement, which required final

18   approval from the highest levels of our state government.

19           On January 20, 2012, Judge Falk again held an

20   in-person conference with counsel at which it was

21   represented that counsel had authority to finalize the

22   settlement.  In attendance there were three lead Plaintiffs

23   in the case, Alves, Culbreath, and Sessoms.

24           On February 3rd, 2012, the settlement agreement

25   was executed.  The settlement agreement requires the

1     Defendants to improve both the quantity and quality of

2     mental health treatment offered at the STU, thereby

3     affording class members a better chance of being released

4     from the facility.

5             On March 24, 2012, the Plaintiffs filed an amended

6     consolidated class action complaint.  Shortly thereafter,

7     the parties filed a joint motion for class certification and

8     preliminary approval of the settlement.  By order dated

9     March 29, 2012, this Court certified a class consisting of

10     all persons involuntarily confined to the STU under the Act

11     pursuant to the Federal Rules of Civil Procedure 23(a) and

12     23(b)(2), and found that the settlement was "preliminarily

13     approved as fair, reasonable and adequate subject to further

14     consideration by this Court" in the fairness hearing.  As a

15     class action certified under 23(b)(2), the class members do

16     not have an option to opt out of the class.

17             The class includes approximately 471 residents of

18     the STU.  Notice of the settlement was provided to all class

19     members, who were given a chance to submit objections.

20     Approximately 156 objections have been received.  Class

21     counsel and Defendants have submitted a joint motion for

22     final approval of the settlement.  Pro bono counsel for the

23     Bagarozy Plaintiffs have submitted a brief in opposition to

24     the settlement.

25             So we're here today for the purpose of that

1    fairness hearing.

2           That said, so the record knows what we're doing, I

3    guess we should start right here.

4           I'll hear you.

5           MS. MOSES:  Good morning, Your Honor.

6           Barbara Moses.

7           Two housekeeping matters, if I might.

8           The first is the manner in which we would like to

9    present the motion, subject to Your Honor's approval.

10          Mr. Bruno, one of my students at Seton Hall, will

11   briefly address the issue of whether the class was properly

12   certified, which, as you know, is a consideration which must

13   be revisited at this stage.

14          Ms. Savadjian will briefly address the adequacy of

15   notice and the receipt and submission of the objections.

16          And Ms. Harper will briefly address the prior

17   history of litigation by STU residents challenging the same

18   or similar issues.

19          JUDGE CAVANAUGH:  I think the operative word there

20   would be "briefly."

21          MS. MOSES:  Yes, and we have planned to take

22   Your Honor's admonition to heart in advance.

23          The second housekeeping matter, Your Honor, is

24   this.  I would like to advise the Court that we received a

25   letter on Friday, three days ago, dated November 5th, which

1    appears to be from Mr. Alves, Raymond Alves, our lead

2    Plaintiff.

3              In this letter, Mr. Alves expresses

4    dissatisfaction with class counsel and particularly with me,

5    and seeks to have class counsel removed.

6              We have been unable to ascertain whether the

7    letter accurately reflects Mr. Alves's current views because

8    we were unable to visit the STU yesterday because it was

9    Veterans Day, and our attempts to reach him by telephone

10   were vigorous but unsuccessful.

11             The letter was addressed to the Bagarozy

12   Plaintiffs' counsel as well as to us and showed a cc to the

13   Court, so we don't believe it was intended to be a

14   confidential communication, and I have brought copies of

15   that letter with me today since I did not see it on the

16   Court's docket.

17             May I hand it up?

18             JUDGE CAVANAUGH:  Yes, please.

19        (A document was handed up to the Court.)

20             MS. MOSES:  We don't believe that this letter

21   changes the issues for the Court on today's presentation,

22   but we did want to make sure that the record was complete.

23             JUDGE CAVANAUGH:  Okay.  Let me just read this

24   very quickly.

25             MS. MOSES:  Sure.

1              JUDGE CAVANAUGH:   Well, so the record is clear, he

2    did write this letter dated November 5th to Greenberg

3    Traurig, Seton Hall School of Law, the Center For Social

4    Justice, and the Gibbons firm, To Whom It May Concern.   He

5    cc'd this Court.

6              I really don't know what he wants me to do with

7    this.

8              He asks in here -- he asks someone -- I have

9    nothing else before me -- that Ms. Moses be removed from the

10   position of class counsel and an investigation into her

11   behavior should be initiated to ensure that the course of

12   this case that is taken is in line with what the class

13   wants.

14             There will be no investigation, and I will not

15   remove Ms. Moses as class counsel.

16             I understand that there was a similar motion

17   previously brought before this Court, and I believe that an

18   order and opinion with reasons denying it was submitted by

19   Judge Falk at the time.

20             And I think that's the extent to which I'm going

21   to deal with this letter.

22             MS. MOSES:   To perhaps just to clarify the record

23   on that subject somewhat, there was a previous motion by one

24   of the objectors, Mr. Michael Hasher, for the appointment of

25   new pro bono counsel for himself.   He was not a named class

CHARLES P. McGUIRE, C.C.R.

1  representative.  He was a class member.  I believe

2  Judge Falk denied that motion, along with some other motions

3  that Mr. Hasher made.

4  Also, over the course of the summer, another

5  objector, who was at that time represented by counsel, by

6  the name of Lorenzo Oliver, attempted to file a document

7  which was titled a petition for the removal of class

8  counsel.  Although the document, the petition, was

9  ultimately filed and appears on the Court's docket as an

10  attachment to a letter from Mr. Oliver's former counsel,

11  Mr. Neal Wiesner, I don't believe that that petition was

12  ever docketed as a motion or that any decision was issued

13  with regard to that purported petition.

14  JUDGE FALK:  I did enter an order denying any

15  request to replace class counsel with respect to Mr. Oliver,

16  who was then represented by Mr. Wiesner.  So it is on the

17  record.

18  MS. MOSES:  Thank you.

19  JUDGE FALK:  And he has withdrawn from the case.

20  MS. MOSES:  That's correct.  Mr. Wiesner has

21  withdrawn from the case.

22  JUDGE CAVANAUGH:  Yes.  I read his very

23  entertaining motion also.

24  MS. MOSES:  Yes, Your Honor.

25  JUDGE CAVANAUGH:  Okay.  All right.  Well, then,

1     let's proceed then as you wish.

2          MS. MOSES:  Thank you, Your Honor.

3          MR. BRUNO:  Good morning, Your Honor.

4          JUDGE CAVANAUGH:  And I want it known that I

5     believe that Seton Hall is one of the two finest law schools

6     in Newark, New Jersey.

7     (Laughter)

8          MR. BRUNO:  Thank you, Your Honor.

9          The class was properly certified.  The Defendants

10    in this case consented to class certification.  The class

11    certification will also likely meet the Girsh factor of

12    maintaining the class through trial because this class

13    certification is not contingent or conditional upon approval

14    of the settlement.  Thus, if the settlement is not approved,

15    the case will continue as a class action.

16         The class also meets the Rule 23(a) requirements

17    of numerosity, commonality, typicality, and adequacy, and

18    also meets the Rule 23(b)(2) requirements because we are

19    seeking injunctive relief and the parties opposing the class

20    have acted on grounds generally applicable to the class.

21         On the typicality requirement, there are no legal

22    theories that would present a potential conflict in this

23    case.  All the residents at the STU are subject to the

24    treatment, all the residents at the STU are dealing with the

25    inadequacies of the mental health treatment, and all of the

1    residents at the STU would benefit from the improvements

2    mandated by this settlement.

3           The adequacy is also met here because the

4    interests of the class representatives are not antagonistic

5    to that of the class, and class counsel is qualified,

6    experienced, and generally able to conduct the proposed

7    litigation.

8           There have been some objections to the substance

9    of the settlement, but none of it that the class counsel is

10   not qualified, experienced, and able to conduct this

11   litigation.

12          As well, there was a few objectors who mentioned a

13   possible conflict of interest.  There is no conflict of

14   interest here.  Two Seton Hall law professors have written

15   scholarly articles about the NJSVPA, but none of those

16   authors ever represented the Defendants in litigation, nor

17   have worked on this case, nor have been part of the Center

18   For Social Justice.

19          We have already briefed these issues in the class

20   certification, and the motion to approve class

21   classification in March again touched on these issues, and

22   the memorandum in support of final approval in July.

23          Thank you, Your Honor.

24          JUDGE CAVANAUGH:  Thank you.

25          What year are you in; your third year?

CHARLES P. McGUIRE, C.C.R.

1            MR. BRUNO:  Yes, sir.

2            JUDGE CAVANAUGH:  Okay.  Thank you.  I appreciate

3       your assistance.

4            Next?

5            MS. SAVADJIAN:  Good morning, Your Honor.

6            As Professor Moses previously stated, I will be

7       addressing the adequacy of notice and opportunity to object

8       given to the class members.

9            In accordance with Federal Rule 23(e), notice to

10      the class was provided in a reasonable manner.  In the

11      Court's modified order dated April 4th, 2012, the Court

12      issued a schedule for notice to be brought to the residents

13      at the STU and objections to be submitted, and we have met

14      those deadlines, Your Honor.  Counsel for Defendants

15      delivered the notices of the settlement to the 463 residents

16      of the STU at the time, and as a result of these notices, we

17      did receive back 156 timely objections to the settlement in

18      which a class member appeared to express dissatisfaction

19      with the settlement in whole or in part, and we erred on the

20      side of caution when it was not clear whether or not that

21      anyone ever intended to object to the settlement and we

22      included it as an objection.

23           To date, we have not received any objections to

24      the timeline or the content of the notice of the settlement,

25      and, additionally, the fact that we received a volume of

1     these objections would indicate that the notice was adequate

2     and the class members understood the settlement notice, and

3     we understand that Your Honor has reviewed them.

4          And if you have no other questions, we will move

5     to Rose Harper's portion of the presentation.

6          JUDGE CAVANAUGH:  Thank you.

7          MS. HARPER:  Your Honor, Rose Harper, speaking on

8     prior litigation brought by class members.

9          To put the dispute in context in a way whether the

10    settlement is sufficient in the improvements that it makes

11    to the STU, it is useful to look at prior litigations

12    brought by class members which allege similar issues to be

13    addressed in the settlement.  Some of these cases we have

14    cited in our supporting papers.

15         Class members, including objectors and

16    non-objectors, have brought prior litigation alleging

17    similar issues that are addressed in the settlement, but

18    none of those cases have fared well.  Essentially, none of

19    those cases have resulted in a mandatory change in the

20    treatment program at the Special Treatment Unit.  In Federal

21    Court alone, we have found at least 29 cases which allege

22    similar issues that are addressed in the settlement

23    agreement, and of those cases, 12 were brought by timely

24    objectors and seven were brought by Bagarozy Plaintiffs.  In

25    the 29 cases, we found five cases alleged inadequate access

1    to therapists, 18 cases claimed interrupted treatment

2    because a Plaintiff was placed on map or because the

3    Plaintiff claimed that D.O.C. prevented their access to

4    process groups, eight of the 29 cases alleged to being

5    arbitrarily prevented from progressing through the program

6    phases, and six cases alleged inadequate educational and

7    recreational opportunities.  The settlement agreement in

8    this case directly addresses all of those issues.

9         All of the 29 cases that we found raised one or

10   more of the same issues, and all but four of the cases have

11   been dismissed, either by motion brought by the Defendants

12   in the case or sua sponte by the Court.  Additionally, five

13   of those cases were dismissed with prejudice.

14        These 29 cases do not include the plethora of

15   previous cases that were brought in State Court which went

16   beyond the scope of the hearing today, but the fate of the

17   Federal cases do show two main things:  First, it is

18   extremely difficult to achieve judicially mandated change in

19   this area of law, and, second, that this settlement

20   agreement will be the first time that this Court has

21   mandated improvement to the Special Treatment Unit.

22        Thank you.

23        JUDGE CAVANAUGH:  Thank you.

24        And I commend the students.  I'm sure they did a

25   lot of hard work and were somewhat nervous about coming

1          today.  I think they did an excellent job.  Thank you very

2          much.

3                    Counsel, anything further over here?

4                    MR. DaCOSTA:  No, Your Honor.

5                    MR. MANES:  No, Your Honor.

6                    JUDGE CAVANAUGH:  Anything further?

7                    MS. MOSES:  If I might, --

8                    JUDGE CAVANAUGH:  Yes.

9                    MS. MOSES:  -- Your Honor, and I will try to be

10         brief.

11                   JUDGE CAVANAUGH:  Say whatever you need to say.

12                   MS. MOSES:  I'll still try to be brief.

13                   JUDGE CAVANAUGH:  It's appreciated.

14                   MS. MOSES:  There are, I think, three main points

15         that I want to stress to Your Honor.  I will try not to

16         repeat what's in the briefs because I know that you have

17         reviewed them carefully.

18                   First is that while the settlement is not perfect

19         and certainly does not achieve the highest hopes of many

20         members of the Plaintiffs' class, it does achieve a great

21         deal.  It achieves much more than the Bagarozy Plaintiffs

22         give it credit for, and not just in comparison to the prior

23         litigation, which Ms. Harper outlined for you, but it also

24         achieves quite a lot standing on its own legs substantively.

25                   In very broad outline, the settlement calls for

 1      more therapy, both process groups and modules, more

 2      therapists, which the STU is already in the process of

 3      hiring, more contact time with the residents by each

 4      therapist, better communication to the residents of the

 5      goals and criteria for advancement through the program,

 6      which, as you know, is necessary before the STU recommends a

 7      resident for release.

 8              If I could pause just a moment here, one of the

 9      most significant and most commonly repeated complaints that

10      we heard from the named class representatives and from other

11      members of the class is that they were having difficulty

12      progressing through the phases of the treatment program,

13      from phase one to phase five, because they didn't understand

14      what they had to do to get to the next phase or how they

15      would be evaluated or how long it would take.  The

16      settlement agreement will require the STU staff to be very

17      clear with the residents about that in their initial

18      treatment plan, at their six-month review, and at their

19      annual review by the TPRC, the Treatment --

20              Help me, David.

21              MR. DaCOSTA:  -- Progress Review Committee.

22              MS. NMOSES:  Thank you -- the Treatment Progress

23      Review Committee, and the residents now need to be told what

24      objective criteria they need to meet for progression to the

25      next phase, and they also need to be given a time estimate

1    of how long it should take them to do that, assuming that

2    they apply themselves diligently and in good faith to the

3    therapy.

4            The settlement includes improvements to the

5    vocational, educational, and recreational opportunities at

6    the STU.  The settlement includes better discharge planning.

7    Again, this has been a significant focus of complaint from

8    the residents, because, before a residence can be

9    recommended by the STU staff for conditional discharge, the

10   resident generally needs to have a plan in place identifying

11   matters such as where he will live, where he will receive

12   whatever outpatient treatment that he's required to keep up

13   with, about how he will support himself.  For many of the

14   residents, who served long prison sentences, followed in

15   some cases by a decade or more in the STU, and without

16   access, I might add, to the Internet, it's almost impossible

17   for them to put these plans into place unless the social

18   work staff at the STU is affirmatively required to help them

19   do that.  The settlement does affirmatively require the STU

20   staff to help them do that for the first time.

21           The settlement provides for additional expert

22   in-service training for the staff at the STU.  It provides

23   for a treatment ombudsperson so that the residents have

24   someone to take their treatment-related claims to.  We can't

25   guarantee that they will like the response, but the

CHARLES P. McGUIRE, C.C.R.

1    settlement does guarantee that they will get a response,

2    that someone will look at those issues, look at them

3    carefully, and get back to them with a response.

4           And, perhaps most importantly, the settlement

5    calls for an independent monitor to be appointed by

6    Your Honor to inspect the facility and monitor the

7    Defendants' compliance with the settlement for a presumptive

8    period of five years, subject to certain exceptions which

9    are set forth in the settlement agreement.  This is crucial,

10   Your Honor, because there is a high degree of distrust among

11   the class members as to the good faith of the Defendants and

12   the STU staff, and a number of men have said to us, how can

13   we be certain that the STU staff will comply with any

14   settlement document written on a piece of paper?  Many men

15   complained that some of the rules and programs and policies

16   and principles which in theory exist now on paper are not

17   adhered to in practice, and the monitor will address both of

18   those issues and we believe give the Court as well as class

19   counsel and the class some comfort that what's in the

20   settlement agreement will actually be carried out.

21          The second point I want to make, Your Honor, is

22   that while the settlement certainly does not do everything

23   that the class members would like to see done, we have also

24   been very careful to make certain that the claims of class

25   members which are not encompassed within the second amended

1    complaint will not be waived or barred in any way.  So to

2    give the most common example that we hear, many members of

3    the class believe that claims need to be pursued not just

4    against the Department of Human Services and the Defendants

5    with whom we are settling who are responsible for the

6    treatment program, but also against the Department of

7    Corrections, which is responsible for the physical facility

8    at the STU, the security which is provided by D.O.C.

9    personnel, the medical treatment, and so forth.  A number of

10   the objections you received, as you know, complain that the

11   settlement does not require improvements in this area, but

12   what the settlement does do, and this is very clear both in

13   the settlement itself, beginning on page one, and also in

14   the proposed order that we submitted with our opening

15   papers, is, it leaves those claims open to be pursued either

16   on an individual or a class basis, if appropriate, by any

17   member of the class.  So those are the Bagarozy Plaintiffs,

18   who already have such claims pending.  Those claims will not

19   be dismissed, at least not by virtue of this settlement

20   agreement.  Those consolidated Plaintiffs who have

21   idiosyncratic claims outside of the scope of the second

22   amended complaint, for example, there's a resident by the

23   name of Moore, William Moore, who has been attempting for

24   some time to pursue a claim based on his right, I believe,

25   to marry in a religious ceremony of his choice --

1              JUDGE CAVANAUGH:  And I think Mr. Furlong has

2     shown up, I don't know if he was here when we first started,

3     but he's here, for the record.  I think that's

4     his --

5              MS. MOSES:  Good morning.

6              MR. FURLONG:  Thank you, Judge, for placing my

7     appearance on the record.

8              JUDGE CAVANAUGH:  Okay.

9              MS. MOSES:  So I can't -- as long as Mr. Furlong

10    is here, I will not speak of his client's case in detail,

11    but I will say that the settlement agreement is crafted so

12    as to make certain that claims outside the scope of the

13    second amended complaint are not barred, waived, dismissed,

14    or otherwise prejudiced by this agreement.

15             And the third and most important, in some ways,

16    point, Your Honor, is that under the proposed settlement,

17    the improvements mandated in the agreement will be put in

18    place in most instances within six months, in some instances

19    even sooner.

20             The alternative, which is continued litigation,

21    carries two very significant risks.  First, obviously,

22    there's the risk that the Plaintiffs will not prevail, that

23    the Defendants will prevail on liability, either on summary

24    judgment or at trial.  This has happened in other cases

25    around the country challenging conditions in civil

1    commitment facilities.  In the 8th Circuit, as you know, the

2    courts have held that there is no right to adequate mental

3    health treatment under the Due Process Clause for civilly

4    committed former sex offenders.  In Massachusetts, in a case

5    called Hargett v. Adams, which is in our papers, the trial

6    court entered summary judgment for the Defendants, finding

7    that the conditions at the Massachusetts facility, while

8    quite disturbing, did not fall below the minimally adequate

9    level of care mandated by Youngberg v. Romeo and its

10    progeny.

11         So our concern going forward is not that we would

12    be unable to prove the factual allegations set forth in our

13    complaint.  We are highly confident that we would succeed on

14    that front.  But our concern flows from the difficult legal

15    landscape as a result of Youngberg and its progeny.

16         The second risk, and a very real risk, again,

17    Your Honor, assuming that the Plaintiffs are successful at

18    trial, it's my obligation as class counsel to take a hard

19    look at what the likely outcome is at trial, and at this

20    stage of the case, when I am required to recommend or not

21    recommend a settlement, I have to to a certain extent take

22    off my advocate's hat and try to look very honestly at what

23    I think the risks are on a litigation path.  And one of

24    those risks, Your Honor, we think, is that, should we

25    prevail at trial, it's unlikely, not impossible, but

CHARLES P. McGUIRE, C.C.R.

1      unlikely that the Court would order significantly more

2      relief than the relief which is already negotiated and

3      appears in the proposed settlement agreement, and it is not

4      really likely but virtually certain that whatever relief we

5      did achieve at the trial would arrive only after substantial

6      additional delays, delays between now and trial, delays

7      during the pendency of any appeal, potentially, although I

8      hope this would not be the case, delays having to do with

9      enforcement of the Court's injunctive order.

10             As you have seen from our papers, in the so-called

11     Turay litigation from Washington State, it was something

12     like seven years after the trial court entered its first

13     post-trial order before the Defendants were actually

14     required to engage in certain specified improvements in the

15     conditions at the Washington State facility.

16             Now, this case has already been pending, as both

17     of Your Honors are well aware, for over 10 years.  The

18     Plaintiffs are not getting any younger.  If the treatment

19     program improvements are to do the class members some good,

20     those improvements need to be implemented now, and not years

21     from now.

22             I looked at the cases which various counsel and

23     parties have cited in the moving and opposing papers, and I

24     think, Your Honor, that the case that this case most

25     resembled in terms of the settlement calculation is the

CHARLES P. McGUIRE, C.C.R.

1        Hawker case, Hawker v. Consovoy, in which another judge in

2        this district approved a prison conditions settlement

3        brought on behalf of prisoners who were allegedly denied

4        timely and appropriate parole hearings.  In Hawker, as here,

5        there were a large number of objections from class members,

6        including the class representatives, who wrote to the Court

7        to say that class counsel had not acted in the best

8        interests of the class.  Also in Hawker, as here, many of

9        the objections were unrealistic, sought relief not

10       encompassed within the operative complaint or otherwise not

11       available under law.  Others argued in effect that the

12       settlement simply wasn't good enough because it didn't

13       provide for 100 percent or close to 100 percent of the

14       relief that was sought in the complaint.

15              And the Court in the Hawker case properly, I

16       think, did not measure the proposed settlement against the

17       Plaintiff's highest hopes.  It measured the settlement

18       instead against what could realistically be expected at

19       trial, including the inherent delays, and the Court

20       concluded as follows:  "Although it is possible that the

21       class could achieve more favorable relief through further

22       litigation, a better outcome is improbable, mostly due to

23       the risks associated with establishing liability and the

24       fact that additional delays in the resolution of this action

25       tend to reduce the value of any future equitable relief."

CHARLES P. McGUIRE, C.C.R.

1          We believe that further delays here would reduce

2     the value of the equitable relief we have negotiated, relief

3     that we believe is material, is significant, and will assist

4     the class members in progressing more quickly through the

5     treatment program at the STU and improve their ability to

6     regain their freedom.

7          Unless Your Honor has further questions, we will

8     rest on our briefs for the remaining issues.

9          JUDGE CAVANAUGH:  No.  Thank you very much.

10          Who wishes to be heard?  Counsel?

11          MR. KISLIN:  Good morning, Your Honor.

12          Jason Kislin from Greenberg Traurig on behalf of

13     the Bagarozy Plaintiffs.

14          Many of the Bagarozy Plaintiffs have filed

15     individual objections themselves and along with the other

16     150 or so objections.  What we've attempted to do on behalf

17     of our clients is identify what we thought were the most

18     compelling arguments, legal arguments, factual arguments to

19     present to the Court in opposition to the motion for final

20     approval.  That by no means should undermine some of the

21     other arguments and some of the other objections that were

22     set forth by the individuals in the individual objections

23     that the Court has received.

24          Ultimately, Your Honor, we believe that the

25     settlement should not be granted final approval because the

1    movants have not established that it's fair, reasonable, and

2    adequate in accordance with the Girsh factors, and, most

3    importantly, we believe that the conclusions of the

4    Court-appointed neutral expert, Dr. Becker, demonstrate that

5    the settlement is not there in light of the risks of

6    litigation, it's not there in light of the risks of

7    establishing damages, it is not within the range of

8    reasonableness with regards to the likely outcome at the end

9    of trial, and it is not within the range of reasonableness

10   in light of the best possible recovery.

11          Also, with no promise of funding, the settlement

12   agreement, which is a contract between two parties here, is

13   essentially illusory, and I will talk more about the

14   illusory promise and what the movants have said about that

15   in a little bit.

16          As Your Honor pointed out, our clients are not

17   prisoners.  They have been convicted, they have served their

18   time, and they are now civilly committed pursuant to a

19   statute.  The statute as well as the Constitution requires

20   them to receive treatment, adequate treatment, treatment

21   that is minimally adequate to satisfy the constitutional

22   standards that govern all of us.

23          And the settlement, while certainly it will

24   improve the conditions, and we're not here saying that the

25   settlement doesn't have any value, but what we're saying is

1     that the settlement doesn't do enough to bring the

2     conditions and the treatment program up to the threshold of

3     minimally adequate under the Constitution, and we say that

4     largely because of the report of the neutral expert,

5     Dr. Becker.  Dr. Becker, who was selected by the State --

6     the Plaintiffs had other experts in mind, but the State --

7           JUDGE CAVANAUGH:  Well, wait a minute.  I thought

8     this doctor was agreed upon.

9           MR. KISLIN:  Your Honor -- I'm sorry.  The doctor

10    was agreed upon, Your Honor, but during the process, each

11    side submitted the experts that they wanted.  The Plaintiffs

12    submitted a list of experts that they wanted; the State

13    submitted a list of experts that they wanted.  Dr. Becker

14    was on the State's list.  The Plaintiffs would have

15    preferred other doctors, but ultimately, we capitulated to

16    the use of Dr. Becker, and Dr. Becker was appointed.  So in

17    our minds, the State, looking at Dr. Becker's credentials,

18    said, this is the person who is the most -- the most

19    adequate to review the program and make a determination as

20    to whether the areas of the program that were negotiated

21    between the parties are minimally adequate under the

22    standards that they have to be minimally adequate under,

23    namely, the Youngberg standard.

24          And Dr. Becker's report suggests if not directly

25    evidences that the program is so deficient as to deprive the

1    residents of the purposes of the statute, which are to

2    create a psychological treatment program which will

3    ultimately lead to a conditional release.  So, essentially,

4    the treatment program is so deficient as to deprive them of

5    what the statute requires.

6            So I won't go into great detail because it is in

7    our papers the credentials of Dr. Becker, but needless to

8    say, the State thought she was credentialed enough to speak

9    to this program, the Court appointed her to speak for this

10   program, and, indeed, she has a tremendous amount of

11   experience and knowledge in the area of the treatment of

12   sexual offenders.  She has spent the greater part of her

13   life's work devoted to this.  She sits on boards and other

14   advisory committees that are devoted to reviewing these

15   types of treatments.  And why is this important?  It's

16   important because, while there is no universal set of

17   standards, the standard that's set out in Youngberg is, the

18   treatment program has to be consistent with what an

19   appropriate professional would consider reasonable.

20           We submit that Dr. Becker is that appropriate

21   professional.  In fact, the State, in putting her on their

22   list, acknowledged that she is the appropriate professional.

23           And where, as here, the treatment that is being

24   offered is such a substantial departure from the accepted

25   professional judgment, practice, or standards, the treatment

CHARLES P. McGUIRE, C.C.R.

1    providers, in this case, the treatment providers hired by

2    the State, are not entitled to any presumption of validity.

3               So, here, what you have, Your Honor, is

4    Dr. Becker's report.  She is qualified, she is a

5    professional in the industry, in the field, and she's saying

6    the treatment levels are not minimally adequate to satisfy

7    the constitutional standards, and here's what the State has

8    to do in order to bring those treatment programs up to

9    minimally compliant.  And the settlement, as we point out in

10   our brief, does not do enough.  Again, we're not saying that

11   it doesn't do anything.  It does.  But it doesn't do enough.

12              And I would point Your Honor to page 22 of our

13   brief in which we lay out the very specific areas that

14   Dr. Becker was required to review, what her assessment of

15   those areas were, her recommendations for what needed to be

16   done in those areas in order to bring the program up to

17   minimally compliant, and where we point out in many cases

18   the settlement agreement is simply silent.

19              So just by way of example, with regards to the

20   gradual de-escalation of restraints, Dr. Becker found that

21   the program was not minimally compliant with regards to that

22   issue.  And that issue is important, Your Honor, because the

23   purpose of the program is to ultimately allow these

24   individuals to re-enter society, and if the restraints on

25   these individuals aren't gradually de-escalated, then there

1     won't be a smooth transition to society.  So Dr. Becker

2     reviewed that area, how the program addresses that area, she

3     found it wasn't minimally compliant.

4          And what did she say that the program had to do?

5     Offer greater opportunities for furloughs, supervised

6     furloughs into the community, creation of the group home,

7     increased visitation and recreational schedules, changes in

8     the living arrangements.  And the settlement agreement,

9     quite frankly, is silent on all of those recommendations.

10    And that is just one of five or six areas where the

11    settlement agreement does not speak at all to the

12    recommendations that are made by Dr. Becker.

13         And again, the reason that Dr. Becker's report is

14    critical here is because it speaks to the Girsh factors.  So

15    let's talk quickly about the Girsh factors.

16         JUDGE CAVANAUGH:  I am familiar with them, but you

17    may if you wish.

18         MR. KISLIN:  Understood, and I'll be very brief,

19    Judge.

20         Risk of establishing liability.  We submit that

21    the risk of establishing liability based on Dr. Becker's

22    report is minimal, if any.

23         Risk of establishing damages.  As Ms. Moses points

24    out, the damages portion of the case is not being resolved

25    here; it only resolves the injunctive relief portion.  But

1    as to the injunctive relief sought, we believe that

2    Dr. Becker's report gives the Court the framework of what

3    needs to be done in order to bring the program up to minimal

4    compliance.  So the risk of establishing the injunctive

5    relief we believe is minimal, if any.

6              And the same thing with regards to the range of

7    reasonableness of the settlement in light of the risks and

8    in light of the best possible outcome.

9              And with regards to the complexity and duration of

10   the litigation, Judge, granted, this case has been pending

11   for 10 years, and we definitely appreciate the sentiment of

12   class counsel that, let's get something done.  But we've

13   heard from many, many of the Plaintiffs here, and they would

14   prefer to get something done that brings the program up to

15   minimally compliant and has some teeth to it and accept that

16   there is going to be some additional delay.  They would

17   prefer that than to have a settlement that doesn't meet the

18   constitutional standards and that doesn't have any real

19   enforcement mechanism built into it.

20             And that brings me to the next point, Judge, which

21   is that the settlement agreement here, with no promise of

22   funding, is really just an illusory contract.  The State has

23   not bound itself to do anything.  If it can't fund these

24   programs, if it can't fund the reforms, then it can't meet

25   its obligations under the agreement, and here, there is no

1    provision for funding.  There's not even a promise that the

2    governor will ask the legislature for funding.  In fact,

3    it's just the opposite:  It's a complete disclaimer that,

4    we'll do our best to get the governor to put it in the

5    budget, but, you know, we can't control the governor, and

6    even if the governor does get it into the budget, we can't

7    control the legislature.

8           And what's the remedy?  Well, the remedy is, well,

9    you can restart the litigation.  But if that's the case,

10   Judge, then who knows how long from now we -- it's likely

11   we'll be back before the Court saying, they, don't have the

12   funding, they can't institute these reforms, so here we are

13   again.

14          Again, that goes to the complexity and duration of

15   litigation, because the purpose of the settlement is to save

16   the Court and the parties time, money, resources, and

17   without that definitive funding, we don't believe that the

18   settlement does that.

19          Now, in response to that, the moving parties have

20   pointed out a couple of settlements in the past that the

21   Government has funded.  One is from I believe 1999 and one

22   is from I believe 2005.  But, importantly, in each of those

23   agreements, there was a commitment by the governor to

24   include in the budget the funding that the parties agreed

25   was necessary.  In one of the provisions -- I'm sorry, in

CHARLES P. McGUIRE, C.C.R.

1        one of the cases, the matter was left open pending a

2        determination by the legislature as to whether the budget

3        would be approved.  If it wasn't approved, then the case was

4        going to go forward.  In the other instance, there was a

5        very detailed dispute resolution program built in, and if

6        the budget wasn't approved, then the parties would meet,

7        they would negotiate, and there were very definitive steps,

8        with reinstituting the litigation being the very last

9        resort, because, again, if your only remedy if the State

10       doesn't fund is to come back to court and reopen the

11       litigation, it doesn't really achieve the goals of the

12       settlement.

13            We would also point out, Judge, in

14       Wyatt v. Aderholt, which is a 5th Circuit case from 1994

15       which stands for the proposition that the budgetary concerns

16       cannot stand in the way of the state satisfying its

17       constitutional obligations, in this case, the constitutional

18       obligation to provide minimally adequate treatment.  So

19       while counsel points out that assuming the success, it could

20       take years, yes, we understand that, and ultimately, the

21       parties might not get anything more than what's in the

22       settlement, but if it's obtained through a judgment which is

23       accompanied by the force of court, while it may take time to

24       enforce that judgment, at least the parties have that, and

25       the State can't say, Well, we can't fund this, so you're not

1         going to get any benefits.

2                    So, again, I think many of the objectors pointed

3         out they would prefer to proceed to judgment on the back of

4         the expert report, whether it's Dr. Becker's report, which

5         was submitted for settlement purposes only, we have other

6         expert reports that seem to indicate basically the same

7         conclusions that Dr. Becker indicates, so the Plaintiffs

8         would prefer to proceed and get a judgment that will be

9         enforceable even if it's going to take a little bit more

10        time.

11                   And lastly, Judge, I just come back to the

12        reaction of the settlement class.  Here you have over one

13        third of the potential class members objecting, including

14        two of the three named class members, which in and of itself

15        is not determinative but certainly speaks volumes as to what

16        the residents in the Special Treatment Unit think of the

17        settlement as it's been negotiated.  Again, we've attempted

18        to consolidate the objections and put forth the objections

19        that we believe are most compelling to the Court, some of

20        the other objections, included objections to the class and

21        the certification of the class.  And we would urge the

22        Court, as I'm sure it has, to consider those objections, and

23        those objections represent the voice of the absent class

24        members, whose interests here must be protected, especially

25        because there is no opportunity to opt out.  Once the

1      settlement is approved, everyone's a part of it, and these

2      particular claims go away for all of the Plaintiffs here.

3                  And unless the Court has any other questions...

4                  JUDGE CAVANAUGH:  Thank you.

5                  MR. KISLIN:  Thank you.

6                  JUDGE CAVANAUGH:  Before we have you respond, let

7      me see, Mr. Furlong, do you have anything you want to say?

8                  MR. FURLONG:  I apologize, Your Honor, because I

9      was one of the people stuck on Route 202 and I was late for

10     the proceeding.

11                 And Judge Falk has always been very indulgent of

12     my -- schedule, put it that way.

13                 I don't know if counsel specifically preserved

14     Mr. Moore and Ms. Hysler's objection that -- there is a very

15     tortured procedural history with a separate docket number,

16     but I was going to seek some arcane procedural relief from

17     the Court at the conclusion of the proceeding, unless

18     Your Honor wanted to hear it now.

19                 JUDGE CAVANAUGH:  I'll hear it now.

20                 MR. FURLONG:  Very well, Your Honor.

21                 Mr. Moore, a resident of the STU, and Ms. Hysler

22     are engaged to be married.  We filed suit under

23     Moore v. Brown, Docket 05-2179.  There were four counts in

24     the complaint, one with respect to the exercise of religious

25     liberty, one with respect to his right to marry, and two

CHARLES P. McGUIRE, C.C.R.

1    with respect to the common claims here, conditions of

2    confinement and the treatment protocol.

3            The state moved to dismiss or in the alternative

4    for summary judgment on the first two claims.  The matter

5    was fully briefed before Judge Lifland, who was pending

6    retirement, although he didn't bother to tell me that, but I

7    don't think he's obligated to tell me that.

8            JUDGE CAVANAUGH:  He does that.

9        (Laughter)

10           MR. FURLONG:  You know, he thinks that if your

11   hair goes white, you're allowed to go home.  I don't know

12   what that --

13       (Laughter)

14           JUDGE CAVANAUGH:  I was hoping for that.

15       (Laughter)

16           MR. FURLONG:  I meant naturally white.

17           No, no, I'm kidding.

18       (Laughter)

19           MR. FURLONG:  In any event, we consented to a

20   consolidation of the larger claims into the Alves litigation

21   with the understanding that the underlying summary judgment

22   motion was going to be decided, and in response to

23   Judge Falk's letter to me --

24           JUDGE CAVANAUGH:  Are you seeking a severance?

25           MR. FURLONG:  Of those claims so that that motion

1    can be decided pursuant to Rule 21, as Judge Falk suggested

2    in his letter to me of July 2nd.

3            JUDGE CAVANAUGH:  Yes.

4            MR. FURLONG:  And let me take this opportunity to

5    commend Judge Falk for his perseverance.  Since the day he

6    took the bench, I think, Your Honor landed him with this

7    case --

8            JUDGE FALK:  Thank you, sir.

9            MR. FURLONG:  -- And he's been extremely patient.

10           JUDGE CAVANAUGH:  Well, on occasion.

11       (Laughter)

12           JUDGE CAVANAUGH:  Thank you.  I think we're going

13   to wind up severing your matter anyway and dealing with

14   that.

15           MR. FURLONG:  Very well, Your Honor.

16           JUDGE CAVANAUGH:  You've preserved what I think

17   you have to preserve here.

18           MR. FURLONG:  I've communicated my objection to

19   class counsel, and I think I've stated my case, Your Honor.

20           JUDGE CAVANAUGH:  I think Ms. Moses was about to

21   get into that before you stood up in court, but I think

22   you've protected your client.

23           MR. FURLONG:  Very well, Your Honor.  Thank you.

24           JUDGE CAVANAUGH:  Do you wish to respond to -- or

25   the Attorney General may also respond.


                    CHARLES P. McGUIRE, C.C.R.

1          MS. MOSES:  David?

2          MR. DaCOSTA:  I'll leave it to Ms. Moses.

3          MS. MOSES:  If only he were like that all the

4     time.

5        (Laughter)

6          MS. MOSES:  With respect to Mr. Kislin's

7     presentation, we, class counsel at Seton Hall Center For

8     Social Justice and Gibbons, like Mr. Kislin and Mr. Marx and

9     the Greenberg Traurig lawyers, would have liked to negotiate

10    more of Dr. Becker's recommendation into the settlement

11    agreement, and we tried pretty hard to do that, as is set

12    forth in the declaration of Baher Azmy, my predecessor, and

13    Mr. DaCosta, and as Judge Falk knows from his personal

14    involvement in the case.

15          Where we part company with the Bagarozy Plaintiffs

16    on this issue is our respective assessment of whether the

17    Plaintiffs would likely achieve more of those

18    recommendations should the case proceed to trial.

19          The Bagarozy Plaintiffs argue in essence that

20    since Dr. Becker was, quote, appointed by the Court, close

21    quote -- which I must hasten to add, she was not; she was

22    chosen by the parties, retained and paid by the parties.

23    The Court did execute a stipulated order governing

24    settlement procedures, which appears in the docket as

25    document number 214 --

1              JUDGE CAVANAUGH:  Yes, that's my recollection,

2      that she was --

3              MS. MOSES:  -- at the moment.

4              JUDGE CAVANAUGH:  -- presented to me, to Judge

5      Falk as agreed upon by the parties and as an individual who

6      had the expertise to do what you needed to have done.

7              MS. MOSES:  That's correct.

8              JUDGE CAVANAUGH:  I think the argument that

9      counsel was making, I took it as more going to the fact that

10     since the name was originally presented by the State that

11     then they should recognize the obligation to do all the

12     things that she recommended, as opposed to some of them

13     pursuant to the settlement.  I think he was just saying this

14     adds credence to his argument that the State recognizes that

15     her recommendations would be the appropriate recommendation.

16             MS. MOSES:  Well, I see Mr. Kislin nodding.  I

17     actually think that's half of the Bagarozy Plaintiffs'

18     argument.  I think they go a bit further and argue, as

19     Mr. Kislin just said, that in their view, the risk of

20     establishing liability is minimal at trial because of the

21     Becker report, the argument I think being that the State

22     would not be in a position at trial to contest Becker's

23     recommendation.

24             JUDGE CAVANAUGH:  Perhaps -- I was suggesting the

25     same thing.

CHARLES P. McGUIRE, C.C.R.

1          MS. MOSES:  So, again, putting on my scrupulously

2     jaundiced eye, which is, in a sense, the kind of eye you

3     need to employ at settlement, I think the problem with that

4     approach -- there are a couple of problems with that

5     approach.  First, the Becker report may not be admissible at

6     trial, as Your Honor recited --

7          JUDGE CAVANAUGH:  Well, for settlement only.

8          MS. MOSES:  Well, that's what Your Honor said

9     during your presentation at the outset this morning, and I

10    know that that's the position of Mr. DaCosta and the

11    Attorney General's Office.  On behalf of Plaintiffs and the

12    class, we would take a different position.  My predecessor,

13    Baher Azmy, does not recall any understanding to that

14    effect.  It doesn't say that in the order governing

15    settlement procedures.  But at a minimum, there would be a

16    fight over that, and I can't predict how that fight would

17    come out.  So that is a real consideration, Your Honor.

18          Secondly, it is not the case that Dr. Becker --

19    and I'm trying to quote from my friend on behalf of the

20    Bagarozy Plaintiffs -- it is not the case that Dr. Becker

21    assessed adequacy, quote, under the standards, they have to

22    be minimally adequate under mainly the Youngberg standard,

23    close quote.

24          If you look again at the order governing

25    settlement procedures, it doesn't say anything about the

CHARLES P. McGUIRE, C.C.R.

1      <u>Youngberg</u> standard, either expressly or in substance.

2      Rather, it says that she will use the professional standards

3      that she deems most adequate.  And as counsel acknowledged,

4      there are no universal set of professional standards for sex

5      offender treatment programs such as the program at the STU.

6              And the <u>Youngberg</u> standard, as I mentioned earlier

7      -- unfortunately; I wish this were otherwise -- the

8      <u>Youngberg</u> standard does not say that a treatment program

9      must come up to the level deemed appropriate by a well

10     respected practitioner and scholar in the field such as

11     Dr. Becker.  The <u>Youngberg</u> standard instead says, and I am

12     now paraphrasing, that minimally adequate means it has to be

13     acceptable to some professional somewhere who is not so far

14     off the map that it can be said that no professional

15     judgment was exercised.

16             There is a wide range of expert opinion in the

17     field of sex offender treatment, former sex offender

18     treatment.  Just anecdotally, the director of the STU and

19     the lead Defendant in this case, Dr. Merril Main, has been

20     qualified and testified as an expert in the <u>Strutton v. Mead</u>

21     case out in the 8th Circuit, where he testified that

22     treatment substantially less adequate than the treatment

23     that currently exists at the STU would be in his judgment

24     minimally adequate under professional standards.  I am by no

25     means endorsing --

1            JUDGE CAVANAUGH:   I understand.

2            MS. MOSES:   -- Dr. Main's view.   I merely point

3     out that there is a wide range of professional opinion on

4     this subject, and I don't believe, looking very closely at

5     Dr. Becker's report and at the order governing settlement

6     procedures, that there is an easy jump from what Dr. Becker

7     said to what the Constitution mandates.

8            And finally on that point, I would simply mention

9     again that the reason I think the Bagarozy Plaintiffs depend

10    so heavily on the Becker report is that they don't have any

11    cases which tell them that what Dr. Becker recommends is, in

12    fact, what the Constitution requires.   When you look at the

13    cases out there that have been litigated, when you look even

14    at the one case out there, the Canupp case in Florida, which

15    has been settled and as to which the Court approved the

16    settlement under Rule 23, you don't see anything like the

17    full panoply of improvements that Dr. Becker recommended.

18           Turning to the funding provisions, I think there

19    are two cases that pretty much dispose of the funding

20    contention.   The first is Lavelle v. Monsanto, cited by the

21    Bagarozy Plaintiffs, which held that a settlement with a

22    funding contingency was inadequate, but not because of the

23    danger that the funding wouldn't come through, in that case

24    from the Federal Government, from Congress.   Rather, in

25    Lavelle, the Court's concern was that the Plaintiffs had no

1    recourse at all in the event that the funding did not come

2    through.  They did not have the ability to declare the

3    settlement agreement void and to return to litigation.  And

4    in a footnote, the Court suggested strongly that if the

5    provision had been written to permit the Plaintiffs to

6    resume litigation in the event of inadequate funding, then

7    the problem would be substantially alleviated.

8         The second case is Austin v. The Pennsylvania

9    Department of Corrections from the Eastern District of

10   Pennsylvania.  In that case, nothing in the settlement

11   agreement was enforceable.  The funding provision was not

12   enforceable, and the substantive provisions were not

13   enforceable.  The only recourse that the Plaintiffs had as

14   to anything written in the settlement agreement was to

15   declare the agreement void and to recommence litigation, and

16   the district judge in Austin felt that that was adequate

17   enforcement under the circumstances.

18        Finally, there is an empirical question here as

19   well, which is how likely is it that the State is going to

20   fail to come up with the required funding.

21        I obviously hope that that is not the case.  What

22   I can report to the Court is, I have not seen any indication

23   to date that the State is unlikely to come up with the

24   funding.

25        In the prior cases, as the Bagarozy Plaintiffs'

CHARLES P. McGUIRE, C.C.R.

1    counsel mentioned, the State has entered into similar

2    settlement agreements which have not collapsed or been

3    voided for lack of funding.

4         With regard to the current settlement agreement --

5    you can see this from the declarations of Dr. Main -- the

6    Defendants have already begun to implement provisions of the

7    settlement agreement, and they have done so with funds that

8    were appropriated as part of the 2013 appropriations act,

9    which, you know, we're in the middle of fiscal 2013 now.

10   They have posted psychologist positions for hire; they have

11   hired a couple of them already at last count.  They had the

12   funds to hire more.  And I'm just not seeing the indicia

13   that I would be looking for, that I have been looking for

14   and that I would worry about if what we had here was a

15   likelihood of financial default.

16        So I obviously can't make any guarantees to the

17   Court; the State hasn't made them to us, and I would not

18   attempt to predict the future here.  But what I can say is

19   that I don't see any legal or empirical support for the

20   notion that the funding provision makes the settlement

21   inadequate.

22        And unless the Court has further questions...

23        JUDGE CAVANAUGH:  Anybody else have anything to

24   say on the subject?

25        MR. DaCOSTA:  No, Your Honor.

1          JUDGE CAVANAUGH:  All right.

2          Did you have anything to say, Judge Falk?

3          JUDGE FALK:  No.

4          JUDGE CAVANAUGH:  There is a lot in front of the

5   Court here, as it was our obligation to have this hearing to

6   let you advise us of your concerns, of your positions.  You

7   have done that.  You have also done that in your filed

8   papers.

9          The Court is going to reserve on both its ultimate

10  ruling, because I would like to go back and digest some of

11  this.  We're going to get a copy of the transcript, we're

12  going to look at this carefully, and I would think within

13  two weeks' time, we will enter an opinion and order

14  regarding our position as to the settlement.

15         I would like to commend counsel for all the hard

16  work that you've done on behalf of these individuals.  It's

17  a very difficult situation.  The Court is well aware of the

18  tensions involved with constitutional rights of individuals

19  and the mandates upon the State to protect its citizens and

20  the problems that we've all encountered.  That's one of the

21  reasons this case has been around so long.

22         And I am hopeful that one way or the other we will

23  bring some resolution and do the right thing for all

24  involved.

25         Thank you very much.


                    CHARLES P. McGUIRE, C.C.R.

1          MS. MOSES:  Your Honor, Plaintiffs thank you, Your

2      Honor.

3          MR. KISLIN:  Thank you.

4          MS. MOSES:  One thing more, and I apologize.

5          Our class representatives, as you know, were

6      unable to be with us today because they are incarcerated at

7      the Special Treatment Unit, as are most of the objectors.

8      But in looking around the courtroom just now, I believe I

9      saw Mr. Minatee?  Is that correct?  And who else?

10          FROM THE GALLERY:  Mr. Brooks.  Mr. Brooks.

11          MS. MOSES:  And Mr. Brooks, who are former

12      residents of the Special Treatment Unit who have been

13      conditionally discharged, and they were able to come to the

14      hearing today, and I just wanted the Court to be aware of

15      their presence.

16          JUDGE CAVANAUGH:  Did they want to address the

17      Court in any way?

18          MR. LAMONT BROOKS:  I would like to address the

19      Court, Your Honor.

20          JUDGE CAVANAUGH:  All right.

21          MR. BROOKS:  From here?

22          JUDGE CAVANAUGH:  Come on up here, sir.

23          MR. BROOKS:  Good afternoon.

24          My name is Lamont Brooks.  I'm one of the first 27

25      complainants about the violation that was imposed against my

1   constitutional rights at the STU Annex.

2          As of 2003, I was civilly committed under

3   conditions that were appalling.  My constitutional rights

4   were violated across the board by the State of New Jersey.

5          Representative by Mr. Ian Marx -- I think that's

6   who he is -- represented the Plaintiffs, and Ms. Moses

7   represents Seton Hall, and they represent a very few of the

8   population.

9          STU has been trying somewhat to continue to sweep

10  the violations that they imposed upon the residents there

11  under the rug.  They brought in Ms. -- what was her name?

12          MS. MOSES:  Dr. Becker?

13          MR. BROOKS:  Dr. Becker.  Thank you.

14          They brought in Dr. Becker to give an evaluation

15  of the violations of the constitutional rights that was

16  against us, that was being done against us.

17          As of 2012, February, I was granted a conditional

18  discharge release.  I had two aggravated sexual assaults on

19  adult women.  Not to say that my conduct and behavior is

20  supposed to be accepted by lawful society, because I

21  understand that, the violations, and I know they're not

22  accepted by society.  I did 15 years of treatment.  And I

23  was granted my release as of September 2012, the 6th, of

24  2012, I was granted my release.  I'm on a -- I'm on a

25  tracking device that I have to report to parole with, and

1       they keep on -- aware of my surroundings and where I go at.

2       It's tracking me.

3               These things here was asked for by the residents

4       back in 2007.  It was denied.  Not to say that everyone

5       should have this opportunity, Your Honor, because I

6       understand that.  I was there, and I do know the severities

7       of some charges that are there.  I'm not saying that.  But

8       the constitutional rights, what I'm saying, as a human

9       being, has been violated.

10              Now, I'm not saying that everybody at the STU

11      Annex deserves to be released because I know that that's not

12      going to happen, Judge.  But the rights of the Constitution

13      should be upheld.  The human rights, the human rights should

14      be upheld.

15              The living conditions are appalling, Your Honor.

16      You know, when you stack these 12 chairs here and you put 36

17      guys in these 12 chairs, that's appalling.  I lived in the

18      conditions - 86 men with four toilets to use, two urinals,

19      three showers, and two -- and three sinks.  I have to wait

20      in line to use the bathroom, and a lot of those guys had to

21      do the same thing.

22              I appreciated counsel, the way that they tried to

23      represent us.  And we would just like -- the guys at the STU

24      would just like to be represented properly.  Not saying that

25      counsel isn't representing us properly, but they would like

CHARLES P. McGUIRE, C.C.R.

1    to be represented properly and would like Dr. Becker's

2    report to be the full front of our complaint, because she

3    gave a decent, honest report.  She talked to the guys there,

4    and she represented us properly.

5         The State chose Ms. Becker.  The State chose

6    Ms. Becker.  We didn't have the opportunity to choose who we

7    wanted, but we allowed the State to choose, and they chose

8    Ms. Becker, and now they don't want Ms. Becker's report to

9    be heard properly.  And that's kind of, you know, sad --

10   it's sad.  It's sad.

11        Another thing that is being done at STU, when I'm

12   granted conditional release, Your Honor, I have to come, I

13   have to pay my own freight.  I have to save up money.  I'm

14   not allowed to collect taxes, I'm not allowed to pay taxes.

15   Your taxpayer dollars support STU.  I make a minimum wage.

16   I make $4 an hour at the STU Annex.  And 7.25 an hour, I

17   can't collect taxes, I can't pay taxes, and I'm not allowed

18   to collect Social Security.

19        But then I have to come into normal society and

20   live like everybody else lives.  I don't have a job.  I

21   haven't been able to get a job.  I've been trying to, but I

22   haven't been fortunate enough yet.  And my rent is $500 a

23   month.  Once my money runs out and I can't pay my rent no

24   more and welfare is not affordable to continue to help me

25   pay my rent, I have to return to the STU Annex, and then I

CHARLES P. McGUIRE, C.C.R.

1      have to go back there and earn a living again to come back

2      to normal society.

3            Mr. Minatee pays a thousand dollars a month rent,

4      and he lives in a rooming house as well.

5            The State told us that once we are released that

6      they would have funding for us that we could collect and it

7      would be towards our living conditions, to help us pay our

8      rent and our well-being in society, for the well-being of

9      the rest of society.

10           None of these things up here are given to us.  I

11     have to go to One Stop Career Center and I have to go down

12     there, look for a job, which is -- which is normal, for the

13     normal working family, the working people of society, that's

14     normal.  I have to go to welfare and try to get some

15     beneficial benefits, and that's normal for anybody that's

16     struggling in society.  I have to go to other agencies and

17     try to get some help from other agencies, when the number

18     one agency that's supposed to help me is not helping me, and

19     that's the STU Annex.

20           They tell us these things, and we get millions of

21     dollars, State give millions of dollars to the STU Annex,

22     millions, to pay guys a minimum wage and start at the STU

23     Annex, and for every guy that's there right now -- pardon

24     me.  For every guy that was released right now, it's still

25     being -- still on the records as STU Annex as I'm still

CHARLES P. McGUIRE, C.C.R.

1      there.  Me myself, I'm still on the records, they're still

2      getting money, a grant for me, and I'm released.  That

3      grant's supposed to come to me.

4              Your Honor, it's real, real, real -- it hurt a lot

5      to see the medical department refuse a human being his

6      proper rights for medical treatment.  Your Honor, I was

7      there in the STU unit for 10 years.  I was there 2003 to the

8      present day, and to present day up to being released, and I

9      have seen 36 guys die from cancer, heart attacks - just a

10     blatant malpractice of the medical department.  You talk

11     about treatment.  I been to treatment, talking about my

12     crime for the last 10, 15 years, the same crime, and I

13     couldn't move forward if I didn't talk about this crime,

14     which I had no problem doing.  If you're going to continue

15     to hold me to my past, then I will never -- you will never

16     allow me to change, you will never allow me to move forward

17     in life.  And that's what's been going on in the STU Annex.

18     If the only thing being focused on is my past and not who I

19     am today, then something's wrong.

20             Fortunately, I made it through, Your Honor, and I

21     tried to prove to them that I am a changed man.  I'm willing

22     to come out here into society and live in the normal society

23     and follow the laws of society, abide by all the rules.

24             I know one of the rules says no more victims.  You

25     know, we have a pledge in the STU Annex, and the pledge goes

CHARLES P. McGUIRE, C.C.R.

1      like this here, Your Honor:  I vow to uphold the right of

2      every individual, to not violate or deny anybody their own

3      mutual rights as a human being.

4              Your Honor, if it please the Court, I was in the

5      therapeutic community for three years.  The therapeutic

6      community is the one way that you can be transitioned out of

7      STU Annex.  It separates the whole top population.  I do the

8      same treatment as the rest of the population, but they put

9      you in the TC, the therapeutic community, because they get a

10     Federal grant for the therapeutic community, and that is the

11     way that you transition out of the STU Annex.  You cannot

12     transition out of the STU Annex if you don't go through the

13     therapeutic community.  It's what they tell the residents

14     there.  And it's not true.  It's not true, because

15     Mr. Minatee didn't come through STU Annex upon his

16     discharge.  He was once in the TC.  They kicked him out of

17     the TC.  And they tell each and every resident there, if you

18     want to be released, you have to go through the TC

19     community, which they get a Federal grant for every year

20     during the fiscal year, they get money just for this part of

21     the program.  This part of the program is a dorm itself.  It

22     isn't part of the population.  This is a dorm.  And this

23     dorm housed -- I think it housed 82 men.  This has been

24     going on for quite some time at the STU Annex.

25              It's -- it's really, really, really sad, because a

CHARLES P. McGUIRE, C.C.R.

1    lot of guys there today, they realize they was taught to

2    look at their behaviors.  A lot of guys won't get out, Your

3    Honor.  A lot of guys have been told they're never getting

4    out.  Which is understandable, because some guys did some

5    real horrific stuff, and not to say that what I did was any

6    less or worse than they did.  We all violated the laws of

7    society, and I understand that.  We just want rights to be

8    upheld, the rights, that they be upheld, you know?

9            And you hold me accountable, Your Honor, if I do

10   something wrong.  I was held accountable.  You know, I had

11   to go and I had to serve my time.  Then I was sent to the

12   STU Annex.  After serving my time, I was sent to the STU

13   Annex because they said that I had enough treatment.  So I

14   was angry, I was disappointed, I was hurt.  You know, you

15   took my life.  Not you, not to say the Court here, but I

16   blame people.  And my thing was, you took my life, took my

17   life away from me for 10 years.  I served my five-year

18   sentence.  Maybe it wasn't enough.  Then I come to terms

19   that maybe I did need a little more treatment.  I come to

20   terms with, okay, I got understanding now.  I see the help

21   that you try to offer.  But did it really take 10 years of

22   my life for you to offer me some help?

23           JUDGE CAVANAUGH:  All right.  Well, thank you.  I

24   appreciate your comments.

25           Do you want to say something, sir?

CHARLES P. McGUIRE, C.C.R.

1            MR. DOUGLAS MINATEE:  Yes, if I can.

2            Good morning, Your Honor.

3            JUDGE CAVANAUGH:  Good morning.

4            MR. MINATEE:  I ask God to give me the right words

5    today, because I didn't expect to be out here.

6            I've been released back in 2007, and my cousin, he

7    was a sex offender, so they put me back in the STU unit.

8    Waited two more years to get out.  Had another problem with

9    the same cousin.

10           What I want to speak about today, if I can, is the

11   discharge plans that they give people.

12           I am in a place -- I am in a place, a class E

13   boarding home, which costs me a thousand dollars.  I only

14   have $4,000 when I get out.  All of that -- all of that is

15   depleted right now.  I been down to welfare several times.

16   They wouldn't give me benefits because I'm in a class E

17   boarding home.  I've been to the One Stop Career Center.

18   I've been doing everything not to repeat my past, not to get

19   back on drugs, not to make any more victims.  But I was

20   given a little bit of help from the STU Annex.  I have a

21   social worker named Hector Rodriguez, which I contact all

22   the time, you know, to whatever I'm doing.  I felt that I

23   was set up, you know, because I been trying to find jobs,

24   but if you Google my name, you get sex offender, you get my

25   PCR case, which I thought shouldn't even be on the record.

CHARLES P. McGUIRE, C.C.R.

1          I've been in STU since -- I been committed since

2     1999.  I been committed on my father's -- the same day my

3     father went in the ground, that's the same day I was

4     committed.

5          I understand that my crime was wrong.  I molested

6     a four-year-old girl.  And I'm willing to take full

7     responsibility for everything I have done.  But at this

8     point, I cannot visit my daughter in Tampa, cannot visit my

9     sisters in North Carolina or Virginia.  I'm on a tracking

10    device also.  When I committed my crimes, none of these

11    things were in effect.  I can't get any help from counsel,

12    you know, on these matters, because it seems as though it's

13    being ran retroactive when the Appellate Division said it

14    shouldn't be ran retroactive.  If you look at my name, you

15    will see that I have several lawsuits in these courts, and

16    some of them were maybe not as strong as they should be

17    because I'm not a lawyer myself.  But I feel as though that

18    there is a lot of suffering in the STU Annex, you know,

19    there's a lot of noise in there.  To me, I think it's more

20    of a dungeon than a treatment center.  This is my opinion.

21    I may be wrong.  Some people do get better and get out, you

22    know.  But they have to do the right thing.

23          I'm just thankful to be able to express myself

24    today on the streets and not there, and to let society know

25    that they can be safe with me out there.  I don't have a

1    huge record of molesting kids, and I would like -- kind of

2    like to get my past, put it in its right proper perspective

3    place.  I don't mind registering.  I don't mind doing

4    anything to stay out here, you know.

5          And I would just like to thank the Court for its

6    time and its patience.  Thank you.

7          JUDGE CAVANAUGH:  Thank you.

8          I appreciate both of your comments.

9          Anything further, counsel?

10    MS. MOSES:  Nothing further, Your Honor.

11    JUDGE CAVANAUGH:  All right.  Well, again, I

12    appreciate, gentlemen, that you came in here today,

13    appreciate counsel, and as I stated earlier, we will give

14    this our full attention and get something out to you,

15    hopefully within the next 14 days.

16          Thank you.

17    MS. MOSES:  Thank you, Your Honor.

18    (Matter concluded)

19

20

21

22

23

24

25

CHARLES P. McGUIRE, C.C.R.

**$**

**$4,000** [1] - 57:14
**$500** [1] - 52:22

**'**

**'01** [1] - 4:11

**0**

**01** [1] - 3:5
**01-cv-789-DMC-MF** [1] - 1:4
**05-2179** [1] - 38:23
**07102** [2] - 2:7, 2:9
**07932-0677** [1] - 2:3
**08625-0112** [1] - 2:17
**08628** [1] - 2:13

**1**

**10** [6] - 26:17, 34:11, 54:7, 54:12, 56:17, 56:21
**100** [2] - 27:13
**101.(1)(h)** [1] - 3:24
**12** [3] - 17:23, 51:16, 51:17
**13** [1] - 1:10
**14** [1] - 59:15
**15** [2] - 50:22, 54:12
**150** [1] - 28:16
**156** [2] - 9:20, 16:17
**15th** [1] - 6:25
**18** [1] - 18:1
**1994** [1] - 36:14
**1999** [2] - 35:21, 58:2

**2**

**20** [1] - 8:19
**200** [1] - 2:2
**2001** [2] - 6:25, 7:2
**2002** [1] - 7:4
**2003** [2] - 50:2, 54:7
**2005** [2] - 7:23, 35:22
**2007** [2] - 51:4, 57:6
**2008** [2] - 8:5, 8:13
**2011** [1] - 8:15
**2012** [9] - 1:10, 8:19, 8:24, 9:5, 9:9, 16:11, 50:17, 50:23, 50:24
**2013** [2] - 47:8, 47:9
**202** [1] - 38:9
**21** [1] - 40:1

**214** [1] - 41:25
**22** [1] - 32:12
**23** [1] - 45:16
**23(a** [2] - 9:11, 14:16
**23(b)(2** [3] - 9:12, 9:15, 14:18
**23(e** [1] - 16:9
**24** [1] - 9:5
**25** [1] - 2:16
**27** [1] - 49:24
**28** [1] - 1:21
**29** [7] - 8:13, 9:9, 17:21, 17:25, 18:4, 18:9, 18:14
**2nd** [1] - 40:2

**3**

**30** [1] - 7:14
**304** [1] - 2:12
**30:4-27.24** [1] - 5:14
**30th** [1] - 7:4
**36** [2] - 51:16, 54:9
**3rd** [1] - 8:24

**4**

**4** [1] - 52:16
**463** [1] - 16:15
**471** [1] - 9:17
**4th** [1] - 16:11

**5**

**5th** [3] - 10:25, 12:2, 36:14

**6**

**6th** [1] - 50:23

**7**

**7.25** [1] - 52:16
**753** [1] - 1:21
**789** [1] - 3:6

**8**

**82** [1] - 55:23
**820** [1] - 2:12
**833** [1] - 2:6
**86** [1] - 51:18
**8th** [2] - 25:1, 44:21

**9**

**9th** [1] - 7:2

**A**

**abide** [1] - 54:23
**ability** [2] - 28:5, 46:2
**able** [5] - 15:6, 15:10, 49:13, 52:21, 58:23
**abnormality** [2] - 5:20, 6:6
**absent** [1] - 37:23
**absolutely** [1] - 4:19
**accept** [1] - 34:15
**acceptable** [1] - 44:13
**accepted** [3] - 31:24, 50:20, 50:22
**access** [3] - 17:25, 18:3, 21:16
**accompanied** [1] - 36:23
**accordance** [2] - 16:9, 29:2
**accountable** [2] - 56:9, 56:10
**accurate** [1] - 1:22
**accurately** [1] - 11:7
**achieve** [7] - 18:18, 19:19, 19:20, 26:5, 27:21, 36:11, 41:17
**achieves** [2] - 19:21, 19:24
**acknowledged** [2] - 31:22, 44:3
**act** [1] - 47:8
**Act** [5] - 5:14, 5:15, 6:9, 6:22, 9:10
**acted** [2] - 14:20, 27:7
**Action** [1] - 3:5
**action** [6] - 5:3, 6:18, 9:6, 9:15, 14:15, 27:24
**acts** [2] - 5:22, 6:3
**Adams** [1] - 25:5
**add** [2] - 21:16, 41:21
**additional** [5] - 7:14, 21:21, 26:6, 27:24, 34:16
**additionally** [2] - 16:25, 18:12
**address** [6] - 10:11, 10:14, 10:16, 22:17, 49:16, 49:18
**addressed** [4] - 11:11, 17:13, 17:17, 17:22
**addresses** [2] - 18:8,

33:2
**addressing** [1] - 16:7
**adds** [1] - 42:14
**adequacy** [6] - 5:5, 10:14, 14:17, 15:3, 16:7, 43:21
**adequate** [20] - 6:23, 9:13, 17:1, 25:2, 25:8, 29:2, 29:20, 29:21, 30:3, 30:19, 30:21, 30:22, 32:6, 36:18, 43:22, 44:3, 44:12, 44:22, 44:24, 46:16
**Aderholt** [1] - 36:14
**adhered** [1] - 22:17
**admissible** [1] - 43:5
**admonition** [1] - 10:22
**adult** [1] - 50:19
**advance** [1] - 10:22
**advancement** [1] - 20:5
**advise** [2] - 10:24, 48:6
**advisory** [1] - 31:14
**advocate's** [1] - 25:22
**affirmatively** [2] - 21:18, 21:19
**affordable** [1] - 52:24
**affording** [1] - 9:3
**afternoon** [1] - 49:23
**agencies** [2] - 53:16, 53:17
**agency** [1] - 53:18
**aggravated** [1] - 50:18
**ago** [1] - 10:25
**agreed** [5] - 8:17, 30:8, 30:10, 35:24, 42:5
**agreement** [26] - 8:24, 8:25, 17:23, 18:7, 18:20, 20:16, 22:9, 22:20, 23:20, 24:11, 24:14, 24:17, 26:3, 29:12, 32:18, 33:8, 33:11, 34:21, 34:25, 41:11, 46:3, 46:11, 46:14, 46:15, 47:4, 47:7
**agreements** [2] - 35:23, 47:2
**al** [2] - 1:4, 1:7
**allegations** [1] - 25:12
**allege** [2] - 17:12, 17:21
**alleged** [3] - 17:25, 18:4, 18:6
**allegedly** [1] - 27:3
**alleging** [1] - 17:16
**alleviated** [1] - 46:7

**allow** [3] - 32:23, 54:16
**allowed** [5] - 39:11, 52:7, 52:14, 52:17
**almost** [1] - 21:16
**alone** [1] - 17:21
**alternative** [2] - 24:20, 39:3
**ALVES** [1] - 1:4
**Alves** [10] - 3:2, 3:4, 7:1, 7:2, 7:8, 8:23, 11:1, 11:3, 39:20
**alves** [1] - 11:1
**Alves's** [1] - 11:7
**amended** [4] - 9:5, 22:25, 23:22, 24:13
**amount** [2] - 4:10, 31:10
**anecdotally** [1] - 44:18
**angry** [1] - 56:14
**Ann** [1] - 2:14
**Annex** [19] - 50:1, 51:11, 52:16, 52:25, 53:19, 53:21, 53:23, 53:25, 54:17, 54:25, 55:7, 55:11, 55:12, 55:15, 55:24, 56:12, 56:13, 57:20, 58:18
**annual** [1] - 20:19
**answer** [1] - 7:11
**antagonistic** [1] - 15:4
**anyway** [1] - 40:13
**apologize** [2] - 38:8, 49:4
**appalling** [3] - 50:3, 51:15, 51:17
**apparent** [1] - 8:5
**appeal** [1] - 26:7
**appearance** [2] - 7:21, 24:7
**appearances** [1] - 3:8
**APPEARANCES** [1] - 2:1
**appeared** [1] - 16:18
**Appellate** [1] - 58:13
**applicable** [1] - 14:20
**apply** [1] - 21:2
**appointed** [6] - 7:4, 22:5, 29:4, 30:16, 31:9, 41:20
**appointment** [2] - 8:6, 12:24
**appreciate** [6] - 16:2, 34:11, 56:24, 59:8, 59:12, 59:13
**appreciated** [2] - 19:13, 51:22
**approach** [2] - 43:4,

43:5
**appropriate** [9] - 4:19, 7:5, 23:16, 27:4, 31:19, 31:20, 31:22, 42:15, 44:9
**appropriated** [1] - 47:8
**appropriations** [1] - 47:8
**approval** [9] - 5:7, 8:18, 9:8, 9:22, 10:9, 14:13, 15:22, 28:20, 28:25
**approve** [1] - 15:20
**approved** [9] - 8:6, 9:13, 14:14, 27:2, 36:3, 36:6, 38:1, 45:15
**April** [1] - 16:11
**arbitrarily** [1] - 18:5
**arcane** [1] - 38:16
**area** [5] - 18:19, 23:11, 31:11, 33:2
**areas** [5] - 30:20, 32:13, 32:15, 32:16, 33:10
**argue** [2] - 41:19, 42:18
**argued** [1] - 27:11
**argument** [6] - 3:16, 3:23, 42:8, 42:14, 42:18, 42:21
**arguments** [4] - 28:18, 28:21
**arousal** [1] - 6:15
**arrangements** [1] - 33:8
**arrive** [1] - 26:5
**articles** [1] - 15:15
**ascertain** [1] - 11:6
**aspect** [1] - 3:15
**assaults** [1] - 50:18
**assessed** [1] - 43:21
**assessment** [2] - 32:14, 41:16
**assist** [2] - 4:19, 28:3
**assistance** [4] - 4:17, 8:4, 8:15, 16:3
**associated** [1] - 27:23
**assuming** [3] - 21:1, 25:17, 36:19
**attachment** [1] - 13:10
**attacks** [1] - 54:9
**attempt** [1] - 47:18
**attempted** [3] - 13:6, 28:16, 37:17
**attempting** [1] - 23:23
**attempts** [1] - 11:9
**attendance** [1] - 8:22

**attention** [1] - 59:14
**Attorney** [7] - 2:14, 2:15, 2:17, 4:4, 6:21, 40:25, 43:11
**attorneys** [1] - 4:18
**Attorneys** [2] - 2:4, 2:10
**Austin** [2] - 46:8, 46:16
**authority** [1] - 8:21
**authorizes** [1] - 5:15
**authors** [1] - 15:16
**available** [1] - 27:11
**Avenel** [2] - 5:6, 5:24
**Avenue** [1] - 2:2
**aware** [4] - 26:17, 48:17, 49:14, 51:1
**Azmy** [2] - 41:12, 43:13

**B**

**Bagarozy** [16] - 3:12, 7:16, 9:23, 11:11, 17:24, 19:21, 23:17, 28:13, 28:14, 41:15, 41:19, 42:17, 43:20, 45:9, 45:21, 46:25
**Baher** [2] - 41:12, 43:13
**BARBARA** [1] - 2:7
**Barbara** [2] - 3:19, 10:6
**Bargarozy** [1] - 7:18
**barred** [2] - 23:1, 24:13
**based** [2] - 23:24, 33:21
**basis** [3] - 6:7, 8:1, 23:16
**bathroom** [1] - 51:20
**Bear** [1] - 2:12
**became** [1] - 8:1
**Becker** [31] - 8:7, 8:12, 29:4, 30:5, 30:13, 30:16, 31:7, 31:20, 32:14, 32:20, 33:1, 33:12, 37:7, 41:20, 42:21, 43:5, 43:18, 43:20, 44:11, 45:6, 45:10, 45:11, 45:17, 50:12, 50:13, 50:14, 52:5, 52:6, 52:8
**Becker's** [12] - 30:17, 30:24, 32:4, 33:13, 33:21, 34:2, 37:4, 41:10, 42:22, 45:5, 52:1, 52:8
**BEFORE** [1] - 1:14

**beginning** [1] - 23:13
**begun** [1] - 47:6
**behalf** [12] - 3:16, 3:20, 7:8, 7:22, 7:25, 8:16, 27:3, 28:12, 28:16, 43:11, 43:19, 48:16
**behavior** [2] - 12:11, 50:19
**behaviors** [1] - 56:2
**below** [1] - 25:8
**bench** [1] - 40:6
**beneficial** [1] - 53:15
**benefit** [3] - 4:13, 5:1, 15:1
**benefits** [3] - 37:1, 53:15, 57:16
**best** [4] - 27:7, 29:10, 34:8, 35:4
**better** [5] - 9:3, 20:4, 21:6, 27:22, 58:17
**between** [4] - 5:8, 26:6, 29:12, 30:21
**beyond** [1] - 18:16
**bit** [4] - 29:15, 37:9, 42:18, 57:20
**blame** [1] - 56:16
**blatant** [1] - 54:10
**board** [1] - 50:4
**boarding** [2] - 57:13, 57:17
**boards** [1] - 31:13
**bono** [5] - 5:9, 7:4, 7:5, 7:8, 7:20, 9:22, 12:25
**bother** [1] - 39:6
**bound** [1] - 34:23
**brief** [6] - 9:23, 19:10, 19:12, 32:10, 32:13, 33:18
**briefed** [2] - 15:19, 39:5
**briefly** [4] - 10:11, 10:14, 10:16, 10:20
**briefs** [2] - 19:16, 28:8
**bring** [6] - 4:16, 30:1, 32:8, 32:16, 34:3, 48:23
**brings** [2] - 34:14, 34:20
**broad** [1] - 19:25
**brooks** [1] - 49:10
**Brooks** [3] - 49:10, 49:11, 49:24
**BROOKS** [4] - 49:18, 49:21, 49:23, 50:13
**brought** [15] - 5:3, 7:17, 11:14, 12:17, 16:12, 17:8, 17:12, 17:16, 17:23, 17:24,

18:11, 18:15, 27:3, 50:11, 50:14
**brown** [1] - 38:23
**Bruno** [2] - 3:25, 10:10
**BRUNO** [3] - 14:3, 14:8, 16:1
**budget** [5] - 35:5, 35:6, 35:24, 36:2, 36:6
**budgetary** [1] - 36:15
**built** [2] - 34:19, 36:5
**BY** [4] - 2:3, 2:7, 2:10, 2:13

**C**

**C.C.R.** [2] - 1:18, 1:24
**calculation** [1] - 26:25
**cancer** [1] - 54:9
**cannot** [4] - 36:16, 55:11, 58:8
**Canupp** [1] - 45:14
**capitulated** [1] - 30:15
**captioned** [1] - 7:16
**care** [2] - 5:23, 25:9
**career** [1] - 4:11
**Career** [2] - 53:11, 57:17
**careful** [1] - 22:24
**carefully** [3] - 19:17, 22:3, 48:12
**Carolina** [1] - 58:9
**carried** [1] - 22:20
**carries** [1] - 24:21
**case** [53] - 3:2, 3:5, 3:11, 3:15, 4:11, 4:12, 4:18, 6:3, 7:1, 7:15, 7:16, 8:23, 12:12, 13:19, 13:21, 14:10, 14:15, 14:23, 15:17, 18:8, 18:12, 24:10, 25:4, 25:20, 26:8, 26:16, 26:24, 27:1, 27:15, 32:1, 33:24, 34:10, 35:9, 36:3, 36:14, 36:17, 40:7, 40:19, 41:14, 41:18, 43:18, 43:20, 44:19, 44:21, 45:14, 45:23, 46:8, 46:10, 46:21, 48:21, 57:25
**cases** [29] - 4:14, 5:18, 7:14, 7:25, 17:13, 17:18, 17:19, 17:21, 17:23, 17:25, 18:1, 18:4, 18:6, 18:9, 18:10, 18:13, 18:14, 18:15,

18:17, 21:15, 24:24, 26:22, 32:17, 36:1, 45:11, 45:13, 45:19, 46:25
**caution** [1] - 16:20
**CAVANAUGH** [54] - 1:15, 3:1, 3:17, 4:1, 4:6, 4:8, 10:19, 11:18, 11:23, 12:1, 13:22, 13:25, 14:4, 15:24, 16:2, 17:6, 18:23, 19:6, 19:8, 19:11, 19:13, 24:1, 24:8, 28:9, 30:7, 33:16, 38:4, 38:6, 38:19, 39:8, 39:14, 39:24, 40:3, 40:10, 40:12, 40:16, 40:20, 40:24, 42:1, 42:4, 42:8, 42:24, 43:7, 45:1, 47:23, 48:1, 48:4, 49:16, 49:20, 49:22, 56:23, 57:3, 59:7, 59:11
**cc** [1] - 11:12
**cc'd** [1] - 12:5
**center** [1] - 58:20
**CENTER** [1] - 2:6
**Center** [10] - 2:9, 3:19, 5:9, 7:7, 7:9, 12:3, 15:17, 41:7, 53:11, 57:17
**ceremony** [1] - 23:25
**certain** [7] - 22:8, 22:13, 22:24, 24:12, 25:21, 26:4, 26:14
**certainly** [4] - 19:19, 22:22, 29:23, 37:15
**certification** [6] - 9:7, 14:10, 14:11, 14:13, 15:20, 37:21
**certified** [5] - 1:21, 9:9, 9:15, 10:12, 14:9
**chairs** [2] - 51:16, 51:17
**challenging** [3] - 5:4, 10:17, 24:25
**chance** [2] - 9:3, 9:19
**change** [3] - 17:19, 18:18, 54:16
**changed** [1] - 54:21
**changes** [2] - 11:21, 33:7
**charged** [1] - 5:18
**charges** [1] - 51:7
**CHARLES** [1] - 1:18
**choice** [1] - 23:25
**choose** [2] - 52:6, 52:7
**chose** [3] - 52:5, 52:7
**chosen** [1] - 41:22
**Circuit** [3] - 25:1,

36:14, 44:21
**circumstances** [1] - 46:17
**cited** [3] - 17:14, 26:23, 45:20
**citizens** [1] - 48:19
**civil** [2] - 5:15, 24:25
**Civil** [3] - 1:4, 3:5, 9:11
**civilly** [3] - 25:3, 29:18, 50:2
**claim** [2] - 6:22, 23:24
**claimed** [2] - 18:1, 18:3
**claims** [13] - 21:24, 22:24, 23:3, 23:15, 23:18, 23:21, 24:12, 38:2, 39:1, 39:4, 39:20, 39:25
**clarify** [1] - 12:22
**Class** [1] - 17:15
**class** [78] - 3:20, 5:3, 5:8, 6:10, 8:1, 9:3, 9:6, 9:7, 9:9, 9:15, 9:16, 9:17, 9:18, 9:20, 10:11, 11:4, 11:5, 12:10, 12:12, 12:15, 12:25, 13:1, 13:7, 13:15, 14:9, 14:10, 14:12, 14:15, 14:16, 14:19, 14:20, 15:4, 15:5, 15:9, 15:19, 15:20, 16:8, 16:10, 16:18, 17:2, 17:8, 17:12, 19:20, 20:10, 20:11, 22:11, 22:18, 22:19, 22:23, 22:24, 23:3, 23:16, 23:17, 25:18, 26:19, 27:5, 27:6, 27:7, 27:8, 27:21, 28:4, 34:12, 37:12, 37:13, 37:14, 37:20, 37:21, 37:23, 40:19, 41:7, 43:12, 49:5, 57:12, 57:16
**class-wide** [2] - 5:8, 8:1
**classification** [1] - 15:21
**Clause** [1] - 25:3
**clear** [5] - 5:11, 12:1, 16:20, 20:17, 23:12
**client** [1] - 40:22
**client's** [1] - 24:10
**clients** [2] - 28:17, 29:16
**close** [3] - 27:13, 41:20, 43:23
**closely** [1] - 45:4
**co** [1] - 4:3
**co-counsel** [1] - 4:3

**Code** [1] - 1:21
**collapsed** [1] - 47:2
**colleague** [2] - 3:13, 4:9
**collect** [4] - 52:14, 52:17, 52:18, 53:6
**comfort** [1] - 22:19
**coming** [1] - 18:25
**commend** [3] - 18:24, 40:5, 48:15
**comments** [2] - 56:24, 59:8
**commitment** [3] - 5:15, 25:1, 35:23
**committed** [9] - 5:4, 5:25, 25:4, 29:18, 50:2, 58:1, 58:2, 58:4, 58:10
**Committee** [2] - 20:21, 20:23
**committees** [1] - 31:14
**common** [2] - 23:2, 39:1
**commonality** [1] - 14:17
**commonly** [1] - 20:9
**communicated** [1] - 40:18
**communication** [2] - 11:14, 20:4
**community** [7] - 33:6, 55:5, 55:6, 55:9, 55:10, 55:13, 55:19
**company** [1] - 41:15
**comparison** [1] - 19:22
**compelling** [2] - 28:18, 37:19
**complain** [1] - 23:10
**complainants** [1] - 49:25
**complained** [1] - 22:15
**complaint** [11] - 6:25, 9:6, 21:7, 23:1, 23:22, 24:13, 25:13, 27:10, 27:14, 38:24, 52:2
**Complaint** [1] - 7:3
**complaints** [1] - 20:9
**complete** [2] - 11:22, 35:3
**completed** [1] - 5:12
**Complex** [1] - 2:16
**complexity** [1] - 34:9, 35:14
**compliance** [2] - 22:7, 34:4
**compliant** [5] - 32:9, 32:17, 32:21, 33:3, 34:15

**comply** [1] - 22:13
**concentrate** [1] - 7:24
**Concern** [1] - 12:4
**concern** [3] - 25:11, 25:14, 45:25
**concerns** [2] - 36:15, 48:6
**concluded** [2] - 27:20, 59:18
**conclusion** [1] - 38:17
**conclusions** [2] - 29:3, 37:7
**conditional** [5] - 14:13, 21:9, 31:3, 50:17, 52:12
**conditionally** [3] - 6:4, 49:13
**conditions** [11] - 24:25, 25:7, 26:15, 27:2, 29:24, 30:2, 39:1, 50:3, 51:15, 51:18, 53:7
**conduct** [4] - 3:6, 15:6, 15:10, 50:19
**conference** [1] - 8:20
**conferences** [1] - 8:4
**confident** [1] - 25:13
**confidential** [1] - 11:14
**confined** [1] - 5:13, 5:22, 9:10
**confinement** [2] - 6:7, 39:2
**conflict** [1] - 14:22, 15:13
**Congress** [1] - 45:24
**connection** [1] - 3:14
**consented** [2] - 14:10, 39:19
**consider** [2] - 5:7, 31:19, 37:22
**consideration** [3] - 9:14, 10:12, 43:17
**considered** [2] - 8:11
**consistent** [1] - 31:18
**consisting** [1] - 9:9
**consolidate** [1] - 37:18
**consolidated** [5] - 5:3, 6:18, 7:15, 9:6, 23:20
**consolidation** [2] - 7:18, 39:20
**consolidations** [1] - 7:15
**Consovoy** [1] - 27:1
**constant** [1] - 4:23
**Constitution** [5] - 29:19, 30:3, 45:7, 45:12, 51:12

**constitutional** [10] - 29:21, 32:7, 34:18, 36:17, 48:18, 50:1, 50:3, 50:15, 51:8
**contact** [3] - 4:23, 20:3, 57:21
**content** [1] - 16:24
**contention** [1] - 45:20
**contentious** [1] - 8:3
**contest** [1] - 42:22
**context** [1] - 17:9
**contingency** [1] - 45:22
**contingent** [1] - 14:13
**continue** [4] - 14:15, 50:9, 52:24, 54:14
**continued** [1] - 44:20
**contract** [2] - 29:12, 34:22
**control** [3] - 5:23, 35:5, 35:7
**convicted** [4] - 5:12, 5:18, 5:19, 29:17
**copies** [1] - 11:14
**copy** [1] - 48:11
**correct** [3] - 13:20, 42:7, 49:9
**Corrections** [2] - 23:7, 46:9
**costs** [1] - 57:13
**Counsel** [1] - 3:8
**counsel** [45] - 4:3, 5:9, 7:4, 7:6, 7:8, 7:10, 7:20, 8:16, 8:20, 8:21, 9:21, 9:22, 11:4, 11:5, 11:12, 12:10, 12:15, 12:25, 13:5, 13:8, 13:10, 13:15, 15:5, 15:9, 16:14, 19:3, 22:19, 25:18, 26:22, 27:7, 28:10, 34:12, 36:19, 38:13, 40:19, 41:7, 42:9, 44:3, 47:1, 48:15, 51:22, 51:25, 58:11, 59:9, 59:13
**count** [1] - 47:11
**country** [1] - 24:25
**counts** [1] - 38:23
**couple** [3] - 35:20, 43:4, 47:11
**course** [2] - 12:11, 13:4
**COURT** [1] - 1:1
**court** [5] - 25:6, 26:12, 36:10, 36:23, 40:21
**Court** [49] - 1:18, 6:2, 7:2, 7:6, 9:9, 9:14, 10:24, 11:13, 11:19, 11:21, 12:5, 12:17,

16:11, 17:21, 18:12, 18:15, 18:20, 22:18, 26:1, 27:6, 27:15, 27:19, 28:19, 28:23, 29:4, 31:9, 34:2, 35:11, 35:16, 37:19, 37:22, 38:3, 38:17, 41:20, 41:23, 45:15, 46:4, 46:22, 47:17, 47:22, 48:5, 48:9, 48:17, 49:14, 49:17, 49:19, 55:4, 56:15, 59:5
**Court's** [3] - 3:22, 11:16, 13:9, 16:11, 26:9, 45:25
**Court-appointed** [1] - 29:4
**courtroom** [1] - 49:8
**courts** [2] - 25:2, 58:15
**cousin** [2] - 57:6, 57:9
**crafted** [1] - 24:11
**create** [1] - 31:2
**creation** [1] - 33:6
**credence** [1] - 42:14
**credentialed** [1] - 31:8
**credentials** [2] - 30:17, 31:7
**credit** [1] - 19:22
**crime** [4] - 54:12, 54:13, 58:5
**crimes** [1] - 58:10
**criteria** [2] - 20:5, 20:24
**critical** [1] - 33:14
**crucial** [1] - 22:9
**Culbreath** [1] - 8:23
**current** [2] - 11:7, 47:4
**custom** [1] - 4:23

## D

**D.O.C** [2] - 18:3, 23:8
**DaCosta** [9] - 2:15, 4:4, 4:7, 19:4, 20:21, 41:2, 41:13, 43:10, 47:25
**damages** [3] - 29:7, 33:23, 33:24
**danger** [1] - 45:23
**date** [2] - 16:23, 46:23
**dated** [4] - 9:8, 10:25, 12:2, 16:11
**daughter** [1] - 58:8
**David** [3] - 4:4, 20:20, 41:1

**DAVID** [1] - 2:15
**days** [2] - 10:25, 59:15
**de** [2] - 32:20, 32:25
**de-escalated** [1] - 32:25
**de-escalation** [1] - 32:20
**deadlines** [1] - 16:14
**deal** [2] - 12:21, 19:21
**dealing** [2] - 14:24, 40:13
**decade** [1] - 21:15
**December** [1] - 8:12
**decent** [1] - 52:3
**decided** [2] - 39:22, 40:1
**decision** [1] - 13:12
**declaration** [1] - 41:12
**declarations** [1] - 47:5
**declaratory** [1] - 6:19
**declare** [2] - 46:2, 46:15
**DeCosta** [1] - 4:4
**deemed** [1] - 44:9
**deems** [1] - 44:3
**default** [1] - 47:15
**Defendant** [1] - 44:19
**Defendants** [18] - 1:8, 2:17, 4:5, 5:10, 6:23, 8:8, 9:1, 9:21, 14:9, 15:16, 16:14, 18:11, 22:11, 23:4, 24:23, 25:6, 26:13, 47:6
**Defendants'** [1] - 22:7
**deficient** [2] - 30:25, 31:4
**defined** [1] - 5:17
**definitely** [1] - 34:11
**definitive** [2] - 35:17, 36:7
**degree** [1] - 22:10
**delay** [1] - 34:16
**delays** [7] - 26:6, 26:8, 27:19, 27:24, 28:1
**delivered** [1] - 16:15
**demonstrate** [1] - 29:4
**denied** [3] - 13:2, 27:3, 51:4
**DENNIS** [1] - 1:15
**deny** [1] - 55:2
**denying** [2] - 12:18, 13:14
**Department** [4] - 6:15, 23:4, 23:6, 46:9
**department** [2] - 54:5, 54:10

**departure** [1] - 31:24
**depleted** [1] - 57:15
**depositions** [1] - 7:13
**deprive** [2] - 30:25, 31:4
**Deputy** [2] - 2:15, 4:4
**deserves** [1] - 51:11
**detail** [2] - 24:10, 31:6
**detailed** [1] - 36:5
**determination** [2] - 30:19, 36:2
**determinative** [1] - 37:15
**determined** [1] - 5:16
**device** [2] - 50:25, 58:10
**devoted** [3] - 6:13, 31:13, 31:14
**die** [1] - 54:9
**different** [1] - 43:12
**difficult** [3] - 18:18, 25:14, 48:17
**difficulty** [2] - 7:5, 20:11
**digest** [1] - 48:10
**diligently** [1] - 21:2
**directing** [1] - 7:3
**directly** [2] - 18:8, 30:24
**director** [1] - 44:18
**disappointed** [1] - 56:14
**discharge** [5] - 21:6, 21:9, 50:18, 55:16, 57:11
**discharged** [3] - 6:4, 6:5, 49:13
**disclaimer** [1] - 35:3
**discovery** [2] - 7:12, 7:13
**discussed** [1] - 4:24
**dismiss** [1] - 39:3
**dismissed** [4] - 18:11, 18:13, 23:19, 24:13
**disorder** [2] - 5:21, 6:7
**dispose** [1] - 45:19
**dispositive** [1] - 7:11
**dispute** [2] - 17:9, 36:5
**disputes** [1] - 4:15
**dissatisfaction** [2] - 11:4, 16:18
**District** [1] - 46:9
**DISTRICT** [2] - 1:1, 1:2
**district** [1] - 27:2, 46:16
**distrust** [1] - 22:10

**disturbing** [1] - 25:8
**Division** [1] - 58:13
**docket** [4] - 11:16, 13:9, 38:15, 41:24
**Docket** [1] - 38:23
**docketed** [1] - 13:12
**doctor** [2] - 30:8, 30:9
**doctors** [1] - 30:15
**document** [5] - 11:19, 13:6, 13:8, 22:14, 41:25
**dollars** [5] - 52:15, 53:3, 53:21, 57:13
**done** [13] - 22:23, 32:16, 34:3, 34:12, 34:14, 42:6, 47:7, 48:7, 48:16, 50:16, 52:11, 58:7
**dorm** [3] - 55:21, 55:22, 55:23
**DOUGLAS** [1] - 57:1
**down** [2] - 53:11, 57:15
**Dr** [37] - 8:12, 29:4, 30:5, 30:13, 30:16, 30:17, 30:24, 31:7, 31:20, 32:4, 32:14, 32:20, 33:1, 33:12, 33:13, 33:21, 34:2, 37:4, 37:7, 41:10, 41:20, 43:18, 43:20, 44:11, 44:19, 45:2, 45:5, 45:6, 45:11, 45:17, 47:5, 50:12, 50:13, 50:14, 52:1
**drugs** [1] - 57:19
**due** [1] - 27:22
**Due** [1] - 25:3
**dungeon** [1] - 58:20
**duration** [2] - 34:9, 35:14
**during** [5] - 7:13, 26:7, 30:10, 43:9, 55:20

**E**

**earn** [1] - 53:1
**Eastern** [1] - 46:9
**easy** [1] - 45:6
**educational** [3] - 6:13, 18:6, 21:5
**effect** [3] - 27:11, 43:14, 58:11
**efforts** [1] - 7:23
**eight** [1] - 18:4
**either** [4] - 18:11, 23:15, 24:23, 44:1
**empathy** [1] - 6:14
**empirical** [2] - 46:18, 47:19

**employ** [1] - 43:3
**encompassed** [2] - 22:25, 27:10
**encountered** [1] - 48:20
**end** [1] - 29:8
**endorsing** [1] - 44:25
**enforce** [1] - 36:24
**enforceable** [4] - 37:9, 46:11, 46:12, 46:13
**enforcement** [3] - 26:9, 34:19, 46:17
**enforcing** [1] - 6:22
**engage** [3] - 5:21, 6:2, 26:14
**engaged** [2] - 7:12, 38:22
**ensure** [1] - 12:11
**enter** [4] - 7:7, 13:14, 32:24, 48:13
**entered** [5] - 7:19, 7:21, 25:6, 26:12, 47:1
**entertaining** [1] - 13:23
**entitled** [2] - 1:22, 32:2
**equitable** [2] - 27:25, 28:2
**erred** [1] - 16:19
**escalated** [1] - 32:25
**escalation** [1] - 32:20
**especially** [1] - 37:24
**ESQ** [5] - 2:3, 2:4, 2:7, 2:10, 2:13
**essence** [1] - 41:19
**essentially** [3] - 17:18, 29:13, 31:3
**establish** [1] - 6:5
**established** [1] - 29:1
**establishing** [7] - 27:23, 29:7, 33:20, 33:21, 33:23, 34:4, 42:20
**estimate** [1] - 20:25
**et** [3] - 1:4, 1:7, 5:15
**evaluated** [1] - 20:15
**evaluation** [1] - 50:14
**event** [3] - 39:19, 46:1, 46:6
**eventually** [1] - 7:20
**evidences** [1] - 30:25
**example** [3] - 23:2, 23:22, 32:19
**excellent** [1] - 19:1
**exceptions** [1] - 22:8
**execute** [1] - 41:23
**executed** [1] - 8:25
**exercise** [1] - 38:24

**exercised** [1] - 44:15
**exist** [1] - 22:16
**existing** [1] - 8:9
**exists** [1] - 44:23
**expect** [1] - 57:5
**expected** [1] - 27:18
**experience** [1] - 31:11
**experienced** [2] - 15:6, 15:10
**expert** [9] - 8:7, 8:9, 21:21, 29:4, 30:4, 37:4, 37:6, 44:16, 44:20
**expertise** [1] - 42:6
**experts** [4] - 30:6, 30:11, 30:12, 30:13
**express** [2] - 16:18, 58:23
**expresses** [1] - 11:3
**expressly** [1] - 44:1
**extent** [2] - 12:20, 25:21
**extremely** [2] - 18:18, 40:9
**eye** [2] - 43:2

**F**

**facilities** [1] - 25:1
**facility** [9] - 5:23, 5:24, 5:25, 9:4, 22:6, 23:7, 25:7, 26:15
**fact** [6] - 16:25, 27:24, 31:21, 35:2, 42:9, 45:12
**factor** [1] - 14:11
**factors** [2] - 29:2, 33:14, 33:15
**factual** [2] - 25:12, 28:18
**fail** [1] - 46:20
**failed** [1] - 6:23
**fair** [2] - 9:13, 29:1
**FAIRNESS** [1] - 1:7
**fairness** [5] - 3:6, 3:14, 5:7, 9:14, 10:1
**faith** [2] - 21:2, 22:11
**FALK** [5] - 1:15, 13:14, 13:19, 40:8, 48:3
**Falk** [15] - 4:9, 4:13, 5:2, 8:1, 8:6, 8:16, 8:19, 12:19, 13:2, 38:11, 40:1, 40:5, 41:13, 42:5, 48:2
**Falk's** [1] - 39:23
**fall** [1] - 25:8
**familiar** [1] - 33:16
**family** [1] - 53:13
**far** [1] - 44:13
**fared** [1] - 17:18

**fate** [1] - 18:16
**father** [1] - 58:3
**father's** [1] - 58:2
**favorable** [1] - 27:21
**February** [3] - 6:25, 8:24, 50:17
**Federal** [8] - 6:24, 9:11, 16:9, 17:20, 18:17, 45:24, 55:10, 55:19
**felt** [2] - 46:16, 57:22
**Ferguson** [1] - 3:5
**FERGUSON** [1] - 1:7
**few** [2] - 15:12, 50:7
**field** [3] - 32:5, 44:10, 44:17
**fight** [2] - 43:16
**file** [1] - 13:6
**filed** [8] - 7:4, 7:14, 9:5, 9:7, 13:9, 28:14, 38:22, 48:7
**final** [5] - 8:17, 9:22, 15:22, 28:19, 28:25
**finalize** [1] - 8:21
**finally** [2] - 45:8, 46:18
**financial** [1] - 47:15
**fine** [1] - 3:17
**finest** [1] - 14:5
**firm** [4] - 5:10, 7:10, 7:21, 12:4
**first** [11] - 10:8, 18:17, 18:20, 21:20, 24:2, 24:21, 26:12, 39:4, 43:5, 45:20, 49:24
**First** [1] - 19:18
**firsthand** [1] - 4:20
**fiscal** [2] - 47:9, 55:20
**five** [6] - 17:25, 18:12, 20:13, 22:8, 33:10, 56:17
**five-year** [1] - 56:17
**Florham** [1] - 2:3
**Florida** [1] - 45:14
**flows** [1] - 25:14
**focus** [1] - 21:7
**focused** [1] - 54:18
**follow** [1] - 54:23
**followed** [1] - 21:14
**following** [2] - 1:21, 7:11
**follows** [1] - 27:20
**footnote** [1] - 46:4
**FOR** [2] - 1:2, 2:6
**force** [1] - 36:23
**form** [1] - 6:12
**forma** [1] - 7:3
**former** [4] - 13:10, 25:4, 44:17, 49:11

**forth** [6] - 22:9, 23:9, 25:12, 28:22, 37:18, 41:12
**fortunate** [2] - 7:6, 52:22
**Fortunately** [1] - 54:20
**forward** [4] - 25:11, 36:4, 54:13, 54:16
**four** [4] - 18:10, 38:23, 51:18, 58:6
**four-year-old** [1] - 58:6
**frame** [1] - 7:13
**framework** [1] - 34:2
**frankly** [1] - 33:9
**freedom** [1] - 28:6
**freight** [1] - 52:13
**Friday** [1] - 10:25
**friend** [2] - 3:13, 43:19
**FROM** [1] - 49:10
**front** [3] - 25:14, 48:4, 52:2
**full** [4] - 45:17, 52:2, 58:6, 59:14
**fully** [1] - 39:5
**fund** [4] - 34:23, 34:24, 36:10, 36:25
**funded** [1] - 35:21
**funding** [19] - 29:11, 34:22, 35:1, 35:2, 35:12, 35:17, 35:24, 45:18, 45:19, 45:22, 45:23, 46:1, 46:6, 46:11, 46:20, 46:24, 47:3, 47:20, 53:6
**funds** [2] - 47:7, 47:12
**FURLONG** [14] - 2:11, 2:13, 24:6, 38:8, 38:20, 39:10, 39:16, 39:19, 39:25, 40:4, 40:9, 40:15, 40:18, 40:23
**furlong** [3] - 24:1, 24:9, 38:7
**furloughs** [2] - 33:5, 33:6
**future** [2] - 27:25, 47:18

**G**

**GAIL** [1] - 1:7
**GALLERY** [1] - 49:10
**Gateway** [1] - 2:9
**General** [4] - 2:15, 4:5, 6:21, 40:25
**General's** [1] - 43:11

**generally** [3] - 14:20, 15:6, 21:10
**gentlemen** [1] - 59:12
**Gibbons** [5] - 4:3, 5:10, 7:10, 12:4, 41:8
**GIBBONS** [1] - 2:8
**girl** [1] - 58:6
**Girsh** [4] - 14:11, 29:2, 33:14, 33:15
**given** [5] - 9:19, 16:8, 20:25, 53:10, 57:20
**goal** [1] - 7:24
**goals** [2] - 20:5, 36:11
**God** [1] - 57:4
**Google** [1] - 57:24
**govern** [1] - 29:22
**governing** [4] - 41:23, 43:14, 43:24, 45:5
**Government** [2] - 35:21, 45:24
**government** [1] - 8:18
**governor** [5] - 35:2, 35:4, 35:5, 35:6, 35:23
**gradual** [1] - 32:20
**gradually** [1] - 32:25
**grant** [3] - 54:2, 55:10, 55:19
**grant's** [1] - 54:3
**granted** [7] - 7:2, 28:25, 34:10, 50:17, 50:23, 50:24, 52:12
**granting** [1] - 7:19
**great** [2] - 19:20, 31:6
**greater** [2] - 31:12, 33:5
**GREENBERG** [1] - 2:2
**Greenberg** [5] - 3:10, 7:21, 12:2, 28:12, 41:9
**ground** [1] - 58:3
**grounds** [1] - 14:20
**group** [4] - 6:12, 7:17, 7:19, 33:6
**groups** [2] - 18:4, 20:1
**guarantee** [2] - 21:25, 22:1
**guarantees** [1] - 47:16
**guess** [1] - 10:3
**guy** [2] - 53:23, 53:24
**guys** [10] - 51:17, 51:20, 51:23, 52:3, 53:22, 54:9, 56:1, 56:2, 56:3, 56:4

**H**

**hair** [1] - 39:11

**half** [1] - 42:17
**HALL** [1] - 2:5
**Hall** [10] - 3:19, 3:22, 5:9, 7:6, 10:10, 12:3, 14:5, 15:14, 41:7, 50:7
**hand** [1] - 11:17
**handed** [1] - 11:19
**hard** [5] - 8:16, 18:25, 25:18, 41:11, 48:15
**Hargett** [1] - 25:5
**Harper** [4] - 3:24, 10:16, 17:7, 19:23
**HARPER** [1] - 17:7
**Harper's** [1] - 17:5
**Harris** [1] - 7:16
**Hasher** [2] - 12:24, 13:3
**hasten** [1] - 41:21
**hat** [1] - 25:22
**Hawker** [5] - 27:1, 27:4, 27:8, 27:15
**health** [8] - 5:5, 6:10, 6:11, 6:16, 6:24, 9:2, 14:25, 25:3
**hear** [4] - 10:4, 23:2, 38:18, 38:19
**heard** [4] - 20:10, 28:10, 34:13, 52:9
**hearing** [8] - 3:7, 3:15, 5:7, 9:14, 10:1, 10:16, 48:5, 49:14
**HEARING** [1] - 1:7
**hearings** [1] - 27:4
**heart** [2] - 10:22, 54:9
**heavily** [1] - 45:10
**Hector** [1] - 57:21
**held** [4] - 8:19, 25:2, 45:21, 56:10
**Help** [1] - 20:20
**help** [11] - 4:17, 21:18, 21:20, 52:24, 53:7, 53:17, 53:18, 56:20, 56:22, 57:20, 58:11
**helpful** [1] - 8:13
**helping** [1] - 53:18
**high** [1] - 22:10
**highest** [3] - 8:18, 19:19, 27:17
**highly** [1] - 25:13
**Highway** [1] - 7:21
**himself** [2] - 12:25, 21:13
**hire** [2] - 47:10, 47:12
**hired** [2] - 32:1, 47:11
**hiring** [1] - 20:3
**history** [2] - 10:17, 38:15
**Hochberg** [1] - 7:19
**hold** [2] - 54:15, 56:9

**home** [4] - 33:6, 39:11, 57:13, 57:17
**HON** [2] - 1:15, 1:15
**honest** [1] - 52:3
**honestly** [1] - 25:22
**Honor** [61] - 3:9, 3:18, 4:2, 10:5, 10:23, 13:24, 14:2, 14:3, 14:8, 15:23, 16:5, 16:14, 17:3, 17:7, 19:4, 19:5, 19:9, 19:15, 22:6, 22:10, 22:21, 24:16, 25:17, 25:24, 26:24, 28:7, 28:11, 28:24, 29:16, 30:9, 30:10, 32:3, 32:12, 32:22, 38:8, 38:18, 38:20, 40:6, 40:15, 40:19, 40:23, 43:6, 43:8, 43:17, 47:25, 49:1, 49:2, 49:19, 51:5, 51:15, 52:12, 54:4, 54:6, 54:20, 55:1, 55:4, 56:3, 56:9, 57:2, 59:10, 59:17
**Honor's** [2] - 10:9, 10:22
**Honors** [1] - 26:17
**hope** [2] - 26:8, 46:21
**hopeful** [1] - 48:22
**hopefully** [1] - 59:15
**hopes** [2] - 19:19, 27:17
**hoping** [1] - 39:14
**horrific** [1] - 56:5
**hour** [2] - 52:16
**house** [1] - 53:4
**housed** [1] - 55:23
**housekeeping** [2] - 10:7, 10:23
**huge** [1] - 59:1
**Hughes** [1] - 2:16
**human** [5] - 51:8, 51:13, 54:5, 55:3
**Human** [2] - 6:15, 23:4
**hurt** [2] - 54:4, 56:14
**Hysler** [2] - 2:14, 38:21
**Hysler's** [1] - 38:14

**I**

**Ian** [2] - 3:10, 50:5
**IAN** [1] - 2:3
**identify** [1] - 28:17
**identifying** [1] - 21:10
**idiosyncratic** [1] - 23:21
**illusory** [3] - 29:13,

29:14, 34:22

**impasse** [1] - 8:6
**implement** [1] - 47:6
**implemented** [1] - 26:20
**important** [4] - 24:15, 31:15, 31:16, 32:22
**importantly** [3] - 22:4, 29:3, 35:22
**imposed** [2] - 49:25, 50:10
**impossible** [2] - 21:16, 25:25
**improbable** [1] - 27:22
**improve** [3] - 9:1, 28:5, 29:24
**improvement** [1] - 18:21
**improvements** [9] - 15:1, 17:10, 21:4, 23:11, 24:17, 26:14, 26:19, 26:20, 45:17
**IN** [1] - 1:1
**in-person** [1] - 8:20
**in-service** [1] - 21:22
**inadequacies** [1] - 14:25
**inadequate** [5] - 17:25, 18:6, 45:22, 46:6, 47:21
**incarcerated** [1] - 49:6
**include** [2] - 18:14, 35:24
**included** [3] - 7:16, 16:22, 37:20
**includes** [3] - 9:17, 21:4, 21:6
**including** [5] - 7:12, 17:15, 27:6, 27:19, 37:13
**increased** [1] - 33:7
**indeed** [1] - 31:10
**indefinite** [1] - 5:15
**independent** [1] - 22:5
**indicate** [2] - 17:1, 37:6
**indicates** [1] - 37:7
**indication** [1] - 46:22
**indicia** [1] - 47:12
**individual** [8] - 5:16, 6:5, 6:12, 23:16, 28:15, 28:22, 42:5, 55:2
**individuals** [5] - 28:22, 32:24, 32:25, 48:16, 48:18
**indulgent** [1] - 38:11
**industry** [1] - 32:5

**inherent** [1] - 27:19
**initial** [1] - 20:17
**initiated** [1] - 12:11
**injunctive** [6] - 6:19, 14:19, 26:9, 33:25, 34:1, 34:4
**inordinate** [1] - 4:10
**inspect** [1] - 22:6
**instance** [1] - 36:4
**instances** [2] - 24:18
**instead** [2] - 27:18, 44:11
**institute** [1] - 35:12
**intended** [2] - 11:13, 16:21
**intensive** [1] - 8:2
**interest** [2] - 15:13, 15:14
**interests** [3] - 15:4, 27:8, 37:24
**Internet** [1] - 21:16
**interrupted** [1] - 18:1
**investigation** [2] - 12:10, 12:14
**involuntarily** [3] - 5:4, 5:13, 9:10
**involved** [4] - 4:18, 8:2, 48:18, 48:24
**involvement** [1] - 41:14
**issue** [4] - 10:11, 32:22, 41:16
**issued** [3] - 8:12, 13:12, 16:12
**issues** [12] - 10:18, 11:21, 15:19, 15:21, 17:12, 17:17, 17:22, 18:8, 18:10, 22:2, 22:18, 28:8
**itself** [4] - 23:13, 34:23, 37:14, 55:21

**J**

**January** [1] - 8:19
**Jason** [2] - 3:13, 28:12
**JASON** [1] - 2:4
**jaundiced** [1] - 43:2
**JERSEY** [1] - 1:2
**Jersey** [14] - 1:10, 2:3, 2:7, 2:9, 2:13, 2:17, 5:5, 5:6, 5:14, 5:24, 6:15, 6:21, 14:6, 50:4
**job** [4] - 19:1, 52:20, 52:21, 53:12
**jobs** [1] - 57:23
**JOHN** [1] - 2:13
**joined** [1] - 7:9

**joint** [3] - 8:7, 9:7, 9:21
**Jonathan** [1] - 4:2
**JONATHAN** [1] - 2:10
**judge** [2] - 27:1, 46:16
**Judge** [27] - 4:9, 4:13, 5:2, 7:19, 8:1, 8:6, 8:7, 8:16, 8:19, 12:19, 13:2, 24:6, 33:19, 34:10, 34:20, 35:10, 36:13, 37:11, 38:11, 39:5, 39:23, 40:1, 40:5, 41:13, 42:4, 48:2, 51:12
**JUDGE** [57] - 3:1, 3:17, 4:1, 4:6, 4:8, 10:19, 11:18, 11:23, 12:1, 13:14, 13:19, 13:22, 13:25, 14:4, 15:24, 16:2, 17:6, 18:23, 19:6, 19:8, 19:11, 19:13, 24:1, 24:8, 28:9, 30:7, 33:16, 38:4, 38:6, 38:19, 39:8, 39:14, 39:24, 40:3, 40:8, 40:10, 40:12, 40:16, 40:20, 40:24, 42:1, 42:4, 42:8, 42:24, 43:7, 45:1, 47:23, 48:1, 48:3, 48:4, 49:16, 49:20, 49:22, 56:23, 57:3, 59:7, 59:11
**judgment** [11] - 24:24, 25:6, 31:25, 36:22, 36:24, 37:3, 37:8, 39:4, 39:21, 44:15, 44:23
**judicial** [2] - 4:10, 4:15
**judicially** [1] - 18:18
**Judith** [1] - 8:7
**July** [3] - 7:4, 15:22, 40:2
**jump** [1] - 45:6
**JUSTICE** [1] - 2:6
**Justice** [7] - 2:16, 3:20, 5:10, 7:7, 12:4, 15:18, 41:8

**K**

**keep** [2] - 21:12, 51:1
**kicked** [1] - 55:16
**kidding** [1] - 39:17
**kids** [1] - 59:1
**kind** [3] - 43:2, 52:9, 59:1
**Kislin** [6] - 3:13, 3:15, 28:12, 41:8, 42:16,

42:19
**KISLIN** [6] - 2:4, 28:11, 30:9, 33:18, 38:5, 49:3
**Kislin's** [1] - 41:6
**knowledge** [2] - 4:20, 31:11
**known** [1] - 14:4
**knows** [3] - 10:2, 35:10, 41:13
**KRASNY** [1] - 2:11
**Kyle** [1] - 3:25

**L**

**laboring** [1] - 4:15
**lack** [1] - 47:3
**LAMONT** [1] - 49:18
**Lamont** [1] - 49:24
**landed** [1] - 40:6
**landscape** [1] - 25:15
**large** [1] - 27:5
**largely** [1] - 30:4
**larger** [1] - 39:20
**last** [3] - 36:8, 47:11, 54:12
**lastly** [1] - 37:11
**late** [1] - 38:9
**laughter** [6] - 14:7, 39:9, 39:15, 39:18, 40:11, 41:5
**Laughter** [1] - 39:13
**Lavelle** [2] - 45:20, 45:25
**law** [6] - 6:24, 7:21, 14:5, 15:14, 18:19, 27:11
**LAW** [1] - 2:5
**Law** [5] - 3:19, 3:22, 5:9, 7:7, 12:3
**lawful** [1] - 50:20
**laws** [2] - 54:23, 56:6
**lawsuits** [1] - 58:15
**lawyer** [1] - 58:17
**lawyers** [1] - 41:9
**lay** [1] - 32:13
**lead** [4] - 8:22, 11:1, 31:3, 44:19
**least** [4] - 5:19, 17:21, 23:19, 36:24
**leave** [1] - 41:2
**leaves** [1] - 23:15
**led** [1] - 7:17
**left** [1] - 36:1
**legal** [4] - 14:21, 25:14, 28:18, 47:19
**legislature** [3] - 35:2, 35:7, 36:2
**legs** [1] - 19:24

**lengthy** [1] - 7:11
**less** [2] - 44:22, 56:6
**letter** [11] - 10:25, 11:3, 11:7, 11:11, 11:15, 11:20, 12:2, 12:21, 13:10, 39:23, 40:2
**level** [2] - 25:9, 44:9
**levels** [2] - 8:18, 32:6
**liability** [5] - 24:23, 27:23, 33:20, 33:21, 42:20
**liberty** [1] - 38:25
**life** [5] - 54:17, 56:15, 56:16, 56:17, 56:22
**life's** [1] - 31:13
**Lifland** [1] - 39:5
**light** [5] - 29:5, 29:6, 29:10, 34:7, 34:8
**likelihood** [1] - 47:15
**likely** [5] - 5:21, 6:2, 14:11, 25:19, 26:4, 29:8, 35:10, 41:17, 46:19
**line** [2] - 12:12, 51:20
**Lisa** [1] - 3:24
**list** [4] - 30:12, 30:13, 30:14, 31:22
**litigated** [1] - 45:13
**litigation** [21] - 10:17, 15:7, 15:11, 15:16, 17:8, 17:16, 19:23, 24:20, 25:23, 26:11, 27:22, 29:6, 34:10, 35:9, 35:15, 36:8, 36:11, 39:20, 46:3, 46:6, 46:15
**litigations** [1] - 17:11
**live** [3] - 21:11, 52:20, 54:22
**lived** [1] - 51:17
**lives** [2] - 52:20, 53:4
**living** [4] - 33:8, 51:15, 53:1, 53:7
**LLP** [1] - 2:2
**Local** [1] - 3:23
**located** [1] - 5:6
**look** [12] - 17:11, 22:2, 25:19, 25:22, 43:24, 45:12, 45:13, 48:12, 53:12, 56:2, 58:14
**looked** [1] - 26:22
**looking** [5] - 30:17, 45:4, 47:13, 49:8
**Lorenzo** [1] - 13:6

## M

**main** [3] - 18:17, 19:14, 47:5
**Main** [1] - 44:19
**main's** [1] - 45:2
**maintaining** [1] - 14:12
**malpractice** [1] - 54:10
**man** [1] - 54:21
**mandated** [5] - 15:2, 18:18, 18:21, 24:17, 25:9
**mandates** [2] - 45:7, 48:19
**mandatory** [1] - 17:19
**Manes** [1] - 4:2
**MANES** [3] - 2:10, 4:2, 19:5
**manner** [2] - 10:8, 16:10
**map** [2] - 18:2, 44:14
**March** [4] - 7:2, 9:5, 9:9, 15:21
**MARK** [1] - 1:15
**Market** [1] - 2:16
**married** [1] - 38:22
**marry** [2] - 23:25, 38:25
**MARX** [2] - 2:3, 3:9
**Marx** [3] - 3:10, 41:8, 50:5
**Mary** [1] - 2:14
**Massachusetts** [2] - 25:4, 25:7
**material** [1] - 28:3
**matter** [8] - 3:4, 4:5, 4:24, 10:23, 36:1, 39:4, 40:13, 59:18
**matters** [3] - 10:7, 21:11, 58:12
**McCarter** [1] - 2:6
**McGUIRE** [2] - 1:18, 1:24
**Mead** [1] - 44:20
**meaningful** [1] - 6:8
**means** [3] - 28:20, 44:12, 44:25
**meant** [1] - 39:16
**measure** [1] - 27:16
**measured** [1] - 27:17
**mechanism** [1] - 34:19
**medical** [4] - 23:9, 54:5, 54:6, 54:10
**meet** [5] - 14:11, 20:24, 34:17, 34:24, 36:6

**meets** [2] - 14:16, 14:18
**member** [2] - 13:1, 16:18, 23:17
**members** [21] - 6:10, 9:3, 9:15, 9:19, 16:8, 17:2, 17:8, 17:12, 17:15, 19:20, 20:11, 22:11, 22:23, 22:25, 23:2, 26:19, 27:5, 28:4, 37:13, 37:14, 37:24
**memorandum** [1] - 15:22
**men** [4] - 22:12, 22:14, 51:18, 55:23
**mental** [10] - 5:5, 5:20, 6:6, 6:10, 6:11, 6:16, 6:24, 9:2, 14:25, 25:2
**mention** [1] - 45:8
**mentioned** [4] - 4:11, 15:12, 44:6, 47:1
**merely** [1] - 45:2
**Merril** [1] - 44:19
**met** [2] - 15:3, 16:13
**Michael** [1] - 12:24
**middle** [1] - 47:9
**might** [4] - 10:7, 19:7, 21:16, 36:21
**millions** [3] - 53:20, 53:21, 53:22
**Minatee** [4] - 49:9, 53:3, 55:15
**MINATEE** [2] - 57:1, 57:4
**mind** [3] - 30:6, 59:3
**minds** [1] - 30:17
**minimal** [4] - 33:22, 34:3, 34:5, 42:20
**minimally** [16] - 6:23, 25:8, 29:21, 30:3, 30:21, 30:22, 32:6, 32:9, 32:17, 32:21, 33:3, 34:15, 36:18, 43:22, 44:12, 44:24
**minimum** [3] - 43:15, 52:15, 53:22
**minute** [1] - 30:7
**modified** [1] - 16:11
**modules** [2] - 6:13, 20:1
**molested** [1] - 58:5
**molesting** [1] - 59:1
**moment** [2] - 20:8, 42:3
**money** [5] - 35:16, 52:13, 52:23, 54:2, 55:20
**monitor** [3] - 22:5, 22:6, 22:17

**Monsanto** [1] - 45:20
**month** [3] - 20:18, 52:23, 53:3
**months** [2] - 3:14, 24:18
**Moore** [2] - 2:14, 23:23, 38:14, 38:21, 38:23
**morning** [12] - 3:3, 3:9, 3:18, 3:21, 10:5, 14:3, 16:5, 24:5, 28:11, 43:9, 57:2, 57:3
**MOSES** [32] - 2:7, 3:18, 10:5, 10:21, 11:20, 11:25, 12:22, 13:18, 13:20, 13:24, 14:2, 19:7, 19:9, 19:12, 19:14, 24:5, 24:9, 41:1, 41:3, 41:6, 42:3, 42:7, 42:16, 43:1, 43:8, 45:2, 49:1, 49:4, 49:11, 50:12, 59:10, 59:17
**Moses** [9] - 3:19, 10:6, 12:9, 12:15, 16:6, 33:23, 40:20, 41:2, 50:6
**most** [14] - 20:9, 22:4, 23:2, 24:15, 24:18, 26:24, 28:17, 29:2, 30:18, 37:19, 44:3, 49:7
**mostly** [1] - 27:22
**motion** [14] - 7:11, 9:7, 9:21, 10:9, 12:16, 12:23, 13:2, 13:12, 13:23, 15:20, 18:11, 28:19, 39:22, 39:25
**motions** [1] - 13:2
**movants** [2] - 29:1, 29:14
**move** [3] - 17:4, 54:13, 54:16
**moved** [1] - 39:3
**moving** [2] - 26:23, 35:19
**MR** [35] - 3:9, 4:2, 4:4, 4:7, 14:3, 14:8, 16:1, 19:4, 19:5, 20:21, 24:6, 28:11, 30:9, 33:18, 38:5, 38:8, 38:20, 39:10, 39:16, 39:19, 39:25, 40:4, 40:9, 40:15, 40:18, 40:23, 41:2, 47:25, 49:3, 49:18, 49:21, 49:23, 50:13, 57:1, 57:4
**MS** [34] - 3:18, 10:5, 10:21, 11:20, 11:25, 12:22, 13:18, 13:20, 13:24, 14:2, 16:5, 17:7, 19:7, 19:9, 19:12, 19:14, 20:22, 24:5,

24:9, 41:1, 41:3, 41:6, 42:3, 42:7, 42:16, 43:1, 43:8, 45:2, 49:1, 49:4, 49:11, 50:12, 59:10, 59:17
**must** [6] - 3:5, 6:5, 10:12, 37:24, 41:21, 44:9
**mutual** [1] - 55:3

## N

**name** [7] - 13:6, 23:23, 42:10, 49:24, 50:11, 57:24, 58:14
**named** [4] - 12:25, 20:10, 37:14, 57:21
**namely** [1] - 30:23
**naturally** [1] - 39:16
**Neal** [1] - 13:11
**necessary** [3] - 4:20, 20:6, 35:25
**need** [8] - 19:11, 20:23, 20:24, 20:25, 23:3, 26:20, 43:3, 56:19
**needed** [2] - 32:15, 42:6
**needless** [1] - 31:7
**needs** [2] - 21:10, 34:3
**negotiate** [2] - 36:7, 41:9
**negotiated** [4] - 26:2, 28:2, 30:20, 37:17
**negotiations** [3] - 7:24, 8:2, 8:3
**nervous** [1] - 18:25
**neutral** [4] - 8:7, 8:9, 29:4, 30:4
**never** [4] - 54:15, 54:16, 56:3
**NEW** [1] - 1:2
**new** [1] - 12:25
**New** [14] - 1:10, 2:3, 2:7, 2:9, 2:13, 2:17, 5:5, 5:6, 5:14, 5:24, 6:15, 6:21, 14:6, 50:4
**Newark** [4] - 1:10, 2:7, 2:9, 14:6
**next** [4] - 20:14, 20:25, 34:20, 59:15
**Next** [1] - 16:4
**NJSVPA** [1] - 15:15
**NMOSES** [1] - 20:22
**noise** [1] - 58:19
**non** [1] - 17:16
**non-objectors** [1] - 17:16
**None** [1] - 53:10

**none** [5] - 15:9, 15:15, 17:18, 58:10
**normal** [7] - 52:19, 53:2, 53:12, 53:13, 53:14, 53:15, 54:22
**North** [1] - 58:9
**nothing** [2] - 12:9, 46:10, 59:10
**notice** [8] - 9:18, 10:15, 16:7, 16:9, 16:12, 16:24, 17:1, 17:2
**notices** [2] - 16:15, 16:16
**notion** [1] - 47:20
**November** [3] - 1:10, 10:25, 12:2
**Number** [1] - 3:5
**number** [7] - 3:11, 22:12, 23:9, 27:5, 38:15, 41:25, 53:17
**numerosity** [1] - 14:17
**numerous** [1] - 4:24

## O

**oar** [1] - 4:15
**object** [2] - 16:7, 16:21
**objecting** [1] - 37:13
**objection** [3] - 16:22, 38:14, 40:18
**objections** [21] - 9:19, 9:20, 10:15, 15:8, 16:13, 16:17, 16:23, 17:1, 23:10, 27:5, 27:9, 28:15, 28:16, 28:21, 28:22, 37:18, 37:20, 37:22, 37:23
**objective** [1] - 20:24
**objector** [1] - 13:5
**objectors** [7] - 12:24, 15:12, 17:15, 17:16, 17:24, 37:2, 49:7
**obligated** [1] - 39:7
**obligation** [4] - 25:18, 36:18, 42:11, 48:5
**obligations** [2] - 34:25, 36:17
**obtained** [1] - 36:22
**obviously** [3] - 24:21, 46:21, 47:16
**occasion** [1] - 40:10
**occasions** [1] - 4:24
**occurred** [2] - 4:21
**OF** [3] - 1:2, 1:6, 2:5
**offender** [4] - 44:5, 44:17, 57:7, 57:24
**offenders** [4] - 5:4,

5:12, 25:4, 31:12
  **offense** [1] - 5:20
  **offer** [4] - 8:10, 33:5, 56:21, 56:22
  **offered** [4] - 5:5, 6:11, 9:2, 31:24
    **Office** [1] - 43:11
    **Official** [1] - 1:18
  **officials** [1] - 6:19
  **old** [1] - 58:6
  **oldest** [1] - 3:5
  **Oliver** [2] - 13:6, 13:15
  **Oliver's** [1] - 13:10
  **ombudsperson** [1] - 21:23
  **Once** [1] - 5:25
  **once** [4] - 37:25, 52:23, 53:5, 55:16
  **One** [3] - 2:9, 53:11, 57:17
  **one** [26] - 5:19, 10:10, 12:23, 14:5, 18:9, 20:8, 20:13, 23:13, 25:23, 33:10, 35:21, 35:25, 36:1, 37:12, 38:9, 38:24, 38:25, 45:14, 48:20, 48:22, 49:4, 49:24, 53:18, 54:24, 55:6
  **open** [2] - 23:15, 36:1
  **opening** [1] - 23:14
  **operative** [2] - 10:19, 27:10
  **opinion** [6] - 8:10, 12:18, 44:16, 45:3, 48:13, 58:20
  **opportunities** [3] - 18:7, 21:5, 33:5
  **opportunity** [6] - 6:9, 16:7, 37:25, 40:4, 51:5, 52:6
  **opposed** [1] - 42:12
  **opposing** [2] - 14:19, 26:23
  **opposite** [1] - 35:3
  **opposition** [2] - 9:23, 28:19
  **opt** [2] - 9:16, 37:25
  **option** [1] - 9:16
  **order** [19] - 6:4, 6:8, 7:19, 9:8, 12:18, 13:14, 16:11, 23:14, 26:1, 26:9, 26:13, 32:8, 32:16, 34:3, 41:23, 43:14, 43:24, 45:5, 48:13
  **original** [1] - 6:25
  **originally** [1] - 42:10
  **otherwise** [3] - 24:14,

27:10, 44:7
  **outcome** [4] - 25:19, 27:22, 29:8, 34:8
  **outline** [1] - 19:25
  **outlined** [1] - 19:23
  **outpatient** [1] - 21:12
  **outset** [1] - 43:9
  **outside** [2] - 23:21, 24:12
  **own** [3] - 19:24, 52:13, 55:2

## P

  **P.C** [1] - 2:8
  **page** [2] - 23:13, 32:12
  **paid** [1] - 41:22
  **panoply** [1] - 45:17
  **paper** [2] - 22:14, 22:16
  **papers** [7] - 17:14, 23:15, 25:5, 26:10, 26:23, 31:7, 48:8
  **paraphrasing** [1] - 44:12
  **pardon** [1] - 53:23
  **Park** [2] - 2:2, 2:3
  **parole** [2] - 27:4, 50:25
  **part** [9] - 15:17, 16:19, 31:12, 38:1, 41:15, 47:8, 55:20, 55:21, 55:22
  **particular** [1] - 38:2
  **particularly** [1] - 11:4
  **parties** [18] - 7:12, 7:23, 8:5, 8:16, 9:7, 14:19, 26:23, 29:12, 30:21, 35:16, 35:19, 35:24, 36:6, 36:21, 36:24, 41:22, 42:5
  **past** [6] - 3:14, 35:20, 54:15, 54:18, 57:18, 59:2
  **path** [1] - 25:23
  **patience** [1] - 59:6
  **patient** [1] - 40:9
  **pauperis** [1] - 7:3
  **pause** [1] - 20:8
  **pay** [7] - 52:13, 52:14, 52:17, 52:23, 52:25, 53:7, 53:22
  **pays** [1] - 53:3
  **PC** [1] - 4:3
  **PCR** [1] - 57:25
  **pendency** [1] - 7:7
  **pending** [5] - 23:18, 26:16, 34:10, 36:1, 39:5

  **Pennsylvania** [2] - 46:8, 46:10
  **people** [5] - 38:9, 53:13, 56:16, 57:11, 58:21
  **percent** [2] - 27:13
  **perfect** [1] - 19:18
  **perhaps** [3] - 12:22, 22:4, 42:24
  **period** [1] - 22:8
  **permission** [1] - 3:22
  **permit** [1] - 46:5
  **perseverance** [1] - 40:5
  **person** [4] - 5:18, 5:21, 8:20, 30:18
  **personal** [1] - 41:13
  **personality** [2] - 5:21, 6:7
  **personally** [1] - 4:22
  **personnel** [1] - 23:9
  **persons** [1] - 9:10
  **perspective** [1] - 59:2
  **petition** [4] - 13:7, 13:8, 13:11, 13:13
  **Ph.D** [1] - 8:7
  **phase** [4] - 20:13, 20:14, 20:25
  **phases** [2] - 18:6, 20:12
  **physical** [1] - 23:7
  **piece** [1] - 22:14
  **place** [6] - 21:10, 21:17, 24:18, 57:12, 59:3
  **placed** [1] - 18:2
  **placing** [1] - 24:6
  **Plaintiff** [5] - 7:1, 7:18, 11:2, 18:2, 18:3
  **Plaintiff's** [1] - 27:17
  **Plaintiffs** [44] - 1:5, 2:4, 2:10, 2:14, 3:11, 3:12, 3:20, 5:8, 5:11, 6:18, 6:22, 7:10, 8:8, 8:14, 8:22, 9:5, 9:23, 17:24, 19:21, 23:17, 23:20, 24:22, 25:17, 26:18, 28:13, 28:14, 30:6, 30:11, 30:14, 34:13, 37:7, 38:2, 41:15, 41:17, 41:19, 43:11, 43:20, 45:9, 45:21, 45:25, 46:5, 46:13, 49:1, 50:6
  **Plaintiffs'** [5] - 7:20, 11:12, 19:20, 42:17, 46:25
  **plan** [2] - 20:18, 21:10
  **planned** [1] - 10:21
  **planning** [1] - 21:6

  **plans** [2] - 21:17, 57:11
  **pleadings** [1] - 3:12
  **pledge** [2] - 54:25
  **plethora** [1] - 18:14
  **point** [10] - 22:21, 24:16, 32:9, 32:12, 32:17, 34:20, 36:13, 45:2, 45:8, 58:8
  **pointed** [2] - 29:16, 35:20, 37:2
  **points** [3] - 19:14, 33:23, 36:19
  **policies** [1] - 22:15
  **population** [4] - 50:8, 55:7, 55:8, 55:22
  **portion** [2] - 17:5, 33:24, 33:25
  **portions** [1] - 3:23
  **position** [5] - 12:10, 42:22, 43:10, 43:12, 48:14
  **positions** [2] - 47:10, 48:6
  **possible** [4] - 15:13, 27:20, 29:10, 34:8
  **post** [1] - 26:13
  **post-trial** [1] - 26:13
  **posted** [1] - 47:10
  **potential** [3] - 6:9, 14:22, 37:13
  **potentially** [1] - 26:7
  **practice** [3] - 7:12, 22:17, 31:25
  **practitioner** [1] - 44:10
  **pre** [1] - 7:11
  **pre-answer** [1] - 7:11
  **Predator** [1] - 5:14
  **predator** [3] - 5:17, 6:1
  **predecessor** [2] - 41:12, 43:12
  **predict** [2] - 43:16, 47:18
  **prefer** [4] - 34:14, 34:17, 37:3, 37:8
  **preferred** [1] - 30:15
  **prejudice** [1] - 18:13
  **prejudiced** [1] - 24:14
  **preliminarily** [1] - 9:12
  **preliminary** [1] - 9:8
  **presence** [1] - 49:15
  **present** [6] - 3:23, 10:9, 14:22, 28:19, 54:8
  **presentation** [4] - 11:21, 17:5, 41:7, 43:9
  **presented** [2] - 42:4, 42:10

  **presenting** [1] - 3:16
  **preserve** [1] - 40:17
  **preserved** [2] - 38:13, 40:16
  **presumption** [1] - 32:2
  **presumptive** [1] - 22:7
  **pretty** [2] - 41:11, 45:19
  **prevail** [3] - 24:22, 24:23, 25:25
  **prevented** [2] - 18:3, 18:5
  **prevention** [1] - 6:14
  **previous** [2] - 12:23, 18:15
  **previously** [2] - 12:17, 16:6
  **primarily** [1] - 6:11
  **primary** [1] - 3:16
  **principles** [1] - 22:16
  **prison** [3] - 5:12, 21:14, 27:2
  **prisoners** [2] - 27:3, 29:17
  **pro** [10] - 5:9, 7:1, 7:4, 7:5, 7:8, 7:10, 7:14, 7:20, 9:22, 12:25
  **problem** [4] - 43:3, 46:7, 54:14, 57:8
  **problems** [2] - 43:4, 48:20
  **procedural** [2] - 38:15, 38:16
  **Procedure** [1] - 9:11
  **procedures** [4] - 41:24, 43:15, 43:25, 45:6
  **proceed** [4] - 14:1, 37:3, 37:8, 41:18
  **proceeding** [2] - 38:10, 38:17
  **proceedings** [1] - 1:22
  **process** [4] - 18:4, 20:1, 20:2, 30:10
  **Process** [1] - 25:3
  **produce** [1] - 8:11
  **professional** [11] - 31:19, 31:21, 31:22, 31:25, 32:5, 44:2, 44:4, 44:13, 44:14, 44:24, 45:3
  **Professor** [1] - 16:6
  **professors** [1] - 15:14
  **progeny** [2] - 25:10, 25:15
  **program** [30] - 8:10,

17:20, 18:5, 20:5, 20:12, 23:6, 26:19, 28:5, 30:2, 30:19, 30:20, 30:25, 31:2, 31:4, 31:9, 31:10, 31:18, 32:16, 32:21, 32:23, 33:2, 33:4, 34:3, 34:14, 36:5, 44:5, 44:8, 55:21
  **programs** [4] - 22:15, 32:8, 34:24, 44:5
  **Progress** [2] - 20:21, 20:22
  **progressing** [3] - 18:5, 20:12, 28:4
  **progression** [1] - 20:24
  **promise** [4] - 29:11, 29:14, 34:21, 35:1
  **proper** [2] - 54:6, 59:2
  **properly** [8] - 10:11, 14:9, 27:15, 51:24, 51:25, 52:1, 52:4, 52:9
  **proposed** [6] - 3:7, 15:6, 23:14, 24:16, 26:3, 27:16
  **proposition** [1] - 36:15
  **protect** [1] - 48:19
  **protected** [2] - 37:24, 40:22
  **protocol** [1] - 39:2
  **prove** [2] - 25:12, 54:21
  **provide** [3] - 6:23, 27:13, 36:18
  **provided** [3] - 9:18, 16:10, 23:8
  **providers** [2] - 32:1
  **provides** [3] - 6:10, 21:21, 21:22
  **providing** [2] - 6:16, 6:20
  **provision** [4] - 35:1, 46:5, 46:11, 47:20
  **provisions** [4] - 35:25, 45:18, 46:12, 47:6
  **psycho** [1] - 6:13
  **psycho-educational** [1] - 6:13
  **psychological** [1] - 31:2
  **psychologist** [1] - 47:10
  **purported** [1] - 13:13
  **purpose** [3] - 9:25, 32:23, 35:15
  **purposes** [3] - 8:11, 31:1, 37:5

  **Pursuant** [1] - 1:21
  **pursuant** [6] - 3:23, 5:13, 9:11, 29:18, 40:1, 42:13
  **pursue** [1] - 23:24
  **pursued** [2] - 23:3, 23:15
  **put** [10] - 17:9, 21:17, 24:17, 35:4, 37:18, 38:12, 51:16, 55:8, 57:7, 59:2
  **putting** [2] - 31:21, 43:1

## Q

  **qualified** [4] - 15:5, 15:10, 32:4, 44:20
  **quality** [1] - 9:1
  **quantity** [1] - 9:1
  **questions** [2] - 17:4, 28:7
  **questions..** [2] - 38:3, 47:22
  **quickly** [3] - 11:24, 28:4, 33:15
  **quite** [4] - 19:24, 25:8, 33:9, 55:24
  **quote** [5] - 41:20, 41:21, 43:19, 43:21, 43:23

## R

  **raised** [1] - 18:9
  **ran** [2] - 58:13, 58:14
  **range** [5] - 29:7, 29:9, 34:6, 44:16, 45:3
  **rather** [2] - 44:2, 45:24
  **Raymond** [2] - 7:1, 11:1
  **RAYMOND** [1] - 1:4
  **re** [1] - 32:24
  **re-enter** [1] - 32:24
  **reach** [1] - 11:9
  **reached** [2] - 5:8, 8:5
  **reaction** [1] - 37:12
  **read** [2] - 11:23, 13:22
  **ready** [1] - 3:1
  **real** [7] - 25:16, 34:18, 43:17, 54:4, 56:5
  **realistically** [1] - 27:18
  **realize** [1] - 56:1
  **really** [9] - 4:14, 12:6, 26:4, 34:22, 36:11,

  **reason** [3] - 4:10, 33:13, 45:9
  **reasonable** [4] - 9:13, 16:10, 29:1, 31:19
  **reasonableness** [3] - 29:8, 29:9, 34:7
  **reasons** [2] - 12:18, 48:21
  **receipt** [1] - 10:15
  **receive** [4] - 6:10, 16:17, 21:11, 29:20
  **received** [6] - 9:20, 10:24, 16:23, 16:25, 23:10, 28:23
  **recited** [1] - 43:6
  **recognize** [1] - 42:11
  **recognizes** [1] - 42:14
  **recollection** [1] - 42:1
  **recommence** [1] - 46:15
  **recommend** [2] - 25:20, 25:21
  **recommendation** [3] - 41:10, 42:15, 42:23
  **recommendations** [5] - 32:15, 33:9, 33:12, 41:18, 42:15
  **recommended** [3] - 21:9, 42:12, 45:17
  **recommends** [2] - 20:6, 45:11
  **reconditioning** [1] - 6:15
  **record** [13] - 1:22, 5:11, 10:2, 11:22, 12:1, 12:22, 13:17, 24:3, 24:7, 57:25, 59:1
  **records** [2] - 53:25, 54:1
  **recourse** [2] - 46:1, 46:13
  **recovery** [1] - 29:10
  **recreational** [3] - 18:7, 21:5, 33:7
  **reduce** [2] - 27:25, 28:1
  **referred** [1] - 3:11
  **reflects** [1] - 11:7
  **reforms** [1] - 34:24, 35:12
  **refuse** [1] - 54:5
  **regain** [1] - 28:6
  **regard** [2] - 13:13, 47:4
  **regarding** [1] - 48:14
  **regards** [5] - 29:8, 32:19, 32:21, 34:6, 34:9
  **registering** [1] - 59:3

  **reinstituting** [1] - 36:8
  **relapse** [1] - 6:14
  **related** [1] - 21:24
  **release** [7] - 6:9, 20:7, 31:3, 50:18, 50:23, 50:24, 52:12
  **released** [8] - 9:3, 51:11, 53:5, 53:24, 54:2, 54:8, 55:18, 57:6
  **relief** [15] - 6:19, 14:19, 26:2, 26:4, 27:9, 27:14, 27:21, 27:25, 28:2, 33:25, 34:1, 34:5, 38:16
  **religious** [1] - 23:25, 38:24
  **remain** [1] - 5:13
  **remaining** [1] - 28:8
  **remains** [1] - 6:1
  **remedy** [3] - 35:8, 36:9
  **removal** [1] - 13:7
  **remove** [1] - 12:15
  **removed** [2] - 11:5, 12:9
  **rent** [5] - 52:22, 52:23, 52:25, 53:3, 53:8
  **reopen** [1] - 36:10
  **repeat** [2] - 19:16, 57:18
  **repeated** [1] - 20:9
  **replace** [1] - 13:15
  **report** [20] - 8:11, 8:12, 8:13, 30:4, 30:24, 32:4, 33:13, 33:22, 34:2, 37:4, 42:21, 43:5, 45:5, 45:10, 46:22, 50:25, 52:2, 52:3, 52:8
  **Reported** [1] - 1:17
  **reported** [1] - 4:22
  **Reporter** [1] - 1:18
  **reports** [1] - 37:6
  **represent** [4] - 3:10, 37:23, 50:7, 51:23
  **representative** [2] - 13:1, 50:5
  **representatives** [4] - 15:4, 20:10, 27:6, 49:5
  **represented** [8] - 8:21, 13:5, 13:16, 15:16, 50:6, 51:24, 52:1, 52:4
  **representing** [2] - 4:5, 51:25
  **represents** [1] - 50:7
  **request** [2] - 7:20, 13:15
  **require** [3] - 20:16, 21:19, 23:11

  **required** [8] - 6:24, 8:17, 21:12, 21:18, 25:20, 26:14, 32:14, 46:20
  **requirement** [1] - 14:21
  **requirements** [2] - 14:16, 14:18
  **requires** [3] - 8:25, 29:19, 31:5, 45:12
  **resembled** [1] - 26:25
  **reserve** [1] - 48:9
  **residence** [1] - 21:8
  **resident** [6] - 6:13, 20:7, 21:10, 23:22, 38:21, 55:17
  **resident-specific** [1] - 6:13
  **residents** [25] - 6:8, 6:17, 7:14, 7:17, 7:25, 9:17, 10:17, 14:23, 14:24, 15:1, 16:12, 16:15, 20:3, 20:4, 20:17, 20:23, 21:8, 21:14, 21:23, 31:1, 37:16, 49:12, 50:10, 51:3, 55:13
  **resolution** [4] - 4:17, 27:24, 36:5, 48:23
  **resolved** [1] - 33:24
  **resolves** [1] - 33:25
  **resolving** [2] - 4:15, 7:25
  **resort** [1] - 36:9
  **resources** [1] - 35:16
  **respect** [5] - 13:15, 38:24, 38:25, 39:1, 41:6
  **respected** [1] - 44:10
  **respective** [1] - 41:16
  **respond** [3] - 38:6, 40:24, 40:25
  **response** [5] - 21:25, 22:1, 22:3, 35:19, 39:22
  **responsibility** [1] - 58:7
  **responsible** [5] - 6:16, 6:20, 6:21, 23:5, 23:7
  **rest** [3] - 28:8, 53:9, 55:8
  **restart** [1] - 35:9
  **restraints** [2] - 32:20, 32:24
  **result** [2] - 16:16, 25:15
  **resulted** [1] - 17:19
  **resume** [1] - 46:6
  **retained** [1] - 41:22
  **retirement** [1] - 39:6
  **retroactive** [2] -

scholar [1] - 44:10
scholarly [1] - 15:15
School [5] - 3:19, 3:22, 5:9, 7:7, 12:3
SCHOOL [1] - 2:5
schools [1] - 14:5
scope [3] - 18:16, 23:21, 24:12
scrupulously [1] - 43:1
se [3] - 7:1, 7:10, 7:14
seated [1] - 4:6
second [8] - 10:23, 18:19, 22:21, 22:25, 23:21, 24:13, 25:16, 46:8
secondly [1] - 43:18
Section [1] - 1:21
secure [1] - 5:22
security [1] - 23:8
Security [1] - 52:18
see [11] - 4:8, 11:15, 22:23, 38:7, 42:16, 45:16, 47:5, 47:19, 54:5, 56:20, 58:15
seeing [1] - 47:12
seek [2] - 6:18, 38:16
seeking [2] - 14:19, 39:24
seeks [1] - 11:5
seem [1] - 37:6
selected [2] - 8:8, 30:5
sense [1] - 43:2
sent [2] - 56:11, 56:12
sentence [1] - 56:18
sentences [2] - 5:13, 21:14
sentiment [1] - 34:11
separate [1] - 38:15
separates [1] - 55:7
September [2] - 8:15, 50:23
seq [1] - 5:15
serve [1] - 56:11
served [3] - 21:14, 29:17, 56:17
service [1] - 21:22
Services [2] - 6:16, 23:4
serving [1] - 56:12
Sessoms [1] - 8:23
set [8] - 22:9, 25:12, 28:22, 31:16, 31:17, 41:11, 44:4, 57:23
Seton [3] - 3:19, 3:22, 5:9, 7:6, 10:10, 12:3, 14:5, 15:14, 41:7, 50:7
SETON [1] - 2:5

settled [1] - 45:15
settlement [96] - 3:7, 5:8, 7:24, 8:3, 8:12, 8:17, 8:22, 8:24, 8:25, 9:8, 9:12, 9:18, 9:22, 9:24, 14:14, 15:2, 15:9, 16:15, 16:17, 16:19, 16:21, 16:24, 17:2, 17:10, 17:13, 17:17, 17:22, 18:7, 18:19, 19:18, 19:25, 20:16, 21:4, 21:6, 21:19, 21:21, 22:1, 22:4, 22:7, 22:9, 22:14, 22:20, 22:22, 23:11, 23:12, 23:13, 23:19, 24:11, 24:16, 25:21, 26:3, 26:25, 27:2, 27:12, 27:16, 27:17, 28:25, 29:5, 29:11, 29:23, 29:25, 30:1, 32:9, 32:18, 33:8, 33:11, 34:7, 34:17, 34:21, 35:15, 35:18, 36:12, 36:22, 37:5, 37:12, 37:17, 38:1, 41:10, 41:24, 42:13, 43:3, 43:7, 43:15, 43:25, 45:5, 45:16, 45:21, 46:3, 46:10, 46:14, 47:2, 47:4, 47:7, 47:20, 48:14
settlements [1] - 35:20
settling [1] - 23:5
seven [2] - 17:24, 26:12
several [3] - 3:14, 57:15, 58:15
severance [1] - 39:24
severing [1] - 40:13
severities [1] - 51:6
sex [8] - 5:4, 5:12, 25:4, 44:4, 44:17, 57:7, 57:24
sexual [4] - 5:22, 6:3, 31:12, 50:18
Sexually [1] - 5:14
sexually [4] - 5:16, 5:17, 5:19, 6:1
shortly [1] - 9:6
show [1] - 18:17
showed [1] - 11:12
showers [1] - 51:19
shown [1] - 24:2
side [3] - 4:15, 16:20, 30:11
significant [4] - 20:9, 21:7, 24:21, 28:3
significantly [1] -

26:1
silent [2] - 32:18, 33:9
similar [4] - 10:18, 12:16, 17:12, 17:17, 17:22, 47:1
simply [3] - 27:12, 32:18, 45:8
sinks [1] - 51:19
sisters [1] - 58:9
sits [1] - 31:13
situation [1] - 48:17
six [4] - 18:6, 20:18, 24:18, 33:10
six-month [1] - 20:18
smooth [1] - 33:1
so-called [1] - 26:10
SOCIAL [1] - 2:6
social [2] - 21:17, 57:21
Social [7] - 3:20, 5:10, 7:7, 12:3, 15:18, 41:8, 52:18
society [15] - 32:24, 33:1, 50:20, 50:22, 52:19, 53:2, 53:8, 53:9, 53:13, 53:16, 54:22, 54:23, 56:7, 58:24
someone [3] - 12:8, 21:24, 22:2
something's [1] - 54:19
sometimes [1] - 8:2
somewhat [3] - 12:23, 18:25, 50:9
somewhere [1] - 44:13
sooner [1] - 24:19
sorry [2] - 30:9, 35:25
sought [2] - 27:9, 27:14, 34:1
speaking [1] - 17:7
speaks [2] - 33:14, 37:15
Special [6] - 5:6, 17:20, 18:21, 37:16, 49:7, 49:12
specific [2] - 6:13, 32:13
specifically [1] - 38:13
specified [1] - 26:14
spent [2] - 4:10, 31:12
sponte [1] - 18:12
stack [1] - 51:16
staff [7] - 20:16, 21:9, 21:18, 21:20, 21:22, 22:12, 22:13
stage [2] - 10:13, 25:20

stand [1] - 36:16
standard [7] - 30:23, 31:17, 43:22, 44:1, 44:6, 44:8, 44:11
standards [10] - 29:22, 30:22, 31:17, 31:25, 32:7, 34:18, 43:21, 44:2, 44:4, 44:24
standing [1] - 19:24
stands [1] - 36:15
start [2] - 10:3, 53:22
started [1] - 24:2
State [29] - 6:2, 18:15, 26:11, 26:15, 30:5, 30:6, 30:12, 30:17, 31:8, 31:21, 32:2, 32:7, 34:22, 36:9, 36:25, 42:10, 42:14, 42:21, 46:19, 46:23, 47:1, 47:17, 48:19, 50:4, 52:5, 52:7, 53:5, 53:21
state [4] - 6:24, 8:18, 36:16, 39:3
State's [1] - 30:14
STATES [1] - 1:1
States [1] - 1:21
status [1] - 7:3
statute [4] - 29:19, 31:1, 31:5
stay [1] - 59:4
stayed [1] - 4:23
stenographically [1] - 1:22
steps [1] - 36:7
still [6] - 19:12, 53:24, 53:25, 54:1
stipulated [1] - 41:23
stood [1] - 40:21
Stop [2] - 53:11, 57:17
Street [1] - 2:16
streets [1] - 58:24
stress [1] - 19:15
strong [1] - 58:16
strongly [1] - 46:4
struggling [1] - 53:16
Strutton [1] - 44:20
STU [62] - 5:25, 6:8, 6:11, 6:17, 6:20, 7:17, 7:25, 8:9, 9:2, 9:10, 9:18, 10:17, 11:8, 14:23, 14:24, 15:1, 16:13, 16:16, 17:11, 20:2, 20:6, 20:16, 21:6, 21:9, 21:15, 21:18, 21:19, 21:22, 22:12, 22:13, 23:8, 28:5, 38:21, 44:5, 44:18, 44:23, 50:1, 50:9, 51:10, 51:23, 52:11,

58:13, 58:14
return [2] - 46:3, 52:25
review [5] - 8:9, 20:18, 20:19, 30:19, 32:14
Review [2] - 20:21, 20:23
reviewed [3] - 17:3, 19:17, 33:2
reviewing [1] - 31:14
revisited [1] - 10:13
Richard [1] - 7:18
rights [12] - 48:18, 50:1, 50:3, 50:15, 51:8, 51:12, 51:13, 54:6, 55:3, 56:7, 56:8
Risk [2] - 33:20, 33:23
risk [6] - 24:22, 25:16, 33:21, 34:4, 42:19
risks [7] - 24:21, 25:23, 25:24, 27:23, 29:5, 29:6, 34:7
Road [1] - 2:12
Rodriguez [1] - 57:21
Romeo [1] - 25:9
rooming [1] - 53:4
Rose [3] - 3:24, 17:5, 17:7
Route [1] - 38:9
rug [1] - 50:11
Rule [6] - 3:23, 14:16, 14:18, 16:9, 40:1, 45:16
Rules [1] - 9:11
rules [3] - 22:15, 54:23, 54:24
ruling [1] - 48:10
runs [1] - 52:23

S

s/CHARLES [1] - 1:24
sad [4] - 52:9, 52:10, 55:25
safe [1] - 58:25
satisfied [1] - 4:25
satisfy [2] - 29:21, 32:6
satisfying [1] - 36:16
Savadjian [2] - 3:24, 10:14
SAVADJIAN [1] - 16:5
save [2] - 35:15, 52:13
saw [1] - 49:9
schedule [2] - 16:12, 38:12
schedules [1] - 33:7

52:15, 52:16, 52:25, 53:19, 53:21, 53:22, 53:25, 54:7, 54:17, 54:25, 55:7, 55:11, 55:12, 55:15, 55:24, 56:12, 57:7, 57:20, 58:1, 58:18

**stuck** [1] - 38:9
**students** [3] - 3:21, 10:10, 18:24
**stuff** [1] - 56:5
**sua** [1] - 18:12
**subject** [7] - 9:13, 10:9, 12:23, 14:23, 22:8, 45:4, 47:24
**submission** [1] - 10:15
**submit** [3] - 9:19, 31:20, 33:20
**submitted** [10] - 7:1, 9:21, 9:23, 12:18, 16:13, 23:14, 30:11, 30:12, 30:13, 37:5
**substance** [2] - 15:8, 44:1
**substantial** [2] - 26:5, 31:24
**substantially** [2] - 44:22, 46:7
**substantive** [1] - 46:12
**substantively** [1] - 19:24
**succeed** [1] - 25:13
**success** [1] - 36:19
**successful** [1] - 25:17
**successfully** [1] - 6:6
**suffering** [1] - 58:18
**suffers** [1] - 5:20
**sufficient** [1] - 17:10
**suggested** [2] - 40:1, 46:4
**suggesting** [1] - 42:24
**suggests** [1] - 30:24
**suit** [1] - 38:22
**Suite** [1] - 2:12
**summary** [4] - 24:23, 25:6, 39:4, 39:21
**summer** [1] - 13:4
**supervised** [1] - 33:5
**support** [4] - 15:22, 22:13, 47:19, 52:15
**supporting** [1] - 17:14
**supposed** [1] - 50:20, 53:18, 54:3
**surroundings** [1] - 51:1

**sweep** [1] - 50:9

**T**

**Tampa** [1] - 58:8
**taught** [1] - 56:1
**Tavern** [1] - 2:12
**taxes** [4] - 52:14, 52:17
**taxpayer** [1] - 52:15
**TC** [4] - 55:9, 55:16, 55:17, 55:18
**teeth** [1] - 34:15
**telephone** [1] - 11:9
**tend** [1] - 27:25
**tensions** [1] - 48:18
**tentative** [1] - 8:17
**terms** [3] - 26:25, 56:18, 56:20
**testified** [2] - 44:20, 44:21
**thankful** [1] - 58:23
**THE** [5] - 1:1, 1:2, 1:15, 1:15, 49:10
**themselves** [2] - 21:2, 28:15
**theories** [1] - 14:22
**theory** [2] - 22:16
**therapeutic** [5] - 55:5, 55:9, 55:10, 55:13
**therapist** [1] - 20:4
**therapists** [2] - 18:1, 20:2
**therapy** [3] - 6:12, 20:1, 21:3
**thereafter** [1] - 9:6
**thereby** [1] - 9:2
**thinks** [1] - 39:10
**third** [4] - 3:21, 15:25, 24:15, 37:13
**third-year** [1] - 3:21
**thousand** [2] - 53:3, 57:13
**three** [8] - 3:21, 8:22, 10:25, 19:14, 37:14, 51:19, 55:5
**threshold** [1] - 30:2
**timeline** [1] - 16:24
**timely** [3] - 16:17, 17:23, 27:4
**Title** [1] - 1:21
**titled** [1] - 13:7
**today** [1] - 3:6, 4:9, 9:25, 11:15, 18:16, 19:1, 49:6, 49:14, 54:19, 56:1, 57:5, 57:10, 58:24, 59:12
**today's** [1] - 11:21
**toilets** [1] - 51:18

**took** [5] - 40:6, 42:9, 56:15, 56:16
**top** [1] - 55:7
**topics** [1] - 6:14
**tortured** [1] - 38:15
**touched** [1] - 15:21
**toward** [1] - 6:9
**towards** [1] - 53:7
**TPRC** [1] - 20:19
**tracking** [1] - 50:25, 51:2, 58:9
**training** [1] - 21:22
**TRANSCRIPT** [1] - 1:6
**transcript** [2] - 1:21, 48:11
**transition** [3] - 33:1, 55:11, 55:12
**transitioned** [1] - 55:6
**TRAURIG** [1] - 2:2
**Traurig** [5] - 3:10, 7:21, 12:3, 28:12, 41:9
**treated** [1] - 6:6
**treatment** [52] - 5:5, 5:23, 6:10, 6:11, 6:17, 6:20, 6:24, 8:10, 9:2, 14:24, 14:25, 17:20, 18:1, 20:12, 20:18, 21:12, 21:23, 21:24, 23:6, 23:9, 25:3, 26:18, 28:5, 29:20, 30:2, 31:2, 31:4, 31:11, 31:18, 31:23, 31:25, 32:1, 32:6, 32:8, 36:18, 39:2, 44:5, 44:8, 44:17, 44:18, 44:22, 50:22, 54:6, 54:11, 55:8, 56:13, 56:19, 58:20
**Treatment** [8] - 5:6, 17:20, 18:21, 20:19, 20:22, 37:16, 49:7, 49:12
**treatment-related** [1] - 21:24
**treatments** [1] - 31:15
**tremendous** [1] - 31:10
**Trenton** [2] - 2:13, 2:17
**trial** [16] - 14:12, 24:24, 25:5, 25:18, 25:19, 25:25, 26:5, 26:6, 26:12, 26:13, 27:19, 29:9, 41:18, 42:20, 42:22, 43:6
**tried** [3] - 41:11, 51:22, 54:21
**true** [2] - 55:14
**try** [8] - 4:16, 19:9,

19:12, 19:15, 25:22, 53:14, 53:17, 56:21
**trying** [1] - 43:19, 50:9, 52:21, 57:23
**Turay** [1] - 26:11
**turning** [1] - 45:18
**Two** [1] - 10:7
**two** [14] - 14:5, 15:14, 18:17, 24:21, 29:12, 37:14, 38:25, 39:4, 45:19, 48:13, 50:18, 51:18, 51:19, 57:8
**types** [1] - 31:15
**typicality** [2] - 14:17, 14:21

**U**

**U.S.D.J** [1] - 1:15
**U.S.M.J** [1] - 1:15
**ultimate** [1] - 48:9
**ultimately** [6] - 13:9, 28:24, 30:15, 31:3, 32:23, 36:20
**unable** [4] - 11:6, 11:8, 25:12, 49:6
**under** [17] - 9:10, 9:15, 24:16, 25:3, 27:11, 30:3, 30:21, 30:22, 34:25, 38:22, 43:21, 43:22, 44:24, 45:16, 46:17, 50:2, 50:11
**underlying** [1] - 39:21
**undermine** [1] - 28:20
**understandable** [1] - 56:4
**understood** [2] - 17:2, 33:18
**unfortunately** [1] - 44:7
**Unit** [6] - 5:6, 17:20, 18:21, 37:16, 49:7, 49:12
**unit** [2] - 54:7, 57:7
**UNITED** [1] - 1:1
**United** [1] - 1:21
**universal** [2] - 31:16, 44:4
**UNIVERSITY** [1] - 2:5
**University** [1] - 7:7
**unless** [5] - 21:17, 28:7, 38:3, 38:17, 47:22
**unlikely** [3] - 25:25, 26:1, 46:23
**unrealistic** [1] - 27:9
**unsuccessful** [1] - 11:10
**up** [19] - 11:17, 11:19,

21:12, 24:2, 30:2, 32:8, 32:16, 34:3, 34:14, 40:13, 40:21, 44:9, 46:20, 46:23, 49:22, 52:13, 53:10, 54:8, 57:23
**upheld** [4] - 51:13, 51:14, 56:8
**uphold** [1] - 55:1
**urge** [1] - 37:21
**urinals** [1] - 51:18
**useful** [1] - 17:11

**V**

**validity** [1] - 32:2
**value** [3] - 27:25, 28:2, 29:25
**various** [3] - 6:19, 6:22, 26:22
**Veterans** [1] - 11:9
**victim** [1] - 6:14
**victims** [3] - 54:24, 57:19
**view** [3] - 5:1, 42:19, 45:2
**views** [1] - 11:7
**vigorous** [1] - 11:10
**violate** [1] - 55:2
**violated** [3] - 50:4, 51:9, 56:6
**violation** [1] - 49:25
**violations** [3] - 50:10, 50:15, 50:21
**violence** [2] - 5:22, 6:3
**Violent** [1] - 5:14
**violent** [4] - 5:16, 5:17, 5:19, 6:1
**Virginia** [1] - 58:9
**virtually** [1] - 26:4
**virtue** [1] - 23:19
**visit** [3] - 11:8, 58:8
**visitation** [1] - 33:7
**vocational** [1] - 21:5
**voice** [1] - 37:23
**void** [2] - 46:3, 46:15
**voided** [1] - 47:3
**volume** [1] - 16:25
**volumes** [1] - 37:15
**vow** [1] - 55:1

**W**

**wage** [2] - 52:15, 53:22
**wait** [2] - 30:7, 51:19
**waited** [1] - 57:8

**waived** [2] - 23:1, 24:13

**wants** [2] - 12:6, 12:13

**Washington** [2] - 26:11, 26:15

**ways** [1] - 24:15

**weeks'** [1] - 48:13

**welfare** [3] - 52:24, 53:14, 57:15

**well-being** [2] - 53:8

**West** [1] - 2:13

**white** [2] - 39:11, 39:16

**whole** [2] - 16:19, 55:7

**wide** [4] - 5:8, 8:1, 44:16, 45:3

**Wiesner** [3] - 13:11, 13:16, 13:20

**William** [2] - 2:14, 23:23

**willing** [2] - 54:21, 58:6

**wind** [1] - 40:13

**wish** [4] - 14:1, 33:17, 40:24, 44:7

**wishes** [1] - 28:10

**withdrawn** [2] - 13:19, 13:21

**women** [1] - 50:19

**word** [1] - 10:19

**words** [1] - 57:4

**worker** [1] - 57:21

**worry** [1] - 47:14

**worse** [1] - 56:6

**write** [1] - 12:2

**written** [5] - 7:13, 15:14, 22:14, 46:5, 46:14

**wrote** [1] - 27:6

**Wyatt** [1] - 36:14

# Y

**year** [7] - 3:21, 15:25, 55:19, 55:20, 56:17, 58:6

**years** [16] - 4:13, 4:16, 4:24, 22:8, 26:12, 26:17, 26:20, 34:11, 36:20, 50:22, 54:7, 54:12, 55:5, 56:17, 56:21, 57:8

**yesterday** [1] - 11:8

**Youngberg** [9] - 25:9, 25:15, 30:23, 31:17, 43:22, 44:1, 44:6, 44:8, 44:11

**younger** [1] - 26:18