**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-1071 and 13-1072
_____

RAYMOND ALVES; MICHAEL CULBRETH, and
DERRICK SESSOMS, individually and on behalf of all persons
similarly situated,

v.

MERRIL MAIN, Ph. D., in his official capacity as Clinical Director of the
Special Treatment Unit; JENNIFER VELEZ, in her official capacity as Commissioner of
the New Jersey Department of Human Services; LYNN A. KOVICH, in her official
capacity as Assistant Commissioner and Deputy Director of the New Jersey
Division of Mental Health and Addiction Services;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY

Joseph Aruanno,

Appellant in Case 13-1071

RAYMOND ALVES; MICHAEL CULBRETH;
DERRICK SESSOMS, individually and on behalf of all persons similarly situated

v.

MERRIL MAIN, Ph. D., in his official capacity as Clinical Director of the
Special Treatment Unit; JENNIFER VELEZ, in her official capacity as Commissioner of
the New Jersey Department of Human Services; LYNN A. KOVICH, in her official
capacity as Assistant Commissioner and Deputy Director of the New Jersey
Division of Mental Health and Addiction Services;
ATTORNEY GENERAL OF THE STATE OF NEW JERSEY

Salaam H. Abdullah, Richard Bagarozy, Darrick Bailey,
Craig Blue, Lamont Brooks, Fred Brown, Grady Brown,
Gilbert Davis, Jason Davis, John DeAngelis, Gerald Dooley,
Frederic Dubose, Michael Gargiulo, Walter Harrell,

Michael Hasher, Miguel Lorenzo, Bharat Malde,
Douglas Minatee, Jason D. Overby, Chares F. Peters,
Steve Rasinski, Rodney Roberts, Edward Salerno,
Karl Siegle, Jabozz Spence, Emilio Velez, Ralph Waldron
and (John) Walker,

                                         Appellants in Case 13-1072

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 2-01-cv-00789)
District Court Judge: Honorable Dennis M. Cavanaugh

Submitted under Third Circuit LAR 34.1(a)
March 3, 2014

Before: RENDELL, SMITH and HARDIMAN, <u>Circuit Judges</u>

(Opinion filed March 20, 2014)

O P I N I O N

**RENDELL**, <u>Circuit Judge</u>:

Appellants object to the District Court's approval of a Settlement Agreement of a class action complaining of the treatment offered at New Jersey's Special Treatment Unit ("STU"). We will affirm the District Court's approval of the Settlement Agreement.

**I.**[1]

We write principally for the benefit of the parties and therefore recount only the facts essential to our review.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §1331. We have jurisdiction pursuant to 28 U.S.C. §1291.

Appellants are certain of the plaintiffs who commenced the action. They all are convicted sex offenders who, after serving their full prison sentences, have been involuntarily civilly committed to the STU. They have been determined to be "sexually violent predators," individuals who have been convicted of sexually violent offenses and who, due to mental disorders, are likely to engage in such acts if not confined and treated. N.J.S.A. 30:4-27.26. Pursuant to the New Jersey Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 et. seq., such an individual is generally not released from confinement unless it is established that the person's "mental condition has so changed that the person is not likely to engage in acts of sexual violence if released." N.J.S.A. 30:4-27.36(d).

This litigation commenced in 2001 when Plaintiff Raymond Alves filed a *pro se* complaint against various New Jersey officials responsible for his treatment at the STU. Alves argued, *inter alia*, that the STU was unconstitutionally punitive because it failed to provide the minimally adequate treatment that is required by *Youngberg v. Romeo*, 457 U.S. 307, 319-322 (1982) and is necessary for a legitimate opportunity for release. Over the course of the litigation, the case has evolved from Alves' 2001 *pro se* complaint into a class action. Further, different individuals and groups of STU residents have joined the litigation, such as groups represented by, respectively, Plaintiffs Alves, Richard Bagarozy, and Michael Hasher.

Settlement negotiations began in 2005, after three years of discovery, and in 2008 all parties were consolidated under the Alves case. That same year, the parties reached an impasse in settlement talks on the issue of adequate treatment. Counsel for both the Plaintiffs and the State proposed their own preferred experts. From this pool the parties

jointly recommended Dr. Judith Becker, an expert proposed by the State. On April 3, 2008, the District Court issued an order appointing Dr. Becker to serve as Joint Neutral Expert and assist in the negotiations, and Dr. Becker then submitted an extensive report suggesting a number of changes to improve the treatment at the STU, based on her professional opinion. The parties executed a formal Settlement Agreement in February 2012, and the Settlement was approved by the District Court on December 4, 2012. While the Agreement implements many of Dr. Becker's recommendations, it does not address certain of her concerns.

The group of plaintiffs originally led by Bagarozy ("Bagarozy Plainitffs") objects to the District Court's approval of the Settlement. Mainly, they argue that the Settlement was not fair, adequate, or reasonable because (1) it violates the "minimally adequate" constitutional standard as it does not implement all of Dr. Becker's suggestions, and (2) the Settlement is illusory as it is contingent on discretionary state funding. (Pls. Br. 3-5). They also challenge the District Court's weighing of certain other *Girsh* factors. Joseph Aruanno, whose case was consolidated under Alves, appeals individually. He claims the STU treatment is unconstitutional and alleges his case should not have been consolidated. The standard of review for all claims is abuse of discretion. *In re Cendant Corp. Litigation*, 264 F.3d 201, 231 (3d Cir. 2001).

## II.

A district court approves a settlement agreement by determining it is "fair, reasonable, and adequate." *In re Prudential Ins. Co*, 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995)). The District Court

4

acts as fact-finder and reviews settlements predominantly in light of the factors outlined in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).[2] *See In re Prudential Ins. Co.*, 148 F.3d at 317 (noting that, "because of the district court's proximity to the parties and to the nuances of the litigation, [the appeals court] will accord great weight to [its] factual findings."). There is "an overriding public interest in settling class action litigation." *In Re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 535 (3d. Cir. 2004). We are "hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation." *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 175 (3d Cir. 2013). "[H]owever, 'district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlement in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.'" *Id.* (quoting *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)).

    a.   The Settlement Falls Short of Requiring Necessary Treatment

Bagarozy Plaintiffs first argue that the Settlement Agreement is not fair and reasonable because it does not implement all the remedial measures suggested by Dr. Becker, and, therefore, the treatment required under the Settlement is not "minimally adequate" under the *Youngberg* constitutional standard. (Pls. Br. 40). When an

---

[2]The *Girsh* factors are: (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

5

individual is involuntarily committed to a state institution for treatment, they urge, that individual's "liberty interests require the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraints." *Youngberg*, 457 U.S. at 319.

We agree with the Seventh Circuit that class action settlement agreements allow for "ample room for settlement and compromise," even when the claims at issue revolve around constitutional rights. *Isby v. Bayh*, 75 F.3d 1191, 1197 (7th Cir. 1996) (quoting *Armstong v. Board of Directors of City of Milwaukee*, 616 F.2d 305, 319 (7th Cir. 1980)). Of course, a settlement that "initiates or authorizes the continuation of clearly illegal conduct" will not be approved. *Id.* at 1197 (quoting *Grunin v. International House of Pancakes*, 513 F.2d 114, 123-124 (8th Cir. 1975)). Importantly, a reviewing court "must not decide unsettled legal questions; any . . . unconstitutionality must appear as a legal certainty on the face of the agreement before a settlement can be rejected on this basis." *Id*. (quoting *Armstong*, 616 F.2d at 320).

Many of Bagarozy Plaintiffs' arguments on this point actually concern *Girsh* factors (8) and (9): the range of reasonableness of the settlement in light of the best recovery and litigation risks. (Pls. Br. 35). In essence they urge that, given the Becker report's recommendations to improve in certain deficient areas, the only reasonable recovery to Plaintiffs is one which includes implementation of the entire report. (Pls. Br. 35-37). Bagarozy Plaintiffs' arguments are based on the false premise that Dr. Becker's evaluation utilized the constitutional standard and conclusively determined which STU treatment areas fell below that standard. (Pls. Br. 40). As the District Court noted, Dr.

Becker did not even use the constitutional standard, but instead her own expert opinion of how the STU should be run. (A 025). The Court also noted that "the objectors fail to acknowledge Dr. Becker is not the only expert in sex offender treatment," and discussed the conflicting views of other experts, which would present a risk in continued litigation. (A 023).

It should be noted that there has been no determination of any constitutional violations with regard to the STU. But the Settlement Agreement is just that – a settlement that implements a number of the Becker Report's recommendations and was the product of hard-fought litigation spanning over a decade. As the District Court concluded, "the settlement yields substantial and immediate benefits, and it is reasonable in light of the best possible recovery and the attendant risks of litigation – little or no recovery at all." (A041.) Accordingly, we agree that the Settlement Agreement is a fair and reasonable compromise, and the District Court did not abuse its discretion in its analysis of *Girsh* factors (8) and (9).

b. The Settlement Agreement's Contingency on Available State Funding

Bagarozy Plaintiffs also argue that the Agreement is contingent on discretionary State funding, rather than providing a specific requirement that the state fund its obligations under the Agreement. Thus, they urge, the Agreement is not fair, reasonable, or adequate because this provision renders it illusory and unenforceable. (Pls. Br. 40). The sole case Bagarozy Plaintiffs cite in support that rejects an agreement because of contingent funding, notes that the agreement at issue there could have been approved had it provided that the "failure to provide appropriate funds vitiates the Settlement . . .

7

reviving the Plaintiffs' ability to commence litigation." *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 553 n.16 (S.D. Ohio 2000). In fact, the Settlement Agreement here provides that if funding is not secured, Plaintiffs may declare any affected provisions "void" and resume litigation with respect to that provision. (See Settlement Agreement VIII.B, X.A.) We similarly conclude here that, because Plaintiffs may void the Settlement if funding is not provided, it is not illusory or unreasonable.

> c. The District Court Did Not Abuse Its Discretion in Analyzing the Other *Girsh* Factors

Bagarozy Plaintiffs briefly dispute the District Court's analysis of the other *Girsh* factors. (Pls. Br. 46-50). The Court found that factor (1), the complexity, expense, and likely duration of the litigation, weighs in favor of settlement. Without settlement, the Court noted, the matter may not be resolved for years and would require additional, considerable expense and discovery. (A 018). Bagarozy Plaintiffs argue that factor (2), the reaction of the class, weighs against settlement because one-third of the class objected. (Pls. Br. 47-48). However, the District Court pointed out that a two-thirds approval shows strong support for the settlement in the STU community, especially given a solicitation urged throughout the STU that residents should object in promise of "a better deal." (A 019). The District Court also found that factor (3), the stage of proceedings and the amount of discovery completed, weighed in favor of settlement, as the Agreement reached was the subject of contentious litigation, consisting of years of formal discovery as well as complex negotiations. (A 034 – A035). We conclude that the District Court did not abuse its discretion in any of these determinations.

8

Bagarozy Plaintiffs also argue factors (4) and (5), the risks of establishing liability and damages, weigh against settlement because Dr. Becker's report "demonstrates conclusively" that the treatment fails the constitutional standard.  (Pls. Br. 49-50).  As discussed above, Dr. Becker's opinion did not cite or apply the constitutional standard.  The District Court did not abuse its discretion in finding that this argument "oversimplifies the liability issue in this case and ignores that the Becker Report does not utilize the *Youngberg* standard."  (A 037).  Accordingly, we reject Bagarozy Plaintiffs' claims that the District Court erred in weighing the *Girsh* factors.

>d.  Aruanno's Claims are Consistent with Those of Other Class Members and Were Properly Consolidated Into the Alves Case

Aruanno, whose case was originally consolidated under Hasher, argues that Hasher should not have been consolidated with Alves, as (1) Alves was a "total failure," and (2) Hasher presents its own "unique issues."  (Aruanno Br. at Point 1).  As discussed above, the Alves settlement successfully ended years of complex and expensive litigation.  Also, Aruanno does not explain how Hasher is unique or different from Alves.

We need not discuss Aruanno's additional claims at length, as they lack merit.  First, he is foreclosed from raising points that he failed to state below.  *See In Re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 261 (3d Cir. 2009).  Additionally, his remaining claims are unsupported by the record and/or irrelevant to the fairness of the Settlement Agreement.

## III.

Accordingly, we will affirm the District Court's order approving the Settlement Agreement.